ORIGINAL

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
NOV 2 5 2003
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| B.B. PALLETS, INC., *Plaintiff,* | ) | |
| v. | ) | Case No. 03-2748C |
| UNITED STATES, *Defendant.* | ) | |

## COMPLAINT

COMES NOW Plaintiff, B.B. Pallets, Inc. ("BBP"), by and through its attorney, A. Woodson Stuart, Esq., 2315 Wisconsin Avenue, NW, Second Floor, Washington, D.C. 20007, Tel: (202) 297-3196, Fax: (202) 338-0270, and states as follows:

### Jurisdiction

1. This is an action for a refund of $93,217.50 (US) in liquidated damages paid under protest to the U.S. Customs ("U.S. Customs") to satisfy the agency's claim that BBP breached customs bond # 029501474, covering the period May 12, 1999, to Oct 17, 2000. *See* Ex. 1.

2. The Court has jurisdiction over such actions under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1); *Trayco Inc. v. United States,* 994 F.2d 832 (Fed. Cir. 1993); *High Star Toys, Inc. v. United States,* 32 Fed. Cl. 176 (1994).[1]

### Facts Common to All Counts

3. On January 13, 2003, U.S. Customs accepted BBP's payment, under protest, of the outstanding balance due on the agency's assessment of liquidated damages in connection

[1] *See also United States v. Ataka Am., Inc.,* 826 F. Supp. 495, 502 (Ct. Int'l Trade 1993) (distinguishing between liquidated damages and duties); *Pope Prods. v. United States,* 15 C.I.T. 279, 283 (Ct. Int'l Trade 1991) (importers cannot bring an action in the Court of International Trade ("CIT") to challenge the assessment of liquidated damages

with BBP's importation, from May 12, 1999, to October 17, 2000, of merchandise invoiced as wooden "bed frame components" and "loading blocks." *See* Ex. 1.

4. Chapter 44 of Harmonized Tariff Schedule of the United States ("HTSUS"), 19 U.S.C. § 1202 note,[2] provides for "Wood," "Charcoal of Wood," and "Articles of Wood."

5. BBP classified the subject bed frame components in its entry papers as "Other articles of wood," Heading 4421, HTSUS, and the subject loading blocks as "other load boards," Heading 4415, HTSUS.[3]

6. At liquidation,[4] U.S. Customs reclassified the entries as softwood "lumber," i.e., merchandise classified in the "coniferous" subheadings of Heading 4407 and Heading 4409, HTSUS (Subheading 4407.10 and Subheading 4409.10).[5]

7. Based on this reclassification, U.S. Customs required BBP to provide permits, or pay liquidated damages of $100 (US) per thousand board feet ("mbf"), under the U.S.-Canada Softwood Lumber Agreement, 35 I.L.M. 1198 (1996) ("the SLA" or "the Agreement"),

---

by U.S. Customs directly, because the assessment of liquidated damages is not a decision that can be "protested" and reviewed by the CIT under 28 U.S.C. § 1581(a)).

[2] The relevant portions of the HTSUS, and all administrative rulings cited herein, are reprinted as Exhibit 5.

[3] Heading 4415, HTSUS, provides for "Packing cases, boxes, crates and similar packings of wood; cable-drums, of wood; pallets, box-pallets and other load boards, of wood; pallet collars, of wood."

[4] "Liquidation" is the final settlement of accounts with U.S. Customs for duties and similar charges owed on "entries" of merchandise into the customs territory of the United States. *See* 19 U.S.C. § 1500; 19 C.F.R. § 159. Importers are required to classify all imported merchandise in entry papers filed with U.S. Customs. As this case indicates, however, U.S. Customs has the power to reclassify entries and require any necessary permits at liquidation, many months after letting the merchandise in without a permit, and after the importer has made countless entries in reliance on its classification. Section 625(c) of the Customs Modernization Act (1993), 19 U.S.C. § 1625(c), sought to ameliorate that situation by limiting U.S. Customs' power to make classification changes retroactively, as described more fully below.

[5] Heading 4407, HTSUS, provides for: "Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded, or finger-jointed, of a thickness exceeding 6 mm." Heading 4409, HTSUS, provides for: "Wood (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rebated, chamfered, v-jointed, beaded, moulded, rounded or the like) along any of its edges or faces, whether or not planed, sanded or finger-jointed."

*implemented by* 19 C.F.R. § 12.140(a) (1996).[6]

8. When BBP did not provide the requested permits, U.S. Customs assessed liquidated damages to the full extent of BBP's bonds ($100,000.00 (US)).

9. BBP voluntarily paid $6,782.50 (US) of this amount.

10. The balance was paid "under protest" and "with a reservation of all rights to judicial review."

*Characteristics and Principal Use of the Subject Merchandise*

11. The subject bed frame components consist of planed wooden boards and blocks, in nominal dimensions of 1x2 to 1x6 inches,[7] that have been specially adapted for use in the construction of a wooden framework for box springs and bed foundations (the latter being used instead of box springs in the hospitality industry). *See* Ex. 2.

12. The boards are cross cut to precise lengths of up to 83 inches, according to individual customer specifications, to make completely finished parts that need no further preparation before use in the assembly of bed frames. *See id.*

13. A portion of the boards are further manufactured by radial cutting the ends. *See id.*[8]

14. The blocks, which are used for structural supports, are square and some are rounded on one end. *See id.*

15. For some bed frame designs, rounded 4x4 inch posts are used in the corners, and the posts

---

[6] Under the SLA, free permits were available for an annual quota of subject imports. Permits for imports beyond the quota could be obtained by paying an export tax to the Canadian Government of $105 (US) per thousand board feet. By the time U.S. Customs reclassified BBP's entries, all of the free permits for 1999 and 2000 had been distributed. Thus, BBP had to pay either $105 to Canada or $100 to the United States per thousand board feet, to the extent of its bond liability.

[7] Random Lengths, Terms of the Trade 36-37 (4th ed.2000) (defining "board" as "[a] piece of lumber less than two inches in nominal thickness and one inch or more in width"). Some sources define "board" more narrowly as "[a] piece of lumber whose dimensions are less than 2 inches ... thick and between 4 and 12 inches ... wide." *McGraw-Hill Dictionary of Scientific and Technical Terms* 246 (Sybil P. Parker ed., 5th ed. 1994).

[8] U.S. Customs does not dispute that the radial cut boards are properly classified as "Parts" of "Other articles of

are shipped along with the boards (either completely finished or in single lengths that the manufacturer cuts into four).

16. The subject bed frame components are bundled and shipped with the exact quantity of parts necessary to make a given number of finished bed frames.

17. "Loading block" is a commercially-recognized name for a product made of lumber that has been specially adapted for use as "load boards"[9] for steel pipe, aluminum extrusions, corrugated aluminum sheets, and similar products that are too heavy or unwieldy for pallets, box-pallets, and other such load boards. *See* Ex. 3.

18. The subject loading blocks consist of planed wooden boards in nominal dimensions of 1x2 to 3x4 inches and various lengths (e.g., 22 inches, 35 inches, and 37 ½ inches).

19. The shortness of the length, plus the odd dimensions and grooving, severely limit the potential uses of the material in its imported condition.

20. The boards are cross cut to precise lengths, according to individual customer specifications, to make a completely finished part that needs no further preparation for assembly with the load using straps. *See id.*

21. Most of the subject loading blocks are also grooved along the face, or notched on the ends, to accommodate the straps and increase holding power. *See id.*

---

wood" in Heading 4421, HTSUS.

[9] The Explanatory Notes to Heading 44.15 of the HS define "load boards" as follows:

> Load boards are portable platforms for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances.
>
> A pallet is a load board consisting of two decks separated by bearers or a single deck supported by feet and designed essentially for handling by means of fork-lift trucks or pallet trucks. …
>
> Platforms, post platforms, collar-type box platforms, side-rail platforms and end-rail platforms are other examples of load boards.

22. The subject loading blocks are designed to be placed cross-wise at intervals (grooved side out) to create a platform under, and a collar around, a load. *See id.*

23. The platform created by the bottom blocks raises the load off the ground. *See id.*

24. The spaces between the blocks allow the load to be picked up by forklifts. *See id.*

25. Some of the subject loading blocks are square wooden blocks, ranging from 2x2x2 to 6x6x6 inches, that are designed to be placed within loads of pipe in configurations where the pipes are stacked directly on top of each other (as opposed to staggered so they nest). *See id.*

26. Some of the subject loading blocks are nailed together with other pieces of wood to suit them for particular applications. *See id.*

27. For example, to suit loading blocks for loads of corrugated aluminum sheets, BBP cross cuts planed boards, in nominal dimensions of 1x2 to 3x4 inches, into squares that are the same size as the corrugations. *See id.*

28. These squares are then nailed to loading blocks at intervals to fit the corrugations. *See id.*

29. Similarly, to suit loading blocks for loads of plywood, BBP cross cuts 3x3 hardwood lumber into 5 inch blocks and nails them cross-wise, at each end, to the top face of the loading block.

30. The hardwood blocks lift the load off of the loading blocks, which permits additional access points for forklifts.

31. U.S. Customs does not dispute that nailed assemblages of wooden parts, such as the just-described loading blocks, are properly classified as "articles of wood," not "lumber."

*The Statutory Scheme*

32. The HTSUS is a statute that implements the U.S. "trade agreement obligation," as a member of the World Customs Organization ("WCO"), to use the Harmonized Commodity

Description and Coding System ("HS"), 19 U.S.C. § 3001, in classifying imported merchandise for customs purposes.

33. The first part of Chapter 44, HTSUS (Headings 4401 to 4413) provides for "wood" in various raw and semi-processed forms.

34. "Wood" includes what is referred to in the trade as "timber" and "lumber."[10]

35. The balance of Chapter 44 specifies various further manufactured wood products or "Articles of wood" (Headings 4414 to 4420), and has a basket provision for articles of wood not specifically provided for—i.e., "Other articles of wood" (Heading 4421).

36. "Articles of wood" include lumber that has been further manufactured in a way that dedicates the material to a particular use in its imported condition.[11]

37. "Load boards" are specifically provided for by name ("*eo nomine*") in Heading 4415, HTSUS.

38. "Bed frames" and "parts" thereof are not specifically provided for in Chapter 44.

39. However, Heading 4421, HTSUS, includes lumber that bears the marks of special adaptation to use as components or "parts" of specified and unspecified "articles of wood."

40. This case arises from U.S. Customs' determination that BBP's imports of "bed frame components" and "loading blocks" are properly classified as "lumber" under the SLA regulation, 19 C.F.R. § 12.140(a).

41. "Lumber" has been consistently given duty free treatment under U.S. tariff schedules, while "manufactures" or "articles" of wood have been dutiable.

---

[10] *See Dudley v. United States*, 174 U.S. 670, 672 (1899).

[11] *Worthington v. Robbins*, 139 U.S. 337, 341 (1891) (the test for distinguishing an article from raw material is whether the material, in its imported condition, "bears the marks of special adaptation to use").

42. "Lumber" has been consistently defined in customs law, in accordance with standard dictionary definitions, as timber resawn lengthwise into pieces with smaller dimensions, which then may be dressed (i.e., planed or sanded), worked (e.g., tongued and grooved), or joined end-to-end to form longer pieces (e.g., fingerjointed), but if the lumber's "manufacture has so far advanced that it can only be used for a definite purpose, [such] as . . . boxes, furniture, etc., it becomes a 'manufacture of wood.'"[12]

43. As a result of NAFTA, on January 1, 1998, duties were eliminated on imports of "articles of wood" from Canada, but they remain in effect for non-NAFTA countries.

44. At the same time, however, the now-expired SLA subjected imports of softwood "lumber" to a protective quota, described above, under which imports beyond a certain amount annually were subject to an export tax of $105 (US) per thousand board feet to the Government of Canada (or the payment of $100 (US) per thousand board feet to U.S. Customs as liquidated damages, up to the limit of the relevant customs bond).

45. The adoption of the HTSUS in 1989 was "revenue neutral," meaning that ambiguities in the HTSUS may not be construed in a way that would make a formerly duty-free product dutiable. *See* U.S. Int'l Trade Comm'n, Continuity of Import and Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System, ITC Pub. 2051, at 32 (Jan. 1988).

46. Under the former tariff schedules of the United States, bed frame components were dutiable "articles of wood," not "lumber." *See F.W. Myers & Co. v. United States*, 345 F. Supp. 1006,

---

[12] *Dudley*, 174 U.S. at 672 (citing *Tidewater Oil Co. v. United States*, 171 U.S. 210, 214-15, 217 (1898) (affirming government's position that cross-cutting boards to size for use in making packing boxes of a particular design

1008 (Cust. Ct. 1972).

47. Under the former tariff schedules of the United States, lumber products similar to the subject loading blocks were dutiable "articles of wood," not "lumber." *See, e.g., C.J. Tower & Sons v. United States*, 40 C.C.P.A. 30, 33 (1952) (affirming government's position that cross-cutting and grooving softwood lumber to adapt it for use in making a framework of a particular design for transporting heavy building material transformed the lumber into articles of wood).[13]

48. **There is no clear statement in the HTSUS, including its Legal Notes, indicating a Congressional intent to change the dutiable status of bed frame components or load boards.**

49. Thus, under U.S. Customs' current interpretation of Heading 4407 and Heading 4409, HTSUS, goods that historically have been dutiable as "manufactures of wood" or "articles of wood" (e.g., bed frame components and load boards) are now considered mere "wood" and, thus, may come in duty free from *every* MFN country, not just NAFTA countries.

50. A customs bond is a contract with the United States.

51. A customs bond relieves the Government of the burdensome and inconvenient duty of liquidating entries at importation, in real time, while providing security to the United States

---

"transformed" the lumber into **packing box components**)).

[13] *See also United States v. Swain & Boggs*, 12 C.C.A. 13, 14-15 (1923) (affirming government's position that cross-cutting softwood lumber to adapt it for use in making bed crates of a particular design transformed the lumber into **crate components**); *F.E. MacArtney v. United States*, 31 Cust. Ct. 139, 141 (1953) (affirming government's position that cross-cutting softwood lumber into short lengths and angle cutting one end transformed the lumber into **vehicle blocks**); *cf. United States v. Hathaway*, 71 U.S. 404, 408 (1866) (affirming government's position that cross-cutting softwood lumber to adapt it for use in making pipes and hogsheads transformed the lumber into **barrel staves**); *United States v. Quimby*, 71 U.S. 408, 408 (1866) (affirming government's position that cross-cutting softwood lumber to adapt it for use as shovel handles transformed the lumber into **shovel handles**); *Atkins, Kroll & Co. v. United States*, 50 C.C.P.A. 62, 47 (1963) (affirming government's position that cross-cutting sticks to adapt them for

for any duties or other charges that may be assessed when liquidation occurs (normally, 314 days after entry).

52. In exchange, the United States agrees to limit importers' liability to the bond amount for any increased duties or other charges based on changes in the entered status of their merchandise at liquidation.

53. Because of the contractual nature of customs bonds, U.S. Customs bears the burden of proving any claim of breach and entitlement to liquidated damages.

54. Importers are not required to prove that they did not breach the bond, whether in a collection action or in a refund action after payment under protest.

*BBP's Import History*

55. BBP is a Canadian lumber remanufacturer that began selling bed frame components and loading blocks in the United States in the mid-1990s.

56. At that time, merchandise classified in Heading 4415 and Heading 4421, HTSUS, was dutiable; merchandise classified in Heading 4407 and Heading 4409, HTSUS, was duty free; and the most pertinent Customs Service Rulings stated unequivocally that lumber manufactured beyond dressing and working to adapt it for a particular use is not properly classified in Heading 4407 or Heading 4409, HTSUS.[14]

57. Moreover, there were no rulings or court decisions under the HTSUS specifically addressing

---

use as broom handles transformed the sticks into **broom handles**).

[14] *See, e.g.*, Customs Service Ruling 083733 (May 12, 1989) (lumber cut to size and drilled for use in the construction of docks and floats are dutiable, as "articles of wood" rather than lumber, because "[w]ood classified under Heading 4407 may only be planed, sanded, or finger-jointed; it may not be further processed"); Customs Service Ruling 083732 (May 1, 1989) (same); Customs Service Ruling 083731 (May 1, 1989) (same); *see also* Customs Service Ruling D81970 (Sept. 30, 1998) (holding "truss components" dutiable, as "articles of wood," whether "with angle cuts or with straight cuts on the ends," and whether or not imported in individually-packaged

the classification of bed frame components or loading blocks, and the court decisions on such merchandise under the prior tariff schedules held such merchandise dutiable as "articles of wood." *See Myers*, 345 F. Supp. at 1008 (bed frame components); *Tower*, 40 C.C.P.A. at 33 (grooved load boards); *see also supra* notes 12-13 (collecting cases involving crate and packing box components).

58. In accordance with these rulings and decisions, BBP began entering its bed frame components as "Parts" or "Other articles of wood," under Heading 4421, HTSUS, and its loading blocks as "other load boards," under Heading 4415, HTSUS, and U.S. Customs initially liquidated the merchandise as entered. *See* Ex. 4 (documents reflecting the entry and liquidation of two shipments of bed frame components and two shipments of loading blocks).

59. On July 1, 1998, however, U.S. Customs revoked the above-mentioned rulings and adopted an expansive new interpretation of Heading 4407, HTSUS, in a notice and comment proceeding under Section 625(c) of the Customs Modernization Act (1993) ("the Mod Act"), 19 U.S.C. § 1625(c).[15]

60. Based on its new interpretation, in 1999, U.S. Customs began liquidating BBP's entries of bed frame components and loading blocks under Heading 4407 and Heading 4409, HTSUS.

*Section 625(c) of the Mod Act*

61. U.S. Customs' reclassification of BBP's imports into the tariff provisions referenced in the

kits (i.e., as unassembled trusses)).

[15] *See Revocation of Ruling Letter Relating to Tariff Classification of Drilled Softwood Studs*, Cust. Bull. & Dec., July 1, 1998, at 56-57 (publishing Customs Service Ruling 961555 (July 1, 1998)). This action revoked the drilled lumber rulings (cited *supra* note 13), but the WCO later held that this action was not in accordance with U.S. trade agreement obligations under the HS Convention. *See Caterpillar Inc. v. United States*, 941 F. Supp. 1241, 1247-48 (Ct. Int'l Trade 1996) ("'GATT agreements are international obligations, and absent express Congressional language to the contrary, statutes should not be interpreted to conflict with international obligations.'") (quoting *Federal*

SLA regulation was effected without observance of the procedure required by Section 625(c) of the Mod Act, 19 U.S.C. § 1625(c).

62. Section 625(c)(2) of the Mod Act requires U.S. Customs to proceed by notice and comment if it wants to change the treatment previously accorded to substantially identical transactions by the importer. *See id.; Precision Specialty Metals, Inc. v. United States,* 182 F. Supp. 2d 1314, 1326 (Ct. Int'l Trade 2001).

63. Section 625(c) of the Mod Act also prohibits U.S. Customs from applying a change of treatment retroactively, i.e., to imports made before the effective date of final action under Section 625(c). *See* 19 U.S.C. § 1625(c).

64. Indeed, the effective date of final action under Section 625(c) is not until 60 days *after* publication of a notice of such action in the *Customs Bulletin. See id.*

**Count I—Misclassification of the Subject**
**<u>Bed Frame Components Under the HTSUS</u>**

65. The preceding allegations are incorporated by reference herein.

66. The canons of construction to be applied in interpreting the HTSUS are codified as the General Rules of Interpretation ("GRIs") and the U.S. Additional Rules of Interpretation ("USARIs").

67. GRI 1 provides that classification "shall be determined according to the terms of the headings and any relative section or chapter notes."[16]

---

*Mogul Corp. v. United States,* 63 F.3d 1572, 1581 (Fed. Cir. 1995)).

[16] GRI 1 is essentially a codification of the plain meaning rule, which allows resort to extrinsic evidence of legislative intent only if the statutory language, read in light of ordinary dictionary definitions, fails to produce a clear answer. *See, e.g., Sharp Microelectronics Technology, Inc. v. United States,* 122 F.3d 1446, 1461 (Fed. Cir. 1997) (rejecting argument based on the Explanatory Notes that conflicted with the plain meaning of the terms of the HTSUS).

68. USARI 1(a) reads as follows:

> a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use[.]

69. A product is classifiable in a heading only if its terms provide a "complete and accurate description" of the merchandise. *Boen Hardwood Flooring, Inc., v. United States*, 254 F. Supp. 2d 1349, 1359-60 (Ct. Int'l Trade 2002) (edge-glued lumber not classifiable in Heading 4409, HTSUS, because edge-gluing is not among the manufacturing processes enumerated in the heading).

70. If only one tariff heading provides a complete and accurate description of the subject merchandise, GRI 1 (or, if applicable, USARI 1(a)) requires classification in that heading.

71. If more than one heading provides a complete and accurate description of the merchandise, GRI 3 provides in relevant part that the merchandise shall be classified under "[t]he heading which provides the most specific description" or, if equally specific, under "the heading which occurs last in numerical order among those which equally merit consideration."

72. Where the text of a tariff provision has undergone only "minor changes" from prior tariff schedules, "the high values of uniformity and predictability . . . counsel courts [and Customs] to credit prior decisions interpreting the . . . provision." *Hewlett-Packard Co. v. United States*, 189 F.3d 1346, 1349 (Fed. Cir. 1999) (citation and internal quotation marks omitted); *see also E.M. Chems., Inc. v. United States*, 923 F. Supp. 202, 207 n.5 (Ct. Int'l Trade 1996) (judicial precedent under prior tariff schedules "should be considered instructive in interpreting similar or the same nomenclature" in later tariff schedules).

