No. 03-2748C
(Judge Baskir)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

B.B. PALLETS, INC.

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

CHRISTIAN J. MORAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6299
Fax: (202) 514-7969

Attorneys for Defendant

OF COUNSEL:

Ted Kundrat
Attorney
United States Customs
and Border Protection
6026 Lakeside Blvd.
Indianapolis, IN 46278

July 28, 2004

# TABLE OF CONTENTS

PAGES

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statutory And Regulatory Framework For Importing Merchandise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Statutes And Regulations Specify The Procedures For Classifying Merchandise . . . . . . . . . . . . . . . . . . . . . . 3

B. B.B. Pallets Did Not Comply With The Procedures For Challenging Classifications . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. This Court Does Not Possess Jurisdiction To Entertain The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A. This Court Possesses Limited Jurisdiction . . . . . . . . . . 11

B. This Court Lacks Jurisdiction To Entertain B.B. Pallets' Challenge To Customs' Classification . . . . . . . 14

C. The Precedent Upon Which B.B. Pallets Relies Is Distinguishable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1. *Trayco, Inc. v. United States* Concerned A Penalty That Could Not Be Challenged In The Court Of International Trade . . . . . . . . . . . . . . . . 16

2. *High Star Toys* Does Not Provide A Basis For Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

D. B.B. Pallets Chose Not To Challenge, In The Court Of International Trade, The Action Underlying The Liquidated Damages Cases . . . . . . . . . . . . . . . . . . . . . 23

1. *United States v. Ataka Am., Inc.* Is Distinguishable Because The Events Arose After Liquidation . . . . . . . . . . . . . . . . . . . . . . . . . 24

2. *Pope Prods. v. United States* Is Distinguishable Because The Issue Arose After Liquidation . . . . 27

3. *Vanderhoof Specialty Wood Products, Inc. v. United States* Demonstrates That The Court Of International Trade Possesses Jurisdiction To Entertain Challenges To Classification Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III. Alternatively, B.B. Pallet's Failure To Exhaust Administrative Remedies Would Require Dismissal Pursuant To RCFC 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

A. Courts May Dismiss For Failing To Exhaust Non-Mandatory Administrative Remedies . . . . . . . . . . . . . . . 32

B. The Complaint Fails To State A Claim Upon Which Relief May Be Granted Because B.B. Pallets Did Not Exhaust Its Administrative Remedies . . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

FEDERAL CASES
PAGES

Alaska v. United States,
32 Fed. Cl. 689 (1995), appeal dismissed,
86 F.3d 1178 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Apotex, Inc. v. Thompson,
347 F.3d 1335 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Booth v. United States,
990 F.2d 617 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Califano v. Sanders,
430 U.S. 99 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Casa De Cambio Comdiv S.A. De C.V. v. United States,
291 F.3d , 1356 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Doherty v. United States,
500 F.2d 540, 205 Ct. Cl. 34 (1974) . . . . . . . . . . . . . . . . . . . . . . . . 20

Dynalectron Corp. v. United States,
4 Cl. Ct. 424 aff'd, 758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . . . . . 11

Emery W.W. Airlines, Inc. v. United States,
49 Fed. Cl. 211 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ewing v. United States,
36 Fed. Cl. 159 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Franchi v. Manbeck,
972 F.2d 1283 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Frontier Insurance Co. v. United States,
276 F. Supp. 2d 1334 (CIT 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Gallucci v. United States,
41 Fed. Cl. 631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

General Motors Corp. v. United States,
46 Fed. Cl. 652 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Halas v. United States,
28 Fed. Cl. 354 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

* High Star Toys v. United States,
32 Fed. Cl. 176 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20, 32

Johnson Controls World Services, Inc. v. United States,
44 Fed. Cl. 334 (Fed. Cl. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

K Mart Corp. v. Cartier, Inc.,
485 U.S. 176 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Macrotel International Corp. v. United States,
24 Fed. Cl. 98 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 31

McCarthy v. Madigan,
503 U.S. 140 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

McCauley v. United States,
38 Fed. Cl. 250 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

McNutt v. General Motors Acceptance Corp. of Indiana,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Mercado Juarez Gringos v. United States,
796 F. Supp. 531 (CIT 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mients v. United States,
50 Fed. Cl. 665 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Mississippi Department of Rehabilitation Services v. United States,
58 Fed. Cl. 371 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Myers v. Bethlehem Shipbuilding Corp.,
303 U.S. 41 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Nike, Inc. v. Rubber Mftrs. Associates, Inc.,
509 F. Supp. 912 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 22

* Pope Prods. v. United States,
15 C.I.T. 279, 283 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Reynolds v. Army & Air Force Exch. Service,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rice v. United States,
31 Fed. Cl. 156 (1994), aff'd,
48 F.3d 1236 (Fed. Cir. 1995) (table) . . . . . . . . . . . . . . . . . . . . . . 11

Simons v. United States,
497 F.2d 1046 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

St. Vincent's Medical Ctr. v. United States,
32 F.3d 548 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Thomson Consumer Electronics, Inc. v. United States,
247 F.3d 1210 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Tippett v. United States,
185 F.3d 1250 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

* Trayco, Inc. v. United States,
994 F.2d 832 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . passim

