OPPOSITION TO MOTION TO DISMISS

In the

# United States Court of Federal Claims

No. 03-2748C (Baskir, J.)

BB PALLETS, INC.,

*Plaintiff,*

*v.*

UNITED STATES OF AMERICA,

*Defendant.*

Plaintiff's Opposition to Defendant's Motion to Dismiss
Under RCFC Rule 12(b), filed July 28, 2004.

A. Woodson Stuart
JONES & STUART, LLP
2300 M Street, NW, Suite 800
Washington, D.C. 20037
Tel: (202) 297-3196
Fax: (202) 338-0270

Date: August 16, 2004

*Attorney for the Plaintiff*

# TABLE OF CONTENTS


**I.** **STATEMENT OF THE ISSUES** ..................................................... 1

**II.** **STATEMENT OF THE CASE** ........................................................ 2

**III.** **SUMMARY OF ARGUMENT** ...................................................... 17

**IV.** **ARGUMENT** ........................................................................... 17

- **A.** **The Legal Standard for Dismissal** ..................................... 19
- **B.** **BBP's Claim Falls Squarely Within the Terms of 28 U.S.C. § 1491(a).** ......................................................... 20
- **C.** **BBP's Claim Is not Excluded from 28 U.S.C. § 1491(a) by 28 U.S.C. § 1491(c).** ..................................................... 23
- **D.** **There Is no Principled Basis for Distinguishing *Trayco* from this Case.** ..................................................... 27
- **E.** **There Is no Principled Basis for Distinguishing *High Star Toys* from this Case.** ........................................ 31
- **F.** **BBP Was Not Required to Protest the Classification of the Subject Entries at Liquidation.** ............................... 34
- **G.** **BBP Exhausted its Administrative Remedy by Filing a Petition Under 19 U.S.C. § 1623(c).** ................................. 48

**V.** **CONCLUSION** ........................................................................ 49

# TABLE OF AUTHORITIES

*Cases*

*American Bayridge Corp. v. United States,* 35 F. Supp. 2d 922 (Ct. Int'l Trade 1998), *vacated in part without pub. op.,* 1999 WL 997303 (Fed. Cir. Oct. 26, 1999) . .................................. 47

*Atkins, Kroll & Co. v. United States,* 50 C.C.P.A. 62 (1963).................... 10

*Boen Hardwood Flooring, Inc., v. United States,* 254 F. Supp. 2d 1349 (Ct. Int'l Trade 2002).................................. 10

*Bristol-Myers Squibb Co. v. United States,* 48 Fed. Cl. 350 (2000) ........ 22

*Cambridge Sav. Bank v. City of Boston,* 8 N.E.2d 790 (Mass. 1937) ..... 23

*C.J. Tower & Sons v. United States,* 40 C.C.P.A. 30 (1952).................. 42

*F.W. Myers & Co. v. United States,* 345 F. Supp. 1006 (Cust. Ct. 1972)............................................................... 42

*Hewlett-Packard Co. v. United States,* 189 F.3d 1346 (Fed. Cir. 1999).. 42

*E.M. Chems., Inc. v. United States,* 923 F. Supp. 202 (Ct. Int'l Trade 1996) ......................................................... 42

*F.E. MacArtney v. United States,* 31 Cust. Ct. 139 (1953)...................... 10

*High Star Toys, Inc. v. United States,* 32 Fed. Cl. 176 (1994) .........*passim*

*In re New York,* 178 F.2d 765 (2d Cir. 1950) ........................................ 23

*K-Mart Corp. v. Cartier, Inc.,* 485 U.S. 176 (1988) ................................ 24

*Key Pharmaceuticals v. Hercon Laboratories Corp.,* 161 F.3d 709 (Fed. Cir. 1998)............................................................... 45

*Magone v. Luckemeyer,* 139 U.S. 612 (1891) ....................................... 22

*McCandless v. Merit Systems Protection Board,* 996 F.2d 1193 (Fed. Cir. 1993) .......... 43

*McCarthy v. Madigan,* 503 U.S. 140 (1992) .......... 32

*Merritt v. Welsh,* 104 U. S. 694 (1881) .......... 22

*Precision Specialty Metals, Inc. v. United States,* 182 F. Supp. 2d 1314 (Ct. Int'l Trade 2001) .......... 14, 41

*Seeberger v. Farwell,* 139 U.S. 608 (1891) .......... 22

*Standard Brands Paint Co. v. United States,* 62 C.C.P.A. 72 (1975) ...... 10

*Trayco, Inc. v. United States,* 994 F.2d 832 (Fed. Cir. 1993) .......... *passim*

*United States v. Ataka Am., Inc.,* 826 F. Supp. 495, 502 (Ct. Int'l Trade 1993) .......... 7, 35

*United States v. Cocoa Berkau, Inc.,* 990 F.2d 610 (Fed. Cir. 1993) .......... *passim*

*United States v. Levitt,* 26 Fed. Cas. 919 (D. Mass. 1842) .......... 22

*United States v. Hathaway,* 71 U.S. 404 (1866) .......... 10

*United States v. Quimby,* 71 U.S. 408 (1866) .......... 10

*United States v. Swain & Boggs,* 12 C.C.A. 13 (1923) .......... 10

*United States v. Toshoku America Inc.,* 879 F.2d 815 (Fed. Cir. 1989) .......... *passim*

*Vanderhoof Specialty Wood Products, Inc. v. United States,* No. 02-00793, Slip op. (Ct. Int'l Trade Mar. 11, 2004) .......... *passim*

*Statutes*

5 U.S.C. § 701(a)(2) .................................................................. 6

Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202:

Heading 4407 ................................................................ *passim*

Subheading 4407.10.0000 ................................................ *passim*

Heading 4409 ................................................................ *passim*

Subheading 4409.10 ....................................................... *passim*

Subheading 4415.20 ....................................................... *passim*

Subheading 4421.90 ....................................................... *passim*

19 U.S.C. § 1304(a) ..................................................................... 27

19 U.S.C. § 1500 ............................................................................ 2

19 U.S.C. § 1500(b) ....................................................................... 2

19 U.S.C. § 1500(c) ....................................................................... 2

19 U.S.C. § 1514(a) ............................................................... *passim*

19 U.S.C. § 1515(a) ............................................................... *passim*

19 U.S.C. § 1592(a) ............................................................... *passim*

19 U.S.C. § 1595(a) ...................................................... 26, 31, 32

19 U.S.C. § 1618 .................................................................... *passim*

19 U.S.C. § 1623(c) ............................................................... *passim*

19 U.S.C. § 1625(c)(2) .......................................................... 14, 42, 47

28 U.S.C. § 1346(a)(2) .......................................................... 28, 35

28 U.S.C. § 1491(a) .......................................................... *passim*

28 U.S.C. § 1491(c) .......................................................... *passim*

28 U.S.C. § 1581 .......................................................... *passim*

28 U.S.C. § 1581(a) .......................................................... *passim*

28 U.S.C. § 1582 .......................................................... *passim*

28 U.S.C. § 1582(1) .......................................................... 30

28 U.S.C. § 1582(2) .......................................................... *passim*

28 U.S.C. § 2636(a)(1) .......................................................... 4

*International Agreements*

U.S.-Canada Softwood Lumber Agreement, 35 I.L.M. 1198 (1996). *passim*

*Rules of Court*

Rule 12(b), Rules of the U.S. Court of Federal Claims ...................... *passim*

Rule 12(b)(1), Rules of the U.S. Court of Federal Claims ................. *passim*

Rule 12(b)(6), Rules of the U.S. Court of Federal Claims ................. *passim*

*Administrative Materials*

19 C.F.R. § 12.140(a) .......................................................... *passim*

19 C.F.R. Part 113 .......................................................... 5

19 C.F.R. § 113.62(k) & (l)(5) ........................................................ *passim*

19 C.F.R. § 159.1 ..................................................................... 2, 7

19 C.F.R. Part 172..................................................................... 5, 14, 30

19 C.F.R. Part 173..................................................................... 30

19 C.F.R. Part 174..................................................................... 30

Customs Service Headquarters Ruling 964900 (Sept. 4, 2002)........ *passim*

*Secondary Authorities*

6 Corbin, Contracts, § 1279, at 130 (1962) ............................................ 23

# I. STATEMENT OF THE ISSUES

A. Does an importer who pays an unlawful assessment of liquidated damages to U.S. Customs under protest have a "claim against the United States" within the meaning of the Tucker Act, 28 U.S.C. § 1491(a)? (Yes)

B. Did Congress give the Court of International Trade ("CIT") jurisdiction to entertain importer-initiated suits for a refund of liquidated damages? (No)

C. Does the "gap" in the CIT's exclusive jurisdiction identified by the Federal Circuit in *Trayco Inc. v. United States,* 994 F.2d 832 (Fed. Cir. 1993), with respect to importer-initiated suits for a refund of penalties, include importer-initiated suits for a refund of liquidated damages? (Yes)

