No. 03-2748C
(Judge Baskir)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

B.B. PALLETS, INC.

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

CHRISTIAN J. MORAN
Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Attn: Classification Unit 8th Floor
Washington, D.C. 20530
Tele: (202) 307-6299
Fax: (202) 514-7969

Attorneys for Defendant

OF COUNSEL:
Albert Kundrat
Attorney
United States Customs and
Border Protection
6026 Lakeside Blvd.
Indianapolis, IN 46278

September 17, 2004

TABLE OF CONTENTS

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS ............................................. 1

I. Legal Standards ............................................................................ 2

II. This Court Lacks Jurisdiction To Entertain B.B. Pallet's Complaint .. 3

A. This Action Is Not Founded Upon A Money-Mandating
Regulation Or A Contract With The United States ................... 4

1. A Customs Bond Is Not A Contract With
The United States ....................................................... 4

2. Section 113.62 Of 19 C.F.R. Does Not
Mandate The Payment Of Money ................................. 6

B. The Court Of International Trade Possesses Exclusive
Jurisdiction To Review B.B. Pallets' Claim That
Customs Classified Its Merchandise Wrongly ......................... 7

1. Introduction: The Issue Is Whether
B.B. Pallets Is Challenging A Classification Decision ..... 7

2. B.B. Pallets Is Challenging A
Classification Decision Made At Liquidation ................... 9

a. B.B. Pallets Disagrees With Customs's
Decision In Classifying Its Merchandise .............. 10

b. The Classification Decision Is Now Final ............ 11

i. Duties Differ From Penalties
And Liquidated Damages ........................... 12

ii. Custom's Position During The Administrative Proceedings Is Consistent .. 15

iii. The Classification Determines Whether The Merchandise Is Softwood Lumber ...... 19

iv. The "Final And Conclusive" Clause Bars Litigating A Classification Decision .... 21

v. An Action In The Court Of International Trade Would Not Have Been Moot ............ 24

vi. B.B. Pallets Could Have Protested The Classification Decision ........................ 26

3. *Trayco* and *High Star Toys* Do Not Require That This Court Find It Possesses Jurisdiction Because Importers In Those Cases Did Not Challenge Decisions Made At Liquidation .................................... 26

4. Judicial Review Of The Classification Decision Was Available ............................................... 30

5. Customs's Acceptance Of B.B. Pallets' Payment Does Not Create Jurisdiction In This Court .................. 31

C. Subject Matter Jurisdiction Is Lacking Here ........................... 33

III. Alternatively, B.B. Pallets' Argument That It Exhausted Its Administrative Remedies Lacks Merit ....................... 34

CONCLUSION ............................................................................... 35

# TABLE OF AUTHORITIES

## FEDERAL CASES


Campus Sportswear Co. v. United States,
621 F.Supp. 365, 366 (E.D. Mo. 1985) .......................................... 8

Christos v. United States,
48 Fed. Cl. 469 (2000),
aff'd, 300 F.3d 1381, 1384 (Fed. Cir. 2002) .................................... 6

Folden v. United States,
___ F.3d ___, 2004 WL 1811352 (Fed. Cir. Aug. 16, 2004) ........ 2, 9

High Star Toys, Inc. v. United States,
32 Fed. Cl. 176 (1994) ......................................................... Passim

International Nutrition Co. v. Horphag Research Ltd.,
220 F.3d 1325 (Fed. Cir. 2000) .................................................... 24

Kuehne & Nagel, Inc. v. United States,
17 Ct. Cl. 11 (1989) ......................................................................... 13

Landmark Land Co. Inc. v. United States,
256 F.3d 1365 (Fed. Cir. 2001) .................................................... 31

McCandless v. Merit Systems Protection Board,
996 F.2d 1193 (Fed. Cir. 1993) ............................................... 23, 24

Ransom v. United States,
900 F.2d 242 (Fed. Cir. 1990) ...................................................... 5

St. Paul Fire and Marine. Ins. Co. v. United States,
21 C.I.T. 953 (1997) ............................................................................ 5

Trayco, Inc. v. United States,
994 F.2d 832 (Fed. Cir. 1993) ............................................... Passim

United States v. Cocoa Berkau, Inc.,
990 F.2d 610 (Fed. Cir. 1993) ........................................................ 11

United States v. Utex Int'l Inc. and Sentry Ins. Co.,
857 F.2d 408 (Fed. Cir. 1988) ........................................................ 22

Vanderhoof Specialty Wood Products, Inc. v. United States,
2004 Ct. Int'l Trade LEXIS
(case no. 02-00793, March 11, 2004) ...................................... 24, 25

Xerox Corp. v. United States,
289 F.3d 792 (Fed. Cir. 2002) .......................................................... 8

Washington Int'l Ins. Co. v. United States,
16 Cl. Ct. 663 (1989) ....................................................................... 5

## FEDERAL STATUTES

United States Codes

19 U.S.C. § 1514 ........................................................................ Passim

19 U.S.C. § 1592 ............................................................................... 27

19 U.S.C. § 1617 ............................................................................... 13

19 U.S.C. § 1618 ........................................................................... 12, 27

19 U.S.C. § 1623(c) ..................................................................... Passim

28 U.S.C. § 1491 ............................................................................. 4, 7

28 U.S.C. § 1581 ...................................................................... 8, 22, 30

28 U.S.C. § 1582(2) ....................................................................... 28, 31

28 U.S.C. § 2632 ............................................................................... 30

28 U.S.C. § 2637 .......................................................................... 29

Code Of Federal Regulations

19 C.F.R. § 12.140(a) ........................................................... Passim

19 C.F.R. § 113.62 .................................................................... 6, 7

19 C.F.R. § 141.113(g) ............................................................... 23

19 C.F.R. § 172.11 .................................................................. 16, 18

19 C.F.R. § 172.22 .................................................................. 26, 31

19 C.F.R. § 172.22(b) ................................................................. 32

19 C.F.R. § 174.31 ..................................................................... 30

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| B.B. PALLETS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2748C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Defendant, the United States respectfully submits this reply to plaintiff's opposition to Defendant's Motion To Dismiss, which plaintiff, B.B. Pallets, Inc. ("B.B. Pallets") filed on August 16, 2004.

