**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| B.B. PALLETS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2748C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**CONSOLIDATED STATEMENT OF UNCONTROVERTED FACTS**

The parties respectfully submit this proposed Consolidated Statement of Uncontroverted Facts, pursuant to paragraph 11-12 of the Court's Special Procedures Order, dated December 19, 2003. During the status conference held on July 8, 2004, the Court directed the parties to prepare such a statement to address the factual issues raised by the government's Motion to Dismiss.

Some of the facts recited below are alleged in the complaint ("Compl.").[1] Other facts are based upon documents filed as exhibits to the Complaint, the Defendant's Motion to Dismiss, and the Plaintiff's Opposition to the Defendant's Motion to Dismiss. The Court may consider the additional facts presented here, because they are relevant to the

Court's subject matter jurisdiction. See, e.g., RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461-62 (Fed. Cir. 1998); Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

1. [D] **B.B. Pallets, Inc. ("BBP") is a Canadian lumber remanufacturer that began selling "bed frame components and loading blocks" in the United States in the mid-1990's**. Compl. ¶ 55.

Plaintiff's Objection: BBP is an independent lumber remanufacturer (*i.e.,* a "downstream" or "secondary" producer of articles made from lumber manufactured by unrelated companies). The gravamen of the Complaint is that bed frame components and loading blocks are beyond the scope of the Softwood Lumber Agreement because they are remanufactured lumber products, not mere lumber.

[1] [D] **For the purposes of this motion only, the United States accepts as true the factual allegations contained in the complaint.**

2. [D] **Between May 12, 1999 and October 17, 2000, B.B. Pallets imported merchandise [invoiced] ~~that it described~~ as bed frame components and loading blocks into the United States.** Compl. ¶¶ 3, 55.

Plaintiff's Objection: "Invoiced" is more neutral and precise than the stricken language.

3. [D] **On or about January 24, 2000, B.B. Pallets entered ~~bed frame components and~~ loading blocks under entry number EG6-7614006-4 ("entry one"). A copy of Customs Form 7501, which is titled Entry Summary, for entry one appears at appendix ("App.") 1.** (Entry one is the first entry found on the list concerning "Bond Period 5/11/99 – 5/10/00" that is found in "Complaint Exhibit 1.")

Plaintiff's Objection: The cited entry covered only loading blocks.

4. [P] **On July 6, 2000, U.S. Customs at the Port of Buffalo, New York (hereinafter "the port of Buffalo"), issued a Customs Form 29 ("CF-29") Notice of Action announcing its intention to reclassify, under Subheading 4409.10, HTSUS, 19 U.S.C. § 1202, fourteen (14) shipments of "grooved loading blocks" entered by the Plaintiff, BBP between December 20, 1999, and March 6, 2000.** See Def.'s Mot. to Dismiss App. 4.

5. [P] **Grooved loading blocks like those at issue here are pictured in Exhibit 3 of the Complaint.**

Defendant's Objection: No evidence supports this assertion.

6. [P] **BBP had made numerous entries of loading blocks under Subheading 4415.20, Harmonized Tariff Schedule of the United States ("HTSUS"), over the preceding five years, and U.S. Customs had liquidated the merchandise as entered.** See Compl. Ex. 4.

Defendant's Comment: Agrees based upon the documents attached to B.B. Pallet's two protests. Def. App. 33-40. Complaint. Ex. 4 does not support this assertion.

7. [P] **At the time the entries in suit were made, imports from Canada classified under Subheadings 4407.10 and 4409.10, HTSUS, were subject to a Canadian export permit requirement under the U.S.-Canada Softwood Lumber Agreement ("the SLA") and its implementing regulations.** See SLA, 35 I.L.M. 1198 (1996); 19 C.F.R. §§ 12.140(a) and 113.62(k) & (l)(5) (1997).

8. [P] **Free export permits were available only for a limited quota of subject merchandise; beyond that, importers had to pay $105 (US) per thousand board feet to obtain an export permit from the Canadian government.** See SLA, 35 I.L.M. 1198.