73. The terms of Heading 4421, HTSUS ("Parts" of "Other articles of wood"), provide a complete and accurate description of the subject bed frame components under GRI 1, because the wood bears the marks of special adaptation to use in the manufacture of bed frames, and bed frames are a well-recognized "article of wood." *See Myers*, 345 F. Supp. at 1008.

74. Alternatively, if USARI 1(a) is applied, the terms of Heading 4421, HTSUS ("Parts" of "Other articles of wood"), provide a complete and accurate description of the subject bed frame components, because such merchandise is principally used as parts in the manufacture of a recognized "article of wood" that is not specifically provided for in Chapter 44.[17]

75. Lumber and the subject bed frame components belong to different "classes or kind" of merchandise as those terms have been judicially defined.[18]

76. Specifically, the lumber belongs to a different class or kind of merchandise than the subject bed frame components, because:

(a) Lumber has not been subjected to manufacturing processes other than continuous lengthwise cutting and shaping and does not bear the marks of special adaptation to use;

(b) Lumber does not meet the expectations of purchasers of bed frame components, who

[17] U.S. Customs has applied USARI 1(a) under Heading 4415, HTSUS. Specifically, U.S. Customs has ruled that "pallets" comprise at least two distinct classes or kinds of articles, only one of which is used principally as pallets and classifiable in Heading 4415, HTSUS. The other class or kind of pallets consists of crushed and broken pallets that are principally used as wood waste and scrap and properly classified as such in Heading 4401, HTSUS. *See, e.g.*, Customs Service Ruling 863044 (May 16, 1991). U.S. Customs also has applied USARI 1(a) under Heading 4405, HTSUS, which provides for "railway cross-ties." Specifically, U.S. Customs has ruled that "used railroad ties are principally used as landscape timbers" and thus properly classified as timbers under Heading 4407, HTSUS, *see, e.g.*, Customs Service Ruling 955635 (April 6, 1994), even if they still meet safety specifications and otherwise remain suitable for use as railroad ties, *see* Customs Service Ruling 802004 (September 29, 1994).

[18] *See United States v. The Carborundum Co.*, 536 F.2d 373, 377-78 (C.C.P.A. 1976); *Mast Industries, Inc. v. United States*, 9 C.I.T. 549, 550-51 (1985); *see also E.M. Chemicals, Inc. v. United States*, 923 F. Supp. 202, 208 (Ct. Int'l Trade 1996).

require completely prefabricated parts, and bed frame components are too expensive and too limited in their potential uses to meet the expectations of most lumber purchasers;

(c) Lumber is made by upstream producers (sawmills) and sold through wholesale and retail lumber and building material dealers, whereas bed frame components are made by downstream producers (lumber remanufacturers) and are sold exclusively to bed frame manufacturers;

(d) Lumber is marketed as a general purpose construction material, whereas bed frame components are marketed as a completely prefabricated part ready for use in the construction of bed frames;

(e) Lumber cannot be used as a bed frame component without further preparation, and bed frame components are too short to be used as a general purpose construction material;

(f) Lumber cannot be remanufactured economically by bed frame manufacturers to make bed frame components, and bed frame components cannot be converted economically back into lumber (e.g., by fingerjointing and edge gluing); and

(g) Lumber and bed frame components are not commercially interchangeable, because bed frame components have a higher price yet fewer potential uses than lumber.

77. The terms of Heading 4407, HTSUS ("Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded, or finger-jointed"), do not provide a complete and accurate description of the subject bed frame components, because the wood is further prepared, beyond sawing lengthwise and planing, to adapt it for use in making bed frames.

78. Because only Heading 4421, HTSUS, provides a complete and accurate description of the subject bed frame components, they must be classified there under GRI 1.

79. Alternatively, if GRI 3 is applied, the provision for "parts" of "articles of wood" not specifically provided for, Heading 4421, HTSUS, is narrower and more specific than the general descriptive provisions for "wood sawn lengthwise," Heading 4407 and Heading 4409, HTSUS, and Heading 4421, HTSUS, occurs last in numerical order.

80. The subject bed frame components are clearly recognizable as such to persons who make, use, sell, or buy beds, bed frames, and their components.

81. To the best of BBP's knowledge, information, and belief, all of its customers actually use the imported bed frame components for their intended purpose.

82. For these reasons, the subject bed frame components are not properly classified in Heading 4407, HTSUS, and U.S. Customs cannot require a permit for such merchandise under the SLA regulation.

**Count II—Misclassification of the Subject**
**<u>Bed Frame Components Under the Mod Act</u>**

83. The preceding allegations are incorporated by reference herein.

84. U.S. Customs' classification of the subject bed frame components in Heading 4407, HTSUS, had the effect of modifying the treatment previously accorded by U.S. Customs to substantially identical transactions involving BBP.

85. The only proof needed to establish a prior classification treatment under Section 625(c) of the Mod Act is a description of at least two prior liquidations, of any kind, involving substantially identical merchandise. *Precision Specialty Metals,* 182 F. Supp. 2d at 1326.

86. The only intent that is relevant in establishing a treatment under Section 625(c) is the intent of the importer, in arranging its affairs in reliance on the treatment. *Id.*

87. U.S. Customs previously liquidated at least two entries of BBP's bed frame components under Heading 4421, HTSUS. *See* Ex. 4.

88. U.S. Customs did not comply with the notice-and-comment requirement of Section 625(c) and did not give BBP the 60 day grace period to continue importing under the previous treatment.

89. BBP's previous treatment predates any Customs Service Rulings to other importers involving substantially identical merchandise.

90. For these reasons, the Mod Act required U.S. Customs to classify the subject entries of bed frame components in Heading 4421, HTSUS, and U.S. Customs cannot require a permit for such imports under the SLA.

**Count III—Misclassification of the Subject**
**Bed Frame Components Under the SLA**

91. The preceding allegations are incorporated by reference herein.

92. The SLA regulation, 19 C.F.R. § 12.140(a), requires a permit, or the payment of liquidated damages of $100 per thousand board feet, for imports subject to the SLA.

93. While the scope of the SLA is defined by cross-reference to Heading 4407 and Heading 4409, HTSUS, U.S. Customs' interpretation (or reinterpretation) of those provisions for SLA purposes is subject to review by panels convened under the Agreement to handle such appeals.

94. In 1999, a panel convened under the SLA held that "drilled and notched lumber" (i.e., 2x4 inch lumber that was cut to size for use as wall frame studs, with a small hole or notch for wiring), was more than "softwood lumber" and beyond the scope of the Agreement.

95. As a result, U.S. Customs was forbidden to require a "softwood lumber" permit for drilled and notched studs, under 19 C.F.R. § 12.140(a), even assuming *arguendo* that such merchandise is properly classified in Heading 4407.10 or Heading 4409.10, HTSUS.[19]

96. The classification principle upon which the SLA panel based its decision in the case of drilled and notched studs applies *a fortiori* to the subject bed frame components, because they are more heavily processed, and more clearly recognizable as components for a particular type of wooden framework, than drilled and notched studs.

97. For these reasons, the subject bed frame components are not properly classified as "softwood lumber" under the SLA, and U.S. Customs cannot require a permit for such merchandise.

**Count IV—Misclassification of the Subject**
**Loading Blocks Under the HTSUS**

98. The preceding allegations are incorporated by reference herein.

99. The terms of Heading 4415, HTSUS ("Packing cases, boxes, crates and similar packings of wood; cable-drums, of wood; pallets, box-pallets and other load boards, of wood; pallet collars, of wood."), provide a complete and accurate description of the subject loading blocks, because the subject loading blocks are "boards" that bear the marks of special adaptation to use in packing "loads" of merchandise.[20]

100. Alternatively, if USARI 1(a) is applied, terms of Heading 4415, HTSUS, provide a complete and accurate description of the subject loading blocks, because such merchandise is

[19] *See Caterpillar Inc. v. United States*, 941 F. Supp. 1241, 1247-48 (Ct. Int'l Trade 1996) ("'GATT agreements are international obligations, and absent express Congressional language to the contrary, statutes should not be interpreted to conflict with international obligations.'") (quoting *Federal Mogul Corp. v. United States*, 63 F.3d 1572, 1581 (Fed. Cir. 1995)).

[20] Alternatively, the terms of Heading 4415, HTSUS, provide a complete and accurate description of BBP's loading blocks, because BBP's loading blocks are used in making "portable platforms" to transport "loads" of merchandise.

principally used as "load boards" in its imported condition.

101. Lumber and the subject loading blocks belong to different "classes or kind" of merchandise as those terms have been judicially defined.[21]

102. Specifically, lumber belongs to a different class or kind of merchandise than the subject loading blocks, because:

(a) Lumber has not been subjected to manufacturing processes other than continuous lengthwise cutting and shaping and does not bear the marks of special adaptation to use;

(b) Lumber does not meet the expectations of purchasers of loading blocks, who require completely prefabricated load boards, and loading blocks are too expensive and too limited in their potential uses to meet the expectations of lumber purchasers;

(c) Lumber is made by upstream producers (sawmills) and sold through wholesale and retail lumber and building material dealers, whereas loading blocks are made by downstream producers (lumber remanufacturers) and are sold exclusively to industrial producers of steel pipe, aluminum sheets, and the like;

(d) Lumber is widely marketed as a general purpose construction material, whereas the subject loading blocks are marketed to industry as a completely prefabricated product ready for use in packing loads;

(e) Lumber does not perform adequately as loading blocks in its imported condition, and loading blocks are too short for use as a general purpose construction material;

(f) Lumber cannot be remanufactured economically by industrial users to make loading

---

*See* Explanatory Notes to Heading 44.15, HS (quoted *supra* note 8).
[21] *See supra* note 17.

blocks, and loading blocks cannot be converted economically back into lumber (e.g., by fingerjointing); and

(g) Lumber and loading blocks are not commercially interchangeable, because loading blocks have a higher price yet fewer potential uses than lumber.

103. The terms of Heading 4407, HTSUS ("Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded, or finger-jointed, of a thickness exceeding 6 mm" ), and Heading 4409, HTSUS ("Wood (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rebated, chamfered, v-jointed, beaded, moulded, rounded or the like) along any of its edges or faces, whether or not planed, sanded or finger-jointed."), do not provide a complete and accurate description of the subject loading blocks, because the wood is further prepared, beyond sawing lengthwise and planing, to adapt it for use in packing loads of merchandise. *See Tower,* 40 C.C.P.A. at 33; *see also supra* notes 11-12 (collecting cases).

104. Because only Heading 4415, HTSUS, provides a complete and accurate description of the subject loading blocks, they must be classified there under GRI 1.

105. Alternatively, if GRI 3 is applied, the provision for "load boards" not specially provided for, Heading 4415, HTSUS, is narrower and more specific than the general descriptive provisions for "wood sawn lengthwise, etc.," Heading 4407 and Heading 4409, HTSUS, and Heading 4415 occurs last in numerical order.

106. The subject loading blocks are clearly recognizable as such to persons who make, use, sell, or buy pallets, box-pallets, and other load boards.

107. To the best of BBP's knowledge, information, and belief, all of the end-users of its

loading blocks actually use the merchandise for its intended purpose.

108. For these reasons, the subject loading blocks are not properly classified in Heading 4407 or Heading 4409, HTSUS, and U.S. Customs cannot require a permit for such merchandise under the SLA regulation.

**Count V—Misclassification of the Subject**
**<u>Loading Blocks Under the Mod Act</u>**

109. The preceding allegations are incorporated by reference herein.

110. U.S. Customs' classification the subject loading blocks in Heading 4407 and Heading 4409, HTSUS, had the effect of modifying the treatment previously accorded by U.S. Customs to substantially identical transactions involving BBP.

111. The only proof needed to establish a prior classification treatment under Section 625(c) of the Mod Act is a description of at least two prior liquidations, of any kind, involving substantially identical merchandise. *Precision Specialty Metals*, 182 F. Supp. 2d at 1326.

112. The only intent that is relevant in establishing a treatment under Section 625(c) is the intent of the importer, in arranging its affairs in reliance on the treatment. *Id.*

113. U.S. Customs previously liquidated at least two entries of substantially identical merchandise under Heading 4415, HTSUS. *See* Ex. 4.

114. U.S. Customs did not comply with the notice-and-comment requirement of Section 625(c) and did not give BBP the 60 day grace period to continue importing under the previous treatment.

115. BBP's previous treatment predates any Customs Service Rulings to other importers involving substantially identical merchandise.

116. For these reasons, the Mod Act required U.S. Customs to classify the subject entries of loading blocks in Heading 4415, HTSUS, and U.S. Customs cannot require a permit for such imports under the SLA.

**Count VI—Misclassification of the Subject**
**Loading Blocks Under the SLA**

117. The preceding allegations are incorporated by reference herein.

118. The classification principle upon which the SLA panel based its decision in the case of drilled and notched studs applies *a fortiori* to BBP's loading blocks, because they are even more heavily processed, and more clearly recognizable as components for a particular type of wooden framework, than drilled and notched studs.

119. For these reasons, BBP's loading blocks are not properly classified as "softwood lumber" under the SLA, and U.S. Customs cannot require a permit for such merchandise.

**Conclusion and Prayer for Relief**

WHEREFORE on the premises considered, BBP prays for a judgment awarding a refund of all liquidated damages paid under protest to U.S. Customs in connection with the described transactions, and such other and further relief as the Court may deem just.

Respectfully submitted,

A. Woodson Stuart, Esq.
2315 Wisconsin Avenue, NW
Second Floor
Washington, D.C. 20007
Tel: (202) 279-3196
Fax: (202) 338-0270

*Attorney for Plaintiff B.B. Pallets, Inc.*

## TABLE OF EXHIBITS

| | |
|---|---|
| **Exhibit 1** | Documentation of BB Pallets' payment to the United States, under protest, of $93,217.50. |
| **Exhibit 2** | Pictures and literature relating to the subject bed frame components. |
| **Exhibit 3** | Pictures and literature relating to the subject loading blocks. |
| **Exhibit 4** | Documentation of previous treatment accorded to substantially identical transactions by U.S. Customs. |
| **Exhibit 5** | Relevant tariff provisions and Customs Service Rulings. |

A. WOODSON STUART, ESQ.

2315 WISCONSIN AVENUE, N.W.
SECOND FLOOR
WASHINGTON, D.C. 20007
TEL: (202) 297-3196
FAX: (202) 879-5200

**CONFIDENTIAL TREATMENT REQUESTED**[1]

January 6, 2003

Darrell E. Woodard
Fines, Penalties & Forfeitures Officer
U.S. Customs Service
477 Michigan Avenue, Suite 200
Detroit, Michigan 48226

**Re: Check drawn on U.S. bank.**

Dear Mr. Woodard:

Enclosed please find a certified check for $93,217.50 (US) drawn on a U.S. bank.

As indicated on the check and in my previous correspondence, this payment is being made, under protest, to satisfy U.S. Customs' claim that BB Pallets, Inc., breached Customs Bond # 029501474 (Surety # 891) during the period covering May 12, 1999, to Oct 17, 2000. BB Pallets, Inc., reserves the right to pursue a refund action in the Court of Federal Claims.

Please let me know when the check has been cashed.

Yours very truly,

A. Woodson Stuart, Esq.

cc: Jon Friedman
Harry Kraus

---

[1] Pursuant to 19 C.F.R. § 103.12, we request confidential treatment for the information contained herein. This information is sensitive and its release would cause substantial harm to the competitive position of B.B. Pallets.

**Bank of America**

Cashier's Check

No. 0005964

Notice to Purchaser: If this check is lost, misplaced or stolen, a sworn statement and 90 day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

VOID AFTER 90 DAYS

Date JANUARY 06, 2003

30-1/1140

Banking Center FIFTEENTH & PENNSYLVANIA AVE

3018022 00008 0005964

ANDREW STUART for BB Pallets, Inc

Remitter (Purchased By) Bond #029501474

$ **93217.50**

Pay **NINETY THREE THOUSAND TWO HUNDRED SEVENTEEN DOLLARS AND 50 CENTS**

To The Order Of **THE U.S. CUSTOMS SERVICE** ****

Payment made under protest with a reservation of all rights to judicial review.

Authorized Signature

Bank of America, N.A. San Antonio, Texas

87-14-3774B 10-2002

⑈0005964⑈ ⑆114000019⑆ 001641001239⑈

THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK. THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK.

**U.S. Customs Service**
477 Michigan Avenue, Suite 200
Detroit, MI 48226

JAN 13 2003

BCN-1-PEN:FO:FPF DEW
2001-3801-201633-01 et al
Bond #02901474

<VIA FACSIMILE>
A. Woodson Stuart, Esq.
2315 Wisconsin Avenue, N.W.
Second Floor
Washington, D.C. 20007

Dear Mr. Stuart:

This letter acknowledges receipt of cashier's check #0005964 in the amount of $93,217.50 tendered on behalf of your client, BB Pallets, Inc. The $93,217.50 tender is comprised of $50,000 for bond number 0291474 for bond period 5/11/99 – 5/10/00 and $43,217.50 for bond period 5/11/00 – 10/17/00, the date the bond was terminated. Previously, $6,782.50 in payments was tendered to Customs in Ogdensburg, New York for claims subject to the latter bond period. Therefore, bond #02901474 is exhausted for the two specified bond periods.

Enclosed is a list of claims showing the allocation of the payment of the bond amount to specific cases. The tender resulted in full payment of 48 claims and partial payment of 2 claims. Case number 2001-0712-200161-01 is only partially paid ($293.10) as the bond liability for the 5/11/99 – 5/10/00 bond period was reached. Case number 2001-3801-201654-01 is also only partially paid ($107.80) as the bond liability for the 5/11/00-10/17/00 period was reached.

As noted, we agree that the bond liability for bond #02901474 and the specified bond periods is exhausted. All other liquidated damages claims assessed for this bond and the specified bond periods are closed without payment.

However, Detroit case 2001-3801-201719-01 is not covered by bond #0291474. This claim is in the amount of $211.10 and is covered by a single entry bond for entry #EG8-7832464-9. Please remit $211.10 within 30 days from the date of this letter to resolve this claim. Please ensure that payment is in U.S. funds and that the monetary instrument is drawn on an U.S. bank or payable through a branch of an U.S. bank.

If you have any questions, please call me at 313-442-0217.

Sincerely,

Darrell E. Woodard

Darrell E. Woodard
Fines, Penalties & Forfeitures Officer

Enclosure

Cc: Maureen O'Connor, Buffalo
Stephen Lombard, Champlain
Jane Chambers, Ogdensburg
Mary Lou Recor, St. Albans

TRADITION ★ SERVICE ★ HONOR

BB Pallets

| | | |
|---|---|---|
| 1 | 2000 0901 203365 01 | 1,368.40 |
| 2 | 2000 0901 203366 01 | 215.00 |
| 3 | 2000 0901 203367 01 | 960.00 |
| 4 | 2000 0901 203368 01 | 569.00 |
| 5 | 2000 0901 203370 01 | 2,560.50 |
| 6 | 2001 0901 200128 01 | 1,700.00 |
| 7 | 2001 0901 200129 01 | 1,700.00 |
| 8 | 2001 0901 200130 01 | 1,700.00 |
| 9 | 2001 0901 200163 01 | 2,586.00 |
| 10 | 2001 0901 200164 01 | 2,544.00 |
| 11 | 2001 0901 200165 01 | 1,416.00 |
| 12 | 2001 0901 200167 01 | 2,705.00 |
| 13 | 2001 0901 200168 01 | 2,642.00 |
| 14 | 2001 0901 200170 01 | 2,566.00 |
| 15 | 2001 0901 200171 01 | 2,542.00 |
| 16 | 2001 0901 200177 01 | 928.00 |
| 17 | 2001 0901 200135 01 | 2,480.00 |
| 18 | 2001 0712 200212 01 | 1,616.00 |
| 19 | 2001 0712 200213 01 | 2,556.00 |
| 20 | 2001 0712 200169 01 | 709.00 |
| 21 | 2001 0712 200146 01 | 694.00 |
| 22 | 2001 0712 200151 01 | 2,671.00 |
| 23 | 2001 0712 200153 01 | 342.00 |
| 24 | 2001 0712 200154 01 | 2,577.00 |
| 25 | 2001 0712 200155 01 | 2,575.00 |
| 26 | 2001 0712 200157 01 | 2,320.00 |
| 27 | 2001 0712 200159 01 | 2,466.00 |
| 28 | 2001 0712 200161 01 | 293.10 * |
| 29 | 2001 3801 201633 01 | 2,527.50 |
| 30 | 2001 3801 201634 01 | 2,560.10 |
| 31 | 2001 3801 201635 01 | 2,739.90 |
| 32 | 2001 3801 201636 01 | 1,281.90 |
| 33 | 2001 3801 201637 01 | 2,707.80 |
| 34 | 2001 3801 201638 01 | 2,350.70 |
| 35 | 2001 3801 201639 01 | 2,592.80 |
| 36 | 2001 3801 201640 01 | 1,456.50 |
| 37 | 2001 3801 201641 01 | 1,384.00 |
| 38 | 2001 3801 201642 01 | 1,743.60 |
| 39 | 2001 3801 201643 01 | 984.30 |
| 40 | 2001 3801 201644 01 | 2,559.10 |
| 41 | 2001 3801 201645 01 | 2,469.10 |
| 42 | 2001 3801 201646 01 | 1,703.70 |
| 43 | 2001 3801 201647 01 | 1,601.20 |
| 44 | 2001 3801 201648 01 | 2,539.90 |
| 45 | 2001 3801 201649 01 | 1,492.90 |
| 46 | 2001 3801 201650 01 | 1,492.90 |
| 47 | 2001 3801 201651 01 | 2,561.20 |
| 48 | 2001 3801 201652 01 | 2,638.10 |
| 49 | 2001 3801 201653 01 | 1,702.70 |
| 50 | 2001 3801 201654 01 | 107.80 * |
| | | 93,217.50 |