* United States v. Ataka America, Inc.,
826 F. Supp. 495 (CIT 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Newport News Shipbuilding & Dry Dock Co.,
933 F.2d 996 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Ruel,
959 F.2d 1572 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Toshoku America Inc.,
879 F.2d 815 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

* United States v. Utex International, Inc.,
857 F.2d 1408 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26

Universal Electronics v. United States,
112 F.3d 488 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Vanderhoof Specialty Wood Products, Inc. v. United States,
2004 Ct. Intl Trade LEXIS 23 (C.I.T. 2004) . . . . . . . . . . . . . . . . 23, 29

FEDERAL STATUTES

United States Codes

19 U.S.C. § 1500(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

19 U.S.C. § 1504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

19 U.S.C. § 1514 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

19 U.S.C. § 1514(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

19 U.S.C. § 1514(a)(3) and (4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

19 U.S.C. § 1515(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

19 U.S.C. § 1515(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19 U.S.C. § 1592(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

19 U.S.C. § 1595a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. § 1491(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1581(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

28 U.S.C. § 1582 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 2631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 2636(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 2639(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19 C.F.R. § 12.140(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Codes of Federal Regulations</u>

19 C.F.R. § 113.62(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

19 C.F.R. § 113.62(l)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

19 C.F.R. § 142.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19 C.F.R. § 159.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 25

19 C.F.R. § 172.11(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

19 C.F.R. § 174.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19 C.F.R. § 174.29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| B.B. PALLETS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2748C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiff's, B.B. Pallets, Inc. ("B.B. Pallets"), complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. In support of this motion, we rely upon the pleadings and the following brief and appendix.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether this Court possesses jurisdiction to entertain a claim for a refund of liquidated damages brought by an importer who elected to make payment of those liquidated damages under a surety bond in favor of United States Customs and Border Protection ("Customs") rather than properly and directly challenge the necessary underlying Customs decision

in accordance with law and regulation?

2. Whether this Court should dismiss the complaint for failing to state a claim upon which relief can be granted when B.B. Pallets has failed to exhaust its administrative remedies for almost every entry at issue?

## STATEMENT OF THE CASE

### I. Nature Of The Case

This case arises out of B.B. Pallets' importation of certain wood items into the United States. At entry, B.B. Pallets declared that the items were properly classifiable under the Harmonized Tariff Schedules of the United States ("HTSUS") as "other articles of wood" and "other load boards." Customs determined that the items were properly classified as softwood lumber products, a change that altered the import requirements because B.B. Pallets was required to produce export permits (also called "lumber certificates") from the Government of Canada. Because B.B. Pallets did not produce those permits, Customs assessed liquidated damages under a surety bond B.B. Pallets had executed in Customs' favor. Customs "liquidated," or rendered administratively final, the entries under the classification provision requiring the export permits. B.B. Pallets could have challenged Customs' classification decisions administratively, and

then judicially, and, if successful, eliminated the basis for the liquidated damages. Instead, B.B. Pallets elected to make payment of the liquidated damages. (B.B. Pallets did, in fact, challenge the change in classification for five of the entries at issue in this case and could still pursue that challenge judicially for four of those five entries.) B.B. Pallets now seeks a refund of the liquidated damages. The gravamen of the complaint is that Customs should have classified the merchandise as "other articles of wood" and "other load boards" and thus not required export permits.

## II. Statutory And Regulatory Framework For Importing Merchandise

### A. Statutes And Regulations Specify The Procedures For Classifying Merchandise

At the heart of all of B.B. Pallets' claims is an allegation that Customs misclassified the subject imports. Compl. ¶¶ 5-8, 40, 58-61, 82, 90, 97, 108, 116, 119. Therefore, understanding the statutory and regulatory scheme for classification of merchandise is necessary in demonstrating, among other things, why the issue of classification is closed for all but four of the entries at issue, and is about to close for those four. (The four entries referred to are EG6-7613779-7, EG6-7614290-4, EG6-7614450-4, and EG6-7614565-9 (see Compl. Exh. 1), which were the subjects of protest number 0901-00-100508, along with one other entry not at issue in

this case. The protest was denied on February 2, 2004. See App. 48.)

When an importer brings merchandise into this country, the importer presents entry documentation in which it identifies the nature of the merchandise, the appropriate HTSUS classification, and the quantity and value of the merchandise. See, e.g., copy of Customs Form 7501 filed by B.B. Pallets, App. 1 -2; Complaint p. 2 n.4. The entry process is described in 19 C.F.R. Part 142. Virtually all commercial importers post a surety bond with Customs in order to obtain faster release of merchandise. See 19 C.F.R. § 142.4.

An importer's bond makes the importer and its surety jointly and severally liable for the payment of duties and for liquidated damages assessed by Customs for failure to comply with certain Customs regulations. See 19 C.F.R. § 113.62; cf Compl. ¶¶ 51-52 (describing customs bond). The bond is a contract between the principal importer and its surety, but the terms of the bond are set forth in Customs regulations and incorporated in the bond contract by reference. See copy of Customs Form 301 submitted to Customs by B.B. Pallets and attached as App. 3.