D. Is an action for a refund of liquidated damages "within the exclusive jurisdiction" of the CIT, 28 U.S.C. § 1491(c), and thus excluded from this Court's jurisdiction under 28 U.S.C. § 1491(a)? (No)

E. Are importers barred, once the classification of their entries under Subheading 4407.10 or Subheading 4409.10 of the Harmonized Tariff Schedule of the United States ("HTSUS"), 19 U.S.C. § 1202, has become "final and conclusive" as to "the rate and amount of duty

chargeable," 19 U.S.C. § 1514(a)(2), from defending against claims for liquidated damages under 19 C.F.R. § 113.62(k) & (*l*)(5) on the ground that the subject merchandise is not "softwood lumber" within the meaning of 19 C.F.R. § 12.140(a)? (No)

# II. STATEMENT OF THE CASE

## A. Statutory Background

### *1. The Assessment of Customs Duties*

U.S. Customs is authorized to assess customs duties on imports. *See* 19 U.S.C. § 1500. The amount of duties owed on an importation is determined by what the merchandise is ("classification"), how much it is worth ("valuation"), and the rate of duty, if any, assigned to the classification for imports from the country in question. *See id.* Duties are not assessed at the time of importation or "entry." Rather, duties are normally assessed 314 days later, in a process called "liquidation," when a customs collector makes a final determination of the classification and valuation of the merchandise and the rate and amount of duties chargeable on the importation. *See id.* § 1500(b) & (c); 19 C.F.R. § 159.1 (defining "liquidation" as "the final computation or ascertainment of the duties . . . accruing on an entry.").

The importer then has 90 days to file an administrative "protest" of the collector's classification at liquidation with the relevant port director. 19 U.S.C. § 1514(a).[1] The protestant also may include an application for further review by higher authority within U.S. Customs (in this case, the Office of Rulings and Regulations or "OR&R" at Headquarters). *See id.* § 1515(a); Def.'s Mot. to Dismiss App. 41-47. If the protest is granted, the

---

[1] This provision reads as follows:

> **(a) Finality of decisions; return of papers**
>
> [D]ecisions of the Customs Service, including the legality of all orders and findings entering into the same, as to --
>
> (1) the appraised value of merchandise;
>
> (2) the classification and rate and amount of duties chargeable;
>
> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
>
> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
>
> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;
>
> (6) the refusal to pay a claim for drawback; or
>
> (7) the refusal to reliquidate an entry under subsection (c) or (d) of section 1520 of this title;
>
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title.

19 U.S.C. § 1514.

collector must reliquidate the entry in accordance with the review decision. *See* 19 U.S.C. § 1515(a). If the protest is denied, the importer has 180 days to commence an action to contest the denial of the protest in the CIT. *See* 28 U.S.C. § 1581(a); *id.* § 2636(a)(1). The liquidation becomes final in 90 days if no protest is filed. *See* 19 U.S.C. § 1514(a). Otherwise, the liquidation is not final until all administrative and judicial reviews of the liquidation have been completed. *See id.*

#### ***2. The Assessment of Penalties and Liquidated Damages***

In addition to assessing customs duties and other "charge[s] or exaction[s]" that are "protestable" under 19 U.S.C. § 1514(a), U.S. Customs is authorized to make certain non-"protestable" charges and exactions. These include the exaction of penalties under 19 U.S.C. § 1592(a) and charges against a customs bond, such as liquidated damages. *See United States v. Toshoku America Inc.,* 879 F.2d 815, 818 (Fed. Cir. 1989) ("an assessment of liquidated damages is not a 'charge or exaction' that [may] be challenged by protest under 19 U.S.C. § 1514" and reviewed in the CIT under 28 U.S.C. § 1581(a)) (citations omitted).

Penalties may be assessed for negligent and intentional misrepresentations of material fact to U.S. Customs. *See* 19 U.S.C. § 1592(a). Liquidated damages may be assessed if an importer breaches

a condition of a customs bond for which liquidated damages are authorized. *See, e.g.,* 19 C.F.R. § 113.62(k) & (*l*)(5) (authorizing U.S. Customs to assess liquidated damages of $100 (US) per thousand board feet against importers who fail to provide permits required under the SLA).[2]

Congress has prescribed other administrative remedies for assessments of penalties and liquidated damages since such assessments are not "protestable" under 19 U.S.C. § 1514(a). Specifically, in 19 U.S.C. § 1618, Congress authorized the Secretary of the Treasury to mitigate or remit penalties upon request by the affected importer. In 19 U.S.C. § 1623(c), Congress authorized the Secretary of the Treasury to cancel charges against a customs bond upon request by the affected importer.[3] The Secretary's authority under these provisions is purely discretionary, and the denial of a petition for relief thereunder is not subject to judicial

---

[2] A customs bond is a surety contract between the importer and the United States that guarantees payment of damages to the United States for certain violations of the customs laws and limits the importers liability for such damages to the amount specified in the bond (an amount that is determined by U.S. Customs). *See* 19 C.F.R. Part 113.

[3] This provision reads as follows:

> the Secretary of the Treasury may authorize the cancellation of any bond provided for in this section, or of any charge that may have been made against such bond, in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient.

19 U.S.C. § 1623(c); *see also* 19 C.F.R. Part 172 (regulations governing petitions for relief under 19 U.S.C. § 1623(c))

review. *Trayco,* 994 F.2d at 838 ("It is well settled that decisions concerning mitigation and remission [of penalties] under 19 U.S.C. § 1618 are committed to the discretion of the executive and are not subject to judicial review."); *United States v. Cocoa Berkau, Inc.,* 990 F.2d 610 (Fed. Cir. 1993) ("From its permissive terms it is clear that the determination under section 1623(c) falls within the discretion of the Secretary of the Treasury."); *see also* 5 U.S.C. § 701(a)(2) (judicial review not available under the Administrative Procedure Act for "agency action [that] is committed to agency discretion by law").

As no judicial review is available for the denial of a petition under 19 U.S.C. § 1623(c), importers are not required to exhaust that remedy to obtain judicial review of the validity of charges against a customs bond in a collection action under 28 U.S.C. § 1582(2). *Cocoa Berkau,* 990 F.2d 610 ("We hold that [a] . . . proceeding under 19 U.S.C. § 1623(c) [is] not an 'administrative proceeding required by contract or by law'"); *Toshoku,* 879 F.2d at 818 ("Proof that the importer has complied with the conditions of the bond has traditionally been and **still remains** a complete defense to a collection suit brought on the bond.")(emphasis added); *cf. Trayco,* 994 F.2d at 838 (noting the government's concession that importers do not

have to exhaust their remedy under 19 U.S.C. § 1618 to challenge the validity of a penalty assessment in a subsequent collection action).

By contrast, importers must exhaust the protest remedy that Congress prescribed in 19 U.S.C. § 1514(a) for certain specified decisions in order to obtain judicial review thereof, and the CIT has exclusive jurisdiction to conduct any such judicial review. *See* 28 U.S.C. § 1581(a); 19 C.F.R. § 159.1 (defining "liquidation" as "the final computation or ascertainment of the **duties** . . . accruing on an entry.") (emphasis added); *see also United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 502 (Ct. Int=l Trade 1993) ("Where an action by Customs, like the imposition of anti-dumping duties, merges into liquidation, the action must be protested to avoid finality. Where the action does not merge, as in the case of a post-liquidation demand for liquidated damages, **it need not be protested but may be raised otherwise as a claim or a legal defense**.") (citing *Toshoku,* 879 F.2d at 818)(emphasis added).

If an importer fails to pay an assessment of penalties or liquidated damages, the United States can sue the importer in the CIT under 28 U.S.C. § 1582, at which time the importer can challenge the validity of the assessment as a defense to the government's claim. *See Toshoku,* 879 F.2d at 818; *Trayco,* 994 F.2d at 839.

### *3. The Softwood Lumber Agreement*

At the time the entries in suit were made, merchandise classified under Subheadings 4407.10 and 4409.10, HTSUS,[4] and imported from Canada was subject to a permit requirement under the U.S.-Canada Softwood Lumber Agreement, 35 I.L.M. 1198 (1996) ("the SLA"), and its implementing regulations, 19 C.F.R. §§ 12.140(a) and 113.62(k) & (*l*)(5) (1997). Failure to provide required permits constituted a breach of the importer's customs bond. *See* 19 C.F.R. § 113.62(k). Such a breach entitled U.S. Customs to assess liquidated damages of $100 (US) per thousand board feet to the limit of the bond for the relevant time period. *See id.* § 113.62(*l*)(5).

### *4. Classification Under the HTSUS*

The classification of merchandise under the HTSUS is governed by the General Rules of Interpretation ("GRIs"). These rules are meant to be applied in sequence until the correct classification of the merchandise is clear. Because the HTSUS is so carefully crafted, the vast majority of classification cases are determined by application of GRI 1.

---

[4] Subheading 4407.10, HTSUS, covers "Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded, or finger-jointed, of a thickness exceeding 6 mm: Coniferous." Subheading 4409.10, HTSUS, covers "Wood (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rebated, chamfered, v-jointed, beaded, moulded, rounded or the like) along any of its edges or faces, whether or not planed, sanded or finger-jointed: Coniferous."