In our motion to dismiss, we established that this Court lacks jurisdiction to entertain B.B. Pallets' complaint because it raises matters for which the Court of International Trade possesses exclusive jurisdiction. Alternatively, we established that this Court should refrain from entertaining the complaint because B.B. Pallets failed to exhaust its administrative remedies.

B.B. Pallets essentially makes three arguments in support of finding subject matter jurisdiction. First, B.B. Pallets asserts that its claim is based upon a money-mandating regulation or upon a contract with the United States. Pl. Opp. 20-23. Second, it contends that Trayco, Inc. v. United

States, 994 F.2d 832 (Fed. Cir. 1993) and High Star Toys, Inc. v. United States, 32 Fed. Cl. 176 (1994), mandate a finding that this Court possess jurisdiction rather than the Court of International Trade. Pl. Opp. 23-34. Third, (and relatedly) B.B. Pallets claims that it was not required to protest the entries following liquidation if it wished to seek judicial review. In addition, B.B. Pallets presents an argument in response to the Government's alternative motion to dismiss for failing to exhaust administrative remedies — that the United States agreed to permit judicial when it accepted payments "under protest." As we demonstrate below, none of B.B. Pallets' contentions has merit.

I. Legal Standards

When a statute provides that another court possesses exclusive jurisdiction to review an agency's action, this Court does not possess jurisdiction to entertain a challenge to the agency's action. Folden v. United States, ___ F.3d ___, 2004 WL 1811352 (Fed. Cir. Aug. 16, 2004) (slip op. at 2, 12 n. 5 (describing administrative procedures necessary to obtain judicial review), 21-25).

In evaluating a motion to dismiss for failing to state a claim pursuant to RCFC 12(b)(6), the Court construes all factual allegations in the

complaint in favor of B.B. Pallets. In its brief, B.B. Pallets extensively discusses the classification of its merchandise. Opp. at 8-10; see also Opp. at 40-43. For purposes of this motion to dismiss, B.B. Pallets' substantive discussion is not material because this Court must find that it possesses jurisdiction before addressing the merits. Therefore, for purposes of this motion only, we do not address B.B. Pallets' arguments that the merchandise was not properly classified.

## II. This Court Lacks Jurisdiction To Entertain B.B. Pallet's Complaint

B.B. Pallets presents two theories pursuant to which, it contends, this Court possesses jurisdiction to entertain its complaint. First, B.B. Pallets contends that its claim is based upon a money-mandating regulation or a contract with the United States. This argument is wrong because the cited regulation does not mandate the payment of money, and B.B. Pallets did not have a contract with the United States.

B.B. Pallet's second theory for establishing this Court's jurisdiction is that the Court of International Trade does not possess exclusive jurisdiction to consider its claims. This theory is complicated. In summary, B.B. Pallets contends that the Court of International Trade does not possess exclusive jurisdiction because, although that court is the only forum for

judicial review of classification decisions, B.B. Pallets (according to B.B. Pallets) is not challenging a classification decision. In support of this approach, B.B. Pallets cites Trayco and High Star Toys. However, regardless of how B.B. Pallets characterizes its case, it, in fact, is challenging a classification decision. Thus, its theory is in error. These points are developed more extensively below.

A. This Action Is Not Founded Upon A Money-Mandating Regulation Or A Contract With The United States

B.B. Pallets contends that the Tucker Act, 28 U.S.C. § 1491, provides this Court with "jurisdiction to render judgment upon any claim against the United States founded . . . upon . . . any regulation or an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages not sounding in tort." 28 U.S.C. § 1491(a). (Emphasis by B.B. Pallets). Opp. at 21. B.B. Pallets bases its argument upon the two emphasized categories.

1. A Customs Bond Is Not A Contract With The United States

B.B. Pallets contends that its "claim is based on a customs bond, which is a type of contract with the United States." Opp. at 21; see also

Opp. at 5 n. 2. In support for this argument or statement, B.B. Pallets cites to the customs bond at issue (located at Def. App. at 3).

However, a customs bond is not "a type of contract with the United States." Washington Int'l Ins. Co. v. United States, 16 Cl. Ct. 663, 666-667 and 669-670 (1989) (in a matter involving customs bonds, the Court held that the surety had no privity of contract with the Government by virtue of the customs bonds); see also St. Paul Fire and Marine. Ins. Co. v. United States, 21 C.I.T. 953, 959-960 (1997) (Customs is "a third party beneficiary of the [customs] bond."); cf., Ransom v. United States, 900 F.2d 242, 244-45 (Fed. Cir. 1990) (holding a surety does not enter into a contract with the United States when the surety issues performance and payment bonds to a Government contractor). B.B. Pallets provides absolutely no support for its argument that the bond is a "contract with the United States."