9. [P] **Failure to present required permits to U.S. Customs within 20 days of entry constituted a breach of the importer's customs bond.** See 19 C.F.R. § 113.62(k).

10. [P] **Such a breach entitled U.S. Customs to assess liquidated damages of $100 (US) per thousand board feet to the limit of the bond for the relevant time period.** See id. § 113.62(l)(5).

11. [D] **Under the Softwood Lumber Agreement ("SLA") between the United States and Canada, ~~certain items classified as~~ imports of "softwood lumber" from Canada ~~under the Harmonized Tariff Schedule of the United States ("HTSUS") are or~~ were encumbered with a regulatory requirement mandating that the importer present to Customs an export permit issued by the Canadian government within 20 days of entry.** See SLA, May 29, 1996, Canada-United States, 35 I.L.M. 1195 (entered into force May 29, 1996); 19 C.F.R. § 12.140(a). **Failure to produce the required permit ~~or certificate~~ results in the assessment of liquidated damages.** 19 C.F.R. § 113.62(k) and (l)(5).

Plaintiff's Objection: The use of the present tense seems incorrect as the SLA has expired. The term "softwood lumber" is not a term in the HTSUS. It appears in the SLA and its implementing regulations and is defined by referenced to the HTSUS provisions for "wood sawn lengthwise." The word "certificate" is a misnomer as the SLA and its implementing regulations use the term "permits."

12. [D] **On or about July 17, 2000, B.B. Pallets entered ~~bed frame components and~~ loading blocks under entry number EG6-7614450-4 ("entry two").** App. 2.

Plaintiff's Objection: The cited entry covered only loading blocks.

13. [P] **On October 20, 2000, the port of Buffalo issued CF-5955A Notices of Penalty or Liquidated Damages Incurred and Demand for Payment for the above-cited entries of loading blocks.** See, e.g., Def.'s Mot. to Dismiss App. 5-6.

14. [P] **In the ensuing weeks and months, U.S. Customs liquidated numerous additional entries of grooved loading blocks under Subheading 4409.10, HTSUS, and assessed liquidated damages of $100 (US) per thousand board feet for each of those entries.** See Compl. Ex. 1.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion of fact. However, complaint exhibit 1 does not support this assertion.

15. [P] **U.S. Customs also liquidated numerous entries of straight-cut bed frame components under Subheading 4407.10, HTSUS, and assessed liquidated damages of $100 per thousand board feet for each of those entries.** See Compl. Ex. 1.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion of fact. However, complaint exhibit 1 does not support this assertion.

16. [P] **U.S. Customs did not dispute that radial cut bed frame components are correctly classified under Subheading 4421.90, HTSUS, or that many of BBP's entries comprise both straight-cut and radial-cut components.** See Pl.'s Opp. to Def.'s Mot. Dismiss App. 4.

Defendant's Objection: The document cited is a letter from an attorney representing B.B. Pallets. As such, it is not probative of what Customs did or did not dispute.

17. **However, BBP's invoices did not separately identify straight-cut and radial-cut components, so U.S. Customs treated all of BBP's bed frame components as straight-cut and, thus, correctly classified under Subheading 4407.10, HTSUS (according to U.S. Customs' allegedly erroneous interpretation).** See Compl. Ex. 1.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion of fact. However, complaint exhibit 1 does not support this assertion.

18. [D] **On various dates, Customs issued a Customs Form 5955A, Notice of Penalty or Liquidated Damages Incurred and Demand for Payment ("Demand"), for each of the entries listed in Complaint Exhibit 1. On each Notice, Customs asserted a specific amount that was owed and informed B.B. Pallets that Customs was assessing liquidated damages because B.B. Pallets had failed to provide an export permit (or "lumber certificate").** Id.; see also Compl. ¶ 7.

19. [D] **For example, with regard to entry one, Customs issued a demand upon B.B. Pallets on or about August 14, 2000.** See

Appendix 4A.[1] **Customs issued a demand upon B.B. Pallets' surety, Washington International Insurance Company, on or about October 20, 2000.** See Appendix 5.