CLOSED - PAID

AMT $93,217.50 DATE 1/10/03

FROM Andrew Stuart for BB Pallets

CHECK NO. 0005964 BOA

INT [initials] DATE 1/10/03

* = partial payment
bond exhausted
bond # 029501474

BB Pallets
Bond #029501474
Payments Credited to
Bond Period 5/11/99 - 5/10/00

| Bond #029501474 | Face Amt = $50,000 | Bond Period 5/11/99-5/10/00 | |
|---|---|---|---|
| Case No. | CE # | Claim Amt | Paid Amt |
| 2000 0901 203365 01 | EG6-76140064 | 1,368.40 | 1,368.40 |
| 2000 0901 203366 01 | EG6-76137797 | 215.00 | 215.00 |
| 2000 0901 203367 01 | EG6-76142904 | 960.00 | 960.00 |
| 2000 0901 203368 01 | EG6-76144504 | 569.00 | 569.00 |
| 2000 0901 203370 01 | EG6-76145659 | 2,560.50 | 2,560.50 |
| 2001 0901 200128 01 | EG6-76176860 | 1,700.00 | 1,700.00 |
| 2001 0901 200129 01 | EG6-76148836 | 1,700.00 | 1,700.00 |
| 2001 0901 200130 01 | EG6-76149354 | 1,700.00 | 1,700.00 |
| 2001 0901 200163 01 | EG676154230 | 2,586.00 | 2,586.00 |
| 2001 0901 200164 01 | EG6-75164406 | 2,544.00 | 2,544.00 |
| 2001 0901 200165 01 | EG6-76137789 | 1,416.00 | 1,416.00 |
| 2001 0901 200167 01 | EG6-76297617 | 2,705.00 | 2,705.00 |
| 2001 0901 200168 01 | EG6-76137771 | 2,642.00 | 2,642.00 |
| 2001 0901 200170 01 | EG6-76147283 | 2,566.00 | 2,566.00 |
| 2001 0901 200171 01 | EG6-76147952 | 2,542.00 | 2,542.00 |
| 2001 0901 200177 01 | EG6-76162258 | 928.00 | 928.00 |
| 2001 0901 200185 01 | EG6-76144660 | 2,480.00 | 2,480.00 |
| 2001 0712 200212 01 | EG6-7125490-2 | 1,616.00 | 1,616.00 |
| 2001 0712 200213 01 | EG6-7125369-8 | 2,556.00 | 2,556.00 |
| 2001 0712 200169 01 | EG6-7128769-6 | 709.00 | 709.00 |
| 2001 0712 200146 01 | EG6-7131262-7 | 694.00 | 694.00 |
| 2001 0712 200151 01 | EG6-7130778-3 | 2,671.00 | 2,671.00 |
| 2001 0712 200153 01 | EG6-7129357-9 | 342.00 | 342.00 |
| 2001 0712 200154 01 | EG6-7129292-8 | 2,577.00 | 2,577.00 |
| 2001 0712 200155 01 | EG6-71292928 | 2,575.00 | 2,575.00 |
| 2001 0712 200157 01 | EG6-7129115-[illegible] | 2,320.00 | 2,320.00 |
| 2001 0712 200159 01 | EG6-7130393-1 | 2,465.00 | 2,465.00 |
| 2001 0712 200161 01 | EG6-7130244-6 | 2,372.00 | 293.10 |
| | | 52,078.90 | 50,000.00 |

Bond 029501474 is exhausted for bond period 5/11/99 - 5/10/00

BB Pallets
Bond #029501474
Payments Credited to
Bond Period
5/11/00 - 10/17/00

| Bond #029501474 | Face Amt = $50,000 | Bond Period | 5/11/00-10/17/00 |
|---|---|---|---|
| Case No. | CE # | Claim Amt | Paid Amt |
| 2001 3801 201633 01 | EG6-7750581-0 | 2,527.50 | 2,527.50 |
| 2001 3801 201634 01 | EG6-7810840-8 | 2,560.10 | 2,560.10 |
| 2001 3801 201635 01 | EG6-7751295-6 | 2,739.90 | 2,739.90 |
| 2001 3801 201636 01 | EG6-7810832-5 | 1,281.90 | 1,281.90 |
| 2001 3801 201637 01 | EG6-7828209-6 | 2,707.60 | 2,707.60 |
| 2001 3801 201638 01 | EG6-7828514-9 | 2,350.70 | 2,350.70 |
| 2001 3801 201639 01 | EG6-7828543-8 | 2,592.80 | 2,592.80 |
| 2001 3801 201640 01 | EG6-7828876-2 | 1,456.50 | 1,456.50 |
| 2001 3801 201641 01 | EG6-7827660-1 | 1,384.00 | 1,384.00 |
| 2001 3801 201642 01 | EG6-7810884-6 | 1,743.60 | 1,743.60 |
| 2001 3801 201643 01 | EG6-7827823-5 | 984.30 | 984.30 |
| 2001 3801 201644 01 | EG6-7810951-3 | 2,559.10 | 2,559.10 |
| 2001 3801 201645 01 | EG67828076-9 | 2,489.10 | 2,489.10 |
| 2001 3801 201646 01 | EG6-7811206-1 | 1,703.70 | 1,703.70 |
| 2001 3801 201647 01 | EG6-7811257-4 | 1,601.20 | 1,601.20 |
| 2001 3801 201648 01 | EG6-7828351-6 | 2,539.90 | 2,539.90 |
| 2001 3801 201649 01 | EG6-7828387-0 | 1,492.90 | 1,492.90 |
| 2001 3801 201650 01 | EG6-7828387-0 | 1,492.90 | 1,492.90 |
| 2001 3801 201651 01 | EG6-7828426-6 | 2,561.20 | 2,561.20 |
| 2001 3801 201652 01 | EG6-7828704-6 | 2,638.10 | 2,638.10 |
| 2001 3801 201653 01 | EG6-7811658-3 | 1,702.70 | 1,702.70 |
| 2001 3801 201654 01 | EG6-7811704-5 | 2,627.00 | 107.80 |
| | | 45,736.70 | 43,217.50 |
| Previous Payments to Ogdensburg | | | 6,782.50 |
| | Total for bond period | | 50,000.00 |

Bond 029501474 is exhausted for bond period 5/11/00 - 10/17/00

Prepared by:
Darrell E. Woodard on 1/10/03

Complaint Exhibit 1

Bank of America

Cashier's Check

No. 0005964

VOID AFTER 90 DAYS

Date JANUARY 08, 2003

Banking Center FIFTEENTH & PENNSYLVANIA AVE

3018022 00008 0005964

Remitter (Purchased By) ANDREW STUART for BB Pallets, Inc Bond #02501474

Pay **NINETY THREE THOUSAND TWO HUNDRED SEVENTEEN DOLLARS AND 50 CENTS**

$ **93217.50**

To The Order Of **THE U.S. CUSTOMS SERVICE** ****

Payment made under protest with a reservation of all rights to judicial review.

Bank of America, N.A. San Antonio, Texas

87-14-3774B 10-2002

Authorized Signature Jessie L Johnson

⑈0005964⑈ ⑆114000019⑆ 001641001739⑈

THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK — THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK



Each component is completely finished and needs no further manufacturing before assembly into bed frames.



**Bedframe Lumber & Furniture Components**



**Industrial Lumber & Packaging**



**Suspended Packaging**



**Spools and Reels**

## *"The Lumber Innovator"*

About Us | Get a Quote | Order Form | Contact Info | FAQ | Feedback

[illegible]

© 2001 BBP Industries,, Inc.

Complaint Exhibit 2

THE LUMBER INNOVATOR

FAQ

" BEDFRAME LUMBER "
Furniture Components

**Welcome to BBP Industries.**

**BBP Industries** is a leading manufacturer of pre-cut and pre-radiused bedframe components. Our bedframe lumber is produced at our 8 facilities in Quebec, Canada, and shipped throughout Canada and the continental USA.

Our bedframe components are cut-to-length and rounded by the most advanced machinery on the market, thus guaranteeing consistency of size and quality. No variance means that the components fit together smoothly for ease of assembly, stability and strength.



**Bedframe Products**

- Pre-Radiused
- Pre-Cut
- Blocks

Back to top

Toll Free: 800-435-5563 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.

Complaint Exhibit 2

BBP

THE LUMBER INNOVATOR



# Pre-Radiused Bedding Lumber





Toll Free: 800-435-5561 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.

Complaint Exhibit 2

THE LUMBER INNOVATOR

# Pre-Cut Bedding Lumber



Bedframe Lumber
Pre-Radiused | Pre-Cut | Blocks

Furniture Components
MDF Colonial Moldings | Arm Chair Rest

Toll Free: 800-435-5561 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries, Inc.

Complaint Exhibit 2

THE LUMBER INNOVATOR



Pre-Radiused and Pre-Cut

**Blocks**



Bedframe Lumber

Pre-Radiused | Pre-Cut | Blocks

Toll Free: 800-435-5561 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.



Most of the subject loading blocks were like those pictured above.



Nailed loading blocks, which U.S. Customs agrees are not classifiable in Heading 4407.



Loading blocks being used to pack loads of pipe for transport.



The grooves accommodate the straps used to fasten the blocks together around the load.



Loading blocks used for larger diameter pipe



The blocks create spaces for forklifts and cranes to use.



Loading blocks used for flat metal products (e.g., roofing).



The tell-tale groove and short length make the loading blocks clearly recognizable as such at importation.

THE LUMBER INNOVATOR

## " INDUSTRIAL LUMBER "

**Welcome to BBP Industries.**

For over 25 years BBP Industries has been supplying various industries with lumber and custom wood products for their packaging and shipping requirements.

All products are manufactured at our 8 facilities in Quebec, Canada and shipped throughout Canada & the United States.

At any given time, we have an inventory of over 25 Million board feet of lumber on ground, enabling us to deliver in as fast as 10 days or sooner.

**Lumber Products**

- Grooved Lumber
- Cut-To-Length Lumber
- Raggle Sticks
- Notched Blocks
- Bundle Blocks
- Pallet Stock



Toll Free: 800-435-5561 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.

Complaint Exhibit 3

BBP

THE LUMBER INNOVATOR

## Grooved Lumber



Grooved lumber is cut to length and used as a runner beneath the bundle and as a frame around the product being shipped. The lumber is strategically placed between the product and the metal banding, thus creating a very solid package and ensuring that the band will not slip off during shipping.

This product is used by various industries in situations where pallets are either inadequate or to costly for the type of product being shipped.

Notched Blocks | Raggie Sticks | Bundle Blocks | Grooved Lumber
Cut-to-length Lumber | Pallet Stock

Toll Free: 800-435-5563 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.

Complaint Exhibit 3

THE LUMBER INNOVATOR

## Cut-to-length Lumber



Whatever you use lumber for something as simple as blocks and spacers or to manufacture your own skids, we will custom cut it for you.

Notched Blocks | Raggle Sticks | Bundle Blocks | Grooved Lumber
Cut-to-length Lumber | Pallet Stock

Toll Free: 800-435-5561 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.

Complaint Exhibit 3

THE LUMBER INNOVATOR

## Bundle Blocks



Bundle blocks: These are custom designed to be used as runners for packages which are handled via overhead lift. The runner is secured to the bundle via metal banding which is looped through the groove and around the bundle. The bundle is lifted via the two side flanges.

Notched Blocks | Raggle Sticks | Bundle Blocks | Grooved Lumber
Cut-to-length Lumber | Pallet Stock

Toll Free: 800-435-5561 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.

Complaint Exhibit 3

THE LUMBER INNOVATOR

Suspended Packaging

About Us
Get a Quote
Order Form
Contact Info
FAQ
Feedback
Home

## Notched Blocks



Used in various configurations as spacers and stabilizers between layers of profiled products such as roof and wall panels.

Notched Blocks | Raggie Sticks | Bundle Blocks | Grooved Lumber
Cut-to-length Lumber | Pallet Stock

Toll Free: 800-435-5561 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.

Complaint Exhibit 3

BBP

THE LUMBER INNOVATOR

" ABOUT US "



**BBP Industries**, is a full service lumber manufacturing co., committed to building long term business relationships. Our goal is to provide the solution to all our customer needs while offering competitive pricing and quality workmanship.

For over 25 years, **BBP Industries** has been supplying lumber to manufacturing plants in various industries with lumber customized to their needs. Our specialties include industrial grade lumber for packaging and shipping, precut and pre-radiused bed frame material, and lumber components for products such as doors and windows. We cut to length, double re-saw, notch, groove etc. all to your specification. Whatever your requirements may be, we guarantee dependable service and quality work

Toll Free: 800-435-5561 • Tel: 718-854-6848 • Fax: 718-854-6858

© 2001 BBP Industries,, Inc.

Complaint Exhibit 3

CHAMPION METAL
Of Washington, Inc.

Notched Blocks are used to pack these and similar panels

# EXPOSED FASTENER PANELS

## ULTRA-PANEL



The added rib and incredible lap makes Ultra-Panel easier to handle and stronger to walk on. Ultra Panel installs squarely, maintaining its anti-siphon groove, eliminating the need for sidelap tape and stitch screws. 36" coverage.

## WIDE-RIB PANEL



Much like the 2 ft. wide Hi-Rib Panel in shape, except it covers 3 ft., which makes it easier to handle and reduces labor time.

## HI-RIB PANEL



Tailored, modern look for buildings, sheds or patio covers. Deep-ribbed for strength. High 3/4" rib on 8" centers. 26" wide with 24" coverage.

## 4-V PANEL



Combines the strength of corrugated panels with the weather sealing capabiltiy of V-laps. Excellent on roofs with mild curves.
24" coverage.

## 2.5 CORRUGATED PANEL



Familiar all-purpose panel. 26" wide with 10 corrugations on 2.67" centers. 21" coverage on roof (lap 2 corrugations), 24" coverage on siding.



Complaint Exhibit 3

# CHAMPION METAL Of Washington, Inc.

## STEEL SNAP-LOC

### Experience the Beauty and Durability of SNAP-LOC Steel Roofing



**IDEAL FOR NEW OR EXISTING HOMES**

Deciding which material to use to roof or re-roof your home is a big decision. However, with the clear advantages of Champion's Snap-Loc Steel Roofing, that decision just got a lot easier. Snap-Loc is one of the most attractive and durable roofing materials available today. It's also non-combustible, meeting the strictest fire codes. You get a clean, attractive look, it's lightweight, yet strong and durable, and best of all... affordable.



**HOLDS UP TO THE HARSHEST WEATHER CONDITIONS**

Snap-Loc's innovative standing seam design is self-locking and water-tight. It has proven to be the most leak-proof design of any metal roofing product on the market. As a lifetime product, Snap-Loc's galvanized, pre-painted steel will not break, rot, shrink, warp, attract moss or burn. And only minimal maintenance is required.



**FLEXIBLE DESIGN AND EASY INSTALLATION**

Installation of the Snap-Loc roofing system is a "snap" with its unique flange designed into the panel. No special tools or clips are required. Its 12" net coverage width makes it a breeze to figure the number of panels needed and cuts down on the amount of waste from odd-sized panels. Panels are custom cut to your specifications from 2'-6" to 40' lengths manufactured from 26 gauge (G.S.G.) pre-painted steel and is covered by our outstanding 50 - Year Limited Lifetime Warranty.

SNAP-LOC's Silicon Modified Polyester Paint System



Complaint Exhibit 3

19-Nov-2002 FROM B B PALLETS INC 4504728972 P.002 F-235

INVOICE / FACTURE — AFFILIATED CUSTOMS BROKERS U.S.A., INC.

CHAMPLAIN, NY (518) 298-5636 (800) 872-6910
DERBY LINE, VT (802) 873-5822
ST-ALBANS, VT (802) 527-1034

Exp. Est. No. / N° ref. de l'exp.

Page 1 / 1

Name and address of exporter / Nom et adresse de l'exportateur:
B.B. PALLETS INC.
701 RUE DUBOIS
ST. EUSTACHE QUE
J7R 2T1

c/o JENSEN C.B.

Sold to (if different from Ship to) / Vendu à (si différent de vendu à)

Ship to / Expédier à:
DIETRICH INDUSTRIES INC.
40 A COTTERS LANE
EAST BRUNSWICK N.J. 08816
IRS# 25-1072343

29012657

Origin (country/province) / Origine (pays/province): QUE / CAN
Destination (country/state) / Destination (pays/état): N.J. / USA

Terms of Sale - Delivery - Payment / Conditions de vente - livraison - paiement:
F.O.B. Plant / F.A.B. Usine [X] Destination [ ] Or / Ou
Bill Customs Charges To: / Facture frais de douanes à: Shipper / Expéditeur [ ] Consignee / Consignataire [X]

Parties to this transaction are / Parties impliquées dans la transaction sont: Related / Impliquée [ ] Not Related / Non impliquée [ ]
Country of origin / Pays d'origine: CANADA [X] U.S. Returned Goods (See declaration below) / Marchandises U.S. retournées [ ] Other — Autre

Local Carrier / Voiturier local

AFFILIATED CUSTOMS BROKERS U.S.A. INC.
FOR U.S. CUSTOMS CLEARANCE

Exporting Carrier / Transporteur Exportateur: CS Broker# 102205
Port of Entry / Bureau d'entrée

Invoice Date / Date de la facture: JAN 14/97
Date of Sale / Date de la vente: JAN 9/97
Exchange rate / Taux de change
Currency of Sale / Devise de la vente: US FUNDS

If foreign goods in same condition as imported, give country of origin. / Si les marchandises étrangères dans l'état où importées, indiquer le pays d'origine.

Marks and Numbers / Marques et numéros
Number and Kind of Packages, Description of Shipment / Nombre et genre de colis, désignation des marchandises: 30 SKIDS
Gross Weight and Cubage / Poids brut et cubage: 44000 LB

| Country | Invoice Item Description / Désignation d'articles sur la facture | H.S. Tariff Classification Number | Invoice Unit Quantity / Unité de quantité | Invoice Unit Price / Prix unitaire de la facture | Invoice Total / Total de la facture |
|---|---|---|---|---|---|
| CANADA | 1" X 3" 22" GROOVE LOADING BLOCK | 4415.20.8000 | 2600 PC | .125 | 325.— |
| CANADA | 1" X 3" 37½" GROOVE LOADING BLOCK | 4415.20.8000 | 8450 PC | .265 | 2239.25 |
| CANADA | 3" X 3" 37½" GROOVE LOADING BLOCK | 4415.20.8000 | 4620 PC | .69 | 3187.80 |

1. NAME OR NUMBER AND DESCRIPTION OF IMPORTING CONVEYANCE | 2. NAME OF MASTER OR PERSON IN CHARGE | 4. FOREIGN PORT OF LADING

3. NAME AND ADDRESS OF OWNER | 5. U.S. PORT OF DESTINATION | 6. PORT OF ARRIVAL | 7. DATE OF ARRIVAL

Estimated transportation charges / Frais de transport estimés
To Point of exit / Jusqu'au point de sortie $
Or to destination / Ou jusqu'à destination $ 885.—

Export Permit No. / N° du permis d'exp.
If goods are not sold, state reason for export / Si les marchandises ne sont pas vendues, motif d'exportation

Mode of Transport from point of exit / Moyen de transport à partir du lieu de sortie:
[X] Road / Route [ ] Rail / Ch. de fer [ ] Water / Eau [ ] Air [ ] Other / Autre
Containerized / Conteneurisé: [ ] Yes / Oui [ ] No / Non

I hereby certify that the information given above and on the continuation sheet(s), if any, is true and complete in every respect.
Je certifie par les présentes que les renseignements donnés ci-dessus et sur la ou les feuilles supplémentaires, s'il y en a, sont exacts et complets sous tous les rapports.

Give firm name and address if different from exporter box above.
Donner les nom et adresse de la firme s'ils sont différents de ceux indiqués dans la case de l'exportateur ci-dessus.

Date: Jan 14/97 [signature] Status / Statut: [X] Owner [ ] Agent

| | | | |
|---|---|---|---|
| Packaging / Emballage | | Med. Transp. / Transport direct | |
| Ocean or Inter-national Freight / Fret maritime ou international | | Commission | |
| Domestic Freight Charges / Frais de transport intérieur | | Container / Conteneur | |
| | | Assists / Aides | |

Complaint Exhibit 4

18-Nov-2002 16:28 From-B B PALLETS INC 14504723942 T-358 P 003/014 F-283

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

# ENTRY SUMMARY

AFFILIATED CUSTOMS BROKER EGG
700 WALNUT STREET
CHAMPLAIN NY 12919

| | | |
|---|---|---|
| 1. Entry No. | 2. Entry Type Code: 01 ABI/S | 3. Entry Summary Date |
| 4. Entry Date: 1/24/97 | 6. Port Code: 0712 | |
| 5. Bond No.: 821 | 7. Bond Type Code: 8 | 8. Broker / Importer File No.: 10-025037 |

9. Ultimate Consignee Name and Address

DIETRICH INDUSTRIES
40 A COTTERS LANE
EAST BRUNSWICK NJ 00881 4

NJ
STATE

10. Consignee No.: 28-1072343

11. Importer of Record Name and Address

B B PALLETS INC
701 RUE DUBOIS
ST EUSTACHE PQ J7E3N 1

12. Importer No.: 720201-31271

| | |
|---|---|
| 13. Exporting Country: CA | 14. Export Date: 1/24/97 |
| 15. Country of Origin: CA | 16. Missing Documents |
| 17. I.T. No. | 18. I.T. Date |

| | | | |
|---|---|---|---|
| 19. B/L or AWB No. | 20. Mode of Transportation: 30 | 21. Manufacturer I.D.: XOBBPAL701STE | 22. Reference No. |
| 23. Importing Carrier: IRT STEVENSON | 24. Foreign Port of Lading | 25. Location of Goods/G.O. No. | |
| 26. U.S. Port of Unlading: 0712 | 27. Import Date: 1/24/97 | | |

| 28. Line No. | 29. Description of Merchandise — 30. A. T.S.U.S.A. No. / B. ADA/CVD Case No. | 31. A. Gross Weight / B. Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | 33. A. Entered Value / B. CHGS / C. Relationship | 34. A. T.S.U.S.A. Rate / B. ADA/CVD Rate / C. I.R.C. Rate / D. Visa No. | 35. Duty and I.R. Tax — Dollars | Cents |
|---|---|---|---|---|---|---|---|
| | 30 30 SKIDS GROOVE LOADING BLOCKS INV. NO. 01 | | | N | | | |
| 001 | OTHER PALLETS, OTHERLOAD BOARDS CA4415.20.8000 | 19,958 | 15670 NO | 4,869 C 200 | 1.6 % | 77 | |
| | INV VAL US $ / Less Freight / ENTVAL | | 5,752.05 / 883.00 / 4,869.00 | | | | |
| | TOTAL ENTERED VALUE: | | 4,869.00 | | | | |

36. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR [X] owner or purchaser or agent thereof.