Generally within one year after entry, Customs "liquidates" or administratively renders final matters relating to an importer's entry. See

19 U.S.C. § 1504, 19 C.F.R. § 159.1. At liquidation, Customs may accept the importer's classification or assign a classification that Customs believes is accurate. 19 C.F.R. Part 152 Subpart B; Complaint p.2 n.4. As part of the liquidation process, pursuant to 19 U.S.C. § 1500(b), Customs fixes the final classification of merchandise and the amount of duty due.

Within 90 days after liquidation, an importer may file a protest with Customs contesting, among other points, the classification and the rate and amount of duty charged. 19 U.S.C. § 1514(a); 19 C.F.R. Part 174, especially § 174.11. If that protest is denied, the importer may file, within 180 days, a summons at the Court of International Trade to seek review of the agency's denial of the protest. 28 U.S.C. §§ 1581(a) and 2636(a). If this process is not followed, all of the decisions made by Customs at liquidation, including classification, become "final and conclusive upon all persons (including the United States and any officer thereof )." 19 U.S.C. § 1514(a).

Given a timely protest and summons, the Court of International Trade possesses exclusive jurisdiction to review classification decisions. 19 U.S.C. § 1515(c); 28 U.S.C. § 2631; Frontier Ins. Co. v. United States, 276 F. Supp. 2d 1334, 1337 (CIT 2003) (stating "[t]his court's subject-matter

jurisdiction for matters of classification under the HTSUS is pursuant to 28 U.S.C. § 1581(a)"); Macrotel, 24 Fed. Cl. at 99 (stating "matters that are protested or 'protestable' are within [the Court of International Trade's] jurisdiction"); Mercado Juarez Gringos v. United States, 796 F. Supp. 531, 531 (CIT 1992) (stating that the Court of International Trade possesses jurisdiction to entertain review of a tariff classification administrative determination). By statute, Customs' classification decision "is presumed to be correct." 28 U.S.C. § 2639(a)(1); Universal Electronics v. United States, 112 F.3d 488, 490, 493 (Fed. Cir. 1997).

B. B.B. Pallets Did Not Comply With The Procedures For Challenging Classifications

Here, Customs notified B.B. Pallets after entry, but before liquidation, that there was a classification question in many of its entries. For some of the entries, Customs used a Customs Form 29 (see App. 4) and, for all entries, Customs gave notice through the issuance of liquidated damages notices (Customs Form 5955A). The change in classification required that lumber certificates be provided to Customs pursuant to the SLA.

B.B. Pallets' failure to provide those certificates constituted a breach of the term of the bond at 19 C.F.R. § 113.62(k), specifically noncompliance with 19 C.F.R. § 12.140(a). As a result of that default,

Customs assessed liquidated damages under 19 C.F.R. § 113.62(l)(5). Thus, the liquidated damages are simply the ultimate result of the classification decision, which became final through liquidation of the entries in this case, which occurred on September 15, 2000, and May 18, 2001.

The only way to avoid finality of that classification decision and, thus, the bond breach leading to liquidated damages, is through the protest mechanism described above, with judicial review available at the Court of International Trade. Under the express provisions of 19 U.S.C. § 1514(a), classification is an issue which must be protested to avoid finality and, under 28 U.S.C. § 1581(a), the Court of International Trade is the only court with jurisdiction to review a the denial of a protest. However, by its inaction, B.B. Pallets has waived its right to have Customs' classification of the merchandise at issue in this case reviewed in the only forum with jurisdiction to do so, with the exception of the four entries for which Customs' protest decision is not yet 180 days old.

For more details, we respectfully refer the Court to the separate statement of facts that will be filed with the reply brief.

## SUMMARY OF THE ARGUMENT

B.B. Pallets is attempting to challenge how Customs classified

certain merchandise. (This classification decision underlies the collection of liquidated damages against B.B. Pallets.)

Although B.B. Pallets invokes the jurisdiction of this Court, Congress granted the Court of International Trade, the exclusive authority to review classification decisions. Because the Court of International Trade is the sole judicial forum that may entertain challenges to how Customs classified merchandise, this Court necessarily lacks jurisdiction to entertain the complaint. Thus, the Court should dismiss this case pursuant to RCFC 12(b)(1).

Alternatively, this Court should dismiss the case for failing to state a claim upon which relief may be granted pursuant to RCFC 12(b)(6), upon the ground that B.B. Pallets failed to exhaust its administrative remedies. Congress established a specific procedure for challenging Customs' classifications. For almost every entry at issue in this case, B.B. Pallets has failed to follow the procedure prescribed in the statute. Accordingly, this Court should exercise its discretion and refrain from entertaining the complaint.

## ARGUMENT

### I. Legal Standards

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or on appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993); United States v. Newport News Shipbuilding & Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden to establish jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996).

This Court may grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) when, in view of the record presented, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Johnson Controls World Servs., Inc. v. United States, 44 Fed. Cl. 334, 340 (Fed. Cl. 1999) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957))); accord McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997). Moreover, although the factual

allegations, as pled, must be presumed true and viewed most favorable to the non-movant, the burden of establishing the Court's jurisdiction, as well as the viability of purported claims, falls squarely upon the non-movant. Johnson Controls, 44 Fed. Cl. at 340; McCauley, 38 Fed. Cl. at 262; Emery W.W. Airlines, Inc. v. United States, 49 Fed. Cl. 211, 219 (2001) (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)); Rice v. United States, 31 Fed. Cl. 156, 161 (1994), aff'd, 48 F.3d 1236 (Fed. Cir. 1995) (table).