GRI 1 provides that classification "shall be determined according to the terms of the [relevant] headings and any relative section or chapter notes." This has been interpreted to mean that merchandise is classifiable in a heading only if "the terms of the heading and any relative section or chapter notes" provide a "complete and accurate description" of the merchandise. *Boen Hardwood Flooring, Inc., v. United States,* 254 F. Supp. 2d 1349, 1359-60 (Ct. Int'l Trade 2002). Thus, under GRI 1, merchandise that is "more than" what is described in a tariff provision cannot be classified in that provision. *See id.*

As applied in the lumber context, the "more than" doctrine holds that subjecting wood sawn lengthwise to a manufacturing process other than resawing lengthwise, planing, sanding, end-jointing (*e.g.,* fingerjointing), or continuous shaping along the edges or faces (*e.g.,* moulding, tonguing and grooving) is "more than" lumber and must be classified as an article of wood. *See, e.g., id.* (edge-glued wood is more than mere lumber, because edge-gluing is not among the manufacturing processes enumerated in Headings 4407 and 4409, HTSUS); *Standard Brands Paint Co. v. United States,* 62 C.C.P.A. 72, 75-76 (1975) (moulding cut to specific lengths with

45 degree mitered ends "more than" mere moulding and thus properly classified as picture frame parts, not bulk picture frame mouldings).[5]

### B. Administrative Proceedings

On July 6, 2000, U.S. Customs at the Port of Buffalo, New York (hereinafter "Buffalo"), issued a Customs Form 29 ("CF-29") Notice of Action announcing its intention to reclassify, under Subheading 4409.10, HTSUS, 19 U.S.C. § 1202, fourteen (14) shipments of merchandise invoiced as "grooved loading blocks" entered by the Plaintiff, BB Pallets, Inc. ("BBP") between December 20, 1999, and March 6, 2000. *See* Def.'s Mot. to Dismiss App. 4.[6]

---

[5] *See also United States v. Swain & Boggs,* 12 C.C.A. 13, 14-15 (1923) (affirming government's position that cross-cutting softwood lumber to adapt it for use in making bed crates of a particular design transformed the lumber into **crate components**); *F.E. MacArtney v. United States,* 31 Cust. Ct. 139, 141 (1953) (affirming government's position that cross-cutting softwood lumber into short lengths and angle cutting one end transformed the lumber into **vehicle blocks**); *cf. United States v. Hathaway*, 71 U.S. 404, 408 (1866) (affirming government's position that cross-cutting softwood lumber to adapt it for use in making pipes and hogsheads transformed the lumber into **barrel staves**); *United States v. Quimby*, 71 U.S. 408, 408 (1866) (affirming government's position that cross-cutting softwood lumber to adapt it for use as shovel handles transformed the lumber into **shovel handles**); *Atkins, Kroll & Co. v. United States,* 50 C.C.P.A. 62, 47 (1963) (affirming government's position that cross-cutting sticks to adapt them for use as broom handles transformed the sticks into **broom handles**).

[6] Samples of grooved loading blocks like those at issue here are pictured in Exhibit 3 of the Complaint.

BBP had made numerous entries of wooden loading blocks under Subheading 4415.20, HTSUS,[7] over the preceding five years, and U.S. Customs had liquidated the merchandise as entered. *See* Compl. Ex. 4.

On August 28, 2000, BBP's former customs counsel, Janet A. Forest, Esq.,[8] wrote letters to the Port Directors of all ports through which BBP entered loading blocks. *See* Pl.'s Opp. to Def.'s Mot. Dismiss App. 1. In her letters, Ms. Forest informed the Port Directors that in accordance with Buffalo's reclassification decision, BBP would start entering its grooved loading blocks under Subheading 4409.10, HTSUS, and providing permits. *See id.* Ms. Forest also asked that "any notices of liquidated damages for failure to have an export permit not be sent pending final resolution of the classification question, or, alternatively, that the time for filing a petition in response to any liquidated damages notices be extended until this issue is resolved." *Id.*

On September 14, 2000, U.S. Customs at the Port of Champlain, New York, issued a CF-29 announcing its intention to reclassify an entry of

---

[7] Subheading 4415.20, HTSUS, covers "Packing cases, boxes, crates and similar packings of wood; cable-drums, of wood; pallets, box-pallets and other load boards, of wood; pallet collars, of wood: Pallets, box-pallets and other load boards; pallet collars."

[8] Ms. Forest retired in 2002, before OR&R's ruling on the loading block protests. Ms. Forest worked for many years in the litigation department of the General Counsel's Office at U.S. Customs and, thereafter, had a long career as a customs specialist in private practice at Kirkland & Ellis, Miller & Chevalier, and Hughes, Hubbard and Reed.

straight-cut bed frame components (entry number 144-8223678-4) under Subheading 4407.10, HTSUS. Pl.'s Opp. to Def.'s Mot. Dismiss App. 4. BBP had made numerous entries of straight cut wooden bed frame components under Subheading 4421.90, HTSUS,[9] over the preceding five years, and U.S. Customs had liquidated the merchandise as entered. *See* Compl. Ex. 4. Other ports issued similar CF-29s in the ensuing weeks. *Id.* at 3.

On September 15, 2000, Buffalo liquidated the first entry listed on its July 6, 2000, CF-29 (entry number EG6-76140064). *See* Def.'s Mot. to Dismiss App. 33.

On September 29, 2000, Buffalo liquidated five other entries listed on the CF-29 (entry numbers EG6-7613591-6, EG6-7613779-7, EG6-7614290-4, EG6-7614450-4, and EG6-7614565-9). *Id.* at 34.

On October 4, 2000, Ms. Forest responded to the CF-29s concerning straight cut bed frame components. Pl.'s Opp. to Def.'s Mot. Dismiss App. 3-4. In her letter, Ms. Forest stated that while BBP did not necessarily agree with the reclassification of straight cut bed frame components, the company "ha[d] decided not to dispute the issue at this time." *Id.*

---

[9] Subheading 4421.90, HTSUS, covers "Other articles of wood: Other." This is referred to as a so-called "basket provision" for "articles of wood" that are not specifically provided for elsewhere in Chapter 44, HTSUS.

On October 20, 2000, Buffalo issued CF-5955A Notices of Penalty or Liquidated Damages Incurred and Demand for Payment for the above-cited entries of loading blocks. *See, e.g.,* Def.'s Mot. to Dismiss App. 5-6.

In the ensuing weeks and months, U.S. Customs liquidated numerous additional entries of grooved loading blocks under Subheading 4409.10, HTSUS, and assessed liquidated damages of $100 (US) per thousand board feet for each of those entries. U.S. Customs also liquidated numerous entries of straight cut bed frame components under Subheading 4407.10, HTSUS,[10] and assessed liquidated damages of $100 per thousand board feet for each of those entries.

On December 13, 2000, BBP filed a timely protest and application for further review of the first reclassified entry of loading blocks that liquidated (entry number ECG-76140064). *See* Def.'s Mot. to Dismiss App. 33; 19 U.S.C. §§ 1514(a) and 1515(a); 19 C.F.R. Part 174.

On December 21, 2000, BBP filed a timely protest and application for further review of the next five reclassified entries of loading blocks that

[10] U.S. Customs does not deny that radial cut bed frame components are correctly classified under Subheading 4421.90, HTSUS, or that many of BBP's entries comprise both straight cut and radial cut components. However, BBP's invoices did not separately identify straight cut and radial cut components. U.S. Customs therefore treated all of BBP's bed frame components as straight cut and, thus, correctly classified under Subheading 4407.10, HTSUS (according to U.S. Customs).

liquidated (entry numbers EG6-7613591-6, EG6-7613779-7, EG6-7614290-4, EG6-7614450-4, and EG6-7614565-9). *See id.* at 34.

In its protests, BBP explained in detail why the subject entries were correctly classified under Subheading 4415.20, HTSUS, and, in any event, could not be reclassified because of the treatment previously accorded by U.S. Customs to BBP's entries at multiple liquidations. *See id.* at 35-40 (citing Section 625(c)(2) of the Customs Modernization and Informed Compliance Act ("the Mod Act"), Pub. L. 103-182, § 623, 107 Stat. 2186 (1993) (codified at 19 U.S.C. § 1625(c)(2)) and *Precision Specialty Metals, Inc. v. United States,* 182 F. Supp. 2d 1314, 1326 (Ct. Int'l Trade 2001)).

On February 8, 2001, Buffalo denied BBP's first protest and granted its application for further review. *See* Def.'s Mot. to Dismiss App. 33. The protest was referred to OR&R for a final ruling. *See id.* at 41-47. Buffalo suspended action on the second protest pending OR&R's ruling on the first protest. *See id.* at 48.