Reviewing the bond itself reinforces the conclusion that Customs is not a party. The parties to the bond are "B.B. Pallets, Inc." as principal and "Washington International Insurance Company" as surety. Def. App. at 3. Nowhere on the bond is the Government listed as a party. Id. Thus, B.B. Pallets' reference to the bond at issue provides no support for its position that its bond is a contract with the United States.

2. Section 113.62 Of 19 C.F.R. Does Not Mandate The Payment Of Money

B.B. Pallets' general reference to "19 C.F.R. § 113.62" also provides no support for its argument that its case is based upon a money-mandating regulation. To establish a money-mandating regulation, a plaintiff must demonstrate that the regulation relied upon is an enforceable regulation of an Executive department and that the regulation "can be fairly interpreted to create a substantive right to monetary compensation from the United States." Christos v. United States, 48 Fed. Cl. 469, 475 (2000) (internal citations omitted), aff'd, 300 F.3d 1381, 1384 (Fed. Cir. 2002).

Here, the customs bond in question contains, among other things, a provision near the middle of the page toward the left ("Section III") that states: "**Principal and surety agree** that they are bound to the same extent as if they executed a separate bond covering **each set of conditions incorporated by reference to the Customs Regulations into this bond**." Id. (emphasis added.) To the left under "Section II," the "activity code" that is checked is "1," which indicates to the immediate right that the bond is an "Importer or broker bond [under 19 C.F.R. §] 113.62."[1]

[1] This regulation begins: "A bond for basic importation and entry shall contain the conditions listed in this section and may be either a single

As the bond at issue illustrates, 19 C.F.R. § 113.62 is nothing more than the terms of an "importer or broker" activity customs bond. Section § 113.62 does not require the United States to do anything, much less mandate the payment of money.

In short, B.B. Pallets has not demonstrated, based upon the facts at hand, that this Court possesses jurisdiction under the "money-mandating regulation" category or the "contract with the United States" category of the Tucker Act.

B. The Court Of International Trade Possesses Exclusive Jurisdiction To Review B.B. Pallets' Claim That Customs Classified Its Merchandise Wrongly

1. Introduction: The Issue Is Whether B.B. Pallets Is Challenging A Classification Decision

The parties agree that if the Court of International Trade possessed jurisdiction to entertain BB Pallet's claims, then this Court does not. 28 U.S.C. § 1491(c). The question, then, becomes whether the Court of International Trade would possess the authority to consider the issues raised in B.B. Pallets' complaint.

---

entry or a continuous bond." It then lists the conditions of the bond.

The Court of International Trade's authority to entertain B.B. Pallets' theory is manifest:

- First, any issue that is protestable is within the exclusive jurisdiction of the Court of International Trade;
- Second, classification is a protestable decision;
- Third, B.B. Pallets challenges a classification decision.

B.B. Pallets concedes the first two points. See Pl. Opp. at 3,7. Even if B.B. Pallets did not concede these two issues, these points are well-established. See 19 U.S.C. § 1514(a)(2); Xerox Corp. v. United States, 289 F.3d 792, 794 (Fed. Cir. 2002) ("Such findings of Customs as to 'the classification and rate and amount of duties chargeable' are protestable to Customs under 19 U.S.C. § 1514(a)(2)); Campus Sportswear Co. v. United States, 621 F.Supp. 365, 366 (E.D. Mo. 1985) ("Specifically, the [Customs Court Act of 1980] grants the Court of International Trade exclusive jurisdiction over disputes which deal with the classification of imported merchandise.") (citing 28 U.S.C. § 1581(a) and a law review article).

Thus, the nub of this case turns upon the third point — whether B.B. Pallets is challenging a classification decision. B.B. Pallets claims that it is challenging the decision to assess liquidated damages, not Customs's

classification. Pl. Opp. 18. According to B.B. Pallets, because it is challenging liquidated damages, it is not required to file a protest. Pl. Opp. 33-47. However, courts should "look to the true nature of plaintiff's claim, not how plaintiffs characterize it." Folden, ___ F.3d at ____ (slip op. at 27 n. 13). In addition to challenging the third point of the Government's syllogistic logic, B.B. Pallets also raises a separate point — that the Government agreed to permit B.B. Pallets make a judicial challenge to the classification decision when it accepted payment from it "under protest." Both of these arguments are wrong.

2. B.B. Pallets Is Challenging A Classification Decision Made At Liquidation

B.B. Pallets argues that it “was not required to protest the classification of the subject entries at liquidation.” Opp. at 34-47. If B.B. Pallets were required to protest the classification following liquidation, then B.B. Pallets will surely not prevail in this lawsuit (regardless of whether this Court finds that it possesses jurisdiction) because B.B. Pallets' failure to file a protest means that the classification is now "final and conclusive." 19 U.S.C. § 1514. B.B. Pallets attempts to avoid the operation of the “final

and conclusive" clause by characterizing the matter at hand as merely seeking the refund of liquidated damages rather than a refund of duties.

a. B.B. Pallets Disagrees With Customs's Decision In Classifying Its Merchandise

A review of the complaint shows that B.B. Pallets disputes how Customs classified its merchandise. Compl. ¶¶ 5-8, 40, 58-61, 82, 90, 97, 108, 116, 119.