20. [D] **With regard to entry two, Customs issued demands on B.B. Pallets on or about October 20, 2000.** See Appendix 6. (Customs did not send a Demand to B.B. Pallets' surety due to the protests discussed below. When a protest is filed, Customs will usually forebear from pursuing payment of liquidated damages from the surety until the protest is decided or until the press of a statute of limitations compels Customs to pursue payment from the surety.)

21. [P] **On August 28, 2000, BBP's former customs counsel, Janet A. Forest, Esq., wrote letters to the Port Directors of all ports through which BBP entered loading blocks.** See Pl.'s Opp. to Def.'s Mot. Dismiss App. 1.[2]

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion. However, the United States

---

[1] [D] The United States notes this document was unintentionally omitted from the appendix originally provided to B.B. Pallets. However, the fact, itself, was asserted.

[2] [P] **Ms. Forest retired in 2002, before OR&R's ruling on the loading block protests. Ms. Forest worked for many years in the litigation department of the General Counsel's Office at U.S. Customs and, thereafter, had a long career as a customs specialist in private practice at Kirkland & Ellis, Miller & Chevalier, and**

notes that the document cited was addressed to the port of Detroit, not all ports.

As to the assertions in footnote 2, plaintiff cites no evidence in support of Ms. Forest's biography, which is irrelevant in any event.

22. [P] **In her letters, Ms. Forest informed the Port Directors that in accordance with the port of Buffalo's reclassification decision, BBP would start entering its grooved loading blocks under Subheading 4409.10, HTSUS, and providing permits.** See id.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion. However, the United States notes that the document cited was addressed to the port of Detroit, not all ports.

23. [P] **Ms. Forest also asked that "any notices of liquidated damages for failure to have an export permit not be sent pending final resolution of the classification question, or, alternatively, that the time for filing a petition in response to any liquidated damages notices be extended until this issue is resolved."** Id.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion. However, the United States

notes that the document cited was addressed to the port of Detroit, not all ports.

24. [P] **On September 14, 2000, U.S. Customs at the Port of Champlain, New York, issued a CF-29 announcing its intention to reclassify an entry of straight-cut bed frame components (entry number 144-8223678-4) under Subheading 4407.10, HTSUS.** See Pl.'s Opp. to Def.'s Mot. Dismiss App. 4.

25. [P] **Other ports issued similar CF-29s in the ensuing weeks and months.** Id. at 3.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion. However, the United States notes that the document cited was from the port of Champlain, not all ports.

26. **BBP had made numerous entries of straight-cut wooden bed frame components under Subheading 4421.90, HTSUS, over the preceding five years, and U.S. Customs had liquidated the merchandise under that classification.** See Compl. Ex. 4.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion. However, the United States notes that the document cited does not support the assertion.

27. [P] **Assembled bed frames made from components like those at issue here are pictured in Exhibit 2 of the Complaint**.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion. However, the United States notes that the document cited does not support the assertion.

28. [P] **On October 4, 2000, Ms. Forest responded to the CF-29s concerning straight-cut bed frame components.** Pl.'s Opp. to Def.'s Mot. Dismiss App. 3-4.

Defendant's Comment: Assuming that "the CF-29s" refers to documents discussed in paragraphs 24 and 25, the Defendant does not dispute this fact.

29. [P] **In her letter, Ms. Forest conveyed that while BBP did not agree with the reclassification of straight-cut bed frame components, the company had decided not to dispute the issue at that time.** See id.

30. [P] **On September 15, 2000, the port of Buffalo liquidated the first entry of loading blocks listed on its July 6, 2000, CF-29 (entry number EG6-76140064).** See Def.'s Mot. to Dismiss App. 33.