I further declare that the merchandise was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR [X] was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports.

| U.S. CUSTOMS USE | | TOTALS |
|---|---|---|
| A. Liq. Code | B. Ascertained Duty | 37. Duty: 77 |
| | C. Ascertained Tax | 38. Tax |
| | D. Ascertained Other | 39. Other |
| | E. Ascertained Total | 40. Total: 77 |

41. Signature of Declarant, Title, and Date

Complaint Exhibit 4

11/05/02 14:06:29 ABI RESULTS LOG Page 1

Messages For User: neila / Date: 7NOV02 / Time: 14:02:52
ESQY Entry Summary Query 806 70233592 19-025037

Ref#: 19-025037 Entry#: 806 070233592
Port: 3712-CHAMPLAIN-ROUSES PDI
Cust: 00809-B B PALLETS INC IRS#: 929291-31290

Est Duty: 77.90 Est Tax: 0.00
Entry Type: 01-CONSUMPTION ENTRY
Entry Date: 14JAN97 Summ Filing Date: 24JAN97
Reject Date: NONE
Collection Status: Fully Paid
Release Status: Released
Bill Reason: No Bill
Paperless Status: Not Paperless
Drawback Status: No Drawback Claimed
Elec Inv Status: No Electronic Invoice Data
Entry Summ Status: Liquidated

Collection Date: 24JAN97
Est Duty Paid: 77.90 Est Tax Paid: 0.00
Liq Date: 2MAY97
Liq Duty: 77.90 Liq Tax: 0.00
Number of Withdrawals: 0
Customs Team: 137
Number of Line Items: 1

Cancelation Date: NONE
Ext/Sus Code: 00 Ext/Sus Date: NONE
Number of Extensions: 0
CF 4811 Ref#:
Payment Due Date: 24JAN97
Surety Code: 891
Bond: 029501474
ADD/CVD Duty: 0.00

Customs Docs Filing Location: 370125D0930036217

| Protest | One | Two |
|---|---|---|
| Number: | 000000000000 | 000000000000 |
| Type: | 0 | 0 |
| Status: | No Protest Claimed | No Protest Claimed |
| Decsn Date: | NONE | NONE |
| | NO SUMMONS | NO SUMMONS |

Collection Transaction#: 0027
Collection Processing Date: 24JAN97
Total Amt: 77.90

| Fee | Amount |
|---|---|
| 001 | 77.90 |
| | 0.00 |

Complaint Exhibit 4

MAR-05-97 FROM:

INVOICE
FACTURE

# AFFILIATED CUSTOMS BROKERS U S A, INC.

CHAMPLAIN, NY (518) 298-3636 (800) 372-6910
DERBY LINE, VT (802) 873-3822
ST-ALBANS, VT (802) 527-1036

Exp. Ref. No. / Nº ref. de l'exp.

Page 1 of 1

Name and address of exporter / Nom et adresse de l'exportateur:
B. B. Pallets Inc.
701 Rue Dubois
St. Eustache Que
920201

c/o Jenson C.B.

Ship to / Expédier à:
Dietrich Industries Inc.
40 A Cotters Lane
East Brunswick, N.J 08816

IRS# 25-1072349
29-0102848

Sold to (if different from Ship to) / Vendu à (si différent de vendu à)

Origin (country/province) / Origine (pays/province): Canada - Quebec
Destination (country/state) / Destination (pays, état): N.J. U.S.A

Terms of Sale - Delivery - Payment / Conditions de vente - livraison - paiement
F.O.B.: Plant ✓ Destination Or / Ou
F.A.S.: Usine
Bill Customs Charges To: / Facturer frais de douanes à: Shipper / Expéditeur; Consignee / Consignataire

Parties to this transaction are / Parties impliquées dans la transaction sont: Related / Impliquées; Not Related / Non impliquées
Country of origin / Pays d'origine: CANADA ✓; U.S. Returned Goods (see declaration below) / Marchandises U.S. retournées; Other — Autre

Local Carrier / Voiturier local: 102478
Exporting Carrier / Transporteur exportateur: C.S Brock # 1238
Port of Entry / Bureau d'entrée:

AFFILIATED CUSTOMS BROKERS U S A, INC.
FOR U.S. CUSTOMS CLEARANCE

Invoice Date / Date de la facture: March 7/97
Date of Sale / Date de la vente: Feb 14/97
Exchange rate / Taux de change:
Currency of Sale / Devises de la vente: US Funds

Marks and Numbers / Marques et numéros
Number and Kind of Packages, Description of Shipment / Nombre et genre de colis, désignation des marchandises
Gross Weight and Cubage / Poids brut et cubage: 44,000 Lbs

| Invoice Item Description / Désignation d'articles sur la facture | H.S. TARIFF CLASSIFICATION NUMBER | Invoice Unit Quantity / Unités de quantité inscrite sur la facture | Invoice Unit Price / Prix unitaire de la facture | Invoice Total / Total de la facture |
|---|---|---|---|---|
| X0 3" x 3 x 37 1/2" Grooved Loading Bl | 4415.20.8000 | 5544 Pc | 0.69 | 3825.36 |
| X0 3"x3" x 35" Grooved Loading Block | 4415.20.8000 | 308 Pc | 0.69 | 212.52 |
| X0 1" x 3" x 3 1/2" Grooved Loading Block | 4415.20.8000 | 4560 pc | 0.265 | 1208.40 |
| X0 1" x 3" x 35" Grooved Loading Block | 4415.20.8000 | 456 pc | 0.265 | 120.94 |

1. NAME OR NUMBER AND DESCRIPTION OF IMPORTING CONVEYANCE
2. NAME OF MASTER OR PERSON IN CHARGE
4. FOREIGN PORT OF LADING
3. NAME AND ADDRESS OF OWNER
5. U.S. PORT OF DESTINATION
6. PORT OF ARRIVAL
7. DATE OF ARRIVAL

Estimated freight charges / Frais de transport estimatifs
To Point of exit / Jusqu'au point de sortie $
Or to destination / Ou jusqu'à destination $ 833.22

Export Permit No. / Nº du permis d'exp.
If goods are not sold, state reason for export / Si les marchandises ne sont pas vendues, motif d'exportation

Mode of Transport from point of exit / Moyen de transport à partir du lieu de sortie
☑ Road / Route ☐ Rail / Ch. de fer ☐ Water / Eau ☐ Air ☐ Other / Autre

Containerized / Conteneurisée ☐ Yes / Oui ☐ No / Non

I hereby certify that the information given above and on the continuation sheet(s), if any, is true and complete in every respect.
Je certifie par les présentes que les renseignements donnés ci-dessus et sur la ou les feuilles supplémentaires, s'il en est, sont exacts et complets sous tous les rapports.

Give firm name and address if different from exporter box above.
Donner les nom et adresse de la firme s'ils sont différents de ceux indiqués dans la case de l'exportateur envoyé.

Date: Mar 7/97
Signé / Signed
☑ Owner / Propriétaire ☐ Agent

| | | | |
|---|---|---|---|
| Packaging / Emballage | | Misc. Trans. / Transport divers | |
| Ocean or International Freight / Transport maritime ou international | | Commission / Commission | |
| Domestic Freight Charges / Frais de transport intérieur | | Container / Conteneur | |
| | | Assist / Aides | |
| Insurance / Assurances | | Invoice Total / Total de la facture | 5367.12 |

Complaint Exhibit 4

13-NOV-2002 10:35 FROM-B B PALLETS INC 14504728942 T-358 P 005/014 F-283

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

# ENTRY SUMMARY

AFFILIATED CUSTOMS BROKER E66
109 WALNUT STREET
CHAMPLAIN NY 12919

| | |
|---|---|
| 1. Entry No. | 7024198-5 |
| 2. Entry Type Code | 01 ABI/S |
| 3. Entry Summary Date | OCT 9 1997 |
| 4. Entry Date | 3/10/97 |
| 5. Port Code | 0712 |
| 6. Bond No. | 891 |
| 7. Bond Type Code | 8 |
| 8. Broker / Importer File No. | 10-028295 PAGE |
| 10. Consignee No. | 23-1072393 |
| 12. Importer No. | 720201-31099 |

9. Ultimate Consignee Name and Address

DIETRICH INDUSTRIES
60 A COTTERS LANE

EAST BRUNSWICK NJ 00881 6

NJ
STATE

11. Importer of Record Name and Address

B B PALLETS INC

701 RUE DUBOIS
ST EUSTACHE PQ J7P3W 1

| | |
|---|---|
| 13. Exporting Country | CA |
| 14. Export Date | 3/09/97 |
| 15. Country of Origin | CA |
| 16. Missing Documents | |
| 17. IT No. | |
| 18. I.T. Date | |
| 19. B/L or AWB No. | |
| 20. Mode of Transportation | 30 |
| 21. Manufacturer I.D. | XHBBPAL701STE |
| 22. Reference No. | |
| 23. Importing Carrier | 2861-2399 QUE INC |
| 24. Foreign Port of Lading | |
| 25. Location of Goods/G.O. No. | |
| 26. U.S. Port of Unlading | 0712 |
| 27. Import Date | 3/09/97 |

| 28. Line No. | 29. Description of Merchandise / 30. A. T.S.U.S.A. No. B. ADA/CVD Case No. | 31. A. Gross Weight B. Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | 33. A. Entered Value B. CHGS C. Relationship | 34. A. T.S.U.S.A. Rate B. ADA/CVD Rate C. I.R.C. Rate D. Visa No. | 35. Duty and I.R. Tax Dollars |
|---|---|---|---|---|---|---|
| | | | | N | | |
| | 30 30 UNITS GROVED LOADING BLOCKS INV. NO. 01 | | | | | |
| 001 | OTHER PALLETS, OTHERLOAD BOARDS CA4415.20.0000 | 19,958 | 10868 NO | 4,534 C 40 | 1.6 % | 72. |
| | INV VAL US $ | | 5,367.12 | | | |
| | Less Freight | | 833.00 | | | |
| | ENTVAL | | 4,534.00 | | | |
| | TOTAL ENTERED VALUE | | | | | |

BROKER'S COPY

36. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the

[ ] importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR [X] owner or purchaser or agent thereof.

I further declare that the merchandise

[ ] was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR [X] was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports.

| U.S. CUSTOMS USE | | TOTALS | |
|---|---|---|---|
| A. Liq. Code | B. Ascertained Duty | 37. Duty | 72. |
| | C. Ascertained Tax | 38. Tax | |
| | D. Ascertained Other | 39. Other | |
| | E. Ascertained Total | 40. Total | 72. |

41. Signature of Declarant, Title, and Date

Complaint Exhibit 4

11/06/02 14:06:28 ABI RESULTS LOG Page 1

Messages For User: zella / Date: 7NOV02 / Time: 14:02:53
ESQY Entry Summary Query EG5 78241983 18-028245

---

Ref#: 18-028245 Entry#: EG6 078241983
Port: 0712-CHAMPLAIN-ROUSES POI
Cust: 33809-B B PALLETS INC IRS#: 920201-31290

Est Duty: 72.54 Est Tax: 0.00
Entry Type: 01-CONSUMPTION ENTRY
Entry Date: 3MAR97 Summ Filing Date: 13MAR97
Reject Date: NONE
Collection Status: Fully Paid
Release Status: Released
Bill Reason: No Bill
Paperless Status: Not Paperless
Drawback Status: No Drawback Claimed
Elec Inv Status: No Electronic Invoice Data
Entry Summ Status: Liquidated

Collection Date: 18MAR97
Est Duty Paid: 72.54 Est Tax Paid: 0.00
Liq Date: 20JUN97
Liq Duty: 72.54 Liq Tax: 0.00
Number of Withdrawals: 0
Customs Team: 137
Number of Line Items: 1

Cancelation Date: NONE
Ext/Sus Code: 00 Ext/Sus Date: NONE
Number of Extensions: 0
CF 4811 Ref#:
Payment Due Date: 18MAR97
Surety Code: 891
Bond: 025581474
ADD/CVD Duty: 0.00

Customs Docs Filing Location: 970323D3JH006333

| Protest | One | Two |
|---|---|---|
| Number: | 000000000000 | 000000000000 |
| Type: | 0 | 0 |
| Status: | No Protest Claimed | No Protest Claimed |
| Recon Date: | NONE | NONE |
| | NO SUMMONS | NO SUMMONS |

Collection Transaction#: 0025
Collection Processing Date: 18MAR97
Total Amt: 72.54

| Fee | Amount |
|---|---|
| 981 | 72.54 |
| | 0.00 |

Complaint Exhibit 4

INVOICE / FACTURE

# AFFILIATED CUSTOMS BROKERS U S A, INC.

CHAMPLAIN, NY (518) 298-3635 / (800) 872-8910
DERBY LINE, VT (802) 873-3822
ST-ALBANS, VT (802) 527-1034

Exp. Ref. No. / N° réf. de l'exp.

Page 1 of / de 2

Name and address of exporter / Nom et adresse de l'exportateur:
B. B. PALLETS INC.
701 RUE DUBOIS
ST. EUSTACHE QUE
920201

c/o JENSON C.B.

Sold to (if different from Ship to) / Vendu à (si différent de vendu à)

Ship to / Expédié à:
PARADISE MATTRESS
1209 DEKALB AVE
B'KLYN N.Y. 11221
IRS# 11-2154325

BARRY

Origin (country/province) / Origine (pays/province): QUE / CAN

Destination (country/state) / Destination (pays, état): B'KLYN / USA

Terms of Sale - Delivery - Payment / Conditions de vente - livraison - paiement
F.O.B. Plant / F.A.B. Usine ☑ Destination ☐ Or / Ou

Bill Customs Charges To / Facture frais de douanes à: Shipper / Expéditeur ☐ Consignee / Consignataire ☑

Parties to this transaction are / Parties impliquées dans la transaction sont: Related / Impliqué ☐ Not Related / Non impliqué ☐

Foreign goods in same condition as imported, give country of origin. / S'il s'agit de marchandises étrangères, dans l'état où elles ont été importées, indiquer le pays d'origine.

Country of origin / Pays d'origine: CANADA ☑ U.S. Returned Goods (See declaration below) / Marchandises U.S. retournées ☐ Other — Autre ☐

Local Carrier / Voiturier local:

Exporting Carrier / Transporteur Exportateur: TRB95 #102533

Port of Entry / Bureau d'entrée:

AFFILIATED CUSTOMS BROKERS U S A, INC.
FOR U.S. CUSTOMS CLEARANCE

Invoice Date / Date de la facture: MAR 17/97

Date of Sale / Date de la vente: FEB 27/97

Exchange rate / Taux de change:

Currency of Sale / Devises de la vente: US FUNDS

Marks and Numbers / Marques et numéros

Number and Kind of Packages, Description of Shipment / Nombre et genre de colis, désignation des marchandises: 25 SKIDS

Gross Weight and Dunnage / Poids brut et dunnage: 44000 LB

| | Invoice Item Description / Désignation d'articles sur la facture | H.S. TARIFF CLASSIFICATION NUMBER | Invoice Unit Quantity / Unité de quantité inscrite sur la facture | Invoice Unit Price / Prix unitaire de la facture | Invoice Total / Total de la facture |
|---|---|---|---|---|---|
| CANADA-XQ | 1"x6" 72½" POPLAR BED FRAME | 4421.90.9840 | 1000 PC | 1.057 | 1057.– |
| " | 1x6" 70½ POPLAR BED FRAME | 4421.90.9840 | 1135 PC | 1.028 | 1166.78 |
| " | 1x6" 56" POPLAR BED FRAME | 4421.90.9840 | 405 PC | .817 | 330.88 |
| " | 1"x6" 48" POPLAR BED FRAME | 4421.90.9840 | 270 PC | .700 | 189.– |
| " | 1"x6" 35" POPLAR BED FRAME | 4421.90.9840 | 503 PC | .481 | 241.94 |
| " | 1"x6" 52½" POPLAR BED FRAME | 4421.90.9840 | 477 PC | .766 | 365.38 |
| " | 1"x3 59½" OUT OF BED FRAME | 4421.90.9840 | 2645 PC | .340 | 899.30 |
| " | 1"x3" 52½ OUT OF BED FRAME | 4421.90.9840 | 3240 PC | .257 | 832.68 |
| " | 1"x3" 37½ OUT OF BED FRAME | 4421.90.9840 | 4320 PC | .184 | 794.88 |

1. NAME OR NUMBER AND DESCRIPTION OF IMPORTING CONVEYANCE
2. NAME OF MASTER OR PERSON IN CHARGE
4. FOREIGN PORT OF LADING
3. NAME AND ADDRESS OF OWNER
5. U.S. PORT OF DESTINATION
6. PORT OF ARRIVAL
7. DATE OF ARRIVAL

Estimated freight charges / Frais de transport estimatifs
To Point of exit / Jusqu'au point de sortie $ ______
Or to destination / Ou jusqu'à destination $ 1050.00

Export Permit No. / N° du permis d'exp.

If goods are not sold, state reason for export / Si les marchandises ne sont pas vendues, motiver l'exportation

Mode of Transport from point of exit / Moyen de transport à partir du lieu de sortie: Road / Route ☑ Rail / Ch. de fer ☐ Water / Eau ☐ Air ☐ Other / Autre ☐

Containerized / Conteneurisées: Yes / Oui ☐ No / Non ☐

I hereby certify that the information given above and on the continuation sheet(s), if any, is true and complete in every respect. / Je certifie par les présentes que les renseignements donnés ci-dessus et sur la ou les feuilles supplémentaires, s'il en est, sont exacts et complets sous tous les rapports.

Give firm name and address if different from exporter box above. / Donner les nom et adresse de la firme s'ils sont différents de ceux indiqués dans la case de l'exportateur ci-dessus.

Date: MAR 14/97

Status / Statut: Owner / Propriétaire ☑ Agent ☐

Signature: [signature]

Packaging / Emballage
Ocean or International Freight / Transport maritime ou international
Domestic Freight Charges / Frais de transport intérieur
Insurance / Assurances
Misc. Transp. / Transport divers
Commission / Commissions
Container / Conteneur
Invoice Total / Total de la facture

Complaint Exhibit 4

13-Nov-2002 FROM-B B PALLETS INC 14504728842 T-358 P.008/014 F-293

# INVOICE / FACTURE — AFFILIATED CUSTOMS BROKERS U S A, INC.

CHAMPLAIN, NY (518) 298-3838 / (800) 572-6910
DERBY LINE, VT (802) 873-3622
ST-ALBANS, VT (802) 527-1034

Exp. Ref. No. / No réf. de l'exp.

Page 2 of 2

Name and address of exporter / Nom et adresse de l'exportateur:
B.B. Pallets Inc
701 Rue Dubois
St. Eustache Que
920201

c/o Jenson C.B.

Ship to / Expédié à:
Paradise Mattress
1209 Dekalb Ave
Bklyn N.Y. 11221
IRS# 11.2154325

Sold to (if different from Ship to) / Vendu à (si différent de vendu à)

Origin (country/province) / Origine (pays/province): Que / Canada
Destination (country/state) / Destination (pays, état): Bklyn / USA

Terms of Sale - Delivery - Payment / Conditions de vente, livraison, paiement
F.O.B. / F.A.B.: Usine; Destination; Or / Ou
Bill Customs Charges To / Facture frais de douane à: Shipper / Expéditeur; Consignee / Consignataire

Parties to this transaction are / Parties impliquée dans la transaction sont: Related / Impliqué; Not Related / Non impliqué
Country of origin / Pays d'origine: CANADA; U.S. Returned Goods (See Legislation below) / Marchandises U.S. retournées; Other / Autre

Local Carrier / Voiturier local

AFFILIATED CUSTOMS BROKERS U S A, INC. — FOR U.S. CUSTOMS CLEARANCE

Exporting Carrier / Transporteur Exportateur: TRB 95 / 102533
Port of Entry / Bureau d'entrée

Invoice Date / Date de la facture: Mar 17/97
Date of Sale / Date de la vente: Feb 27/97
Exchange rate / Taux de change
Currency of Sale / Devise de la vente: U.S. Funds

If foreign goods (a) were conditioned, imported, they country of origin. S'il s'agit de marchandises étrangères, les pays d'origine ont été indiqués.