In evaluating a motion to dismiss made under 12(b)(6) "the Court presumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the nonmoving party." Mississippi Dept. of Rehabilitation Servs v. United States, 58 Fed. Cl. 371, 372 (2003).

## II. This Court Does Not Possess Jurisdiction To Entertain The Complaint

### A. This Court Possesses Limited Jurisdiction

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984). Its jurisdiction to entertain a suit and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). A

waiver of sovereign immunity of the United States cannot be implied, but rather must be unequivocally expressed by Congress. Id. Absent congressional consent to entertain a claim against the United States, the Court of Federal Claims lacks authority to grant relief. Id.

Further, "the Tucker Act is a jurisdictional statute which does not confer a substantive right to recover money damages from the United States." Ewing v. United States, 36 Fed. Cl. 159, 162 (1996) (quoting United States v. Testan, 424 U.S. 392, 398 (1976)). "[I]n order to state a claim under the Tucker Act, [a plaintiff] must find a substantive right in the Constitution, an act of Congress, or an executive department regulation on which to base [his] claim that 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" Ewing, 36 Fed. Cl. at 162 (quoting Dehne v. United States, 970 F.2d 890, 893 (Fed. Cir. 1992)); see United States v. Mitchell, 463 U.S. 206, 216-17 (1983)). "In other words, the plaintiff 'must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.'" Tippett v. United States, 185 F.3d 1250, 1255 (Fed. Cir. 1999) (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998)); see

Mients v. United States, 50 Fed. Cl. 665, 670-71 (2001).

B.B. Pallets alleges jurisdiction based upon the Tucker Act. Compl. ¶ 2. However, B.B. Pallets has failed to cite any separate money-mandating constitutional provision, statute, or regulation, the violation of which would support a claim for damages against the United States.

Indeed, B.B. Pallets fails even to acknowledge the relevant portion of the Tucker Act, namely 28 U.S.C. 1491(c), which states, "[n]othing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade...." 28 U.S.C. 1491(c); Macrotel Int'l Corp. v. United States, 24 Fed. Cl. 98, 99 (1995) ("This Court lacks jurisdiction over "any civil action within the exclusive jurisdiction of the Court of International Trade."). Because the Court of International Trade possesses exclusive jurisdiction to entertain proper claims concerning Customs' classification, this Court cannot entertain this claim.

### B. This Court Lacks Jurisdiction To Entertain B.B. Pallets' Challenge To Customs' Classification

B.B. Pallets alleges that its subject imports were not classified properly. As established above, the Court of International Trade possesses exclusive jurisdiction to review challenges to Customs'

classifications. 28 U.S.C. § 1581(a). "When Congress provides an 'orderly administrative mechanism' for review of agency action, that mechanism is to be respected." Franchi v. Manbeck, 972 F.2d 1283, 1288 (Fed. Cir. 1992), quoting Califano v. Sanders, 430 U.S. 99, 102 (1977). See St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 549 (1994)(stating "[c]ourts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum" and citing United States v. Fausto, 484 U.S. 439, 454-55 (1988)). Because this Court cannot entertain those claims over which the Court of International Trade possesses exclusive jurisdiction, this Court cannot entertain this challenge.

Congress has enacted a “scheme of review” for Customs’ classification decisions, and it granted the Court of International Trade exclusive jurisdiction to review Customs' classification decisions. However, jurisdiction vest only if the plaintiff pursues its rights by filing a timely protest and summons. Here, B.B. Pallets has waived judicial review of the classification decisions underlying the subject liquidated damages by choosing not to pursue its rights to protest and appeal adverse protest

decisions to the Court of International Trade. B.B. Pallets's choice not to pursue its statutory rights does not permit it to circumvent the Court of International Trade's exclusive jurisdiction to review classification matters. That B.B. Pallets' preferred forum is apparently the Court of Federal Claims does not meant that this Court possesses jurisdiction to entertain B.B. Pallets' claims.

### C. The Precedent Upon Which B.B. Pallets Relies Is Distinguishable

B.B. Pallets characterizes its case as seeking a refund for liquidated damages. B.B. Pallets asserts that this Court possesses jurisdiction, relying upon Trayco, Inc. v. United States, 994 F.2d 832 (Fed. Cir. 1993) and High Star Toys v. United States, 32 Fed. Cl. 176 (1994) . Compl. ¶ 2. This reliance is misplaced. Trayco and High Star Toys present wholly different claims.

#### 1. *Trayco, Inc. v. United States* Concerned A Penalty That Could Not Be Challenged In The Court Of International Trade

In Trayco, Customs assessed a penalty against the importer for gross negligence because the importer failed to mark its merchandise (shower heads) with the country of origin. Trayco, 994 F.2d at 835. Customs assessed a penalty pursuant to 19 U.S.C. § 1592(a). Id. The

importer attempted to have the penalty mitigated several times and finally paid the mitigated amount "under protest." Id. The importer then commenced an action in Federal district court, seeking a refund of the mitigated penalty amount. The United States Court of Appeals for the Federal Circuit found that although the Federal district courts "do not possess subject matter jurisdiction over controversies within the exclusive jurisdiction of the Court of International Trade," Congress had not "explicitly granted exclusive jurisdiction to the Court of International Trade over refund suits initiated by importers." Id. at 836-37. The Federal Circuit "conclude[d] that a gap exists in the Court of International Trade's exclusive jurisdiction for an action brought by an importer against the United States for refund of a penalty improperly assessed and exacted under 19 U.S.C. § 1592(a),(c)." Id. at 836 (emphasis added). The court, therefore, found that the district court possessed jurisdiction to entertain a penalty refund suit.