In addition to the above-mentioned protests, BBP filed timely petitions to cancel the charges against the bond under 19 U.S.C. § 1623(c) and 19 C.F.R. Part 172. *See id.* at 8-32. In its petitions, BBP asked that all of the charges concerning loading blocks be canceled (*i.e.,* not just those based on the protested entries) on the ground that the subject loading blocks were

correctly entered under Subheading 4415.20, HTSUS, and, in any event, could not be reclassified because of prior treatment. *See id.*

After some initial reluctance, Pl.'s Opp. to Def.'s Mot. Dismiss App. 20-22, the Fines, Penalties & Forfeiture ("FP&F") officers at all of the relevant ports agreed to suspend action on the liquidated damages cases (including the cases involving bed frame components) pending OR&R's ruling on the first protest, *id.* 23 and 25. U.S. Customs did not extend the liquidation of the other entries underlying the liquidated damages cases. Those entries liquidated in due course and were not protested. *Id.* at 25.

On September 4, 2002, OR&R issued Headquarters Ruling 964900 affirming the denial of BBP's first protest on further review. *See* Def.'s Mot. to Dismiss App. 41-47. The FP&F officers then lifted the suspension of the liquidated damages cases (including the cases involving bed frame components), and denied BBP's petitions for administrative relief. (Buffalo denied BBP's second protest on the basis of OR&R's decision, but this did not happen until after this action was commenced, on February 2, 2004. *See id.* at 48.)

U.S. Customs renewed its demand for liquidated damages to the full extent of BBP's bond for the two bond periods at issue, i.e., $100,000 (US),

less $6,782.50 that BBP already had paid without protest, for a total of $93,217.50.

By letter dated January 6, 2003, BBP sent U.S. Customs a certified check for the remaining $93,217.50, stating that the payment was being made "under protest," and that BBP "reserve[d] the right to pursue a refund action in the Court of Federal Claims." Compl. Ex. 1.

On January 13, 2003, U.S. Customs accepted BBP's payment under protest.

**C. Proceedings in this Court**

This refund action was commenced on November 23, 2003, with the filing of a Tucker Act claim seeking a refund of the $93,217.50 that BBP paid under protest to satisfy the assessment of liquidated damages made by U.S. Customs.

On July 28, 2004, the United States filed a motion to dismiss the complaint under RCFC Rule 12(b)(1), for lack of jurisdiction, or, alternatively, under RCFC Rule 12(b)(6), for failure to state a claim.

The government's motion to dismiss is now before the Court for decision. The United States argues that: (1) BBP's claim is within the exclusive jurisdiction of the CIT; and (2) in any event, BBP is precluded

from challenging the classification of its merchandise as "softwood lumber" within the meaning of 19 C.F.R. § 12.140(a).

## III. SUMMARY OF ARGUMENT

It is a fundamental rule of customs administration that importers may challenge the validity of an assessment of liquidated damages by refusing to pay the assessment and challenging its validity in a collection action brought by the government under 28 U.S.C. § 1582, regardless of whether the importers pursued any administrative remedies. The Court of Appeals has made clear that importers in such a situation have "the option, and more importantly, the right," to pay the assessment under protest and sue for a refund under the Tucker Act. *Trayco,* 994 F.2d at 837.

The government's motion to dismiss ignores this basic teaching and, accordingly, must be DENIED.

## IV. ARGUMENT

An importer who pays an unlawful assessment of liquidated damages to U.S. Customs under protest clearly has a "claim against the United States" within the meaning of the Tucker Act, 28 U.S.C. § 1491(a), and a substantive right to money damages enforceable against the United States. The only real issue here is whether this action falls within the exception to this Court's Tucker Act jurisdiction under 28 U.S.C. § 1491(a) for claims

that are "within the exclusive jurisdiction" of the CIT. *See* 28 U.S.C. § 1491(c).

Fortunately, this question is easily answered by the Federal Circuit's thorough and well-considered opinion in *Trayco,* 994 F.2d 832. Congress clearly did **not** give the CIT jurisdiction to entertain importer-initiated suits for a refund of liquidated damages. Thus, the "gap" in the CIT's exclusive jurisdiction identified by the Federal Circuit in *Trayco,* 994 F.2d 832, with respect to importer-initiated suits for a refund of penalties, clearly includes importer-initiated suits for a refund of liquidated damages.

The government's case for dismissal therefore comes down to exhaustion and finality arguments based on BBP's alleged "failure" to protest the classification of all the underlying entries under 19 U.S.C. § 1514(a)(2) and, if necessary, to contest the denial of the protests in the CIT under 28 U.S.C. § 1581(a). This argument ignores the fact that Congress prescribed a different administrative remedy for assessments of liquidated damages (namely, a petition to cancel the assessment under 19 U.S.C. § 1623(c)). With respect to this remedy, the law is very clear that exhaustion is **not** required, and there is no exception for cases that happen to involve a subsidiary issue of merchandise classification.

Accordingly, this case is properly before the Court, and the government's motion to dismiss must be denied.

### A. The Legal Standard for Dismissal

"Dismissal of a claim under the Tucker Act on the basis of the pleadings precludes consideration of supporting evidence on substantive merits." *High Star Toys v. United States,* 32 Fed. Cl. 176, 179 (1994). "The procedure is drastic and should be used only when clearly appropriate." Id.

Factual inquiry on a motion to dismiss under RCFC 12(b) is limited. *Id.* In passing on a motion to dismiss, whether on the ground of lack of subject matter jurisdiction or for failure to state a cause of action, the allegations in the complaint are to be considered favorably to the pleader. *Id.* The issue is not whether the plaintiff ultimately will prevail; it is whether the plaintiff is entitled to offer evidence to support facts alleged in the complaint. *Id.*

#### ***1. Dismissal Under Rule 12(b)(1) for Lack of Jurisdiction***

RCFC Rule 12(b)(1) authorizes dismissal when the Court lacks subject matter jurisdiction. "The procedure for rendering a final dismissal for want of jurisdiction should be used sparingly." *High Star Toys,* 32 Fed. Cl. at 179 (citing *Bell v. Hood,* 327 U.S. 678, 682 (1946)). Subject matter

jurisdiction relates to the Court's general powers to adjudicate in specific areas of substantive law. *Id.* The subject matter of a dispute between the parties on the facts peculiar to a specific claim under the Tucker Act may implicate the doctrine of sovereign immunity, but such jurisdictional concepts do not limit the subject matter jurisdiction of the Court, just as prudential doctrines such as exhaustion of remedies and ripeness do not limit the Court's subject matter jurisdiction. *Id.*

#### ***2. Dismissal Under Rule 12(b)(6) for Failure to State a Claim.***

With respect to Rule 12(b)(6), "a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *High Star Toys,* 32 Fed. Cl. at 179 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The Court "must 'assume each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant.'" *Id.* (quoting *Chang v. United States,* 859 F.2d 893, 894 (Fed. Cir. 1988)).

### **B. BBP's Claim Falls Squarely Within the Terms of 28 U.S.C. § 1491(a).**

This Court's jurisdiction is defined by the Tucker Act, 28 U.S.C. § 1491. This first subsection of Section 1491 reads as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any **regulation** of an executive department, or upon any express or implied **contract with the United States**, or for liquidated or unliquidated damages not sounding in tort.

28 U.S.C. § 1491(a) (emphasis added).

BBP's claim for a refund of liquidated damages paid under protest to U.S. Customs is a claim against the United States for a money judgment founded upon a federal regulation --- specifically, 19 C.F.R. § 113.62(k) & (*l*)(5). *See, e.g., Trayco,* 994 F.2d at 837; Def.'s Mot. to Dismiss App. 3. In addition, BBP's claim is based on a customs bond, which is a type of contract with the United States. *See* Def.'s Mot. to Dismiss App. 3; 19 C.F.R. § 113.62. Accordingly, BBP's claim clearly satisfies the jurisdictional prerequisites of 28 U.S.C. § 1491(a).

However, the Tucker Act is only a jurisdictional statute. See *Trayco,* 994 F.2d at 837 (citing *United States v. Testan,* 424 U.S. 392, 398 (1976)). It does not create any substantive right to money damages enforceable against the United States. *Id.* The Tucker Act merely confers jurisdiction where such a right exists under other law. *Id.* Thus, in addition to satisfying the jurisdictional prerequisites of 28 U.S.C. § 1491(a), a plaintiff must assert a substantive right to money damages enforceable against the United States to proceed in this Court. *See id.*

BBP alleges that U.S. Customs improperly assessed and exacted liquidated damages from the company pursuant to 19 C.F.R. § 113.62(k) & (*l*)(5).

The right to a refund of money improperly assessed and exacted by U.S. Customs pursuant to a regulation is clearly a substantive right to money damages enforceable against the United States. *Trayco,* 994 F.2d at 837-38 (citing *Eastport Steamship Corp. v. United States,* 178 Ct. Cl. 599, 605 (1967) ("[T]he claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.")).[11] Similarly, a party who pays under protest an invalid demand for money pursuant to a contract, with a reservation of rights to judicial review, has a substantive right to a refund. *See Bristol-Myers Squibb Co. v. United States,* 48 Fed. Cl. 350, 355 (2000) (action for refund of monies paid under protest under contract with the

[11] Indeed, before the advent of an protest and refund procedure now codified in 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a), it was well-established federal common law that importers who paid unlawful demands by U.S. Customs under protest had a substantive right to money damages that could be enforced against the United States in a refund action. *See, e.g., United States v. Schoverling,* 146 U.S. 76 (1892); *Seeberger v. Farwell,* 139 U.S. 608 (1891); *Magone v. Luckemeyer,* 139 U.S. 612, 614 (1891); *Worthington v. Robbins,* 139 U.S. 337 (1891); *Merritt v. Welsh,* 104 U.S. 694 (1881); *United States v. Levitt,* 26 Fed. Cas. 919 (D. Mass. 1842).