In its brief, B.B. Pallets expresses unhappiness with the charges made against the bond. See Opp. at 34. This unhappiness is borne, necessarily from unhappiness with the classification decision. The liquidated damages imposed upon B.B. Pallets flow, naturally and easily, from the classification decision. The liquidated damages here resulted from nothing more than the reasoned application of the facts to the provisions of 19 C.F.R. § 12.140(a): (1) Customs determined that B.B. Pallets' merchandise fell within one of the classifications listed in section 12.140(a); (2) Customs demanded export permits; (3) Customs did not receive them; and therefore, (4) Customs assessed liquidated damages. It is that simple. We demonstrated this point in our motion to dismiss (Mot. at

7), and B.B. Pallets did not respond. By omission, B.B. Pallets concedes the merit of our contention.

b. The Classification Decision Is Now Final

B.B. Pallets seeks to overturn the classification decision. See Compl. ¶¶ 5-8, 40, 58-61, 82, 90, 97, 108, 116, 119. Pursuant to 19 U.S.C. § 1514, the classification decision is now "final and conclusive." However, B.B. Pallets attempts to avoid this clause based upon the fact that the matter at hand involves liquidated damages, not duties. According to B.B. Pallets, an importer may challenge, through an administrative proceeding, the assessment of liquidated damages pursuant to 19 U.S.C. § 1623(c). This statute, however, does not provide judicial review. Opp. at 33-37 (citing 19 C.F.R. § 172.22; United States v. Cocoa Berkau, Inc., 990 F.2d 610 (Fed. Cir. 1993)). In support of its distinction between classification decisions that result in the assessment of liquidated damages and classification decisions that result in the assessment of duties, B.B. Pallets raises four points. Pl. Opp. 37-43. Analyzing these points requires an understanding of the difference between duties, penalties, and liquidated damages.

i. Duties Differ From Penalties
And Liquidated Damages

B.B. Pallets focuses upon some differences between duties and liquidated damages and then concludes that the differences upon which it focuses support its position. Opp. at 17-49, passim. However, as discussed below, the differences B.B. Pallets ignores that defeat its argument. In general outline, the legal framework for the three types of debt is set forth below.

Penalties, in the customs law context, are assessed pursuant to statute with few, if any, exceptions. In other words, the word "penalties" is not used in its generic sense. Penalties can be "cancelled" or "mitigated" or "remitted." The legal authority for doing so is found at 19 U.S.C. § 1618 and related regulations, 19 C.F.R. Part 171. As the denomination indicates, penalties are not a form of revenue. They are penal. They are intended to punish unlawful conduct.

Similarly, liquidated damages are not a form of revenue. For liquidated damages, the event that prompts their being imposed is a breach of a customs bond. Like penalties, liquidated damages can be "cancelled" or "mitigated." The legal authority for doing so is found at 19 U.S.C. §

1623(c) and related regulations, 19 C.F.R. Part 172. They are assessed in order to promote compliance with Customs regulations and to deter failures to comply with them. In sum, Customs possesses legal authority to "cancel" or "mitigate" or "remit" penalties, and to "cancel" or "mitigate" liquidated damages whenever it determines that it would be appropriate do one of those things.

In contrast, duties are revenue. There are no provisions that allow a Customs officer to "cancel" or "mitigate" or "remit" duties. If an importer disagrees with Customs's duty determination, it must file a timely protest and file a timely summons to the Court of International Trade in order to attempt to obtain relief. 19 U.S.C. § 1514; see also 19 C.F.R. Part 174. Duties can be compromised pursuant to 19 U.S.C. § 1617. However, this authority is only rarely exercised with regard to duties (it is routinely exercised with regard to penalties and liquidated damages). In addition, "compromise" is an entirely different concept then the related concepts of "cancellation" and "mitigation." See, e.g., Kuehne & Nagel, Inc. v. United States, 17 Ct. Cl. 11, 16 (1989) (discussing the difference between the concepts of "mitigation" and "compromise"). Because duties are a source

of revenue, the law treats duties differently than it treats either penalties or liquidated damages. Customs cannot “cancel” or “mitigate” duties.

In addition to protecting revenue, the requirement to protest and to file a summons, found in section 1514, also performs a major role in promoting both administrative and judicial economy. The rule that a party must timely protest an issue that is protestable is powerful and inflexible by its express terms. After an importer fails to timely protest a matter upon which it could have prevailed, it cannot obtain relief in the courts as a matter of law. Competent customs law practitioners know that the rule is simple: when in doubt, file a protest. Neither administrative nor judicial economy would be served by allowing B.B. Pallets to avoid the operation of the “final and conclusive” clause.

These rules and related policies should be applied when considering whether Customs's classification decision is now final. B.B. Pallets lists what it alleges to be “four fatal flaws” in the Government’s argument that it is now impossible to challenge the classification issue. Opp. at 37-38. None has merit.

ii. Custom's Position During The <u>Administrative Proceedings Is Consistent</u>

In the first of the alleged "four fatal flaws," B.B. Pallets asserts that the Government is being inconsistent when we argue that the classification decision is final. B.B. Pallets alleges that this argument "is inconsistent with the position taken by U.S. Customs in determining [B.B. Pallets'] petitions under 19 U.S.C. § 1623(c), i.e., that [Customs Office of Regulations and Rulings'] ruling on a single 'test entry' would be controlling with respect to all of the liquidated damages cases involving grooved loading blocks, <u>regardless of the classification of the underlying entries at liquidation</u>." (Emphasis added.) Opp. at 37, 38-40.