31. [P] **On September 29, 2000, the port of Buffalo liquidated five other entries of loading blocks listed on the CF-29 (entry numbers**

**EG6-7613591-6, EG6-7613779-7, EG6-7614290-4, EG6-7614450-4, and EG6-7614565-9).** Id. at 34.

32. [P] **On December 13, 2000, BBP filed a timely protest and application for further review of the first reclassified entry of loading blocks that liquidated (entry number ECG-76140064).** See Def.'s Mot. to Dismiss App. 33; 19 U.S.C. §§ 1514(a) and 1515(a); 19 C.F.R. Part 174.

33. [P] **On December 21, 2000, BBP filed a timely protest and application for further review of the next five reclassified entries of loading blocks that liquidated (entry numbers EG6-7613591-6, EG6-7613779-7, EG6-7614290-4, EG6-7614450-4, and EG6-7614565-9).** See id. at 34.

34. [P] **In its protests, BBP explained in detail why** [its position that] **the subject entries were correctly classified under Subheading 4415.20, HTSUS, and, in any event, could not be reclassified because of the treatment previously accorded by U.S. Customs to BBP's entries in multiple liquidations.** See id. at 35-40 (citing Section 625(c)(2) of the Customs Modernization and Informed Compliance Act ("the Mod Act"), Pub. L. 103-182, § 623, 107 Stat. 2186 (1993) (codified at 19 U.S.C. § 1625(c)(2)) and Precision Specialty Metals, Inc. v. United States, 182 F. Supp. 2d 1314, 1326 (Ct. Int'l Trade 2001)).

Defendant's Comment: The United States disagrees that "subject entries were correctly classified [by B.B. Pallets] under Subheading 4415.20." However, the United States agrees with the assertion if the phrase "its position that" is added as indicated by the underlined text.

35. [P] **On February 8, 2001, the port of Buffalo denied BBP's first protest and granted its application for further review.** See Def.'s Mot. to Dismiss App. 33.

36. [P] **The protest was referred to Headquarters (specifically, the Office of Regulations and Rulings or "OR&R") for a ~~final~~ decision.** See id. at 41-47.

Defendant's Objection: Whether a ruling by OR&R is "final" depends upon 19 U.S.C. § 1514(a).

37. [P] **The port of Buffalo suspended action on the second protest pending OR&R's ruling on the first protest.** See id. at 48.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion.

38. [D] **In each of the demands sent to B.B. Pallets (or to both B.B. Pallets and its surety), Customs stated the specific amount that was owed as liquidated damages for breach of the customs bond listed on the demand. In the first example, the amount owed was $1,368.40. In the second example, the amount owed was $569.00.** See App. 5 -6.

39. [D] **In its demands, Customs also informed B.B. Pallets that Customs was assessing liquidated damages for breach of the bond because B.B. Pallets had failed to provide a lumber certificate.** Id.; see also Compl. ¶ 7. **In the two examples, the demands did not inform B.B. Pallets that no relief and/or mitigation would be offered. In some instances, the demand expressly stated that no relief would be offered until after the required lumber certificate was provided. For example, demands from the Port of Detroit (port number 3801) feature that express statement regarding relief and/or mitigation.** See

App. 7 (demand in case number 2001-3801-201647-01 issued from the Port of Detroit).

40. [D] ~~**All of Customs' demands informed B.B. Pallets that it could elect to file a petition to explain why it believed that it should not be penalized for the liquidated damages in question. In many instances, the information concerning the ability to file a petition is printed near the bottom of the demand form, Customs Form 5955A.**~~ ~~See, e.g., App. 5.~~ ~~**In other instances, this information is typed. Whether printed or typed, Customs' demands provided the recipient with notice of its rights file a petition, pursuant to 19 C.F.R. Part 173.**~~

Plaintiff's Objection: Part 173 of the Customs Regulations, 19 C.F.R., relates to petitions for administrative relief in penalty cases. Part 172 relates to liquidated damages. The Defendant's statement suggests that B.B. Pallets did not file timely petitions under Part 172, which is not true. Defendant admits this fact in the next paragraph.

41. [P] **In addition to the above-mentioned protests, BBP filed timely petitions to cancel the charges against the bond under 19 U.S.C. § 1623(c) and 19 C.F.R. Part 172.** See Pl.'s Opp. to Def.'s Mot. Dismiss App. at 8-32.