Marks and Numbers / Marques et numéros
Number and Kind of Packages, Description of Shipment / Nombre et genre de colis, désignation des marchandises
Gross Weight and Cubage / Poids brut et cubage

| Invoice Item Description / Désignation d'articles sur la facture | H. S. Tariff Classification Number | Invoice Unit Quantity / Unité de quantité inscrite sur la facture | Invoice Unit Price / Prix unitaire de la facture | Invoice Total / Total de la facture |
|---|---|---|---|---|
| NADA-XP 1"x3" 46¾" out of Bed Frame | 4421.90.9840 | 1080 Pc | .226 | 244.08 |
| " 1"x3 33" out of Bed Frame | 4421.90.9840 | 4320 Pc | .162 | 699.84 |

1. NAME OR NUMBER AND DESCRIPTION OF IMPORTING CONVEYANCE | 2. NAME OF MASTER OR PERSON IN CHARGE | 4. FOREIGN PORT OF LADING

3. NAME AND ADDRESS OF OWNER | 5. U.S. PORT OF DESTINATION | 6. PORT OF ARRIVAL | 7. DATE OF ARRIVAL

Estimated freight charges / Frais de transport estimatifs
To Point of exit / Jusqu'au point de sortie $ ____ Or to destination / Ou jusqu'à destination $ ____
Export Permit No. / N° du permis d'exp.
If goods are not sold, state reason for export / Si les marchandises ne sont pas vendues, motiver l'exportation

Mode of Transport from point of exit / Moyen de transport à partir du lieu de sortie: [X] Road / Route; [ ] Rail / Ch de fer; [ ] Water / Eau; [ ] Air; [ ] Other / Autre
Containerized / Conteneurisée: [ ] Yes / Oui; [ ] No / Non

I hereby certify that the information given above and on the continuation sheet(s), if any, is true and complete in every respect.
Je certifie par les présentes que les renseignements donnés ci-dessus et sur la ou les feuilles supplémentaires, s'il en est, sont exacts et complets sous tous les rapports.

Give firm name and address if different from exporter box above.
Donner les nom et adresse de la firme s'ils sont différents de ceux indiqués dans la case de l'exportateur ci-dessus.

Date: Mar 14/97
Status / Statut: [ ] Owner / Propriétaire; [ ] Agent
Signature: [signature]

Packaging / Emballage
Ocean or International Freight / Transport maritime ou international
Domestic Freight Charges / Frais de transport intérieur
Insurance / Assurances
Misc. Transp. / Transport divers
Commission / Commissions
Container / Conteneur
Assists / Aides
Invoice Total / Total de la facture: 6821.77

Complaint Exhibit 4

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

# ENTRY SUMMARY

CERTIFIED CUSTOMS BROKER EGG
100 WALNUT STREET
CHAMPLAIN NY 12919

| | |
|---|---|
| 1. Entry No. | 7024371-6 |
| 2. Entry Type Code | 01 ABI/S |
| 3. Entry Summary Date | |
| 4. Entry Date | 3/27/97 |
| 5. Port Code | 0712 |
| 6. Bond No. | 991 |
| 7. Bond Type Code | 8 |
| 8. Broker / Importer File No. | 10-029111 PAGE |

9. Ultimate Consignee Name and Address

PARADISE MATTRESS CO
1209 DEKALB AVENUE
BROOKLYN NY 11221

NY
STATE

10. Consignee No.
11-2154325

11. Importer of Record Name and Address

B F PALLETS INC
701 RUE DUBOIS
ST EUSTACHE PQ J7P3W1 1

12. Importer No.

| | |
|---|---|
| 13. Exporting Country | CA |
| 14. Export Date | 3/18/97 |
| 15. Country of Origin | XQ |
| 16. Missing Documents | |
| 17. I.T. No. | |
| 18. I.T. Date | |
| 19. B/L or AWB No. | |
| 20. Mode of Transportation | 30 |
| 21. Manufacturer I.D. | XOBBFAL701STE |
| 22. Reference No. | |
| 23. Importing Carrier | HAWK |
| 24. Foreign Port of Lading | |
| 25. Location of Goods/G.O. No. | |
| 26. U.S. Port of Unlading | 0712 |
| 27. Import Date | 3/18/97 |

| 28. Line No. | 29. Description of Merchandise — 30. (A) T.S.U.S.A. No. (B) ADA/CVD Case No. | 31. (A) Gross Weight (B) Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | 33. (A) Entered Value (B) CHGS (C) Relationship | 34. (A) T.S.U.S.A. Rate (B) ADA/CVD Rate (C) I.R.C. Rate (D) Visa No. | 35. Duty and I.R. Tax Dollars | Cents |
|---|---|---|---|---|---|---|---|
| | 25 25 SKIDS BED FRAMES | | | | | | |
| | INV. NO. 01 | | | | | | |
| 001 | OTHER ARTICLES OF WOOD NSPF | | | | | | |
| | CA4421.90.9840 | 17,958 | X | 5,772 C 100 | .5 % | 28 | |
| | INV VAL US $ | | 6,821.72 | | | | |
| | Less Freight | | 1,050.00 | | | | |
| | ENTVAL | | 5,772.00 | | | | |
| | TOTAL ENTERED VALUE: | | 5,772.00 | | | | |

36. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR [X] owner or purchaser or agent thereof.

I further declare that the merchandise was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR [X] was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports.

| U.S. CUSTOMS USE | | TOTALS | |
|---|---|---|---|
| A. Liq. Code | B. Ascertained Duty | 37. Duty | 28.? |
| | C. Ascertained Tax | 38. Tax | |
| | D. Ascertained Other | 39. Other | |
| | E. Ascertained Total | 40. Total | 28.? |

41. Signature of Declarant, Title, and Date

Complaint Exhibit 4

11/06/02 14:49:47 ABI RESULTS LOG Page 1

Messages For User: nella / Date: 8NOV02 / Time: 14:06:37
ESQY Entry Summary Query BG6 70243716 10-029111

---

Ref#: 10-029111 Entry#: BG6 070243716
Port: 0712-CHAMPLAIN-ROUSES PO1
Cust: 00809-B B PALLETS INC IRS#: 920201-31296

| | |
|---|---|
| Est Duty: 28.86 | Est Tax: 0.00 |
| Entry Type: | 01-CONSUMPTION ENTRY |
| Entry Date: 18MAR97 | Summ Filing Date: 27MAR97 |
| Reject Date: NONE | |
| Collection Status: | Fully Paid |
| Release Status: | Released |
| Bill Reason: | No Bill |
| Paperless Status: | Not Paperless |
| Drawback Status: | No Drawback Claimed |
| Elec Inv Status: | No Electronic Invoice Data |
| Entry Summ Status: | Liquidated |

| | |
|---|---|
| Collection Date: 27MAR97 | |
| Est Duty Paid: 28.86 | Est Tax Paid: 0.00 |
| Liq Date: 27JUN97 | |
| Liq Duty: 28.86 | Liq Tax: 0.00 |
| Number of Withdrawals: 0 | |
| Customs Team: 137 | |
| Number of Line Items: 1 | |

| | |
|---|---|
| Cancelation Date: NONE | |
| Ext/Sus Code: 00 | Ext/Sus Date: NONE |
| Number of Extensions: 0 | |
| CF 4811 Ref#: | |
| Payment Due Date: 27MAR97 | |
| Surety Code: 891 | |
| Bond: 829581474 | |
| ADD/CVD Duty: 0.00 | |

Customs Docs Filing Location: 970328D8HR600017

| Protest | One | Two |
|---|---|---|
| Number: | 000000000000 | 000000000000 |
| Type: | 0 | 0 |
| Status: | No Protest Claimed | No Protest Claimed |
| Decsn Date: | NONE | NONE |
| | NO SUMMONS | NO SUMMONS |

Collection Transaction#: 0033
Collection Processing Date: 27MAR97
Total Amt: 28.86

| Fee | Amount |
|---|---|
| 301 | 28.86 |
| | 0.00 |

Complaint Exhibit 4

**INVOICE**
**FACTURE**

# AFFILIATED CUSTOMS BROKERS U S A, INC.

CHAMPLAIN, NY (518) 298-3036 (800) 872-6910
DERBY LINE, VT (802) 873-3622
ST-ALBANS, VT (802) 527-1034

Exp. Ref. No. / N° réf. de l'exp.

Page 1 of / de 1

Name and address of exporter / Nom et adresse de l'exportateur:
B. B. PALLETS INC.
701 RUE DUBOIS
ST. EUSTACHE QUE
920201

c/o JENSON C.B.

Ship to / Expédier à:
PARADISE MATTRESS CO.
1209 DEKALB AVE
BROOKLYN N.Y. 11221
IRS# 11-2154325
BARRY

Sold to (if different from Ship to) / Vendu à (si différent de vendu à)

Origin (country/province) / Origine (pays/province): QUE / CAN.

Destination (country/state) / Destination (pays, état): B'KLYN / USA

Terms of Sale - Delivery - Payment / Conditions de vente - livraison - paiement
F.O.B.: Plant / F.A.B.: Usine ☒ Destination ☐ Or / Ou
Bill Customs Charges To: / Facturé frais de douanes à: Shipper / Expéditeur ☐ Consignee / Consignataire ☒

Parties to this transaction are / Parties impliqué dans la transaction sont: Related / Impliqué ☐ Not Related / Non impliqué ☐

Country of origin / Pays d'origine: CANADA ☐ U.S. Returned Goods (See declaration below) / Marchandises U.S. retournées ☐ Other — Autre

If foreign goods in same condition as imported, give country of origin. / S'il s'agit de marchandises étrangères dans l'état où elles ont été importées indiquer le pays d'origine.

Local Carrier / Voiturier local:

Exporting Carrier / Transporteur Exportateur: CONS BM #102235

Port of Entry / Bureau d'entrée:

AFFILIATED CUSTOMS BROKERS U S A, INC.
FOR U.S. CUSTOMS CLEARANCE

Invoice Date / Date de la facture: JAN 27/97

Date of Sale / Date de la vente: JAN 14/97

Exchange rate / Taux de change:

Currency of Sale / Devise de la vente: US FUNDS

Marks and Numbers / Marques et numéros:

Number and Kind of Packages, Description of Shipment / Nombre et genre de colis, désignation des marchandises: x 31

Gross Weight and Cubage / Poids brut et cubage: 44000 LB

| | Invoice Item Description / Désignation d'articles sur la facture | H.S. TARIFF CLASSIFICATION NUMBER | Invoice Unit Quantity / Unité de quantité inscrite sur la facture | Invoice Unit Price / Prix unitaire de la facture | Invoice Total / Total de la facture |
|---|---|---|---|---|---|
| CANADA | 1"X3" 37½" BED FRAME | 4421.90.9840 | 6480 | .184 | 1,192.[illegible] |
| CANADA | 1"X3" 52½" BED FRAME | 4421.90.9840 | 4320 | .257 | 1,110.[illegible] |
| CANADA | 1"X3" 74" BED FRAME | 4421.90.9840 | 2160 | .362 | 781.9 |
| CANADA | 1"X3" 33" BED FRAME | 4421.90.9840 | 4320 | .162 | 699.8[illegible] |
| CANADA | 1"X3" 59½" BED FRAME | 4421.90.9840 | 3240 | .34 | 1,101.6[illegible] |
| CANADA | 1"X3" 79" BED FRAME | 4421.90.9840 | 1080 | .387 | 417.9 |
| CANADA | 4"X4" 24" BED FRAME | 4421.90.9840 | 416 | .611 | 254.[illegible] |

1. NAME OR NUMBER AND DESCRIPTION OF IMPORTING CONVEYANCE
2. NAME OF MASTER OR PERSON IN CHARGE
4. FOREIGN PORT OF LADING
3. NAME AND ADDRESS OF OWNER
5. U.S. PORT OF DESTINATION
6. PORT OF ARRIVAL
7. DATE OF ARRIVAL

Estimated freight charges / Frais de transport estimatifs
To Port of exit / Jusqu'au point de sortie $ ______
Or to destination / Ou jusqu'à destination $ 950.—

Export Permit No. / N° du permis d'exp.

If goods are not sold, state reason for export / Si les marchandises ne sont pas vendues, motiver l'exportation

Mode of Transport from point of exit / Moyen de transport à partir du lieu de sortie:
☒ Road / Route ☐ Rail / Ch. de fer ☐ Water / Eau ☐ Air ☐ Other / Autre

Containerization / Conteneurisation: ☐ Yes / Oui ☐ No / Non

I hereby certify that the information given above and on the continuation sheet(s), if any, is true and complete in every respect.
Je certifie par les présentes que les renseignements donnés ci-dessus et sur la ou les feuilles supplémentaires, s'il en est, sont exacts et complets sous tous les rapports.

Give firm name and address if different from exporter one above.
Donner les nom et adresse de la firme s'ils sont différents de ceux indiqués dans la case de l'exportateur ci-dessus.

Date: JAN 27/97

[signature]

Status / Statut: ☒ Owner / Propriétaire ☐ Agent

| | |
|---|---|
| Packaging / Emballage | |
| Ocean or International Freight / Transport maritime ou international | |
| Domestic Freight Charges / Frais de transport intérieur | |
| Insurance / Assurances | |
| Misc. Transp. / Transport divers | |
| Commission / Commissions | |
| Containers / Conteneur | |
| Rebate / Rabais | |
| Invoice Total / Total de la facture | 5,55[illegible] |

Complaint Exhibit 4

13-Nov-2002 8:32 From-E B PALLETS INC 14504723942 T-358 P 013/014 F-293

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

# ENTRY SUMMARY

AFFILIATED CUSTOMS BROKER 806
100 WALNUT STREET
CHAMPLAIN NY 12919

| | | |
|---|---|---|
| 1. Entry No. 7023560-8 | 2. Entry Type Code 01 AB1/3 | 3. Entry Summary Date |
| 4. Entry Date 2/05/97 | 5. Port Code 0712 | |
| 6. Bond No. 891 | 7. Bond Type Code 3 | 8. Broker / Importer File No. 10-025563 F405 |

9. Ultimate Consignee Name and Address

PARADISE MATTRESS CO
1209 DEKALB AVENUE
BROOKLYN NY 11221

NY
STATE

10. Consignee No. 11-2184325

11. Importer of Record Name and Address

E B PALLETS INC
701 RUE DUBOIS
ST EUSTACHE PQ J7P3W 1

12. Importer No. 720201-31293

| | |
|---|---|
| 13. Exporting Country CA | 14. Export Date 1/22/97 |
| 15. Country of Origin XB | 16. Missing Documents |
| 17. I.T. No. | 18. I.T. Date |

| | | | |
|---|---|---|---|
| 19. B/L or AWB No. | 20. Mode of Transportation 30 | 21. Manufacturer I.D. XOEBPAL701STE | 22. Reference No. |
| 23. Importing Carrier J DUBE | 24. Foreign Port of Lading | 25. Location of Goods/G.O. No. | |
| 26. U.S. Port of Unlading 0712 | 27. Import Date 1/27/97 | | |

| 28. Line No. | 29. Description of Merchandise — 30. A. T.S.U.S.A. No. B. ADA CVD Case No. | 31. A. Gross Weight B. Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | 33. A. Entered Value B. CHGS C. Relationship | 34. A. T.S.U.S.A. Rate B. ADA/CVD Rate C. I.R.C. Rate D. Visa No. | 35. Duty and I.R. Tax Dollars |
|---|---|---|---|---|---|---|
| | 21 21 BED FRAMES INV. NO. 01 | | | N | | |
| 001 | OTHER ARTICLES OF WOOD HSPF CA 4421.90.9840 | 19,958 | X | 4,408 C 100 | .5 % | 22. |
| | INV VAL US $ | | 5,358.06 | | | |
| | Less Freight | | 950.06 | | | |
| | ENTVAL | | 4,408.00 | | | |
| | TOTAL ENTERED VALUE | | | | | |

BROKER'S COPY

36. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR [X] owner or purchaser or agent thereof.

I further declare that the merchandise was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoices are true. OR [X] was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoices as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other Agency requirements, and to collect accurate statistical information on imports.

| U.S. CUSTOMS USE | | TOTALS |
|---|---|---|
| A. Liq. Code | B. Ascertained Duty | 37. Duty |
| | C. Ascertained Tax | 38. Tax |
| | D. Ascertained Other | 39. Other |
| | E. Ascertained Total | 40. Total |

41. Signature of Declarant, Title, and Date

Complaint Exhibit 4

14:49:58 ABI RESULTS LOG Page 1

Messages For User: neila / Date: 8NOV02 / Time: 14:36:15
ESQR Entry Summary Query EG6 70235688 12-025863

'0-025863 Entry#: EG6 070235688
Port: 0712-CHAMPLAIN-ROUSES PT
Cust: 32829-B B PALLETS INC IRS#: 920201-31290

Est Duty: 23,04 Est Tax: 0.00
Entry Type: 01-CONSUMPTION ENTRY
Entry Date: 27JAN97 Summ Filing Date: 5FEB97
Reject Date: NONE
Collection Status: Fully Paid
Release Status: Released
Bill Reason: No Bill
Paperless Status: Not Paperless
Drawback Status: No Drawback Claimed
Elec Inv Status: No Electronic Invoice Data
Entry Summ Status: Liquidated

Collection Date: 5FEB97
Est Duty Paid: 23.04 Est Tax Paid: 0.00
Liq Date: 9MAY97
Liq Duty: 23.04 Liq Tax: 0.00
Number of Withdrawals: 0
Customs Team: 137
Number of Line Items: 1

Cancellation Date: NONE
Ext/Sus Code: 00 Ext/Sus Date: NONE
Number of Extensions: 0
Ref#:
Payment Due Date: 5FEB97
Surety Code: 891
Bond: 029501476
AD/CVD Duty: 0.00

Customs Docs Filing Location: 970206D0RR60E011

| Protest | One | Two |
|---|---|---|
| Number: | 000000000000 | 000000000000 |
| Type: | 0 | 3 |
| Status: | No Protest Claimed | No Protest Claimed |
| Decision Date: | NONE | NONE |
| | NO SUMMONS | NO SUMMONS |

Collection Transaction#: 0355
Collection Processing Date: 5FEB97
Total Amt: 23.04

| Fee | Amount |
|---|---|
| 001 | 23.04 |
| | 0.00 |

Complaint Exhibit 4

## GENERAL RULES OF INTERPRETATION

Classification of goods in the tariff schedule shall be governed by the following principles:

1. The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions:

2. (a) Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled.

   (b) Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances. Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance. The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

3. When, by application of rule 2(b) or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:

   (a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

   (b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

   (c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

4. Goods which cannot be classified in accordance with the above rules shall be classified under the heading appropriate to the goods to which they are most akin.

5. In addition to the foregoing provisions, the following rules shall apply in respect of the goods referred to therein:

   (a) Camera cases, musical instrument cases, gun cases, drawing instrument cases, necklace cases and similar containers, specially shaped or fitted to contain a specific article or set of articles, suitable for long-term use and entered with the articles for which they are intended, shall be classified with such articles when of a kind normally sold therewith. This rule does not, however, apply to containers which give the whole its essential character;

   (b) Subject to the provisions of rule 5(a) above, packing materials and packing containers entered with the goods therein shall be classified with the goods if they are of a kind normally used for packing such goods. However, this provision is not binding when such packing materials or packing containers are clearly suitable for repetitive use.

6. For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

## ADDITIONAL U.S. RULES OF INTERPRETATION

1. In the absence of special language or context which otherwise requires--

   (a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use;

   (b) a tariff classification controlled by the actual use to which the imported goods are put in the United States is satisfied only if such use is intended at the time of importation, the goods are so used and proof thereof is furnished within 3 years after the date the goods are entered;

   (c) a provision for parts of an article covers products solely or principally used as a part of such articles but a provision for "parts" or "parts and accessories" shall not prevail over a specific provision for such part or accessory; and

   (d) the principles of section XI regarding mixtures of two or more textile materials shall apply to the classification of goods in any provision in which a textile material is named.

## SECTION IX

## WOOD AND ARTICLES OF WOOD; WOOD CHARCOAL; CORK AND ARTICLES OF CORK; MANUFACTURES OF STRAW, OF ESPARTO OR OF OTHER PLAITING MATERIALS; BASKETWARE AND WICKERWORK

CHAPTER 44

WOOD AND ARTICLES OF WOOD; WOOD CHARCOAL



Notes

1. This chapter does not cover:

    (a) Wood, in chips, in shavings, crushed, ground or powdered, of a kind used primarily in perfumery, in pharmacy, or for insecticidal, fungicidal or similar purposes (heading 1211);

    (b) Bamboo or other materials of a woody nature of a kind used primarily for plaiting, in the rough, whether or not split, sawn lengthwise or cut to length (heading 1401);

    (c) Wood, in chips, in shavings, ground or powdered, of a kind used primarily in dyeing or in tanning (heading 1404);

    (d) Activated charcoal (heading 3802);

    (e) Articles of heading 4202;

    (f) Goods of chapter 46;

    (g) Footwear or parts thereof of chapter 64;

    (h) Goods of chapter 66 (for example, umbrellas and walking-sticks and parts thereof);

    (ij) Goods of heading 6808;

    (k) Imitation jewelry of heading 7117;

    (l) Goods of section XVI or section XVII (for example, machine parts, cases, covers, cabinets for machines and apparatus and wheelwrights' wares);

    (m) Goods of section XVIII (for example, clock cases and musical instruments and parts thereof);

    (n) Parts of firearms (heading 9305);

    (o) Articles of chapter 94 (for example, furniture, lamps and lighting fittings, prefabricated buildings);

    (p) Articles of chapter 95 (for example, toys, games, sports equipment);

    (q) Articles of chapter 96 (for example, smoking pipes and parts thereof, buttons, pencils) excluding bodies and handles, of wood, for articles of heading 9603; or

    (r) Articles of chapter 97 (for example, works of art).