Trayco differs from the present case in the character of the underlying action. In Trayco, as the emphasized passage indicates, Customs imposed a penalty pursuant to 19 U.S.C. § 1592. This type of penalty is not "protestable" through an administrative process that leads to

the Court of International Trade. Compare 19 U.S.C. § 1514(a); 19 C.F.R. § 174.11 (listing matters subject to protest). Thus, Trayco could not challenge the penalty in the Court of International Trade. See Trayco, 994 F.2d at 836-37 (discussing 28 U.S.C. §§ 1581-82).

In contrast, B.B. Pallets complains that Customs misclassified its merchandise. This alleged misclassification is the sole basis upon which B.B. Pallets seeks relief from liquidated damages. B.B. Pallets could have protested Customs' liquidation decision to classify its merchandise as softwood lumber. Clearly B.B. Pallets was aware of its protest rights because it did protest liquidation of five of the 49 entries at issue in this case. B.B. Pallets chose not to exercise those rights for the remaining entries.

If B.B. Pallets had filed a timely and proper protest and if B.B. Pallets eventually prevailed upon its protest, then Customs would have cancelled the liquidated damages assessed under the bond because no breach would have occurred. 19 C.F.R. § 172.11(b). Customs would likely have held collection of the liquidated damages in abeyance pending the outcome of the protests, as it did for the five protested entries. Even if B.B. Pallets had paid these liquidated damages while pursuing the protest

process and seeking review at the Court of International Trade, a refund of liquidated damages, although possibly unprecedented, probably would have been made. See 19 U.S.C. § 1515(a); 19 C.F.R. § 174.29. Thus, B.B. Pallets possessed the opportunity to seek judicial review of the action underlying the liquidated damages. Simply put, the gap in jurisdiction present in Trayco does not exist here.

Unlike Trayco, B.B. Pallets does not seek a refund of a penalty. Rather, B.B. Pallets seeks a determination that its products were not classified properly as the sole basis for overturning Customs' liquidated damages assessments and obtaining a refund. Customs is charged with the responsibility of determining classification issues at liquidation. With the exception of the four entries discussed above, that determination is now final and conclusive on all parties and no longer subject to judicial review even at the Court of International Trade.

In addition, B.B. Pallets appears to claim that its payment of liquidated damages "under protest" is similar to the penalty paid under protest in Trayco. Compl. at Exhibit 1. It is not. In Trayco, the importer paid the mitigated Customs penalty "under protest" making clear that it reserved "all rights to judicial review following the exhaustion of the

administrative remedies." Trayco, Inc. 994 F.2d at 835. Here, in contrast, B.B. Pallets has failed to invoke, let alone exhaust, its administrative remedies as to classification of all but five of the entries. (See Part _, below.)

2. *High Star Toys* Does Not Provide A Basis For Jurisdiction

The second case upon which B.B. Pallets relies is High Star Toys. Compl. ¶ 2. B.B. Pallets' reliance is misplaced. In High Star Toys, Customs seized a shipment of toys upon entry because the toys were a threat to children. High Star Toys, 32 Fed. Cl. at 177. In connection with the seizure, High Star Toys paid seizure and storage charges to the Government. These were apparently mischaracterized as a penalty at the administrative level. Id. at 180. (If Customs had characterized the fees for storage correctly, they would have been considered as “charges” or “exactions” related to the “exclusion of merchandise” that are “protestable” pursuant to 19 U.S.C. § 1514(a)(3) and (4), respectively.)

After seeking administrative relief, the importer paid amounts in mitigation of forfeiture and later sought refund of those amounts. Id. at 178. This Court held that it possessed jurisdiction to entertain the refund claim. The Court's analysis for its holding regarding subject matter

jurisdiction is set out in a single paragraph:

> Historically, refunds for improper collections of customs duties, and the forfeiture provisions of the customs laws, have been considered to be within the scope of the Tucker Act. See Simons v. United States, 497 F.2d 1046, 1049 (9th Cir. 1974); Doherty v. United States, 500 F.2d 540, 205 Ct. Cl. 34 (1974) (Forfeiture under 19 U.S.C. § 1595a(a)--alleged to be a taking); Trayco Inc. v. United States, 994 F.2d 832 (Fed. Cir. 1993) (District court has jurisdiction under Tucker Act to review legality of penalty imposed by Customs Service).

Id. at 179.

This Court's decision in High Star Toys does not provide this Court with subject matter jurisdiction to entertain B.B. Pallet's claims. As an initial matter, High Star Toys is not binding precedent. Casa De Cambio Comdiv S.A. De C.V. v. United States, 291 F.3d , 1356, 1364 n.1 (Fed. Cir. 2002) (citing West Coast General Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994)); General Motors Corp. v. United States, 46 Fed. Cl. 652, 652-53 (2000). Further, we respectfully submit that High Star Toys incorrectly asserted subject matter jurisdiction in that case. It relied upon three cases to support its exercise of subject matter jurisdiction: Simons, Doherty and Trayco. As we have demonstrated above, Trayco is inapposite.