United States).[12] For the foregoing reasons, BBP clearly has asserted a substantive right to money damages enforceable against the United States.

In sum, BBP has met the jurisdictional prerequisites of 28 U.S.C. § 1491(a) and has alleged a substantive right to money damages enforceable against the United States. *See Trayco,* 994 F.2d at 838. The only remaining jurisdictional issue in this case is whether BBP's claim falls within the exception to this Court's jurisdiction under 28 U.S.C. § 1491(a) for claims that are within the exclusive jurisdiction of the CIT, *see id.* § 1491(c).

### C. BBP's Claim Is not Excluded from 28 U.S.C. § 1491(a) by 28 U.S.C. § 1491(c).

This Court's Tucker Act jurisdiction over actions arising from import transactions is limited by 28 U.S.C. § 1491(c), which reads as follows:

---

[12] *See also* 6 Corbin, Contracts, § 1279, at 130 (1962) (when given a conditional payment, a creditor has the simple choice of accepting the conditions of payment or returning the check and bringing an action on the original debt); *see also In re New York,* 178 F.2d 765 (2d Cir. 1950) ("[The payment under protest] was a plainly conditional and not a voluntary payment and it entitled the petitioner to a judicial review of any obligation it was claimed to have been under to make the payment.") (emphasis added); *Cambridge Sav. Bank v. City of Boston,* 8 N.E.2d 790 (Mass. 1937) ("by acceptance of benefits, [the city government] received the money in the same circumstances and subject to the same conditions as did [its employee]"); *cf. Trayco,* 994 F.2d at 839 ("the government could have refused to accept Trayco's check . . . Trayco accompanied its payment with a letter expressly reserving its rights to judicial review. Customs accepted Trayco's payment with full knowledge of Trayco's reservation. . . . . [T]he parties **constructively agreed** that Trayco had every right to seek judicial review" under the Tucker Act.) (emphasis added).

> Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade.

It is well settled, however, that the CIT, like other specialized courts, operates within precise and narrow jurisdictional limits granted by Congress. *Trayco,* 994 F.2d at 836 (citation omitted). Despite the fact that the Customs Courts Act of 1980 broadened the exclusive jurisdiction of the CIT, that court cannot exercise jurisdiction over actions not addressed by a specific jurisdictional grant. *Id.; accord K-Mart Corp. v. Cartier, Inc.,* 485 U.S. 176, 188 (1988) ("Congress did not commit to the Court of International Trade's exclusive jurisdiction every suit against the Government challenging customs-related laws and regulations.").

In the Customs Court Act of 1980, Congress gave the CIT exclusive jurisdiction over certain specified importer-initiated actions. *Trayco,* 994. F.2d at 836; *see* 28 U.S.C. § 1581. Congress did not explicitly include actions for a refund of liquidated damages in this jurisdictional grant. *Toshoku,* 879 F.2d at 818 ("an assessment of liquidated damages is not a 'charge or exaction' that [may] be challenged by protest under 19 U.S.C. § 1514" and reviewed in the CIT under 28 U.S.C. § 1581(a)) (citations omitted). As indicated above, the Federal Circuit has held that it is improper to find jurisdiction over such actions by implication. *See Trayco,*

994. F.2d at 836-27. In other words, there is a "gap" in the CIT's jurisdiction with respect to such actions. See *Trayco,* 994. F.2d at 836-37 ("We reject the government's argument that no jurisdictional gap exists because Congress failed in section 1582 to explicitly grant the Court of International Trade jurisdiction of civil actions arising out of import transactions commenced by an importer.").

As the Federal Circuit stated in *Trayco* with respect to penalty refund actions:

> . . . Congress did not fully explain, and neither can we, why **certain customs-related matters are excluded from the jurisdiction of the Court of International Trade**. We refrain from interpreting either section 1581 or section 1582 as granting exclusive jurisdiction to the Court of International Trade over importer-initiated suits for refund of penalties improperly assessed and exacted under 19 U.S.C. § 1592(a), (c) where Congress has not **explicitly** done so.
>
> . . .
>
> Trayco could have obtained judicial review in the Court of International Trade by refusing to pay the penalty and waiting for the government to commence an enforcement action. However, there is no statutory bar to the course of action Trayco elected. Congress has not **explicitly** granted exclusive jurisdiction to the Court of International Trade over refund suits initiated by importers. A gap exists in the exclusive jurisdiction of the Court of International Trade. Therefore, Trayco had the option, and more importantly, the right to initiate suit [under the Tucker Act] to challenge the penalty.

994 F.2d at 836-37 (emphasis added); *see also High Star Toys,* 32 Fed. Cl. at 179 (extending *Trayco* to importer-initiated actions for a refund of money

unlawfully assessed and exacted by U.S. Customs in lieu of forfeiture under 19 U.S.C. § 1595(a)).

Applying the Federal Circuit's analysis in *Trayco* to the facts of this case, it is clear that this Court has jurisdiction. Congress did not explicitly provide for actions for a refund of liquidated damages in the Customs Court Act of 1980. *See* 28 U.S.C. §§ 1581 and 1582; *see also Trayco,* 994. F.2d at 836-37 (rejecting government's argument that the lack of a provision for certain importer-initiated refund actions in the CIT implies that Congress did not want importers to have such a remedy in any court).

Of course, BBP could have obtained judicial review in the CIT by refusing to pay the assessment and waiting for the government to initiate a collection action under 28 U.S.C. § 1582(2). *See Trayco,* 994. F.2d at 837. However, there is no statutory bar to the course of action BBP elected. Therefore, BBP "had the option, and more importantly, the right to initiate suit [under the Tucker Act] to challenge the [assessment]." *Id.; accord High Star Toys,* 32 Fed. Cl. at 179. Indeed, once U.S. Customs accepted BBP's payment under protest, the agency foreclosed BBP's remedy under 28

U.S.C. § 1582 and required that judicial review take the form of an importer-initiated action for a refund.[13]

### D. There Is no Principled Basis for Distinguishing *Trayco* from this Case.

In *Trayco,* the importer entered shower heads that did not have the country of origin markings required by 19 U.S.C. § 1304(a). *See Trayco,* 994 F.2d at 834. U.S. Customs rejected the entry and instructed the importer to place the required markings on the merchandise. *See id.* The importer did so and certified that fact to U.S. Customs. *See id.* An inspector then visited the importer's business to verify the certification. *See id.* However, the inspector was mistakenly directed to another shipment, which had not been marked. *See id.* & n.8.

U.S. Customs assessed penalties under 19 U.S.C. § 1592(a) based on the allegedly false certification. *See id.* at 835. The importer filed a petition for mitigation of the penalty with U.S. Customs under 19 U.S.C. § 1618. *See id.* The petition was denied, and the importer paid the

---

[13] Thus, even if the government's motion to dismiss were granted, the Court still would have to order a refund of the liquidated damages paid under protest, without prejudice to the government's claim, so that BBP could obtain review in the CIT under 28 U.S.C. § 1582(2) by refusing payment, waiting to be sued, and asserting the invalidity of the assessment as a defense. To hold otherwise would ignore the contract-based aspect of BBP's claim and the accord and satisfaction created by the government in accepting BBP's conditional payment. *See supra* note 12.

penalties under protest with a reservation of all rights to judicial review. *See id.*

The importer then commenced a refund action in the district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *See id.* The district court held that it had jurisdiction and proceeded to trial on the merits. *See id.* at 834. At the conclusion of the trial, the court found for the importer and ordered a refund. *See id.* The government appealed.

On appeal, the government argued that the Customs Courts Act of 1980, which created the CIT, established a "comprehensive statutory scheme" intended to vest exclusive jurisdiction in the CIT for all actions arising under the customs laws, such as actions challenging the exaction of penalties under 19 U.S.C. § 1592(a). *See id.* at 835-36. The Federal Circuit rejected this argument based on the above-stated reasoning.

The government attempts to distinguish *Trayco* from this refund case on the ground that *Trayco* was a penalty refund case. The holding of *Trayco,* however, is that a gap exists in the CIT's jurisdiction with respect to importer-initiated actions for a refund of money paid to U.S. Customs under protest to satisfy a demand that is not "protestable" under 19 U.S.C. § 1514(a).