As a preliminary matter, the documents cited by B.B. Pallets do not support the emphasized language in the immediately preceding paragraph. Pl. App. 20-25. Arguably, they do not support B.B. Pallets' statement at all. In any event, Customs did not mislead B.B. Pallets in any respect. Customs suspended collection action on the liquidated damages cases pending the outcome of the protests. Pet. App. 23 ("If you send a petition(s) noting which cases involve entries for which you have submitted a protest(s), I will hold those cases in abeyance pending the protest(s)

decision."). Customs informed B.B. Pallets of its petition rights. Pet. App. 20, 22, 23. The letters reflect that Customs would resume collection action when the overall circumstances indicated that it ought to do so. Pet. App. 23. The documents are consistent with Customs's view that B.B. Pallets would face the unfavorable consequences of the "final and conclusive" clause if its protests were not approved and if it had failed to file timely protests covering its other entries of merchandise. Pet. App. 20-25. Nothing in the letters from Customs suggests that B.B. Pallets could preserve its right to seek judicial review of the classification decisions by doing something other than file a timely protest, followed by a timely summons at the Court of International Trade. See Pet. App. 20-25. Thus, the purported inconsistency alleged by B.B. Pallets simply does not exist.

First, a Fines, Penalties & Forfeitures Officers ("FP&FO") can "cancel" liquidated damages when he or she determines that it would be appropriate to do so. See 19 C.F.R. § 172.11. Section 172.11 authorizes them to do so "notwithstanding any other law or regulation." Id. This broad grant of authority permits Customs to treat all of the entries the same. If Customs had approved B.B. Pallets' protests, the respective FP&FOs could have rightly "canceled" the petitioned liquidated damages cases, that is, the

cases where Customs's liquidation of the related entry had not been protested. Id; see also Pet. App. 23 (indicating that Customs would not, while a protest was pending, take any action on the entries for which B.B. Pallets had filed a petition, but not a protest). The FP&FO could have canceled the liquidated damages despite the fact that the classification issue had become "final and conclusive" for the following reasons: (1) section 172.11 allows cancellation "notwithstanding any other law or regulation" provision; (2) the cases at issue are basically identical but for the fact that five were protested while the rest were only petitioned; (3) therefore, an FP&FO could rightly determine that the "act . . . forming the basis of [the claim] did not occur" given the approved protests. Id. Of course, Customs did not approve B.B. Pallets' protests. Quite rightly, therefore, the respective FP&FOs did not "cancel" the cases at issue: they pursued collection of them.

Second, FP&FOs correctly refrained from mitigating the liquidated damages imposed upon BB Pallets. Customs issues mitigation guidelines to ensure uniformity. The guidelines for softwood lumber liquidated damages cases issued for violations of 19 C.F.R. § 12.140(a) provide that no relief shall be granted if an export permit is required but none is

provided. Quite rightly, therefore, the respective FP&FOs did not "mitigate" any of the cases at issue: it would have been wrong to offer any "mitigation" in the circumstances.

This matter involves run-of-the-mill softwood lumber liquidated damages cases. Customs treated B.B. Pallets no better or no worse than it has treated similarly situated importers in the past. The FP&FOs held their collection actions in abeyance in order to afford B.B. Pallets a chance to prevail upon its protests. This was a fair and equitable exercise of discretion in the circumstances. See, e.g., 19 C.F.R. § 172.11. B.B. Pallets did not prevail and subsequent events unfolded accordingly and in a manner entirely consistent both with law and with Customs's mitigation guidelines.

Incidentally, in setting out the "facts" for its argument, B.B. Pallets asserts that the liquidated damages were assessed after liquidation. Opp. at 35, n 15. This statement is not correct. For entry ECG-76140064, Customs issued a "Notice of Action", dated July 6, 2000, informing B.B. Pallets that liquidated damages "will be assessed." Def. App. 4. For this same entry, Customs issued a "Notice of Penalty or Liquidated Damages

Incurred" (Customs Form 5955A) on August 14, 2000. Def. App. 4A.[2] Both dates precede Customs's liquidation on September 15, 2000. Def. App. 33. Moreover, even if Customs's first demand for liquidated damages came on October 20, 2000 (the date of a notice to B.B. Pallets' surety) (Def. App. 5), Customs still informed B.B. Pallets of the monetary consequences of the liquidation decision in time for B.B. Pallets to protest the classification.

iii. The Classification Determines Whether The Merchandise Is Softwood Lumber

The second of the alleged flaws is that "the tariff classification of [B.B. Pallets'] entries at liquidation does not determine whether the subject merchandise is 'softwood lumber' within the meaning of the [Softwood Lumber Agreement] or its implementing regulations, 19 C.F.R. § 12.140(a) and 113.62(k) and (l)(5)." Opp. at 36 and 40-43. This statement is wrong because it ignores the fact of finality. See 19 U.S.C. § 1514(a).

B.B. Pallets' particular effort here fails because the Softwood Lumber Agreement was tariff driven and tariffs are driven by classification. As 19

---

[2] Although our proposed statement of facts, which was sent to opposing counsel on July 28, 2004, references the August 14, 2000 date, the United States did not supply this particular document to opposing counsel. We have corrected this oversight.