42. [P] **In its petitions, BBP asked that all of the charges concerning loading blocks be canceled (i.e., not just those based on the protested entries) on the ground that the subject loading blocks were correctly entered under Subheading 4415.20, HTSUS, and, in any event, could not be reclassified because of BBP's prior treatment.** See id.

43. [P**] After some initial reluctance, Pl.'s Opp. to Def.'s Mot. Dismiss App. 20-22, all of the responsible Fines, Penalties & Forfeiture ("FP&F") officers at the relevant ports agreed to suspend action on the liquidated damages cases (including the cases involving bed frame components) pending OR&R's ruling on the first protest,** see id. at 23 and 25.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion. The United States notes that the

document cited refers to the ports of Buffalo and Ogdensburg, NY only.

44. [P] **As U.S Customs did not extend the liquidation of the other entries underlying the liquidated damages cases, those entries liquidated in due course and were not protested.** Id. at 25.

Defendant's Comment: For purposes of this motion, the United States does not dispute this assertion. The United States notes that it appears that the port of Buffalo extended the time to liquidate some of the entries. However, this extension is not relevant to the pending motion.

45. [P] **On September 4, 2002, OR&R issued Customs Service Headquarters Ruling 964900 affirming the denial of BBP's first protest on further review.** See Def.'s Mot. to Dismiss App. 41-47.

46. [P] **The responsible FP&F officers then lifted the suspension of the liquidated damages cases (including the cases involving bed frame components), and denied BBP's petitions for administrative relief.** See Compl. Ex. 1.

Defendant's Comment: Provided that B.B. Pallets uses the term "suspension" in its generic sense, the United States does not dispute

this assertion. If the term "suspension" is used as a term of art (see 19 U.S.C. § 1504), the United States disputes this assertion.

47. [P] **Buffalo denied BBP's second protest on the basis of OR&R's decision, though this did not happen until February 2, 2004, after this action was commenced.** See Def.'s Mot. to Dismiss App. 48.

48. [P] **U.S. Customs renewed its demand for liquidated damages to the full extent of BBP's bond for the two bond periods at issue, i.e., $100,000 (US), less $6,782.50 that BBP already had paid without protest, for a total of $93,217.50.** See Compl. Ex. 1.

[P] **By letter dated January 6, 2003, BBP sent U.S. Customs a certified check for the remaining $93,217.50, stating that the payment was being made "under protest," and that BBP "reserve[d] the right to pursue a refund action in the Court of Federal Claims."** Compl. Ex. 1.

49. [P] **On January 13, 2003, U.S. Customs accepted BBP's payment ~~under protest~~.** See id.

Defendant's Objection: The United States objects to this fact as written. The United States accepted a payment from B.B. Pallets. Legally, the United States could not accept a payment "under protest." 19 C.F.R. § 172.22(b).

50. [D] **On various dates, B.B. Pallets submitted petitions in the liquidated damages cases to challenge Customs' actions.** See, e.g., App. 8-32. **Ultimately, B.B. Pallets filed petitions in all of the liquidated damages cases, two of which involved duplicate entries.**[2]

51. [D] **For five entries, B.B. Pallets elected to file protests on a Customs Form 19, titled "Protest."**3

52. [D] **The protest for entry one is numbered 0901-00-100490.** See App. 33 (block five lists entry one). **The protest for entry two is numbered 0901-00-100508.** See App. 34 - 40 (block five includes entry

---

2 [D] **Customs liquidated damages case numbers 2001-3801-201649-01 and 2001-3801-201650-01 both pertain to entry number EG6-7828387-0 and assess liquidated damages in the amount of $1,492.90.** See Compl. Exh. 1.

3 [D] **A "protest" ~~of a Customs liquidation decision~~ is a term of art in this context. See 19 U.S.C. § 1514 and 19 C.F.R. Part 174. References to this specific administrative proceeding should not be confused with B.B. Pallets' use of the term in connection with its liquidated damages payment of $93,217.50 "under protest."** See Compl. ¶ 10 and Exh. 1.