2. In this chapter, the expression "densified wood" means wood which has been subjected to chemical or physical treatment (being, in the case of layers bonded together, treatment in excess of that needed to insure a good bond), and which has thereby acquired increased density or hardness together with improved mechanical strength or resistance to chemical or electrical agencies.

3. Headings 4414 to 4421 apply to articles of the respective descriptions of particle board or similar board, fiberboard, laminated wood or densified wood as they apply to such articles of wood.

4. Products of heading 4410, 4411 or 4412 may be worked to form the shapes provided for in respect of the articles of heading 4409, curved, corrugated, perforated, cut or formed to shapes other than square or rectangular or submitted to any other operation provided it does not give them the character of articles of other headings.

5. Heading 4417 does not apply to tools in which the blade, working edge, working surface or other working part is formed by any of the materials specified in note 1 to chapter 82.

6. Subject to note 1 above and except where the context otherwise requires, any reference to "wood" in a heading of this chapter applies also to bamboo and other materials of a woody nature.

Subheading Note

1 For the purposes of subheadings 4403.41 to 4403.49, 4407.24 to 4407.29, 4408.31 to 4408.39 and 4412.13 to 4412.99, the expression "tropical wood" means one of the following types of wood :
Abura, Acajou d'Afrique, Afrormosia, Ako, Alan, Andiroba, Aningré, Avodiré, Azobé, Balau, Balsa, Bossé clair, Bossé foncé, Cativo, Cedro, Dabema, Dark Red Meranti, Dibétou, Doussié, Framiré, Freijo, Fromager, Fuma, Geronggang, Ilomba, Imbuia, Ipé, Iroko, Jaboty, Jelutong, Jequitiba, Jongkong, Kapur, Kempas, Keruing, Kosipo, Kotibé, Koto, Light Red Meranti, Limba, Louro, Maçaranduba, Mahogany, Makoré, Mandioqueira, Mansonia, Mengkulang, Meranti Bakau, Merawan, Merbau, Merpauh, Mersawa, Moabi, Niangon, Nyatoh, Obeche, Okoumé, Onzabili, Orey, Ovengkol, Ozigo, Padauk, Paldao, Palissandre de Guatemala, Palissandre de Para, Palissandre de Rio, Palissandre de Rose, Pau Amarelo, Pau Marfim, Pulai, Punah, Quaruba, Ramin, Sapelli, Saqui-Saqui, Sepetir, Sipo, Sucupira, Suren, Teak, Tauari, Tiama, Tola, Virola, White Lauan, White Meranti, White Seraya, Yellow Meranti.

Additional U.S. Notes

1. In this chapter:

(a) The term "wood waste" means residual material other than firewood resulting from the processing of wood, including scraps, shavings, sawdust, veneer clippings, chipper rejects and similar small wood residues, as well as larger or coarser solid types of residual wood such as slabs, edgings, cull pieces and veneer log cores;

(b) The term "standard wood moldings" means wood moldings worked to a pattern and having the same profile in cross section throughout their length; and

(c) The term "surface covered," as applied to the articles of headings 4411 and 4412, means that one or more exterior surfaces of a product have been treated with creosote or other wood preservatives, or with fillers, sealers, waxes, oils, stains, varnishes, paints or enamels, or have been overlaid with paper, fabric, plastics, base metal, or other material.

2. The effectiveness of the proviso to section 304(a)(3)(J) of the Tariff Act of 1930 (19 U.S.C. 1304(a)(3)(J)), to the extent permitted by that section and as provided for in schedule XX to the General Agreement on Tariffs and Trade, is suspended, with the result that sawed lumber and sawed timbers however provided for, telephone, trolley, electric light and telegraph poles of wood and bundles of shingles, other than red cedar shingles, shall not be required to be marked to indicate the country of origin.

3. Heading 4409 includes articles having a repeating design worked along any edge or face.

Statistical Note

1. For the purposes of heading 4407, the term "rough" includes wood that has been edged, resawn, crosscut or trimmed to smaller sizes but it does not include wood that has been dressed or surfaced by planing on one or more edges or faces or has been edge-glued or end-glued.

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4401 | | Fuel wood, in logs, in billets, in twigs, in faggots or in similar forms; wood in chips or particles; sawdust and wood waste and scrap, whether or not agglomerated in logs, briquettes, pellets or similar forms: | | | | |
| 4401.10.00 | 00 | Fuel wood, in logs, in billets, in twigs, in faggots or in similar forms | X | Free | | 20% |
| | | Wood in chips or particles: | | | | |
| 4401.21.00 | 00 | Coniferous | t dwb | Free | | Free |
| 4401.22.00 | 00 | Nonconiferous | t dwb | Free | | Free |
| 4401.30 | | Sawdust and wood waste and scrap, whether or not agglomerated in logs, briquettes, pellets or similar forms: | | | | |
| 4401.30.20 | 00 | Artificial fire logs, composed of wax and sawdust, with or without added materials | kg | 0.2% | Free (A,CA,E,IL,J, MX) | 20% |
| 4401.30.40 | | Other | | Free | | Free |
| | 10 | Sawdust not agglomerated | kg | | | |
| | 20 | Shavings | kg | | | |
| | 90 | Other | kg | | | |
| 4402.00.00 | 00 | Wood charcoal (including shell or nut charcoal), whether or not agglomerated | t | Free | | Free |
| 4403 | | Wood in the rough, whether or not stripped of bark or sap-wood, or roughly squared: | | | | |
| 4403.10.00 | | Treated with paint, stain, creosote or other pre-servatives | | Free | | Free |
| | | Poles, piles and posts: | | | | |
| | 20 | Telephone, telegraph and electrical power poles | m | | | |
| | 40 | Fence posts | m | | | |
| | 50 | Other | m | | | |
| | 60 | Other | $m^3$ | | | |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4403 (con.) | | Wood in the rough, whether or not stripped of bark or sapwood, or roughly squared (con.): | | | | |
| 4403.20.00 | | Other, coniferous | | Free | | Free |
| | | Pulpwood: | | | | |
| | 04 | Balsam, fir or spruce | $m^3$ | | | |
| | 08 | Other | $m^3$ | | | |
| | | Poles, piles and posts: | | | | |
| | 12 | Telephone, telegraph and electrical power poles | m | | | |
| | 15 | Fence posts | m | | | |
| | 16 | Other | m | | | |
| | | Logs and timber: | | | | |
| | | Pine (Pinus spp.): | | | | |
| | 20 | Southern yellow pine (Loblolly pine (Pinus taeda)), long leaf pine (Pinus palustris), pitch pine (Pinus rigida), short leaf pine (Pinus echinada), slash pine (Pinus elliottii) and Virginia pine (Pinus virginiana) | $m^3$ | | | |
| | 25 | Ponderosa pine (Pinus ponderosa) | $m^3$ | | | |
| | 30 | Other | $m^3$ | | | |
| | 35 | Spruce (Picea spp.) | $m^3$ | | | |
| | 40 | Douglas-fir (Pseudotsuga menziesii) | $m^3$ | | | |
| | 42 | Other fir; balsam | $m^3$ | | | |
| | 45 | Port Orford cedar (Chamaecyparis lawsoniana) | $m^3$ | | | |
| | 50 | Western hemlock (Tsugo meterophvlla) | $m^3$ | | | |
| | 52 | Other hemlock | $m^3$ | | | |
| | 55 | Western red cedar (Thuja plicata) | $m^3$ | | | |
| | 57 | Other cedar | $m^3$ | | | |
| | 63 | Other | $m^3$ | | | |
| | 65 | Other | $m^3$ | | | |
| | | Other, of tropical wood specified in subheading note 1 to this chapter: | | | | |
| 4403.41.00 | 00 | Dark Red Meranti, Light Red Meranti and Meranti Bakau | $m^3$ | Free | | Free |
| 4403.49.00 | 00 | Other | $m^3$ | Free | | Free |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4403 (con.) | | Wood in the rough, whether or not stripped of bark or sapwood, or roughly squared (con.): | | | | |
| | | Other: | | | | |
| 4403.91.00 | | Of oak (Quercus spp.) | | Free | | Free |
| | 20 | Of red oak | $m^3$ | | | |
| | 40 | Other | $m^3$ | | | |
| 4403.92.00 | 00 | Of beech (Fagus spp.) | $m^3$ | Free | | Free |
| 4403.99.00 | | Other | | Free | | Free |
| | | Pulpwood: | | | | |
| | 22 | Of poplar, aspen or cottonwood | $m^3$ | | | |
| | 24 | Other | $m^3$ | | | |
| | | Poles, piles and posts: | | | | |
| | 26 | Of poplar, aspen or cottonwood | $m^3$ | | | |
| | 27 | Of birch | $m^3$ | | | |
| | 29 | Other | $m^3$ | | | |
| | | Other | | | | |
| | 30 | Of birch (Betula spp.) | $m^3$ | | | |
| | 40 | Of ash (Fraxinus spp.) | $m^3$ | | | |
| | 50 | Of western red alder (Alnus rubra) | $m^3$ | | | |
| | 55 | Of cherry (Prunus spp.) | $m^3$ | | | |
| | 60 | Of maple (Acer spp.) | $m^3$ | | | |
| | 65 | Of yellow poplar (Liriodendron tulipifera) | $m^3$ | | | |
| | 67 | Of other poplar; of aspen or cottonwood | $m^3$ | | | |
| | 70 | Of walnut (Juglans spp.) | $m^3$ | | | |
| | 75 | Of paulownia (Paulownia spp.) | $m^3$ | | | |
| | 91 | Other | $m^3$ | | | |
| 4404 | | Hoopwood; split poles; piles, pickets and stakes of wood, pointed but not sawn lengthwise; wooden sticks, roughly trimmed but not turned, bent or otherwise worked, suitable for the manufacture of walking-sticks, umbrellas, tool handles or the like; chipwood and the like: | | | | |
| 4404.10.00 | | Coniferous | | Free | | Free |
| | 40 | Fence pickets, palings and rails | X | | | |
| | 80 | Poles, piles and posts | X | | | |
| | 90 | Other | X | | | |
| 4404.20.00 | | Nonconiferous | | Free | | Free |
| | 40 | Fence pickets, palings and rails | X | | | |
| | 80 | Poles, piles and posts | X | | | |
| | 90 | Other | X | | | |
| 4405.00.00 | 00 | Wood wool (excelsior); wood flour | kg | 3.2% | Free (A+,CA,D,E, IL,J,JO,MX) | 33 1/3% |
| 4406 | | Railway or tramway sleepers (cross-ties) of wood: | | | | |
| 4406.10.00 | 00 | Not impregnated | $m^3$ No. | Free | | Free |
| 4406.90.00 | 00 | Other | $m^3$ No. | Free | | Free |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4407 | | Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or end-jointed, of a thickness exceeding 6 mm: | | | | |
| 4407.10.00 | | Coniferous | | Free | | $1.70/m$^3$ |
| | 01 | Finger-jointed | m$^3$ | | | |
| | | Other: | | | | |
| | 02 | Treated with paint, stain, creosote, or other preservative | m$^3$ | | | |
| | | Not treated: | | | | |
| | 15 | Mixtures of spruce, pine, and fir ("S-P-F") | m$^3$ | | | |
| | 16 | Mixtures of western hemlock and amabilis fir ("hem-fir") | m$^3$ | | | |
| | | Other: | | | | |
| | | Sitka spruce (Picea sitchensis): | | | | |
| | 17 | Rough | m$^3$ | | | |
| | 18 | Other | m$^3$ | | | |
| | | Other spruce: | | | | |
| | 19 | Rough | m$^3$ | | | |
| | 20 | Other | m$^3$ | | | |
| | | Eastern white pine (Pinus Strobus) and red pine (Pinus resinosa): | | | | |
| | 42 | Rough | m$^3$ | | | |
| | 43 | Other | m$^3$ | | | |
| | | Lodgepole pine (Pinus contorta): | | | | |
| | 44 | Rough | m$^3$ | | | |
| | 45 | Other | m$^3$ | | | |
| | | Southern yellow pine (Loblolly pine (Pinus taeda)), long leaf pine (Pinus palustris), pitch pine (Pinus rigida), short leaf pine (Pinus echinada), slash pine (Pinus elliottii) and Virginia pine (Pinus virginiana): | | | | |
| | 46 | Rough | m$^3$ | | | |
| | 47 | Other | m$^3$ | | | |
| | | Ponderosa pine (Pinus ponderosa): | | | | |
| | 48 | Rough | m$^3$ | | | |
| | 49 | Other | m$^3$ | | | |
| | | Other pine: | | | | |
| | 52 | Rough | m$^3$ | | | |
| | 53 | Other | m$^3$ | | | |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4407 (con.) | | Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or end-jointed, of a thickness exceeding 6 mm (con.): | | | | |
| 4407.10.00 (con.) | | Coniferous (con.) | | | | |
| | | Other (con): | | | | |
| | | Not treated (con.): | | | | |
| | | Other (con.): | | | | |
| | | Douglas-fir (Pseudotsuga menziesii): | | | | |
| | | Rough: | | | | |
| | 54 | Having a minimum dimension less than 5.1 cm | $m^3$ | | | |
| | 55 | Having a minimum dimension 5.1 cm or more but less than 12.7 cm | $m^3$ | | | |
| | 56 | Having a minimum dimension 12.7 cm or more | $m^3$ | | | |
| | 57 | Other | $m^3$ | | | |
| | | Fir (Abies spp.): | | | | |
| | 58 | Rough | $m^3$ | | | |
| | 59 | Other | $m^3$ | | | |
| | | Hemlock (Tsuga spp.): | | | | |
| | 64 | Rough | $m^3$ | | | |
| | 65 | Other | $m^3$ | | | |
| | | Larch (Larix spp.) | | | | |
| | 66 | Rough | $m^3$ | | | |
| | 67 | Other | $m^3$ | | | |
| | | Western red cedar: | | | | |
| | 68 | Rough | $m^3$ | | | |
| | 69 | Other | $m^3$ | | | |
| | | Yellow cedar (Chamaecyparis nootkanensis): | | | | |
| | 74 | Rough | $m^3$ | | | |
| | 75 | Other | $m^3$ | | | |
| | | Other cedar (Thuja spp., Juniperus spp., Chamaecyparis spp., Cupressus spp. and Libocedrus spp.): | | | | |
| | 76 | Rough | $m^3$ | | | |
| | 77 | Other | $m^3$ | | | |
| | | Redwood (Sequoia sempervirens): | | | | |
| | 82 | Rough | $m^3$ | | | |
| | 83 | Other | $m^3$ | | | |
| | | Other: | | | | |
| | 92 | Rough | $m^3$ | | | |
| | 93 | Other | $m^3$ | | | |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4407 (con.) | | Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or end-jointed, of a thickness exceeding 6 mm (con.): | | | | |
| | | Of tropical wood specified in subheading note 1 to this chapter: | | | | |
| 4407.24.00 | | Virola, Mahogany (Swietenia spp.), Imbuia and Balsa | | Free | | $1.27/m^3$ |
| | | Balsa (Ochroma lagopus): | | | | |
| | 05 | Rough | $m^3$ | | | |
| | 10 | Other | $m^3$ | | | |
| | | Mahogany (Swetenia spp.): | | | | |
| | 25 | Rough | $m^3$ | | | |
| | 30 | Other | $m^3$ | | | |
| | | Other: | | | | |
| | 90 | Rough | $m^3$ | | | |
| | 95 | Other | $m^3$ | | | |
| 4407.25.00 | 00 | Dark Red Meranti, Light Red Meranti and Meranti Bakau | $m^3$ | Free | | $1.27/m^3$ |
| 4407.26.00 | 00 | White Lauan, White Meranti, White Seraya, Yellow Meranti and Alan | $m^3$ | Free | | $1.27/m^3$ |
| 4407.29.00 | | Other | | Free | | $1.27/m^3$ |
| | | Teak (Tectona grandis): | | | | |
| | 05 | Rough | $m^3$ | | | |
| | 10 | Other | $m^3$ | | | |
| | | Keruing (Dipterocarpus spp.): | | | | |
| | 25 | Rough | $m^3$ | | | |
| | 30 | Other | $m^3$ | | | |
| | | Other: | | | | |
| | 90 | Rough | $m^3$ | | | |
| | 95 | Other | $m^3$ | | | |
| | | Other: | | | | |
| 4407.91.00 | | Of oak (Quercus spp.) | | Free | | $1.27/m^3$ |
| | | Red oak: | | | | |
| | 20 | Rough | $m^3$ | | | |
| | 21 | Other | $m^3$ | | | |
| | | Other: | | | | |
| | 60 | Rough | $m^3$ | | | |
| | 61 | Other | $m^3$ | | | |
| 4407.92.00 | | Of beech (Fagus spp.) | | Free | | $1.27/m^3$ |
| | 20 | Rough | $m^3$ | | | |
| | 40 | Other | $m^3$ | | | |