Simons and Doherty similarly provide no support for B.B. Pallets' jurisdictional argument. Both Simons and Doherty were decided in 1974. In 1980, Congress broadened the jurisdiction of the Court of International Trade. By this expansion, Congress intended that the Court of International Trade would be "utilized exclusively in resolutions of conflicts and disputes arising out of tariff and international trade laws, thereby eliminating jurisdictional conflicts between [the Court of International Trade] and the federal district and appellate courts." Nike, Inc. v. Rubber Mftrs. Assocs., Inc., 509 F.Supp. 912, 916-17 (S.D.N.Y. 1981) (citing the legislative history of Pub. L. 96-417 as found in S. Rep. No. 96-466, 96th Congress 1st session).

This case presents a clear example of the type of conflict to be avoided in that granting relief to B.B. Pallets would require changing the classification of merchandise – a matter entrusted exclusively to Customs and the Court of International Trade for the sake of uniformity nationwide. See K Mart Corp. v. Cartier, Inc., 485 U.S. 176, 188 (1988) (noting that Congress' intent in expanding the Court of International Trade's jurisdiction in 1980 was to remedy jurisdictional confusion between the courts and to "ensure uniformity in the judicial decision making process.") The High Star

Toys decision appears not to have considered this change in governing statutes.

Even if this Court were persuaded that jurisdiction existed in High Star Toys, the facts would still differ. In High Star Toys, Customs seized the merchandise pursuant to 19 U.S.C. § 1595a for importation contrary to law. High Star Toys, 32 Fed. Cl. at 178. The Court, therefore, analyzed whether the United States was liable for this seizure or forfeiture of assets. Id. at 180-183.

In contrast, here, Customs did not seize the merchandise imported by B.B. Pallets. Therefore, the unique circumstances that provided the basis for jurisdiction in High Star Toys are not present in this case. Moreover, B.B. Pallets has not alleged that its payment of liquidated damages is in any way similar to seizure or forfeiture.

D. B.B. Pallets Chose Not To Challenge, In The Court Of International Trade, The Action Underlying The Liquidated Damages Cases

In addition to relying upon Trayco and High Star Toys, B.B. Pallets cites to United States v. Ataka Am., Inc., 826 F. Supp. 495, 502 (CIT 1993); Pope Prods. v. United States, 15 C.I.T. 279, 283 (1991), Compl. ¶ 2, n. 1; and Vanderhoof Specialty Wood Products, Inc. v. United States,

2004 Ct. Int'l Trade LEXIS 23 (C.I.T. 2004), JPSR ¶ 4.a. From these references, we infer that B.B. Pallets intends to argue that the Court of International Trade lacks the authority to entertain a challenge to the assessment of liquidated damages. On the contrary, the Court of International Trade does entertain these challenges. See, e.g., United States v. Utex Int'l, Inc., 857 F.2d 1408, 1410 (Fed. Cir. 1988), United States v. Ruel, 959 F.2d 1572 (Fed. Cir. 1992); see also 28 U.S.C. § 1582. In any event, the correct issues is whether the Court of International Trade is the exclusive judicial forum for challenging a classification. The answer to that question is yes.

1. *United States v. Ataka Am., Inc.* Is Distinguishable Because The Events Arose After Liquidation

Although Ataka appears — on a quick reading — to support the position of B.B. Pallets that this Court possesses jurisdiction, this support evaporates when the case is subjected to critical examination. Ataka sets out two different situations regarding whether protests are available: "Where an action by Customs, . . . merges into liquidation, the action must be protested to avoid finality. . . . Where the action does not merge, as in the case of post-liquidation demand for liquidated damages, it need not be protested but may be raised otherwise as a claim or a legal defense."

Ataka, 826 F. Supp. at 502. The challenge to classification at issue in this case falls into the former category that "must be protested" in order to avoid finality under 19 U.S.C. § 1514.

As used in Ataka, "merger" means that, when an entry is "liquidated" (see 19 C.F.R. § 159.1), all of Customs' decisions, actual and potential, merge into the liquidation and ultimately become final pursuant to 19 U.S.C. § 1514. See United States v. Utex Int'l, Inc., 857 F.2d 1408, 1410 (Fed. Cir. 1988). As explained in some detail above, classification is such a decision.

Ataka contains an important, but easily overlooked, qualification: liquidated damages demands that arise post-liquidation do not merge. For this proposition, Ataka cites United States v. Toshoku Am. Inc., 879 F.2d 815, 818 (Fed. Cir. 1989), and United States v. Utex Int'l, Inc., 857 F.2d 1408, 1413-14 (Fed. Cir. 1988). However, the liquidated damages assessed against B.B. Pallets were assessed pre-liquidation, and the underlying classification decision does not fall under this exception to the merger doctrine.