The rationale for this holding is that importers should not have to endure the uncertainty and unpleasantness of not paying the assessment and waiting to be sued by the government in a collection action under 28 U.S.C. § 1582. *See Trayco,* 994 F.2d at 837. It is telling, in this regard, that Section 1582 is not limited to the collection of penalty assessments. Section 1582 also authorizes actions "to recover upon a bond." *See* 28 U.S.C. § 1582(2). In this case, had BBP refused to pay the assessment of liquidated damages, it could have obtained judicial review of the indirectly, as a defense to a collection action under 28 U.S.C. § 1582(2). It makes no sense to read *Trayco* as requiring importers to sit back and refuse to pay a demand for payment by U.S. Customs simply because the agency's collection remedy is under subsection (2) of 28 U.S.C. § 1582 as opposed to subsection (1).

As discussed more fully below, BBP was not required to pursue the administrative remedy that Congress prescribed for assessments of liquidated damages, let alone the separate administrative remedy that Congress provided for assessments of customs duties at liquidation, i.e., a protest under 28 U.S.C. § 1514(a). *See infra* pages 34-48.

In addition, it should be noted that the assessment of penalties and liquidated damages are governed by parallel statutory and regulatory

provisions that are administered together by the same division within U.S. Customs (Fines, Penalties & Forfeitures). *See* pages 4-6; *see also* Def.'s Mot. to Dismiss App. 5-6 ("Notice of Penalty **or Liquidated Damages** Incurred and Demand for Payment" issued by FP&F officer) (emphasis added). By contrast, the assessment of customs duties is governed by a different set of statutory and regulatory provisions and is subject to judicial review in importer-initiated refund actions. *See supra* pages 2-4.

For the foregoing reasons, the holding and rationale of *Trayco* applies equally to assessments of penalties and liquidated damages, and there is no principled basis for distinguishing the two types of assessment for jurisdictional purposes.[14]

[14] *Compare* 28 U.S.C. § 1582(1) (actions to collect penalties), 19 U.S.C. § 1618 (petitions to mitigate or remit penalties), 19 C.F.R. Part 173 (regulations governing proceedings to mitigate or remit penalties), *Trayco,* 994 F.2d at 837 (importers are not required to exhaust remedy under 19 U.S.C. § 1618), 28 U.S.C. § 1582(2) (actions to recover on a bond), 19 U.S.C. § 1623(c) (petitions to cancel charges against a bond), 19 C.F.R. Part 172 (regulations governing proceedings to cancel charges against a bond), *United States v. Toshoku America Inc.,* 879 F.2d 815, 818 (Fed. Cir. 1989) (charges against a bond are not protestable), *and Cocoa Berkau,* 990 F.2d 610 (importers are not required by law or contract to exhaust remedy under 19 U.S.C. § 1623(c)) *with* 19 U.S.C. § 1514(a) (making the assessment of duties at liquidation final but subject to protest); 28 U.S.C. § 1581(a) (providing for CIT review of protest denials); 19 C.F.R. Part 174 (regulations governing protest proceedings).

### E. There Is no Principled Basis for Distinguishing *High Star Toys* from this Case.

In *High Star Toys,* the importer entered certain toys that did not comply with applicable consumer product safety laws. *See* 32 Fed. Cl. at 178. U.S. Customs rejected the entry and seized the merchandise under 19 U.S.C. § 1595(a). *See id.* The importer filed a petition for relief with U.S. Customs under 19 U.S.C. § 1618. *High Star Toys,* 32 Fed. Cl. at 178. The agency's decision on the petition was "to remit the forfeiture on payment of an amount that was 52.2 percent of the forfeiture value." *See id.* The importer paid the money under protest and sought judicial review in this Court.

The government moved to dismiss for lack of jurisdiction. The Court denied the motion, rejecting the government's attempt to limit *Trayco* to its facts and holding that the Federal Circuit's reasoning applied equally to an assessment under 19 U.S.C. § 1595(a). *High Star Toys,* 32 Fed. Cl. at 179 ("For purposes of dismissal on the pleadings under RCFC 12(b)(1), the complaint states claims within the subject matter jurisdiction of this Court.") (citing *Mindes v. Seaman,* 453 F.2d 197, 198 (5th Cir. 1971); *Bray v. United States,* 785 F.2d 989, 992 (Fed. Cir. 1986); *Merck & Co. v. United States,* 24 Cl. Ct. 73, 77-79 (1991)).

The government attempts to distinguish *High Star Toys* on the ground that it involved a forfeiture, thus implicating this Court's "takings" jurisdiction. *See* Def.'s Mot. to Dismiss at 21. However, *High Star Toys* involved a payment demanded by U.S. Customs **in lieu of** forfeiture. *See High Star Toys,* 32 Fed. Cl. at 178. Senior Judge Harkins held that, under *Trayco,* this Court had jurisdiction over an importer-initiated suit for a refund of assessments under 19 U.S.C. § 1595(a) because such assessments, like assessments under 19 U.S.C. § 1592(a), are not "protestable" under 19 U.S.C. § 1514(a). Similarly, assessments of liquidated damages under a customs bond are not "protestable," and the rule of *Trayco* and *High Star Toys* clearly applies in this case and requires this Court to adjudicate BBP's refund claim. As the Supreme Court has reaffirmed repeatedly in this context, courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *McCarthy v. Madigan,* 503 U.S. 140, 146-49 (1992) (citing *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404 (1821)).

In short, if the government were right that the holding of *Trayco* is limited to penalty refund actions, then Senior Judge Harkins would not have found jurisdiction in *High Star Toys,* because it was not a penalty refund action.

The government also argues that *High Star Toys* was wrongly decided and should be repudiated by this Court. *See* Def.'s Mot. to Dismiss at 19. This argument should be rejected under the doctrine of *stare decisis,* which requires a showing of **clear** error to justify a departure from a prior decision on comparable facts. *Schott Optical Glass Inc. v. United States,* 862 F.2d 866 (Fed. Cir. 1988). Suffice it to say that Senior Judge Harkins' decision is not clearly erroneous and, indeed, correctly recognized that the principle of *Trayco* applies to all non-"protestable" demands for money paid under protest to U.S. Customs.

The mere fact that Senior Judge Harkins also cited cases decided before the Customs Court Act of 1980 is immaterial. That law made no relevant changes in the jurisdiction of the CIT vis à vis this Court and, even if it had, the cited decisions are still good law for the general proposition that Tucker Act jurisdiction arises whenever there is a "gap" in the CIT's jurisdiction --- regardless of whether the specific "gap" the decisions identified was subsequently closed by Congress. *Trayco* explicitly states that the Customs Court Act of 1980 did not close all the "gaps," and that was the primary authority upon which Senior Judge Harkin based his decision in *High Star Toys.* Accordingly, the government's call for a repudiation of *High Star Toys* should be emphatically rejected.

### F. BBP Was Not Required to Protest the Classification of the Subject Entries at Liquidation.

The only administrative remedy that Congress provided for invalid charges made by U.S. Customs against a customs bond is a petition under 19 U.S.C. § 1623(c). No protest remedy is available under 19 U.S.C. § 1514(a). *Toshoku,* 879 F.2d at 818 (Fed. Cir. 1989) ("an assessment of liquidated damages is not a 'charge or exaction' that [may] be challenged by protest under 19 U.S.C. § 1514.") (citations omitted).

If relief is denied under 19 U.S.C. § 1623(c), no judicial review of the denial is available. *See* 19 C.F.R. § 172.22 (the denial of a petition to cancel liquidated damages is not a protestable decision); *see also Cocoa Berkau,* 990 F.2d 610 ("From its permissive terms it is clear that the determination whether to authorize cancellation of a bond under section 1623(c) falls within the discretion of the Secretary of the Treasury."); *cf. Trayco;* 994 F.2d at 838 ("It is well settled that decisions concerning mitigation and remission [of penalties] under 19 U.S.C. § 1618 are committed to the discretion of the executive and are not subject to judicial review.").

Rather, to obtain judicial review of the validity of charges against a bond, importers have two options. They can refuse to pay and assert invalidity as a defense in a collection action brought by the government

under 28 U.S.C. § 1582(2). *See Toshoku,* 879 F.2d at 818 ("Proof that the importer has complied with the conditions of the bond has traditionally been and still remains a complete defense to a collection suit brought on the bond."); *see also Ataka,* 826 F. Supp. at 502 ("Where an action by Customs, like the imposition of anti-dumping duties, merges into liquidation, the action must be protested to avoid finality. Where the action does not merge, as in the case of a post-liquidation demand for liquidated damages, it need not be protested but may be raised otherwise as a claim or a legal defense.") (citing *Toshoku,* 879 F.2d at 818).[15]

Alternatively, importers can pay the charges under protest and bring a refund action under 28 U.S.C. § 1491(a) or, if the amount in controversy is less than $20,000, under 28 U.S.C. § 1346(a). *See Ataka,* 826 F. Supp. at 502 (validity of a demand for liquidated damages may be raised "as a

[15] The government attempts to distinguish *Toshoku* and *Ataka* on the ground that this case involves pre-liquidation demands for liquidated damages. That is simply not true. U.S. Customs did not assess liquidated damages until BBP failed to tender permits within 20 days of liquidation, when the permits were demanded. In other words, the initial demand for payment of liquidated damages was made after liquidation --- not before. See Def.'s Mot. to Dismiss App. 33 (protest of September 15, 2000, liquidation of entry number ECG-76140064); id. at 5 (penalty notice dated October 20, 2000, concerning entry number ECG-76140064). Indeed, it would not have been possible for U.S. Customs to assess liquidated damages until classifying its merchandise in a final way, at liquidation. Classification at liquidation is a necessary predicate for an assessment of liquidated damages under the SLA permit regulations.