C.F.R. § 12.140(a) indicates, classification determined when export permits were required.[3] Thus, section 12.140(a) functioned like a tariff schedule that provides for the imposition of duties when a product falls within a certain classification category. Here, the obligation to provide expert permits was triggered when a softwood lumber product fell within one of the four classification categories set forth in section 12.140. Customs's classification gave effect to the agreement and resulted in the assessment of liquidated damages against B.B. Pallets. The liquidated damages

---

[3] This regulation provides:
In the case of softwood lumber first manufactured into a product classifiable in subheading 4407.10.00, 4409.10.10, 4409.10.20, or 4409.10.90, Harmonized Tariff Schedule of the United States (HTSUS), in the Province of Ontario, Quebec, British Columbia, or Alberta, the requirement that the Government of Canada issue an export permit and collect the appropriate export fees under the Softwood Lumber Agreement attaches to and encumbers the product when it is imported into the United States. Such imported merchandise remains subject to the encumbrance until the Government of Canada issues an export permit and collects the appropriate fees. The merchandise shall be released by Customs subject to the following conditions: The importer of record assumes an obligation to ensure within 20 working days of release that such export permit is issued by the Government of Canada and to provide sufficient information to satisfy U.S. Customs that the encumbrance no longer attaches or, if the merchandise remains encumbered at the expiration of 20 working days, to pay any liquidated damages assessed under the Customs bond.

followed a straightforward sequence: (1) Customs determined that B.B. Pallets' merchandise fell within one of the classifications listed in section 12.140(a); (2) Customs demanded export permits; (3) Customs did not receive them; and therefore, (4) Customs assessed liquidated damages.

iv. The "Final And Conclusive" Clause <u>Bars Litigating A Classification Decision</u>

As for the third alleged flaw, B.B. Pallets' contends that the “final and conclusive” clause of 19 U.S.C. § 1514 does not apply to liquidated damages or penalties. Opp. at 37 and 43. The plain language of the statute demonstrates that it is not limited in the fashion that B.B. Pallets alleges.

In pertinent part section 1514 provides:

> Decisions of the Customs Service, including the legality of all orders and finding entering into the same, as to –
>
> * * *
>
> (2) the classification and rate and amount of duties chargeable;
>
> * * *
>
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the

> United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title.

19 U.S.C. § 1514.

No language in section 1514 indicates that the "final and conclusive" clause applies only to duty issues or that it applies only in actions in the Court of International Trade. The statute features no limiting language whatsoever insofar as the clause is concerned. The protest and summons provisions of section 1514 and the language of related statutes in title 28 of the United States Code (e.g., 28 U.S.C. § 1581) indicate that the Court of International Trade possess exclusive jurisdiction for protestable issues.

The "final and conclusive" clause is broad in nature. For example, the clause has been applied against the Government in a matter involving liquidated damages. See United States v. Utex Int'l Inc. and Sentry Ins. Co., 857 F.2d 1408 (Fed. Cir. 1988). The clause defeated the Government's claim for liquidated damages in Utex. Id. In Utex, a protestable issue, admissibility, became "final and conclusive" in a manner unfavorable to the government. Id. (Customs's claim accrued post-liquidation, i.e., after the issue became "final and conclusive" against the

Government); see 19 U.S.C. § 1514(a)(4)("exclusion of merchandise," that is, admissibility).

Here, a protestable issue, classification, is "final and conclusive" in a manner favorable to the Government. See 19 U.S.C. § 1514(a)(2) ("classification"); see also 19 C.F.R. § 141.113(g) (regulation codifies Utex).

In sum, B.B. Pallets is simply wrong to assert that the "final and conclusive" clause does not apply to penalties or liquidated damages. The proper question to ask in connection with the clause is not what type of debt is at issue. The proper question to ask is whether the issue that supports the debt is protestable and, if so, is that issue "final and conclusive." As section 1514 and related precedent indicates, the clause does not always favor the Government. Here, the classification issue in this matter is "final and conclusive," and just as importantly, it is so in the Government's favor.

Consistent with the observations in the preceding paragraph, the only authority that B.B. Pallets offers in support of its contention concerning the limited operation of the clause is McCandless v. Merit Systems Protection Board, 996 F.2d 1193 (Fed. Cir. 1993). McCandless is completely

inapposite because it is a Federal personnel law case which involved the application of the principles of res judicata and collateral estoppel. See id. at 1197-1198; see also Int'l Nutrition Co. v. Horphag Research Ltd., 220 F.3d 1325, 1328 (Fed. Cir. 2000) (this is the only non-federal personnel law case to subsequently cite McCandless as authority, and the citation involves it the principle of res judicata). Neither principle is at issue here, and the Government cannot foresee how either might have any application to this case.

If anything, the classification of B.B. Pallets' merchandise has become res judicata and cannot be collaterally attacked in a dispute concerning liquidated damages. Consequently, B.B. Pallets' contention that the “final and conclusive” clause is inapplicable here has no merit.

v. An Action In The Court Of International Trade Would Not Have Been Moot

As for the alleged fourth flaw, B.B. Pallets argues that “no judicial review of the denial of any protest would have been available in the CIT” based upon Vanderhoof Specialty Wood Products, Inc. v. United States, 2004 Ct. Int'l Trade LEXIS (case no. 02-00793, March 11, 2004). Opp. at 37-38 and 44-45. We addressed Vanderhoof in our motion to dismiss. Mot

at 31-33. There is no indication in Vanderhoof that any liquidated damages cases were at issue. It can be reasonably inferred from the fact that Vanderhoof attempted to obtain the return of its lumber export permits that it was able to avoid the assessment of liquidated damages by virtue of providing Customs with them. The mere fact that Vanderhoof provided export permits is sufficient to distinguish Vanderhoof from the matter at hand.