Plaintiff's Objection: A "protest" can relate to many other forms of decisions. 19 U.S.C. § 1514(a). Moreover, the allegedly protestable action at issue in this case was not a "liquidation decision." It was a classification decision that became final, and protestable under 19 U.S.C. § 1514(a)(2), at liquidation. When a liquidation decision is challenged as such, the protest remedy arises under 19 U.S.C. § 1514(a)(5).

two). **We refer to these protests as "protest one" and "protest two," respectively.**

53. [D] **In protests one and two, B.B. Pallets challenged Customs' reclassification of its ~~bed frame components and~~ loading blocks. If Customs approved B.B. Pallets' protest as to classification, then Customs ultimately would have cancelled the liquidated damages that it assessed for failures to provide the required lumber certificates [, though the agency could not be legally required to do so.] As noted below, Customs denied both protest one and protest two.**

Plaintiff's Objection: The protests concerned only loading blocks. U.S. Customs agreed to cancel all the liquidated damages assessments involving loading blocks if the protests were granted. However, this agreement was not enforceable, and U.S. Customs has an absolute and unreviewable discretion in determining petitions for administrative relief under 19 C.F.R. Parts 172 and 173.

54. [D] **~~As to the other entries at issue in this lawsuit, B.B. Pallets did not file any protests. In other words, B.B. Pallets did not protest Customs' classification determination on most of the entries at issue.~~**

Plaintiff's Objection: This statement suggests that BBP was required to file protests covering all of the subject entries to obtain a remedy under 19 C.F.R. Parts 172. This suggestion is incorrect and inconsistent with the Defendant's admission, in Paragraph 15 *supra,* that U.S. Customs would have canceled the liquidated damages assessments involving loading blocks if the protests had been granted.

55. [D] **All together, B.B. Pallets' various petitions involved a much greater number of cases seeking liquidated damages and sought relief from the liquidated damages for all entries, some (but not all) of which are at issue in this proceeding. ~~Customs was unable to collect any amount on the entries not at issue in this case because the face amount of the bond, $50,000.00, was not sufficient to secure their payment. In other words, B.B. Pallets' liability for liquidated damages would be far higher if the face amount of the bond did not limit its liability to $50,000.00 for each of the two annual periods at issue.~~**

Plaintiff's Objection: This statement is inaccurate and question begging. First, an importer cannot be "liable" to U.S. Customs for more liquidated damages than authorized under the relevant customs bond. *See* 19 U.S.C. § 113.62. The face amount of the bond thus limits the government's substantive right and not merely its remedy. Second, this statement assumes that BBP breached its bond, which is the conclusion that the government must prove to establish any liability at all.

56. [D] ~~**The printed language near the top of a Customs Form 19 informs the importer/protestant that if the protest is denied, a civil action can be brought by the importer in the Court of International Trade by filing a summons within 180 days of the date of mailing of the notice of denial.**~~ ~~See App. 33 - 34 (the printed language is just above "Section I").~~

Plaintiff's Objection: This statement erroneously suggests that BBP could have contested the denial of a protest of the liquidation of the subject entries in the CIT when, in fact, such an action would have been beyond that Court's Article III jurisdiction. This statement also suggests that BBP was required to file protests covering all of the subject entries to obtain a remedy under 19 C.F.R. Parts 172. This suggestion is incorrect and inconsistent with the Defendant's admission, in Paragraph 15 *supra,* that U.S. Customs would have canceled the liquidated damages assessments involving loading blocks if the protests had been granted.

57. [D] **On or about September 4, 2002, Customs denied protest one.** See App. 41 - 47.