| Heading/ Subheading | Stat Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Special | 2 |
|---|---|---|---|---|---|---|
| 4408 | | Sheets for veneering (including those obtained by slicing laminated wood), for plywood or for other similar laminated wood and other wood, sawn lengthwise, sliced or peeled, whether or not planed, sanded, spliced or end-jointed, of a thickness not exceeding 6 mm: | | | | |
| 4408.10.01 | | Coniferous | | Free | | 20% |
| | | Reinforced or backed: | | | | |
| | 10 | Douglas fir | $m^2$ | | | |
| | 30 | Other | $m^2$ | | | |
| | | Not reinforced or backed: | | | | |
| | 50 | Douglas fir | $m^2$ | | | |
| | 70 | Other | $m^2$ | | | |
| | | Of tropical wood specified in subheading note 1 to this chapter: | | | | |
| 4408.31.01 | 00 | Dark Red Meranti, Light Red Meranti and Meranti Bakau | $m^2$ | Free | | 20% |
| 4408.39.01 | 00 | Other | $m^2$ | Free | | 20% |
| 4408.90.01 | | Other | | Free | | 20% |
| | | Not reinforced or backed: | | | | |
| | 20 | Birch (Betula spp.) | $m^2$ | | | |
| | 30 | Cherry (Prunus spp.) | $m^2$ | | | |
| | 40 | Maple (Acer spp.) | $m^2$ | | | |
| | | Oak (Quercus spp.): | | | | |
| | 50 | Red | $m^2$ | | | |
| | 60 | Other | $m^2$ | | | |
| | 65 | Ash (Fraxinus spp.) | $m^2$ | | | |
| | 70 | Walnut (Juglans spp.) | $m^2$ | | | |
| | 80 | Other | $m^2$ | | | |
| | | Reinforced or backed: | | | | |
| | 82 | Birch (Betula spp.) | $m^2$ | | | |
| | 84 | Cherry (Prunus spp.) | $m^2$ | | | |
| | 86 | Maple (Acer spp.) | $m^2$ | | | |
| | | Oak (Quercus spp.): | | | | |
| | 88 | Red | $m^2$ | | | |
| | 92 | Other | $m^2$ | | | |
| | 94 | Ash (Fraxinus spp.) | $m^2$ | | | |
| | 96 | Walnut (Juglans spp.) | $m^2$ | | | |
| | 98 | Other | $m^2$ | | | |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | 1 Special | 2 |
|---|---|---|---|---|---|---|
| 4409 | | Wood (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rebated, chamfered, V-jointed, beaded, molded, rounded or the like) along any of its edges, ends or faces, whether or not planed, sanded or end-jointed: | | | | |
| 4409.10 | | Coniferous: | | | | |
| 4409.10.05 | 00 | Wood continuously shaped along any of its ends, whether or not also continuously shaped along any of its edges or faces, all the foregoing whether or not planed, sanded or end-jointed | $m^3$ | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| | | Other: | | | | |
| 4409.10.10 | | Wood siding | | Free | | 2.2¢/$m^2$ |
| | | Resawn bevel siding: | | | | |
| | 20 | Western red cedar | $m^2$ $m^3$ | | | |
| | 40 | Other | $m^2$ $m^3$ | | | |
| | | Other: | | | | |
| | 60 | Western red cedar | $m^2$ $m^3$ | | | |
| | 80 | Other | $m^2$ $m^3$ | | | |
| 4409.10.20 | 00 | Wood flooring | $m^2$ $m^3$ | Free | | 33 1/3% |
| | | Wood moldings: | | | | |
| | | Standard wood molding: | | | | |
| 4409.10.40 | 00 | Pine (<u>Pinus</u> spp.) | m | Free | | 5% |
| 4409.10.45 | 00 | Other | m | Free | | 5% |
| 4409.10.50 | 00 | Other | m | Free | | 40% |
| | | Wood dowel rods: | | | | |
| 4409.10.60 | 00 | Plain | m $m^3$ | Free | | 5% |
| 4409.10.65 | 00 | Sanded, grooved, or otherwise advanced in condition | m $m^3$ | 4.9% | Free (A+,CA,D,E, IL,J,JO,MX) | 33 1/3% |
| 4409.10.90 | | Other | | Free | | $1.70/$m^3$ |
| | 20 | Western red cedar | $m^2$ $m^3$ | | | |
| | 40 | Other | $m^2$ $m^3$ | | | |
| 4409.20 | | Nonconiferous: | | | | |
| 4409.20.05 | 00 | Wood continuously shaped along any of its ends, whether or not also continuously shaped along any of its edges or faces, all the foregoing whether or not planed, sanded or end-jointed | $m^3$ | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| | | Other: | | | | |
| 4409.20.10 | 00 | Wood siding | $m^2$ | Free | | 4.3¢/$m^2$ |
| 4409.20.25 | | Wood flooring | | Free | | 8% |
| | 30 | Maple (Acer spp.) | $m^2$ $m^3$ | | | |
| | 50 | Birch (Betula spp.) and beech (Fagus spp.) | $m^2$ $m^3$ | | | |
| | 60 | Other | $m^2$ $m^3$ | | | |
| | | Wood moldings: | | | | |
| 4409.20.40 | 00 | Standard wood moldings | m | Free | | 5% |
| 4409.20.50 | 00 | Other | m | Free | | 40% |
| | | Wood dowel rods: | | | | |
| 4409.20.60 | 00 | Plain | m | Free | | 5% |
| 4409.20.65 | 00 | Sanded, grooved or otherwise advanced in condition | m | 4.9% | Free (A+,CA,D,E, IL,J,JO,MX) | 33 1/3% |
| 4409.20.90 | 00 | Other | $m^3$ | Free | | $1.70/$m^3$ |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4410 | | Particle board and similar board (for example, oriented strand board and waferboard) of wood or other ligneous materials, whether or not agglomerated with resins or other organic binding substances: | | | | |
| | | Oriented strand board and waferboard, of wood: | | | | |
| 4410.21.00 | 00 | Unworked or not further worked than sanded | m³<br>kg | Free | | 40% |
| 4410.29.00 | 00 | Other | m³<br>kg | Free | | 40% |
| | | Other, of wood: | | | | |
| 4410.31.00 | | Unworked or not further worked than sanded | | Free | | 40% |
| | 20 | Particle board | m³<br>kg | | | |
| | 60 | Other | m³<br>kg | | | |
| 4410.32.00 | | Surface-covered with melamine-impregnated paper | | Free | | 40% |
| | 20 | Particle board | m³<br>kg | | | |
| | 60 | Other | m³<br>kg | | | |
| 4410.33.00 | | Surface-covered with decorative laminates of plastic | | Free | | 40% |
| | 20 | Particle board | m³<br>kg | | | |
| | 60 | Other | m³<br>kg | | | |
| 4410.39.00 | | Other | | Free | | 40% |
| | 20 | Particle board | m³<br>kg | | | |
| | 60 | Other | m³<br>kg | | | |
| 4410.90.00 | 00 | Other | m³<br>kg | Free | | 20% |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4411 | | Fiberboard of wood or other ligneous materials, whether or not bonded with resins or other organic substances: | | | | |
| | | Fiberboard of a density exceeding 0.8 g/cm$^3$: | | | | |
| 4411.11.00 | | Not mechanically worked or surface covered | | Free | | 30% |
| | 05 | Medium density fiberboard | m$^3$ | | | |
| | 95 | Other | m$^3$ | | | |
| 4411.19 | | Other: | | | | |
| 4411.19.20 | | Not surface covered (except for oil treatment) | | Free | | 30% |
| | 05 | Medium density fiberboard | m$^3$ | | | |
| | 95 | Other | m$^3$ | | | |
| | | Other: | | | | |
| 4411.19.30 | 00 | Tileboard which has been continuously worked along any of its edges and is dedicated for use in the construction of walls, ceilings or other parts of buildings | m$^3$ | Free | | 20% |
| 4411.19.40 | 00 | Other | m$^3$ | 6% | Free (A,CA,E,IL,J, MX) 1.5% (JO) | 45% |
| | | Fiberboard of a density exceeding 0.5 g/cm$^3$ but not exceeding 0.8 g/cm$^3$: | | | | |
| 4411.21.00 | | Not mechanically worked or surface covered | | Free | | 30% |
| | 05 | Medium density fiberboard | m$^3$ | | | |
| | 95 | Other | m$^3$ | | | |
| 4411.29 | | Other: | | | | |
| | | Tongued, grooved or rabbetted continuously along any of its edges and dedicated for use in the construction of walls, ceilings or other parts of buildings: | | | | |
| 4411.29.20 | 00 | Laminated boards bonded in whole or in part, or impregnated, with synthetic resins | kg m$^3$ | 1.9¢/kg + 1.5% | Free (A,CA,E,IL,J, JO,MX) | 33¢/kg + 25% |
| 4411.29.30 | 00 | Other | m$^3$ | Free | | 20% |
| | | Other: | | | | |
| 4411.29.60 | | Not surface covered (except for oil treatment) | | Free | | 30% |
| | 05 | Medium density fiberboard | m$^3$ | | | |
| | 95 | Other | m$^3$ | | | |
| 4411.29.90 | 00 | Other | m$^3$ | 3.9% | Free (A,CA,E,IL, J,JO,MX) | 45% |
| | | Fiberboard of a density exceeding 0.35 g/cm$^3$ but not exceeding 0.5 g/cm$^3$: | | | | |
| 4411.31.00 | | Not mechanically worked or surface covered | | Free | | 20% |
| | 10 | Impregnated with bitumen | m$^3$ | | | |
| | 90 | Other | m$^3$ | | | |
| 4411.39.00 | | Other | | Free | | 20% |
| | 10 | Impregnated with bitumen | m$^3$ | | | |
| | 90 | Other | m$^3$ | | | |
| | | Other: | | | | |
| 4411.91.00 | | Not mechanically worked or surface covered | | Free | | 20% |
| | 10 | Impregnated with bitumen | m$^3$ | | | |
| | 90 | Other | m$^3$ | | | |
| 4411.99.00 | | Other | | Free | | 20% |
| | 10 | Impregnated with bitumen | m$^3$ | | | |
| | 90 | Other | m$^3$ | | | |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | 1 Special | 2 |
|---|---|---|---|---|---|---|
| 4412 | | Plywood, veneered panels and similar laminated wood: | | | | |
| | | Plywood consisting solely of sheets of wood, each ply not exceeding 6 mm in thickness: | | | | |
| 4412.13 | | With at least one outer ply of tropical wood specified in subheading note 1 to this chapter: | | | | |
| | | Not surface covered, or surface covered with a clear or transparent material which does not obscure the grain, texture or markings of the face ply: | | | | |
| 4412.13.05 | | With a face ply of birch (Betula spp.) | | Free | | 50% |
| | 20 | Panels not exceeding in any dimension 3.6 mm in thickness, 1.2 m in width and 2.2 m in length | $m^3$ | | | |
| | | Other: | | | | |
| | 40 | Not surface covered | $m^3$ | | | |
| | 60 | Other | $m^3$ | | | |
| 4412.13.25 | | With a face ply of Spanish cedar (Cedrela spp.) or walnut (Juglans spp.) | | 8% | Free (A*,CA,E,IL,J,MX) 2% (JO) | 40% |
| | 10 | With a face ply of Spanish cedar (Cedrela spp.) | $m^3$ | | | |
| | 20 | With a face ply of walnut (Juglans spp.) | $m^3$ | | | |
| | | Other: | | | | |
| 4412.13.40 | | With at least one outer ply of the following tropical woods: Dark Red Meranti, Light Red Meranti, White Lauan, Sipo, Limba, Okoumé, Obeche, Acajou d'Afrique, Sapelli, Virola, Mahogany, Palissandre de Para, Palissandre de Rio or Palissandre de Rose | | 8% | Free (A*,CA,E,IL,J,MX) 2% (JO) | 40% |
| | 40 | With a face ply of mahogany (Swietenia spp. or Khaya spp.) | $m^3$ | | | |
| | | Other: | | | | |
| | 50 | Panels not exceeding in any dimension 3.6 mm in thickness, 1.2 m in width and 2.2 m in length | $m^3$ | | | |
| | | Other: | | | | |
| | 60 | Not surface covered | $m^3$ | | | |
| | 70 | Other | $m^3$ | | | |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4412 (con.) | | Plywood, veneered panels and similar laminated wood (con.): | | | | |
| | | Other (con.): | | | | |
| 4412.92 (con.) | | With at least one ply of tropical wood specified in subheading note 1 to this chapter (con.): | | | | |
| | | Other: | | | | |
| | | Plywood: | | | | |
| | | Not surface covered, or surface covered with a clear or transparent material which does not obscure the grain, texture or markings of the face ply: | | | | |
| 4412.92.10 | 00 | With a face ply of Parana pine (Araucaria angustifolia) | m³ | Free | | 40% |
| 4412.92.30 | 00 | With a face ply of European red pine (Pinus silvestris) | m³ | 3.4% | Free (A,CA,E,IL,J, JO,MX) | 40% |
| 4412.92.41 | 00 | Other | m³ | 8% | Free (A*,CA,E,IL,J, MX)<br>2% (JO) | 40% |
| 4412.92.51 | 00 | Other | m³ | 5.1% | Free (A*,CA,E,IL, J,MX)<br>1.2% (JO) | 40% |
| 4412.92.91 | | Other | | Free | | 40% |
| | 20 | With an outer ply of Douglas fir (Pseudotsuga menziesii) | m³ | | | |
| | 40 | With a face ply of Southern yellow pine (Loblolly pine (Pinus taeda)), long leaf pine (Pinus palustris), pitch pine (Pinus rigida), short leaf pine (Pinus echinada), slash pine (Pinus elliottii) and Virginia pine (Pinus virginiana) | m³ | | | |
| | 90 | Other | m³ | | | |
| 4412.93.01 | 00 | Other, containing at least one layer of particle board | m³ | Free | | 40% |
| 4412.99 | | Other: | | | | |
| | | Plywood: | | | | |
| | | Not surface covered, or surface covered with a clear or transparent material which does not obscure the grain, texture or markings of the face ply: | | | | |
| 4412.99.15 | 00 | With a face ply of Parana pine (Araucaria angustifolia) | m³ | Free | | 40% |
| 4412.99.35 | 00 | With a face ply of European red pine (Pinus silvestris) | m³ | 3.4% | Free (A,CA,E,IL,J, JO,MX) | 40% |
| 4412.99.46 | 00 | Other | m³ | 8% | Free (A,CA,E,IL,J, MX)<br>2% (JO) | 40% |
| 4412.99.56 | 00 | Other | m³ | 5.1% | Free (A*,CA,E,IL, J,MX)<br>1.2% (JO) | 40% |

| Heading/ Subheading | Stat Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Special | 2 |
|---|---|---|---|---|---|---|
| 4412 (con.) | | Plywood, veneered panels and similar laminated wood (con.): | | | | |
| | | Other (con.): | | | | |
| 4412.99 (con.) | | Other (con.): | | | | |
| 4412.99.96 | | Other | | Free | | 40% |
| | 20 | With an outer ply of Douglas fir (Pseudotsuga menziesii) | $m^3$ | | | |
| | 40 | With a face ply of Southern yellow pine (Loblolly pine (Pinus taeda)), long leaf pine (Pinus palustris), pitch pine (Pinus rigida), short leaf pine (Pinus echinada), slash pine (Pinus elliottii) and Virginia pine (Pinus virginiana) | $m^3$ | | | |
| | 90 | Other | $m^3$ | | | |
| 4413.00.00 | 00 | Densified wood, in blocks, plates, strips or profile shapes | kg | 3.7% | Free (A,CA,E,IL,J, JO,MX) | 50% |
| 4414.00.00 | 00 | Wooden frames for paintings, photographs, mirrors or similar objects | No. | 3.9% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| 4415 | | Packing cases, boxes, crates, drums and similar packings, of wood; cable-drums, of wood; pallets, box-pallets and other load boards, of wood; pallet collars of wood: | | | | |
| 4415.10 | | Cases, boxes, crates, drums and similar packings; cable-drums: | | | | |
| 4415.10.30 | 00 | Packing boxes and cases with solid sides, lids and bottoms | No. | Free | | 15% |
| 4415.10.60 | 00 | Containers designed for use in the harvesting of fruits and vegetables | No. | Free | | Free |
| 4415.10.90 | 00 | Other | No. | 10.7% | Free (A,CA,E,IL,J, MX)<br>4.2% (JO) | 33 1/3% |
| 4415.20 | | Pallets, box-pallets and other load boards; pallet collars: | | | | |
| 4415.20.40 | 00 | Containers designed for use in the harvesting of fruits and vegetables | No. | Free | | Free |
| 4415.20.80 | 00 | Other | No. | 10.7% | Free (A,CA,E,IL,J, MX)<br>4.2% (JO) | 33 1/3% |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | 2 |
|---|---|---|---|---|---|---|
| 4416.00 | | Casks, barrels, vats, tubs and other coopers' products and parts thereof, of wood, including staves: | | | | |
| 4416.00.30 | | Casks, barrels and hogsheads | | Free | | 15% |
| | 10 | New | No. | | | |
| | | Used: | | | | |
| | 20 | Assembled (set up) | No. | | | |
| | 30 | Unassembled (knocked down) | No. | | | |
| 4416.00.60 | | Staves and hoops; tight barrelheads of softwood | | Free | | Free |
| | | New: | | | | |
| | 10 | Staves | No. | | | |
| | 20 | Hoops | No. | | | |
| | 30 | Tight barrelheads | No. | | | |
| | | Used: | | | | |
| | 40 | Staves | No. | | | |
| | 50 | Other | No. | | | |
| 4416.00.90 | | Other | | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| | 20 | New | X | | | |
| | 40 | Used | X | | | |
| 4417.00 | | Tools, tool bodies, tool handles, broom or brush bodies and handles, of wood; boot or shoe lasts and trees, of wood: | | | | |
| 4417.00.20 | 00 | Broom and mop handles, 1.9 cm or more in diameter and 97 cm or more in length | No. | Free | | 33 1/3% |
| 4417.00.40 | 00 | Paint brush and paint roller handles | X | Free | | 33 1/3% |
| 4417.00.60 | 00 | Brush backs | No. | Free | | 33 1/3% |
| 4417.00.80 | | Other | | 5.1% | Free (A,CA,E,IL,J, MX) 1.2% (JO) | 33 1/3% |
| | 10 | Tool handles | X | | | |
| | 90 | Other | X | | | |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | 2 |
|---|---|---|---|---|---|---|
| 4418 | | Builders' joinery and carpentry of wood, including cellular wood panels and assembled parquet panels; shingles and shakes: | | | | |
| 4418.10.00 | 00 | Windows, French-windows and their frames | No. | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| 4418.20 | | Doors and their frames and thresholds: | | | | |
| 4418.20.40 | 00 | French doors | No. | 4.8% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| 4418.20.80 | | Other | | 4.8% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| | 30 | Flush doors | No. | | | |
| | 60 | Other | No. | | | |
| 4418.30.00 | 00 | Parquet panels | $m^2$ | Free | | 33 1/3% |
| 4418.40.00 | 00 | Formwork (shuttering) for concrete constructional work | X | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| 4418.50.00 | | Shingles and shakes | | Free | | Free |
| | | Shingles: | | | | |
| | 10 | Of western red cedar | square kg | | | |
| | 30 | Other | square kg | | | |
| | 50 | Other | square kg | | | |
| 4418.90 | | Other: | | | | |
| 4418.90.20 | 00 | Edge-glued lumber | $m^3$ | Free | | 10% |
| 4418.90.45 | | Other | | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| | 10 | Beams and arches, laminated | X | | | |
| | 20 | Roof trusses | X | | | |
| | 40 | Other fabricated structural wood members | X | | | |
| | 50 | Prefabricated partitions and panels for buildings | X | | | |
| | 90 | Other | X | | | |
| 4419.00 | | Tableware and kitchenware, of wood: | | | | |
| 4419.00.40 | 00 | Forks and spoons | X | 5.3% | Free (A,CA,E,IL,J, MX) 1.3% (JO) | 33 1/3% |
| 4419.00.80 | 00 | Other | X | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4420 | | Wood marquetry and inlaid wood; caskets and cases for jewelry or cutlery and similar articles, of wood; statuettes and other ornaments, of wood; wooden articles of furniture not falling within chapter 94: | | | | |
| 4420.10.00 | 00 | Statuettes and other ornaments, of wood | X | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| 4420.90 | | Other: | | | | |
| | | Jewelry boxes, silverware chests, cigar and cigarette boxes, microscope cases, tool or utensil cases and similar boxes, cases and chests, all the foregoing of wood: | | | | |
| 4420.90.20 | 00 | Cigar and cigarette boxes | No. | Free | | 60% |
| | | Other: | | | | |
| 4420.90.45 | 00 | Not lined with textile fabrics | No. | 4.3% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| 4420.90.65 | 00 | Lined with textile fabrics | kg<br>No. | Free | | 11¢/kg + 20% |
| 4420.90.80 | 00 | Other | X | 3.2% | Free (A,CA,E,IL,J, JO,MX) | 33 1/3% |
| 4421 | | Other articles of wood: | | | | |
| 4421.10.00 | 00 | Clothes hangers | X | 3.2% | Free (A+,CA,D,E, IL,J,JO,MX) | 33 1/3% |
| 4421.90 | | Other: | | | | |
| | | Wood dowel pins: | | | | |
| | | Plain: | | | | |
| 4421.90.10 | 00 | Coniferous | m | Free | | 5% |
| 4421.90.15 | 00 | Other | m | Free | | 5% |
| 4421.90.20 | 00 | Sanded, grooved or otherwise advanced in condition | m | 4.9% | Free (A+,CA,D,E, IL,J,JO,MX) | 33 1/3% |
| | | Wood blinds, shutters, screens and shades, all the foregoing with or without their hardware: | | | | |
| 4421.90.30 | 00 | Consisting of wooden frames in the center of which are fixed louver boards or slats, with or without their hardware | X | 10.7% | Free (A,CA,E,IL,J, MX)<br>4.2% (JO) | 33 1/3% |
| 4421.90.40 | 00 | Other | X | 5.1% | Free (A+,CA,D,E, IL,J,MX) 1/<br>1.2% (JO) | 50% |
| | | Toothpicks, skewers, candy sticks, ice cream sticks, tongue depressors, drink mixers and similar small wares: | | | | |
| 4421.90.50 | 00 | Toothpicks | X | Free | | 25% |
| 4421.90.60 | 00 | Other | X | 5.1% | Free (A*,CA,E,IL, J,MX)<br>1.2% (JO) | 33 1/3% |

1/ See subheading 9906.44.21.

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4421 (con.) | | Other articles of wood (con.): | | | | |
| 4421.90 (con.) | | Other (con.): | | | | |
| 4421.90.70 | | Pickets, palings, posts and rails, the foregoing which are sawn; assembled fence sections | | Free | | Free |
| | 20 | Assembled fence sections | X | | | |
| | 40 | Other | X | | | |
| | | Clothespins: | | | | |
| 4421.90.80 | | Spring-type | | 6.5¢/gross | Free (A+,CA,D,E, IL,J,MX) 1.6¢/gross (JO) | 20¢/gross |
| | 24 | Valued not over 80¢/gross | Gross | | | |
| | 27 | Valued over 80¢ but not over $1.35/gross | Gross | | | |
| | 30 | Valued over $1.35 but not over $1.70/gross | Gross | | | |
| | 33 | Valued over $1.70/gross | Gross | | | |
| 4421.90.85 | 00 | Other | Gross | 4.8% | Free (A+,CA,D,E, IL,J,JO,MX) | 35% |
| 4421.90.88 | 00 | Canoe paddles | No. | Free | | 35% |
| | | Other: | | | | |
| 4421.90.93 | 00 | Theatrical, ballet, and operatic scenery and properties, including sets | kg | Free | | 33 1/3% |
| 4421.90.97 | | Other | | 3.3% | Free (A,B,CA,E,IL, J,JO,MX) | 33 1/3% |
| | 20 | Pencil slats | Gross | | | |
| | 40 | Other | X | | | |

**Laws: Cases and Codes : U.S. Code: Title 19: Section**

search Title 19 HELP

- TITLE 19 - CUSTOMS DUTIES
  (Notes)
  - CHAPTER 4 - TARIFF ACT OF 1930
    (Notes)
    - SUBTITLE I - HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES
      (Notes)

*U.S. Code as of: 01/05/99*

International Trade Law Guide

Export Controls Summary

International Law Articles and Documents

International Law Discussion

(a) Publication

Within 90 days after the date of issuance of any interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision under this chapter with respect to any customs transaction, the Secretary shall have such ruling or decision published in the Customs Bulletin or shall otherwise make such ruling or decision available for public inspection.

(b) Appeals

A person may appeal an adverse interpretive ruling and any interpretation of any regulation prescribed to implement such ruling to a higher level of authority within the Customs Service for de novo review. Upon a reasonable showing of business necessity, any such appeal shall be considered and decided no later than 60 days following the date on which the appeal is filed. The Secretary shall issue regulations to implement this subsection.

(c) Modification and revocation

A proposed interpretive ruling or decision which would -

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

(d) Publication of customs decisions that limit court decisions

A decision that proposes to limit the application of a court decision shall be published in the Customs Bulletin together with notice of opportunity for public comment thereon prior to a final decision.

(e) Public information

The Secretary may make available in writing or through electronic media, in an efficient, comprehensive and timely manner, all information, including directives, memoranda, electronic messages

and telexes which contain instructions, requirements, methods or advice necessary for importers and exporters to comply with the Customs (FOOTNOTE 1) laws and regulations. All information which may be made available pursuant to this subsection shall be subject to any exemption from disclosure provided by section 552 of title 5.

(FOOTNOTE 1) So in original. Probably should not be capitalized.

Once back in the United States, BMI uses the drilled and pressure treated lumber for making flotation units and docks for marinas.

(You advise that the end use of the instant lumber is such that the drilling and cutting to dimensional stock size must be done before the pressure treatment with CCA. The drilled holes are used for fasteners, such as bolts and pins, necessary to assemble the docks.)
ISSUE:

What is the tariff classification of such drilled and treated lumber under the HTSUSA?
LAW AND ANALYSIS:

You argue that subheading 4418.90.40, HTSUSA, is not applicable to the drilled lumber in question because it results in the merchandise being subject to duty. You believe that this is an inequitable result, particularly since the United States- Canada Free Trade Agreement (CFTA) was intended to lower and eliminate duty rates between the two countries and since the CFTA was inaugurated at the same time as the HTSUSA.