Utex is distinguishable from B.B. Pallets' case because Utex involved a post-liquidation breach and liquidated damages assessment. In Utex,

CBP liquidated an entry of frozen shrimp on February 29, 1980. Utex, 857 F.2d at 1409. At this point, Customs determined that the frozen shrimp was admissible. Even if Customs did not make this determination explicitly, Customs did so because "admissibility" is a protestable decision. See 19 U.S.C. § 1514(a) ("exclusion of merchandise"). If Customs wanted to exclude the merchandise, Customs was required to notify Utex when Customs liquidated the merchandise.

After liquidation, the Food and Drug Administration (FDA) issued a “Notice of Refusal of Admission.” Id. at 1409. Utex did not export the shrimp under Customs’ supervision within 90 days as required by the FDA notice, and Customs pursued collection of liquidated damages for the resulting alleged breach of Utex’s bond. Id. at 1408.

The United States subsequently filed a lawsuit. The court ultimately determined that the liquidation of the entry prior to a finding of inadmissiblity rendered the issue of admissibility final and conclusive. Id. at 1412. Customs was not permitted to collect liquidated damages from the surety. Id.

B.B. Pallets' case differs greatly from Utex. Here, Customs discovered the classification question and issued its liquidated damages

notices prior to liquidation. For at least some of the entries, Customs also notified B.B. Pallets of the change in classification and proposed liquidated damages prior to liquidation (which occurred on September 15, 2000, and May 18, 2001) under a Notice of Action dated July 6, 2000. App. 4. Customs then finalized its classification decision administratively by liquidating the entries. The classification decision "merged" into the liquidation decision and had to be protested (and indeed, it actually was protested for five of the entries) under Ataka. Other than carrying out the consequences of B.B. Pallets' failing to protest and to seek proper judicial review of the classification decisions, Customs has not acted post-liquidation. Thus, Ataka and Utex do not suggest, much less establish, that B.B. Pallets was precluded from bringing its lawsuit at the Court of International Trade.

2. *Pope Prods. v. United States* Is Distinguishable Because The Issue Arose After Liquidation

Pope Products is another example of post-liquidation events not being protestable. Pope Products cites Utex (Pope Products, 15 C.I.T. 279, 282, 285 (1991)) and the facts in Pope Products closely resemble the facts in that case. On December 28, 1981, Customs liquidated the merchandise (canned tomatoes) imported by Pope Products. Id. at 279. A

few weeks later, the FDA issued a Notice of Refusal of Admission. Id. After Pope Products refused to destroy the canned tomatoes as required by the FDA, Customs issued a demand for liquidated damages, using Customs Form 5955A on April 21, 1982. Id. (Customs used the current version of that form in this case.) After certain administrative actions, Pope Products eventually filed a lawsuit in 1989. Id. at 280.

The United States filed a motion to dismiss, arguing that Pope Products should have filed a protest after Customs issued its demand for liquidated damages. Id. Relying in part upon Utex, the court held that Pope Products could not have filed a protest. Id. at 280-83. The court reasoned that "the liquidation decision was in [Pope Products's] favor, thus neither the importer nor the surety had reason to protest it." Id. at 283. The court also noted that the "issue here involves post-liquidation events and according to Utex does not present a protestable decision at any stage." Id. at 285.

Pope Products, therefore, addresses a fact pattern unlike the facts presented by B.B. Pallets, but more like Trayco in that it involved a Government determination which could not be protested. Pope Products did not enjoy the opportunity to challenge the FDA's decision by filing a

protest. B.B. Pallets, however, could have filed protests challenging Customs' decisions regarding classification.

3. *Vanderhoof Specialty Wood Products, Inc. v. United States* Demonstrates That The Court Of International Trade Possesses Jurisdiction To Entertain Challenges To Classification Decisions

Vanderhoof affirmatively demonstrates that B.B. Pallets could have challenged the Customs' classification decision in the Court of International Trade. In Vanderhoof, the plaintiff "filed a complaint with this Court [the Court of International Trade] contesting Customs' reclassification of the subject entries." Vanderhoof, 2004 Ct. Int'l Trade LEXIS at * 3. Although the United States filed a motion to dismiss the complaint, the ground for the motion was not an argument that the Court of International Trade lacked the authority to review Customs' reclassification. Instead, the United States argued (and the Court agreed) that Vanderhoof's complaint did not present a valid controversy between the parties because the classification made by Customs and the classification sought by Vanderhoof were duty free. Furthermore, Vanderhoof's post-complaint assertion that the export permits Customs had required from it should be returned also was found moot, because the SLA had expired by the time the case was decided and the permits would have been useless. Id. at 9.

Therefore, even if Vanderhoof could prevail it would not be entitled to any relief of value. Id. at * 9-10.

The important point from Vanderhoof is that both parties and the Court accepted the proposition that the Court of International Trade could entertain a dispute over the correctness of any classification. Vanderhoof illustrates that the proper forum for classification challenges, like the one B.B. Pallets is attempting to bring in this action, is the Court of International Trade.

In sum, B.B. Pallets is attempting to challenge how Customs classified its merchandise at liquidation. The procedure for making this challenge is to file a protest and then, if the protest is denied, to file an action at the Court of International Trade. The Court of International Trade, not this Court, possesses exclusive jurisdiction to consider the validity of Customs' classification decision. Accordingly, this Court lacks subject matter jurisdiction to entertain B.B. Pallet's complaint.