**claim** or a legal defense") (emphasis added); *cf. Trayco,* 994 F.2d 832 (action for refund of penalties).

Moreover, it is settled that importers are not required by law or by contract to exhaust their remedy under 19 U.S.C. § 1623(c) to obtain judicial review of the validity of charges made against a bond by U.S. Customs, whether in a government-initiated collection action or an importer-initiated refund action. *Cocoa Berkau,* 990 F.2d 610 ("We hold that [a] . . . proceeding under 19 U.S.C. § 1623(c) [is] not an 'administrative proceeding required by contract or by law'"); *cf. Trayco;* 994 F.2d at 838 (noting the government's concession that importers do not have to exhaust their remedy under 19 U.S.C. § 1618 to challenge the validity of a penalty assessment in a subsequent collection action). .

The government's case comes down to the proposition that this Court should recognize an exception to the just-stated rule for cases in which determining the validity of charges against the bond requires the resolution of a subsidiary issue of merchandise classification. According to the government, the classification of entries at liquidation must be protested under 19 U.S.C. § 1514(a)(2) to avoid finality with respect to all charges based on that classification, including charges that are made after liquidation.

In addition to being harsh and wholly unsupported by precedent, the government's argument has four fatal flaws. First, the government's argument is inconsistent with the position taken by U.S. Customs in determining BBP's petitions under 19 U.S.C. § 1623(c), i.e., that OR&R's ruling on a single "test entry" would be controlling with respect to **all** of the liquidated damages cases involving grooved loading blocks, regardless of the classification of the underlying entries at liquidation. Pl.'s Opp. to Def.'s Mot. Dismiss App. 23 and 25.

Second, the tariff classification of BBP's entries at liquidation does not determine whether the subject merchandise is "softwood lumber" within the meaning of the SLA or its implementing regulations, 19 C.F.R. §§ 12.140(a) and 113.62(k) & (*l*)(5).

Third, even assuming for the sake of argument that tariff classification at liquidation were relevant, the classification of entries at liquidation is only "final and conclusive," under 19 U.S.C. § 1514(a)(2), with respect to "the rate and amount of duty chargeable" --- not for purposes of penalties or liquidated damages.

Fourth, no judicial review of the denial of any protest would have been available in the CIT under that court's recent decision confirming, in a case involving the SLA, that importers have no standing to obtain judicial

review of a final classification decision unless a judgment for the plaintiff would result in a refund of duties.

#### ***1. The Government's Argument Is Inconsistent with the Agency's Position in this Case.***

On August 28, 2000, BBP's former customs counsel, Janet A. Forest, Esq., wrote letters to the Port Directors of all ports through which BBP entered loading blocks. *See* Pl.'s Opp. to Def.'s Mot. Dismiss App. 1. In her letters, Ms. Forest informed the Port Directors that in accordance with Buffalo's reclassification decision, BBP would start entering its grooved loading blocks under Subheading 4409.10, HTSUS, and providing permits. *See id.* Ms. Forest also asked that "any notices of liquidated damages for failure to have an export permit not be sent pending final resolution of the classification question, or, alternatively, that the time for filing a petition in response to any liquidated damages notices be extended until this issue is resolved." *Id.*

After some initial reluctance, *id.* at 20-22, the FP&F officers at all of the relevant ports agreed to suspend action on the liquidated damages cases (including the cases involving bed frame components) pending OR&R's decision on the protest, *id.* 23 and 25. U.S. Customs did not extend the liquidation of the other entries underlying the liquidated

damages cases. Those entries liquidated in due course and were not protested. *Id.* at 25.

By suspending **all** of the liquidated damages cases pending the outcome of a protest of a single test entry, the responsible FP&P officers clearly assumed that the classification of the other entries at liquidation was not final for liquidated damages purposes. Otherwise, they would not all have continued the suspension after the entries liquidated. BBP's former customs counsel had previously been an attorney in the General Counsel's Office at U.S. Customs for many years. Her decision to protest only a representative sample of loading block entries (and not to protest bed frame entries at all), was well-considered and accepted by the responsible FP&P officers when they agreed to suspend action on all of the liquidated damages cases (including the ones based on entries of bed frame components) pending the outcome of BBP's protest of six entries.

Indeed, it should be noted that some of these officers initially refused to suspend action on any liquidated damages cases, saying: "Customs does not and will not suspend issuance of liquidated damages or processing of those cases on the basis of protests that may or have been filed." Pl.'s Opp. to Def.'s Mot. Dismiss App. 22. In other words, U.S.

Customs would not be bound, in the liquidated damages cases, by the final classification of BBP's entries at liquidation.

The government's argument in this Court is inconsistent with the practical construction of the relevant statutes reflected in the actions of U.S. Customs in this case. It is a well-established principle of administrative law that courts must disregard "mere litigating positions" that are inconsistent with agency practice or regulations. *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212 (1988). This principle clearly applies here and requires this Court to disregard the government's argument that the classification of BBP's entries at liquidation is final and conclusive for liquidated damages purposes.

***2. Classification at Liquidation Is Irrelevant under the SLA.***

Under the SLA, U.S. Customs was authorized to require a permit for "softwood lumber" from Canada and, if the importer failed to provide the required permit, U.S. Customs was authorized to assess liquidated damages of $100 (US) to the limit of the applicable customs bond. SLA, 35 I.L.M. 1198; 19 C.F.R. §§ 12.140(a) and 113.62(k) & (*l*)(5). Free permits were available only for a limited quota of softwood lumber. Beyond that, importers had to pay $105 (US) per thousand board feet to obtain a permit. *See SLA,* 35 I.L.M. 1198.

"Softwood lumber" was defined under the SLA as merchandise classified under Subheading 4407.10, HTSUS, and Subheading 4409.10, HTSUS. SLA, 35 I.L.M. 1198; 19 C.F.R. §§ 12.140(a). The meaning of a term in a contract, including a contract between nations, is determined by its definition at the time of execution --- not by a self-serving, unilateral redefinition of the term after the fact by one of the parties. *See Caterpillar Inc. v. United States,* 941 F. Supp. 1241, 1247-48 (Ct. Int'l Trade 1996) ("'absent express Congressional language to the contrary, statutes should not be interpreted to conflict with international obligations'") (quoting *Federal Mogul Corp. v. United States,* 63 F.3d 1572, 1581 (Fed. Cir. 1995)). Thus, the classification that is controlling under the SLA and its implementing regulations is the classification under the HTSUS in 1996, as interpreted by U.S. Customs up to that time.

However, it was not until the year 2000 that U.S. Customs first classified BBP's entries of loading blocks and bed frame components under Subheading 4407.10, HTSUS, and Subheading 4409.10, HTSUS. It is undisputed that, before then, U.S. Customs had liquidated multiple entries of such merchandise under other tariff provisions. *See* Compl. Ex. 4. U.S. Customs therefore could not lawfully change this treatment without affording BBP prior notice and an opportunity to be heard. *See Precision*

*Specialty Metals,* 182 F. Supp. 2d at 1326 (two prior liquidations establish a "treatment" that cannot be changed retroactively by U.S. Customs under Section 625(c)(2) of the Mod Act, 19 U.S.C. § 1625(c)(2)); *see also* Def.'s Mot. to Dismiss App. 29-30 (petition to cancel liquidated damages filed by BBP).

Moreover, the prior treatment of BBP's entries by U.S. Customs was in accordance with judicial decisions involving identical or substantially similar merchandise. *See, e.g., F.W. Myers & Co. v. United States,* 345 F. Supp. 1006, 1008 (Cust. Ct. 1972) (bed frame components not properly classified as mere "lumber");[16] *C.J. Tower & Sons v. United States,* 40 C.C.P.A. 30, 33 (1952) (affirming government's position that cross-cutting and grooving softwood lumber to adapt it for use in making a framework of a particular design for transporting heavy building material transformed the lumber into articles of wood).[17] Thus, the classification of the subject loading blocks and bed frame components clearly was outside Subheading

[16] Where the text of a tariff provision has undergone only "minor changes" from prior tariff schedules, "the high values of uniformity and predictability . . . counsel courts [and Customs] to credit prior decisions interpreting the . . . provision." *Hewlett-Packard Co. v. United States,* 189 F.3d 1346, 1349 (Fed. Cir. 1999) (citation and internal quotation marks omitted); *see also E.M. Chems., Inc. v. United States,* 923 F. Supp. 202, 207 n.5 (Ct. Int'l Trade 1996) (judicial precedent under prior tariff schedules "should be considered instructive in interpreting similar or the same nomenclature" in later tariff schedules).