In final analysis, Vanderhoof does not indicate that B.B. Pallets could not have obtained judicial review in the Court of International Trade. It indicates the opposite. Had liquidated damages been at issue in Vanderhoof in addition to the classification, it is safe to assume that this would have resulted in a finding by the Court of International Trade that the complaint presented an actual controversy. In Vanderhoof, there appear to have been no actual monetary implications or an issue concerning anything of any value. Due to the expiration of the Softwood Lumber Agreement under which the export permits were provided by Vanderhoof, the permits were worthless. Vanderhoof cannot reasonably be read as precluding judicial review in a case like the one at hand where no export permits were ever provided and where, as a result, liquidated damages were assessed.

vi. B.B. Pallets Could Have Protested The Classification Decision

Emerging from this discussion is the principle that B.B. Pallets could have protested all of the classification decisions and that B.B. Pallets could have obtained judicial review of the results of the protests at the Court of International Trade. There were no barriers to B.B. Pallets' pursuit of judicial review in that forum.

3. *Trayco* and *High Star Toys* Do Not Require That This Court Find It Possesses Jurisdiction Because Importers In Those Cases Did Not Challenge Decisions Made At Liquidation

B.B. Pallets attempts to establish that this Court possesses subject matter jurisdiction by arguing that there is no principled basis for distinguishing the present matter from Trayco or from High Star Toys, Inc. v. United States, 32 Fed. Cl. 176 (1994). Pl. Opp. at 27-33. We demonstrated in our motion to dismiss that each decision is distinguishable from the matter at hand. Mot. at 15-21. Furthermore, the "gap" described in Trayco has been closed by regulation. See 19 C.F.R. § 172.22. (This point is developed more in section 5, below.) B.B. Pallets' opposition brief demonstrates two general problems with its argument that Trayco and High Star Toys should control the outcome of this case.

B.B. Pallets argues from the position that penalties and liquidated damages are the same. Opp. 28-33. Despite some similarity, the law itself observes the fact that penalties and liquidated damages are not the same. As discussed in greater detail above (see section 2.b.i., above), relief from penalties is governed by 19 U.S.C. § 1618 and implementing regulations, 19 C.F.R. part 171. Relief from liquidated damages is governed by 19 U.S.C. § 1623(c) and implementing regulations, 19 C.F.R. part 172. To a very high degree, the difference between penalties and liquidated damages provides the "principled basis" for distinguishing Trayco and High Star Toys from the matter at hand.

As indicated in the preceding paragraph, the legal requirements for challenging liquidated damages and challenging penalties are not the same. In the case of penalties, there is frequently either no protestable issue or, if there is, a timely protest cannot be filed because the violation is discovered after the expiration of the period during which a timely protest could have been filed. For example, Trayco involved a penalty issued under 19 U.S.C. § 1592 that could not be protested pursuant to 19 U.S.C. § 1514. It follows that Trayco had no direct avenue to the Court of International Trade even had it wished to pursue that relief in that forum.

As a matter of law, Trayco had to wait to be sued In the Court of International Trade. See 28 U.S.C. § 1582(2).

The difference between paying liquidated damages for violating a customs bond for not classifying merchandise correctly and paying penalties affects the importer's rights. For example, Trayco could and did file a petition for relief but, as noted, it could not have filed a timely protest. B.B. Pallets, unlike Trayco, did not have to wait to be sued because it could have filed protests of Customs's liquidation of all of the entries at issue and then filed summonses in the Court of International Trade if it did not like Customs’s decisions on its protests. See 19 U.S.C. § 1514(a). In sum, most parties against whom Customs assess a penalty possess one avenue of relief: they can file a petition. See 19 C.F.R. part 171. In contrast, most parties against whom Customs assess liquidated damages possess two avenues of relief: they can protest or petition or both protest and petition. See 19 C.F.R. parts 171 (petition) and 174 (protest). Most importantly here, a party who can protest can proceed to the Court of International Trade as a matter of right if it wishes to do so for any reason.

B.B. Pallets could have timely protested Customs classification of all of the entries at issue, but it simply chose not do so. See Opp. at 11-16.

B.B. Pallets could have filed timely summonses in the Court of International Trade on those entries where a protest was filed, but it simply chose not to do so. See id. For at least these reasons alone, Trayco is distinguishable. Trayco never possessed the protest option that B.B. Pallets once possessed.

Thus, the distinguishing and substantial difference between Trayco and B.B. Pallets is that, but for an action pursuant to the [Little] Tucker Act, Trayco enjoyed no other avenue or opportunity for judicial review. B.B. Pallets had every opportunity to keep open the clear and inexpensive avenue to judicial review before the appropriate court, the Court of International Trade, but simply chose not to make the well-known customs law decisions necessary to keep open that avenue.[4]

The same is equally true of High Star Toys for the reasons demonstrated in the Government's motion. Mot. at 19-21. In its motion, the Government explained that the exclusive jurisdiction of the Court of International Trade was expanded in 1980, and that therefore, the strength

---

[4] The avenue would have been "inexpensive" because the classification issue here involved no duty implications. Therefore, B.B. Pallets did not have to pay any money before obtaining jurisdiction in the Court of International Trade. 28 U.S.C. § 2637.

of two of the three cases cited in High Star Toys to support the finding of jurisdiction should be questioned. Id. In response to this, B.B. Pallets characterizes the expansion of the exclusive jurisdiction of the Court of International Trade as "immaterial." Pl. Opp. at 33. However, a statute expanding the Court of International Trade's exclusive jurisdiction must also reduce the jurisdiction of other Federal courts. For at least these reasons, there is a legally principled basis for distinguishing High Star Toys from the matter at hand.