58. [D] **By letter dated January 6, 2003, B.B. Pallets sent Customs a certified check in the amount of $93,217.50.** Compl. ¶¶ 1, 3, Exhibit 1. **This payment addressed the pending claims for the 50 entries at issue**. Compl., Exhibit 1**. (Two of the 50 cases at issue are duplicate cases; in other words, they were both issued against the same entry, entry number EG6-7828387-0, and, therefore, resulted in a duplicate payment of $1,492.90. As noted above, the bond in question was not adequate to secure payment of all the liquidated damages. ~~Therefore, the United States ultimately intends to request that the Court grant the Government permission to retain the second payment of $1,492.90, either by allowing it to stand as applied or by applying $1,492.90 to one or more of the unsecured liquidated damages cases that are not at issue.~~)**

Plaintiff's Objection: The stricken language does not relate to the facts of the case but, rather, possible future filings by the government.

59. [D] **Customs denied protest two on or about February 2, 2004.**[4] App. 48.

60. [D] ~~**When B.B. Pallets paid the liquidated damages at issue, it still could have timely filed a summons to the Court of International Trade to contest Customs' denial of protest one. B.B. Pallets could file a timely summons to contest Customs denial of Protest Two as long as it files that summons before the expiration of the 180-day period.**~~

Plaintiff's Objection: This statement erroneously suggests that BBP could have contested the denial of a protest of the liquidation of the subject entries in the CIT when, in fact, such an action would have been beyond that Court's Article III jurisdiction. This statement also suggests that BBP was required to file protests covering all of the subject entries to obtain a remedy under 19 C.F.R. Parts 172. This suggestion is incorrect and inconsistent with the Defendant's admission, in Paragraph 15 *supra,* that U.S. Customs would have

[4] [D] ~~**Defendant understands that Customs did not decide this protest at the same time as the previous protest because of an oversight.**~~

Plaintiff's Objection: There is no evidence cited to support the assertion that the failure to decide the second protest was an "oversight." The most plausible inference from the factual record is that OR&R's decision on the first protest was sufficient to determine the classification issue for purposes of BBP's liquidated

canceled the liquidated damages assessments involving loading blocks if the protests had been granted.

damages liability, and the decision on the second protest had no practical or legal significance with respect to that issue.

61. [D] **On November 25, 2003, B.B. Pallets filed the pending complaint in this Court. The complaint contains six counts. Count I thru Count III concern bed frame components. Compl. ¶¶ 65-97. Count IV thru Count VI relate to the loading blocks. Compl. ¶¶ 98-119. For both the bed frame components and the loading blocks, the complaint asserts three theories: (1) Customs misclassified the subject imports under the HTSUS (Counts I and IV); (2) Customs ~~misclassified~~ reclassified the subject ~~imports~~ ~~pursuant to the "Mod Act"~~ merchandise without observing the procedure required by Section 625(c) of the Customs Modernization and Informed Compliance Act ("the Mod Act"), Pub. L. 103-182, § 623, 107 Stat. 2186 (1993) (codified at 19 U.S.C. § 1625(c)) (Counts II and V); and (3) Customs erred in ~~classifying~~ concluding that the subject imports ~~pursuant to~~ are "softwood lumber" within the meaning of the SLA and its implementing regulations (Counts III and VI).**

Plaintiff's Objection: The full name of, and citation to, Section 625(c) of the Mod Act is provided in redline. Strictly speaking, imports are not "classified" or "misclassified" under Section 625(c) of the Mod Act. Rather, the classification of an importation may be invalid under

Section 625(c) because it is inconsistent with an prior, unrevoked classification ruling or treatment involving substantially identical merchandise --- regardless of the correctness of that prior classification ruling or treatment. Similarly, imports are not "classified" or "misclassified" under the SLA. The scope of the SLA is defined as "softwood lumber from Canada." This scope definition merely references tariff classification, under the 1996 HTSUS, in specifying what "softwood lumber" means.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ A. Woodson Stuart
A. WOODSON STUART
2315 Wisconsin Ave., NW
Second Floor
Washington, DC 20007
Tele: (202) 279-3196
Fax: (202) 338-0270

Attorney for Plaintiff

October 5, 2004

s/ Christian J. Moran
CHRISTIAN J. MORAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6299
Fax: (202) 514-7969

Attorneys for Defendant

October 5, 2004