Heading 4418, HTSUSA, reads as follows:

Builders' joinery and carpentry of wood, including cellular wood panels and assembled parquet panels; shingles and shakes.


The Explanatory Notes, HTSUSA, for Heading 4418 state that:

This heading applies to woodwork, including that of wood marquetry or inlaid wood, used in the construction of any kind of building, etc., in the form of assembled goods or as recognizable unassembled pieces (e.g., prepared with tenons, mortises, dovetails or other similar joints for assembly), whether or not with their metal fittings such as hinges, locks, etc.

The term..."carpentry" refers to woodwork (such as beams, rafters and roofstruts) used for structural purposes...

Inasmuch as the instant drilled, treated lumber is used for structural purposes in the construction of flotation units and docks for marinas and fits within Heading 4418, it must be classified accordingly. Since the instant lumber does not fit within any of the eo nomine subheading in Heading 4418 and is not edge-glued lumber, it is classified as builders' joinery and carpentry of wood, other, other, in subheading 4418.90.40, HTSUSA.

We note that another letter concerning the instant lumber, from Mr. Robert L. Wenman, a member of the Canadian Parliament, raises two other possible HTSUSA classifications, in Heading 4403 or Heading 4407, HTSUSA. Heading 4403 provides for wood in the rough, whether or not stripped of bark or sapwood, or roughly squared; it covers wood in the rough prior to being made into lumber, e.g., timber, poles and logs. The Explanatory Notes to Heading 4403 state that this heading excludes wood cut in the form of planks, beams, etc., which are covered in either Heading 4407 or 4418, depending upon what has been done to the wood.

HQ 083733
May 1, 1989
CLA-2 CO: R:C:G: 083733 JLJ, 835140
Category: Classification
TARIFF NO.: 4418.90.40
Mr. Gordon Leontowich, Director Western Wood Preservers, Ltd.

26035 31B Avenue Aldergrove, British Columbia, VOX IAO Canada
RE: Tariff classification of drilled lumber sent to Canada to be microincised and pressure treated with a preserative
Dear Mr. Leontowich:

You requested a tariff classification under the Harmonized Tariff Schedule of the United States Annotated (HTSUSA) for United States drilled lumber which is shipped to Canada to be microincised and pressure treated with a preservative, then imported into the United States.

FACTS:

You state that Bellingham Marine Industries Inc., of Bellingham, Washington, has sent its United States cut and drilled Douglas fir (i.e., softwood) lumber to your firm in British Columbia, Canada, for treatment for more than three years. Under the Tariff Schedules of the United States (TSUS), the lumber was imported into the United States under the tariff provision for lumber and wood siding, drilled or treated:

softwood lumber and siding, drilled, or pressure treated with wood creosote or other wood preservative, or both, but not otherwise treated, in item 202.52, TSUS, which was a duty-free provision. We note that item 202.52, TSUS, specifically provided for drilled softwood lumber which had been pressure treated with a wood preservative.

Under the HTSUSA, you have been advised by a Customs import specialist that the returning lumber is subject to duty under the provision for builders' joinery and carpentry of wood, other, other, in subheading 4418.90.40, HTSUSA, which carries a 5.1 percent ad valorem duty rate. You believe that this subheading is incorrect because merchandise classified accordingly is

-2-
subject to duty, while the instant lumber was duty-free under the TSUS. You ask that Customs reconsider this advice.

The exact details of the finishing of the lumber are as follows:

1. United States softwood lumber cut to dimensional stock sizes and drilled with as many as 6 holes per piece are sent from Bellingham Marine Industries (BMI) in Washington state to Western Wood Preservers, Ltd. (WWP), in British Columbia, Canada.

2. In Canada, WWP microincises and pressure treats the lumber with chromated copper arsenate (CCA), a water borne preservative purchased from a United States firm.

3. Once the lumber has been treated, it is exported to the United States.

We assume that the used ties were advanced in some way sufficient to warrant classification in that heading. This information is not contained in the protest record.

HOLDING:

This protest is DENIED. Used railroad ties that no longer meet specifications for use as railroad ties are sawn pieces of lumber used principally as landscape timbers. If further manufactured, they are classifiable in subheading 4421.90.9540, HTSUSA. If not further manufactured, they are classifiable under heading 4407, HTSUSA. The precise subheading under heading 4407, HTSUSA, will depend on the type of wood and other characteristics. We note that merchandise classified in heading 4407, HTSUSA, that is of a softwood variety falling within the scope of the Canadian lumber CVD order should be processed accordingly.

In accordance with Section 3A(11)(b) of Customs Directive 099 3550-065, dated August 4, 1993, Subject: Revised Protest Directive, this decision should be mailed by your office to the PROTESTANT no later than 60 days from the date of this letter. Any reliquidation of the entries in accordance with the decision must be accomplished prior to mailing of the decision. Sixty days from the date of the decision, the Office of Regulations and Rulings will take steps to make the decision available to Customs personnel via the Customs Rulings Module in ACS and the public via the Diskette Subscription Service, Lexis, Freedom of Information Act, and other public access channels.

Sincerely,
John Durant, Director Commercial Rulings Division

Heading 4407 covers wood sawn or chipped lenghwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 millimeters. The Explanatory Notes to Heading 4407 indicate that this heading covers such products as sawn beams, planks, flitches and boards. Wood classified in Heading 4407 may only be planed, sanded or finger-jointed; it may not be further processed. Again, the Explanatory Notes to Heading 4407 specifically state that the heading excludes builders' joinery and carpentry, which is classified in Heading 4418.

Mr. Wenman also argues that subheading 9802.00.40, HTSUSA, may be applicable to the instant lumber. Subheading 9802.00.40 provides for articles exported for repairs or alterations; it is the successor of item 806.20, TSUS, with identical language.



Concerning the application of item 806.20, TSUS, it has been held that the operations performed on the articles must not constitute a part of the total manufacturing process begun in the United States. Dolliff & Company, Inc. v. United States, 66 CCPA 77, C.A.D. 1225 (1979).

Lumber which is specifically intended for exterior construction, ground contact areas or marine use is not a finished product until it has been further manufactured by being pressure treated with a wood preservative.

The instant lumber exported to Canada is not a finished product ready for its intended use. The microincising and pressure treatment of the lumber in Canada constitutes a part of the manufacturing process begun in the United States.

The Canadian finishing operations exceed the scope of the term "repairs or alterations" under item 806.20, TSUS, and hence under subheading 9802.00.40, HTSUSA. Guardian Industries Corporation v. United States, 3 CIT 9, Slip Op. 82-4 (1982).

Therefore, the drilled and pressure treated lumber is not entitled to the benefits of this provision.

Goods classified in subheading 4418.90.40, HTSUSA, which originate in Canada are entitled to a 4.5 percent ad valorem rate of duty under the CFTA upon compliance with all applicable regulations.

HOLDING:

The instant drilled, treated lumber is classified as other carpentry in subheading 4418.90.40, HTSUSA.

Sincerely,
John Durant, Director Commercial Rulings Division

6cc: A.D. N.Y. Seaport (NIS-234) Johnson library name: 083733JLJ

**NY D81970**
September 30, 1998
CLA-2-44:RR:NC:2:230 D81970
CATEGORY: Classification
TARIFF NO.: 4418.90.4020
Mr. F. Gordon Lee O'Connor & Hannan, L.L.P.

Suite 800 1919 Pennsylvania Avenue, N.W.

Washington, D.C. 20006-3483
RE: The tariff classification of unassembled wood trusses from Canada
Dear Mr. Lee:

In your letter dated August 31, 1998, on behalf of your client, Universal Forest Products Inc., you requested a tariff classification ruling.
The ruling was requested on wood trusses to be shipped unassembled in order to save on shipping costs. Specifically designed trusses will be manufactured in Canada from softwood lumber of various dimensions. All the wooden components required for the specific trusses will be shipped together as sets on the same truck. The components will be finished and ready for assembly.
Representative engineering drawings of several truss designs were submitted. The triangular configurations require that most component parts have one or both ends cut at an angle other than a right angle. However, in some cases, one or a few of the components may be straight cut at the ends. In these cases the straight cut parts are designed to fit this way in the particular truss. No additional cutting is intended.

The product being imported consists of all the components required to make a specific number of trusses according to the particular engineering designs. The components (whether with angle cuts or with straight cuts on the ends) need only to be assembled together with connecting hardware. Classification will be governed by General Rule of Interpretation (GRI) 2 (a) of the Harmonized Tariff Schedule of the United States Annotated (HTSUSA) which states:

Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled.

The applicable tariff provision for the unassembled wood trusses will be 4418.90.4020, HTSUSA, which provides for builders' joinery and carpentry of wood; other; roof trusses. The general rate of duty will be 3.6 percent ad valorem.
This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 CFR 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist Paul Garretto at 212-466-5779.

Sincerely,
Robert B. Swierupski Director, National Commodity Specialist Division

**NY 863044** May 16, 1991
CLA-2-44:S:N:N1:230 863044
CATEGORY: Classification
TARIFF NO.: 4401.30.4090
Mr. David Young Mazda Motor Manufacturing (USA) Corp.

1 Mazda Drive Flat Rock, MI 48134
RE: The tariff classification of non-reusable used wood pallets from Japan
Dear Mr. Young:

In your letter dated April 30, 1991, you requested a tariff classification ruling. The ruling was requested on non-reusable used wood pallets. The wood pallets were imported into your Foreign Trade Zone as common packaging for automobile parts. After serving this purpose, the pallets were usually disposed of by being crushed and sent to a land-fill. In order to save on disposal costs, the used pallets will be given away to anyone who can use them for various other purposes such as for fuel. The pallets will be entered as a random mix of good and broken pallets.

The applicable subheading for the non-reusable used wood pallets will be 4401.30.4090, Harmonized Tariff Schedule of the United States (HTS), which provides for sawdust and wood waste and scrap, other. The rate of duty will be Free.
This ruling is being issued under the provisions of Section 177 of the Customs Regulations (19 C.F.R. 177).

A copy of this ruling letter should be attached to the entry documents filed at the time this merchandise is imported. If the documents have been filed without a copy, this ruling should be brought to the attention of the Customs officer handling the transaction.

Sincerely,
Jean F. Maguire Area Director New York Seaport

**NY 802004**
September 29, 1994
CLA-2-44:S:N:N8:230 802004
CATEGORY: Classification
TARIFF NO.: 4407.10.0005; 4421.90.9540
Ms. Loretta J. Evans Fritz Companies, Inc.

P.O. Drawer "G" Blaine, WA 98230
RE: The tariff classification of used railroad ties from Canada; principal use; class or kind.

Dear Ms. Evans:

In your letter dated June 20, 1994, on behalf of your client, Pacific Northern Rail Contractors Corp. (Clearbrook, B.C., Canada), you requested a tariff classification ruling. In a letter dated August 22, 1994, your client submitted additional information directly to this office in response to questions which we sent to you on July 19, 1994. The goods in question are used wooden "relay ties" (railroad ties) dating from 1976 to 1982. They are creosote-treated spruce, pine or fir, and measure 7" x 9" x 8' and 7" x 9" x 9'.

You indicate that the ties conform to American Railway Engineering Association standards for track structures, and that they are in fact being imported for relay purposes, i.e., to upgrade or rehabilitate existing railroad trackage. Letters from two actual users of the ties (Central Montana Rail, Inc. and Condon Brothers, Inc.) were submitted as verification of this circumstance.

You note that used railroad ties not meeting specifications and imported primarily for use as landscaping timbers were previously classified by Customs as lumber or as articles of wood. You suggest, however, that since the instant relay ties do meet specifications and are actually for installation on railway track, they should be eligible for classification in heading 4406, Harmonized Tariff Schedule of the United States Annotated (HTSUSA), which provides for railway or tramway sleepers (cross-ties) of wood.

While we understand your reasoning, we find that heading 4406 is not an "actual-use provision," i.e., that it is not governed by the particular use to which specific articles entered under it are put. It is, however, a "use provision" as outlined in Additional U.S. Rule of Interpretation 1(a), HTSUSA: "In the absence of special language or context which otherwise requires--a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use." (Emphasis supplied.)

We are of the opinion that, as a class or kind, new or unused railroad ties are principally used in railroad construction/rehabilitation, but that used railroad ties are principally used as landscape timbers. In this context, we find that used ties, regardless of how they are employed after importation, do not belong to that class or kind of good which can properly be classified as railroad ties. Accordingly, the applicable tariff provision for the used "relay ties," when imported in the condition of treated pieces of lumber, not further manufactured, will be 4407.10.0005, HTSUSA, which provides for wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 mm: coniferous...treated with paint, stain, creosote or other preservative. The general rate of duty will be free. (Holes made by spikes or other nails would not be considered "further manufacturing.") If the ties are imported in a further-manufactured condition (for example, with metal anti-splitting devices pressed into their ends), the applicable subheading will be 4421.90.9540, HTSUSA, which provides for other (non-enumerated) articles of wood. The general

rate of duty will be 5.1%.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 CFR 177).

A copy of this ruling letter should be attached to the entry documents filed at the time this merchandise is imported. If the documents have been filed without a copy, this ruling should be brought to the attention of the Customs officer handling the transaction.

Sincerely,

Jean F. Maguire Area Director New York Seaport

**HQ 955635**
April 6, 1994
CLA-2 CO:R:C:T 955635 BC
CATEGORY: Classification
TARIFF NO.: 4421.90.9540
Eugene P. Kerven District Director of Customs U.S. Customs Service 300 Second Avenue, South Great Falls, Montana 59401
RE: Application for further review of protest no. 3304-93- 100041; classification of used railroad ties; landscaping timbers; principal use; condition as imported; **HRL 954924**
Dear Mr. Kerven:

This is a decision on an application for further review of a protest timely filed by Holje Customs Brokers, Inc., on behalf of Cando Contracting. The protest objects to your decision concerning the classification of used railroad ties imported into the United States for use as landscaping timbers.

FACTS:

The merchandise at issue are 6 inch x 8 inch x 9 foot pieces of lumber that have been used as railroad ties in Canada. After such use, they are imported into the United States for use principally in landscaping. They are not imported for use as railroad ties, nor are they so used, in the United States.

The Customs Protest and Summons Information Report (CF 6445A) indicates that the used ties, by the time of entry, probably have been in use in Canada as railroad ties for approximately 25 years. Consequently, they would be notched from wear. Also, they would have been treated with creosote prior to being put into use initially as railroad ties.

The used ties were entered on July 21, 1993, under subheading 4406.90.0000, Harmonized Tariff Schedule of the United States Annotated (HTSUSA), which provides for railroad ties of wood that have been impregnated. On September 14, 1993, Customs issued a Notice of Action (CF 29) informing the importer that the entry was to be liquidated under subheading 4421.90.9540, HTSUSA, which provides for other articles of wood. The entry was liquidated on November 5, 1993, and this protest was timely filed on November 19, 1993. In the protest, the importer contends that the used ties should be classified as railroad ties under heading 4406, HTSUSA.
ISSUE:

Are used railroad ties that are no longer suitable for use as railroad ties and are imported for use principally as landscape timbers classifiable as railroad ties under heading 4406, HTSUSA, and, if not, what is the proper classification?
LAW AND ANALYSIS:

In Headquarters Ruling Letter **(HRL) 954924**, dated December 7, 1993, we addressed the issue of classification of used railroad ties from Canada. There, the used ties were described as no longer fit for use as railroad ties. They were imported for use as landscaping timbers. They were not being sold to, or used by, railroad companies. The ruling held the following:

Used railroad ties that no longer meet the specifications for railroad ties and are used as landscaping timbers are classifiable, if not further manufactured, under heading 4407, HTSUSA, as wood sawn lengthwise of a thickness exceeding 6 mm. (Holes made by spikes or other nails is not evidence of further manufacturing.) The type of wood and other characteristics will determine the precise subheading. . . . If the used railroad ties are further manufactured, they are classifiable as other

articles of wood under heading 4421, HTSUSA.
The recipient of **HRL 954924**, a customs broker, submitted that ruling request on behalf of the party in this protest identified on the CF 6445A as the seller and shipper, Cando Contracting of Brandon, Manitoba, Canada. It appears that the used ties that were ruled upon in **HRL 954924** are the same kind of ties at issue in this protest.

The only contention in this protest is that used railroad ties are nonetheless railroad ties and should be so classified regardless of their condition or their use after importation as landscape timbers. It is argued that heading 4406, HTSUSA, is not a use provision and that railroad ties, new or used, should be classified as such under that eo nomine provision.

Heading 4406, HTSUSA, provides for the following:

4406 Railway or tramway sleepers (cross-ties) of wood:

4406.10.00 Not impregnated.

4406.90.00 Other.

The Explanatory Notes (EN's) to the Harmonized Commodity Description and Coding System provide the following for heading 44.06 (Vol. 2, p. 626):

This heading covers unplaned wood in pieces of more or less rectangular section of the kind commonly used to support railway or tramway track. The heading also includes switch ties, which are longer than sleepers, and bridge ties, which are wider and thicker and usually longer than sleepers.

The edges of these products may be roughly chamfered and they may be provided with holes or seatings for fixing the rails or chairs. They may also sometimes be strengthened at the ends by means of staples, nails, bolts or steel strips to prevent their splitting.

The products of this heading may be surface treated with insecticides or fungicides for the purpose of protection. For long-term preservation, they are often impregnated with creosote or other substances.

The language of the heading and the EN's clearly indicates that heading 4406, HTSUSA, is a use provision. It covers sawn pieces of lumber used for tracking, such as railroad track and tramway track: sleepers, switch ties, and bridge ties. We do not agree with the claim made in the protest that heading 4406, HTSUSA, is not a use provision. (Note that a tariff provision based on use need not contain the words "used for," or something similar. E.C. Lineiro v. United States, 37 CCPA 10, 14, C.A.D. 411 (1949).)
Additional U.S. Rule of Interpretation 1(a) provides the following:

1. In the absence of special language or context which otherwise requires --
(a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.

One effect of designating a tariff provision as a use provision is to require that a particular article belong to a certain class or kind of article in order to be classified within that provision. If it belongs to that class or kind of article, it is classifiable within that provision regardless of how it is used after

importation. (The class or kind is defined by the principal use of that class or kind of article in the United States at or immediately before the time of entry.) Railroad ties are used for railroad tracking. In fact, they must meet certain specifications of the American Railway Engineering Association in order to be so used. This limitation, an important safety standard, defines the class. Sawn pieces of lumber that do not meet specifications cannot be used as railroad ties and thus fall outside the class; sawn pieces of lumber that meet specifications can be used as railroad ties and are within the class.

The goods at issue in this protest - whether they are referred to as pieces of lumber or used railroad ties - are imported into the United States in a used condition, such that they do not meet requisite specifications and are no longer usable as railroad ties; instead, they are used principally as landscape timbers. Goods are classified under the HTSUS in their condition as imported. United States v. Citreon, 223 U.S. 407 (1911). The NIS for this commodity stated that used railroad ties are used principally in the landscaping business. Since the used railroad ties in question, unlike new, unused railroad ties, are not used principally as railroad ties, they are not classifiable as railroad ties within the scope of heading 4406, HTSUSA; they are not of the class or kind of sawn lumber which qualify for use as railroad ties.

The CF 6445A cites several rulings that are alleged to support the importer's view that a used article is nonetheless classified in the tariff provision providing for that article. It would follow from this proposition that the used railroad ties should be classified as railroad ties in heading 4406, HTSUSA. Although we do not here rule on this proposition, neither do we reject it. On certain facts, it may apply. However, on the facts of the instant case, it is inapplicable. Further, three of the four rulings cited do not support the proposition or the importer's contention that the used ties at issue should be classified as railroad ties. In New York Ruling Letter **(NYRL) 863044**, dated May 16, 1991, Customs classified non-reusable wood pallets that were crushed and broken under subheading 4401.30.4090, HTSUSA, which provides for wood waste and scrap, not as wood pallets under heading 4415, HTSUSA. In **NYRL 884063**, dated April 1, 1993, reusable wood pallets were classified under heading 4415, HTSUSA, and non-reusable pallets were classified as wood waste and scrap under heading 4401, HTSUSA. In **NYRL 867195**, dated October 9, 1991, Customs classified as netting articles made from used (worn out) commercial fishnetting. The imported articles were not "used fishnetting"; they were articles in their own right made from material cut from used fishnetting. The other ruling cited, Headquarters Ruling Letter **(HRL) 951326**, dated May 29, 1992, classified used lead-acid batteries as batteries under heading 8507, HTSUSA. They had been entered as lead waste and scrap under heading 7802, HTSUSA. It was determined that both headings applied equally to the used batteries and that neither aspect of the articles imparted essential character. Therefore, the batteries were classified under the heading for batteries on the basis of GRI 3(c). This case is also distinguishable from the instant case, where used railroad ties do not meet the specifications for railroad ties, are imported for use principally as landscape timbers, and thus do not fall within the class or kind of sawn wood used as railroad ties.

Based on the foregoing, we conclude that the rulings cited in the CF 6445A are not applicable to the instant case.

Finally, after review of the arguments made in this protest, which necessarily have prompted a review of **HRL 954924**, we conclude that the ruling is correct in its holding that used railroad ties that no longer meet specifications for use as railroad ties and are imported into the United States for use as landscape timbers are not classifiable as railroad ties under heading 4406, HTSUSA. As stated in that ruling, such ties are classifiable under heading 4407, HTSUSA, which provides for sawn pieces of lumber exceeding a thickness of 6 mm, unless they have been advanced by processing beyond planing, sanding, or finger- jointing, in which case they would be classifiable under heading 4421, HTSUSA, which provides for other articles of wood not provided for in other headings of Chapter 44. The merchandise at issue in this protest was classified in subheading 4421.90.9540, HTSUSA.