III. Alternatively, B.B. Pallet's Failure To Exhaust Administrative Remedies Would Require Dismissal Pursuant To RCFC 12(b)(6)

A party is required to exhaust its administrative remedies before bringing a civil action. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938). There are two sources for the doctrine of exhaustion of

administrative remedies: statutory and judicial. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). When a statute dictates that a party exhaust its administrative remedies, any failure to exhaust those remedies is a jurisdictional infirmity that a court cannot waive. Martinez v. United States, 333 F.3d 1295, 1305 (Fed. Cir. 2003) (en banc) (citing McCarthy, 503 U.S. at 144). However, when the basis for requiring exhaustion is the general common law, courts possess discretion to waive any failure to exhaust. McCarthy v. Madigan, 503 U.S. at 144; Halas v. United States, 28 Fed. Cl. 354 (1993).

A. Courts May Dismiss For Failing To Exhaust Non-Mandatory Administrative Remedies

Requiring parties to exhaust their administrative remedies is based upon the sound policy that underlies the judiciary's reluctance to hinder or abrogate the administrative resolution of claims. The Federal Circuit, quoting the Supreme Court, has observed that:

> [t]he basic rationale [of requiring ripeness for judicial action] is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

Apotex, Inc. v. Thompson, 347 F.3d 1335, 1354 (Fed. Cir. 2003)(quoting

Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967)).

The exhaustion requirement is especially important "where the actions that the court discusses are the province of an administrative agency." Id. Under Customs law, the exhaustion requirement for classification is expressed at 19 U.S.C. § 1514.

This Court has dismissed actions for failure to state a claim when the plaintiff failed to exhaust administrative remedies. Gallucci v. United States, 41 Fed. Cl. 631, 645 (pursuant to RCFC 12(b)(4)).

B. The Complaint Fails To State A Claim Upon Which Relief May Be Granted Because B.B. Pallets Did Not Exhaust Its Administrative Remedies

As discussed extensively above, B.B. Pallets did not pursue all its remedies. (However, B.B. Pallets still possesses the ability to pursue additional remedies with regard to four entries.) Specifically, B.B. Pallets enjoyed the right to protest Customs' decision at liquidation. 19 U.S.C. § 1514. B.B. Pallets plainly had the opportunity to do so; it was aware of its protest rights and has been represented by attorneys. B.B. Pallets decided to file only two protests, covering five of the entries at issue, and to file only petitions in the liquidated damages cases on the remaining entries. By failing to protest Customs' classification decisions for nearly all of its

entries, B.B. Pallets prevented the proper administrative process from taking place. Therefore, its classification arguments as to all but four of the entries at issue in this case can never become ripe and available for judicial review due to B.B. Pallets' own choices.

The Federal Circuit recognizes the importance of exhausting administrative remedies in the context of cases arising through Customs. The "filing [of] a protest of a Customs decision as to: (1) the amount of duties owed, or (2) a charge or exaction within the jurisdiction of the Secretary of the Treasury is the first step toward exhaustion of administrative remedies." Thomson Consumer Electronics, Inc. v. United States, 247 F.3d 1210, 1214 (Fed. Cir. 2001) (no need to protest because challenge was to constitutionality of Harbor Maintenance Tax).

Here, B.B. Pallets has not presented a challenge to Customs' classification decision for 44 of the entries. The appropriate procedural device to make this challenge would have been to file a protest with the agency (and, if denied, to file a summons at the Court of International Trade). Because B.B. Pallets did not file protests for those 44 entries, Customs does not have the opportunity to consider the correctness of its classification decisions. For the entries not protested, due to the operation

of 19 U.S.C. § 1514(a), the classification decision is "final and conclusive" as a matter of law. For the five protested entries, B.B. Pallets chose (or has chosen so far) not to exercise its right to appeal Customs' protest decisions in the Court of International Trade, the appropriate and exclusive forum for such matters. This Court should not permit B.B. Pallets to avoid the established structure of administrative review and the effects of 19 U.S.C. § 1514 by filing its lawsuit in this Court. To do so would permit the plaintiff not only to circumvent the administrative process, but to engage in impermissible forum shopping.

Even Trayco reinforces the need to exhaust administrative remedies. The Federal Circuit ultimately found that Trayco had done all it could administratively. Trayco, 994 F.2d at 839. B.B. Pallets, on the contrary, did not. It consciously chose to bypass the administrative process instead.

Finally, requiring parties to invoke and exhaust administrative remedies makes sense. It permits the agency to correct any errors voluntarily and promotes judicial economy and efficiency. B.B. Pallets did not provide Customs with an administrative opportunity to review any but five of the entries at issue in this case and should not be permitted to avoid either the consequences of its choices or the proper forum for its issues

through this action. Accordingly, we respectfully request that this Court dismiss B.B. Pallets's complaint for failure to state a claim upon which relief may be granted.

## CONCLUSION

For these reasons, defendant respectfully requests that the Court dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Christian J. Moran
CHRISTIAN J. MORAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6299
Fax: (202) 514-7969

Attorneys for Defendant

OF COUNSEL:
Ted Kundrat
Attorney
United States Customs and
Border Protection
6026 Lakeside Blvd.
Indianapolis, IN 46278

July 28, 2004