[17] *See also supra* note 5 (collecting cases).

4407.10, HTSUS, and Subheading 4409.10, HTSUS, under the law as it existed in 1996, and the classification of the merchandise at liquidation in 2000 is not conclusive under the SLA or its implementing regulations. Put another way, the identity of issues required for a final decision to have preclusive effect in a subsequent action is not present here. *See McCandless v. Merit Systems Protection Board,* 996 F.2d 1193 (Fed. Cir. 1993) (final decision on an issue not conclusive in subsequent action involving slightly different issue). Classification under the HTSUS of 1996 and classification under the HTSUS of 2000 are two entirely different things.

### *3. Classification Is not "Final and Conclusive" for Liquidated Damages Purposes.*

Even assuming for the sake of argument that tariff classification at liquidation were relevant to scope issues under the SLA or its implementing regulations, the classification of entries at liquidation is "final and conclusive," under 19 U.S.C. § 1514(a)(2), only with respect to "the rate and amount of duty chargeable" --- not for purposes of penalties or liquidated damages. Again, this case presents the slightly different issue of classification for liquidated damages purposes, and that precise issue was not decided by the classification of BBP's entries for customs duty purposes. *See McCandless,* 996 F.2d 1193.

***4. No Judicial Review of the Denial of any Protests Would Have Been Available Here.***

By making the CIT an Article III court, Congress limited its jurisdiction to the decision of actual "cases or controversies." *See Vanderhoof Specialty Wood Products, Inc. v. United States,* No. 02-00793 (Ct. Int'l Trade Mar. 11, 2004) (citing *Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 70 (1983)). In order to satisfy the case or controversy requirement, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Id.* A claim must be dismissed as non-justiciable if it fails to meet the Article III criteria. *Id.* (citing *Powell v. McCormack,* 395 U.S. 486, 496 n.7 (1969) and *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n.3 (1964)). Ultimately, the authority of the CIT, as an Article III court, is "limited to determining rights of persons or of property, which are actually controverted in the particular case before it." *Id.* (citing *California v. San Pablo & Tulare R.R. Co.,* 149 U.S. 308, 314 (1893). "Even where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim . . . is such that the court lacks 'ability to supply relief.'" *Id.* (quoting *Adkins v. United States,* 68 F.3d 1317, 1322 (Fed. Cir. 1995)).

In *Vanderhoof,* the CIT accepted the government's argument, based on well-established precedent, that an action to contest the denial of a

protest of the classification of entries at liquidation does not present a "case or controversy" within the meaning of Article III of the Constitution if "the duty rate under both the assessed and the claimed tariff provisions is the same." *Id.* (citing *Sneakers Circus, Inc. v. Carter,* 566 F.2d 396, 400 n.9 (2d Cir. 1977) (where "a reclassification would have no effect on either the rate or amount of duty payable, no opportunity to challenge exists"); *3V, Inc. v. United States,* 83 F. Supp. 2d 1351, 1353 (Ct. Int'l Trade 1999) (finding no case or controversy where the claimed an assessed classifications were duty free); *Acrilicos v. Regan,* 617 F. Supp. 1082, 1088 (Ct. Int'l Trade 1985) (finding that any decision would render an advisory opinion because the amount of duty to be paid by plaintiff is unaffected by the action); *Carson M. Simon & Co. v. United States,* 55 Cust. Ct. 103, 108 (1965) (dismissing claims as to entries that were entered at a rate lower than the claimed rate)). The government is precluded from taking a contrary position in this case, for any error in the CIT's decision was invited by the government itself. *See Key Pharmaceuticals v. Hercon Laboratories Corp.,* 161 F.3d 709 (Fed. Cir. 1998).

In this case, as in *Vanderhoof,* the duty rate under both the assessed and the claimed tariff provisions is the same, so any opinion on the underlying classification issue would be purely advisory and beyond the

CIT's Article III jurisdiction. The government suggests that an unfavorable ruling on the classification issue in an action under 28 U.S.C. § 1581(a) would have required U.S. Customs to grant BBP's petition to cancel the charges against its bond under 19 U.S.C. § 1623(c). *See* Def.'s Mot. to Dismiss at 16-17. This is incorrect. As indicated above, the CIT cannot require U.S. Customs to grant relief under 19 U.S.C. § 1623(c) in any action,[18] let alone an action under 28 U.S.C. § 1581(a), where the only relief that can be granted is reliquidation of the subject entries, *see 3V, Inc.,* 83 F. Supp. 2d at 1353 (CIT could not decide classification issue under 28 U.S.C. § 1581(a) to affect the outcome of a penalty case) (citing *Outlet Book Co., Inc. v. United States,* 743 F. Supp. 881, 888 (Ct. Int'l Trade 1990) (classification dispute under 28 U.S.C. § 1581(a) did not present a "case or controversy" even though a judicial decision for the importer would

[18] *See* 19 C.F.R. § 172.22 (the denial of a petition to cancel liquidated damages is not a protestable decision); *see also Cocoa Berkau,* 990 F.2d 610 ("the determination whether to authorize cancellation of a bond under section 1623(c) falls within the discretion of the Secretary of the Treasury"); *cf. Trayco;* 994 F.2d at 838 ("It is well settled that decisions concerning [penalties] under 19 U.S.C. § 1618 are committed to the discretion of the executive and are not subject to judicial review."); 5 U.S.C. § 701(a)(2) (judicial review not available under the Administrative Procedure Act for "agency action [that] is committed to agency discretion by law").

have had indirect economic consequences, such as the treatment of future entries)).[19]

For the foregoing reasons, no judicial review of the denial of any protests was available to BBP, and the government's finality and exhaustion arguments based on 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a) must fail.[20]

In conclusion, BBP was not required to exhaust the classification protest remedy that Congress provided in 19 U.S.C. § 1514(a) to avoid finality for liquidated damages purposes, and the government's exhaustion and finality argument must be rejected.

---

[19] *See also American Bayridge Corp. v. United States,* 35 F. Supp. 2d 922 (Ct. Int'l Trade 1998), *vacated as moot on the classification issue,* 1999 WL 997303, at *1 n.1 (Fed. Cir. Oct. 26, 1999) (classification dispute did not present a "case or controversy" when importer was entitled to the requested reliquidation because of Section 625(c) of the Customs Modernization Act, 19 U.S.C. § 1625(c)).

[20] The government's argument that the CIT has exclusive jurisdiction to decide classification issues *per se* is wholly unsupported by authority and does not withstand analysis. There is no question, for example, that if the penalties in *Trayco* had been based on a misclassification, the court would have had to decide the classification issue under the Tucker Act --- especially if a protest of the classification could not be contested in the CIT for lack of a "case or controversy" within the meaning of Article III of the Constitution. So how can it be said that the CIT has exclusive jurisdiction to decide classification issues for purposes other than the rate and amount of duties chargeable?

### G. BBP Exhausted its Administrative Remedy by Filing Petitions Under 19 U.S.C. § 1623(c).

As the government itself notes, BBP pursued the administrative remedy specifically prescribed for the assessment of liquidated damages, namely, petitions under 19 U.S.C. § 1623(c) covering all of the subject entries of loading blocks.

While BBP also protested the classification of a few test entries under 19 U.S.C. §§ 1514(a) and 1515(a), this was merely a device for referring the classification issue to OR&R in Washington. The FP&F officers at the ports suspended action on BBP's petitions for relief pending OR&R's decision. When that decision issued, the suspension was lifted immediately, without regard to whether an action to contest the denial of the protest under 28 U.S.C. § 1581(a) would be pursued. As demonstrated above, the CIT would not have been able to order U.S. Customs to cancel the charges against the bond in such an action even assuming that court otherwise had Article III jurisdiction (which it would not have had).

In sum, BBP not only exhausted its administrative remedy under 19 U.S.C. § 1623(c), but filed a protest under 19 U.S.C. § 1514(a) that covered all of its loading block entries so far as its liability for liquidated damages was concerned. With respect to the vast majority of the subject entries, then, the government is simply wrong in saying that BBP did not

exhaust its administrative remedies, including its administrative remedy under 19 U.S.C. § 1514(a).

## V. CONCLUSION

It is a fundamental rule of customs administration that importers may challenge the validity of an assessment of liquidated damages by refusing to pay the assessment and challenging its validity in a collection action brought by the government under 28 U.S.C. § 1582, regardless of whether they pursued any administrative remedies. The Court of Appeals has made clear that importers in such a situation have "the option, and more importantly the right," to pay the assessment under protest and sue for a refund under the Tucker Act. *Trayco,* 994 F.2d at 837.

The government's motion to dismiss ignores this basic teaching and, accordingly, must be DENIED.

Respectfully submitted,

/s/ *A. Woodson Stuart*

A. Woodson Stuart
JONES & STUART, LLP
2300 M Street, NW, Suite 800
Washington, D.C. 20037
Tel: (202) 297-3196
Fax: (202) 338-0270

Date: August 16, 2004

*Attorney for the Plaintiff*