4. Judicial Review Of The Classification Decision Was Available

To summarize, judicial review to the Court of International Trade was available. Nothing prevented B.B. Pallets from continuing upon the path it started when it filed protests for five of the entries at issue.

However, judicial review is not now available. For the five entries that B.B. Pallets did protest, B.B. Pallets did not file a timely summons to the Court of International Trade to contest the denial of those protests. See 19 U.S.C. § 1514(a), 28 U.S.C. §§ 1581 and 2632; see also 19 C.F.R. § 174.31. For the remainder of the entries, B.B. Pallets did not file any protests. Additionally, B.B. Pallets' other avenue to the Court of

International Trade is also closed because it chose to pay the liquidated damages at issue. This choice rendered moot any need on the part of the Government to file suit pursuant to 28 U.S.C. § 1582(2).

Given this, B.B. Pallets' argument that it lacked any ability to seek judicial review is misleading at best. B.B. Pallets' own choices the placed it squarely in its present predicament of finding itself having chosen to pay the debt in question in full only to have all avenues of judicial review-relief closed due exclusively to those choices.

5. Customs's Acceptance Of B.B. Pallets' Payment Does Not Create Jurisdiction In This Court

In what can be described as an alternative argument, B.B. Pallets seems to argue that the United States agreed to judicial review when the United States accepted payment under protest. Pl. Opp. 23-27, esp. n. 13. This contention is wrong for at least two reasons.

First, the parties cannot create jurisdiction. See Landmark Land Co. Inc. v. United States, 256 F.3d 1365, 1380 (Fed. Cir. 2001).

Second, 19 C.F.R. § 172.22 closed the gap in the exclusive jurisdiction of the Court of International Trade identified in Trayco. After Trayco permitted importers who paid post-liquidation claims "under protest"

to file actions in the district courts pursuant to the Little Tucker Act, Customs promulgated a regulation — codified at 19 C.F.R. § 172.22(b) — in response. See 65 F.R. 53565, 53567 (September 5, 2000) (final rule). When summarizing the notice of proposed rulemaking, Customs addressed the "gap" discussed in Trayco. Customs stated that the amendment to 19 C.F.R. Part 172 would "eliminate [the Trayco] regulatory gap and provide that any payment made in compliance with a mitigation decision [would] act as an accord and satisfaction where the paying party has elected to resolve the case through the administrative process and have waived the right to sue for a refund. . . . According to the [proposed rule], Customs will not accept payments 'under protest.'" Id. The final rule included 19 C.F.R. § 172.22(b) was in effect at the relevant times in question. It provides that "Payment of a mitigated or cancellation amount will act as an accord and satisfaction of the Government claim."

Customs did not offer B.B. Pallets any relief as a result of its petitions. B.B. Pallets paid the full amount due, the "cancellation amount," for each import at issue, limited only by the face amount of its bond in the two annual periods in question. B.B. Pallets' payments were made within the scope of 19 C.F.R. § 172.22(b).

Section 172.22(b) bars BB Pallets argument that Customs has permitted a judicial action for refund in this Court. Section 172.22 states that, if a party chooses to pay, then an accord and satisfaction will result. Consequently, when B.B. Pallets paid the liquidated damages in question, it chose, in effect, to forego its ability, if any, to obtain judicial review of Customs decision not to mitigate the liquidated damages it had assessed. If it now regrets that choice, the Government bears no role or responsibility for that state of affairs.

C. Subject Matter Jurisdiction Is Lacking Here

B.B. Pallets is clearly not bring an action based upon a money-mandating regulation or a contract with the United States. B.B. Pallets is actually contesting a classification decision by Customs. This Court cannot entertain this type of challenge because the judicial review of classification decisions is within the exclusive jurisdiction of the Court of International Trade. Accordingly, this Court should grant the Government’s motion to dismiss for lack of subject matter jurisdiction.

## III. Alternatively, B.B. Pallets' Argument That It Exhausted Its Administrative Remedies Lacks Merit

If this Court determines that it possesses jurisdiction, then the Court should grant the Government's alternative motion to dismiss for failing to exhaust administrative remedies. B.B. Pallets argues that it has exhausted its administrative remedies by filing its petitions pursuant to 19 U.S.C. § 1623(c). Opp. at 48-49.

Section 1623(c) does not affect the operation of section 1514. Per 19 U.S.C. § 1514(a), the classification issue is "final and conclusive" and that is the end of the matter. B.B. Pallets could have easily followed the procedures set forth in section 1514 to the Court of International Trade. B.B. Pallets took the first step — the filing of a protest for five entries. However, B.B. Pallets did not take the second step — the filing of a summons at the Court of International Trade. When it is clear that the Court of International Trade could have considered the issue that B.B. Pallets raises in its complaint, this Court should exercise its discretion to dismiss the complaint, pursuant to RCFC 12(b)(6), for failing to exhaust administrative remedies.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint for lack of jurisdiction. Alternatively, we respectfully request that the Court dismiss the complaint for failing to exhaust administrative remedies.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:
Albert Kundrat
Attorney
United States Customs and
Border Protection
6026 Lakeside Blvd.
Indianapolis, IN 46278

s/ Christian J. Moran
CHRISTIAN J. MORAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6299
Fax: (202) 514-7969

Attorneys for Defendant

September 17, 2004