Hughes Hubbard & Reed LLP

1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone: 202-721-4600
Fax: 202-721-4646

Janet A. Forest
Customs Counsel
Direct Dial: 202-721-4790
E-mail: forest@hugheshubbard.com

January 18, 2001

*VIA FACSIMILE AND FIRST CLASS MAIL*
Ms. Maureen O'Connor
F, P&F Officer
U.S. Customs Service
Room 603
1 11 West Huron Street
Buffalo, NY 14202

Re: Petition for Relief from Liquidated Damages Incurred (Case Numbers 2001090120012801, 2001090120012901, 2001090120013001, 2001090120013101,[1] 2001090120016301, 2001090120016401, 2001090120016501, 2001090120016701, 2001090120016801, 2001090120017001, 2001090120017101, 2001090120017201, 2001090120017301, 2001090120017501, 2001090120017701, 2001090120018501)

Dear Ms. O'Connor:

Pursuant to your letters of January 2 and 8, 2001, we are writing on behalf of our client, B.B. Pallets, Inc., to request that you cancel all the claims for liquidated damages issued to our client in connection with the sixteen entries of wooden loading blocks covered by the above-referenced cases. As we understand that you will no longer suspend action on these cases, we set forth below the arguments justifying relief from the liquidated damages incurred by our client in this context.

B.B. Pallets has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996. Until recently, after Customs raised the issue of classification of this merchandise, it was consistently entered by B.B. Pallets under subheading 4415, Harmonized Tariff Schedule of the United States ("HTSUS"). Customs now has reliquidated the merchandise under subheadings 4407 or 4409, HTSUS. However, we do not agree with U.S. Customs' classification of this merchandise as lumber under either subheading 4407, HTSUS, or, where it is grooved or otherwise shaped, under subheading 4409,

1. Case 2001090120013101 covers entry EG6-76173719, which was the subject of a liquidated damages notice issued on October 18, 2000. However, due to a clerical error, the case number was incorrectly entered as 2001090120019101 in our reply to this notice on November 22, 2000. This entry is now included in this petition to the extent it was both part of a group of four liquidated damages notices issued on October 18, 2000, and the subject of a second such notice dated December 15, 2000.

RECEIVED
JAN 22 2001
Fines, Penalties
Buffalo, New York



One Battery Park Plaza New York, NY 10004-1482 212-837-6000 | 47, Avenue Georges Mandel 75116 Paris, France (33) (1) 44.05.80.00 | 350 South Grand Avenue Los Angeles, CA 90071-3442 213-613-2800 | 201 South Biscayne Boulevard Miami, FL 33131-4332 305-358-1666

HTSUS. Further, it is our position that, even if classification under subheading 4407 were proper, U.S. Customs had an obligation, under 19 U.S.C. §1625(c) ("section 625(c)"), to publish a notice in the Customs Bulletin and to follow the other requirements of section 625(c) before changing the tariff treatment of this product.

Classification

The entries at issue in these cases (*see* Attachment), consist of different types of wooden loading blocks. Included in these entries are wooden loading blocks with or without a groove, made from softwood or hardwood lumber.[2] The loading blocks are imported in multiple unassembled sets of four. They have been made to customer specifications, varying in width and length to fit precisely the particular merchandise to be bound and transported.

The wooden loading blocks are shipped and used in multiple sets specifically to bind on all sides unwieldy loads of merchandise, such as lengths of pipe. Generally, four pieces are used to form a crate around the merchandise. The sets of loading blocks are either strapped to the merchandise such that the loading blocks meet each other at the corners, or, sometimes, they are nailed together after importation to form the crate. The resulting unit can then be lifted off the ground to be handled or transported as on a platform by forklifts or other appliances. The grooves or notches are necessary with some types of merchandise to prevent the strapping used to secure the wooden blocks from slipping. Some customers require the loading blocks to be further refined to avoid jamming automatic packing machines, to reduce damage to merchandise when stacked or to transport particular types of merchandise. Some merchandise requires shaped ends to provide a tighter hold and render the loading blocks stronger by reducing the likelihood the ends may split or weaken the strapping. Thus, through the combination of these features, the different types of loading blocks are tailored for the specific purpose of binding merchandise for handling and transportation, resulting in a unique product specifically suited, purchased and imported for the purpose of packing merchandise.

Subheading 4407.10, HTSUS, covers wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, other than wood continuously shaped along any of its edges or faces. Subheading 4409.10, HTSUS, covers wood continuously shaped along any of its edges or faces, whether or not planed, sanded or finger-jointed. Subheading 4415.20, HTSUS, covers pallets, box-pallets and other load boards or pallet collars.

---

2. To the extent any of these entries cover wooden loading blocks made of hardwood, we note that products made of poplar and other hardwoods are not subject to the importation requirements of the United States-Canada Softwood Lumber Agreement. Accordingly, provision of a permit number or payment of $100 per thousand board feet for such products, should they be classified as lumber, is unwarranted.

Hughes Hubbard & Reed LLP



General Rule of Interpretation ("GRI") 1 provides that: "The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the other General Rules of Interpretation." By virtue of GRI 1, wooden loading blocks are not classified under either subheading 4407.10 or subheading 4409.10, HTSUS. It is clear under the terms of the headings that the subject merchandise is an article that is further manufactured than merchandise that is contemplated under subheadings 4407.10 and 4409.10. Furthermore, the Explanatory Notes to headings 4407 and 4409 provide that these heading include construction materials, and loading blocks are not construction materials.

GRI 2(a) provides that: "Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled." Because they are shipped in multiple unassembled sets, the wooden loading blocks, as specifically cut and shaped for the purpose of binding and transporting customers' particular merchandise, have the essential character of finished, assembled loading boards. Therefore, they must be classified under heading 4415 in accordance with GRI 2(a).

The Explanatory Notes to heading 4415 provide that load boards are "portable platforms for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances." In New York Ruling F86079 (May 10, 2000), Customs states that "[t]his language suggests that a 'load board,' as contemplated by the heading, is a 'platform' generally consisting of multiple pieces of wood and capable of holding a quantity of merchandise." Customs ruled that the grooved boards at issue were not a platform and, thus, were classified as lumber under heading 4409, HTSUS. First, we do not agree with Customs' interpretation of heading 4415 as requiring the merchandise to form an actual platform. In any case, B.B. Pallets' loading blocks are refined in shape and used in combinations such that they lift the merchandise off the floor, constituting a true platform "for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances." These wooden loading blocks do form a platform to be used in situations where the use of ordinary pallets would be impractical given the length, weight or shape of the merchandise.

Alternatively, if the subject merchandise is covered by the language of headings 4407 or 4409 and 4415, it is nevertheless more specifically provided for in heading 4415. GRI 3(a) provides that: "When ... goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows: (a) The heading which provides for the most specific description shall be preferred to headings providing a more general description." In accordance with GRI 3(a), wooden loading blocks are, even if *prima facie* classifiable under two or more

PET_003

headings, most specifically described as "load boards" under HTSUS heading 4415, given their design and intended use.

If the loading blocks are not classified under heading 4415, we believe the only alternative is heading 4421, HTSUS, as they are not classified under 4407 or 4409, HTSUS. In New York Ruling D80128 (June 8, 2000), cut to size wooden boards that were notched on the bottom edge for ease of fork-lift use once they were assembled into pallets were classified under heading 4421, HTSUS, as other articles of wood. Customs determined that the boards belonged to the class of goods principally used as wood pallet components, but because heading 4415 does not include a parts provision, they were classified under heading 4421. B.B. Pallets' loading boards are also of the class of goods principally used as pallets. Thus, they should be classified under heading 4415 or heading 4421, depending on whether they have the essential character of pallets or parts of pallets. Finally, even if they are not found to be pallets or parts of pallets, they should be classified under heading 4421 in any case because they are not lumber and the only alternative is to classify them as other articles of wood.

Prior Treatment

B.B. Pallets has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996. They have been consistently entered under subheading 4415, HTSUS, as indicated on the attached chart. When the Softwood Lumber Agreement ("SLA") came into effect, the company did not attempt to obtain sufficient quota to cover its imports of wooden loading blocks because this merchandise was not expected to be covered by the SLA.

On August 6, 1998, Customs in Port Huron issued a Request for Information ("CF 28") concerning entry number EG6-7721138-5. The CF 28 addressed both the NAFTA eligibility and the classification of wood crate components, including boards similar to the ones at issue now. After B.B. Pallets submitted a NAFTA certificate and drawings and specifications for the product, Customs liquidated the entry. B.B. Pallets made the reasonable assumption that because the crate components were classified under heading 4415, the boards alone would also be classified under heading 4415. Furthermore, Customs continued, until recently, to classify this merchandise under subheading 4415, and B.B. Pallets had no reason, until recently, to believe this would change.

The recent rulings concerning the classification of grooved boards do not provide clear guidance as to how our client's loading blocks should be classified. New York Ruling B86507 (August 18, 1997) involved boards with straight ends that were both cut to size and assembled into a finished product after importation, whereas B.B. Pallets' loading blocks are cut to size and, thus, are a finished product at the time of importation. In New York Ruling F86079 (May 10, 2000), Customs ruled that pre-cut, pre-grooved boards with straight-cut ends were classified as lumber under subheading 4409, HTSUS, but in New York Ruling D80128 (June 8, 2000), Customs ruled that cut-to-size and shaped wooden boards, notched on the bottom edge for ease

Hughes Hubbard & Reed LLP



of fork lift use, were classified in subheading 4421, HTSUS. The latter ruling noted that the boards had been dedicated to use as components of pallets and, thus, could not be classified as lumber in subheading 4409, HTSUS. Further, although parts of pallets, they could not be classified under subheading 4415 because that provision does not provide for parts, and they were classified, therefore, as other (non-enumerated) articles of wood under subheading 4421. Our client's product is also dedicated to use as a particular article, whether it be called a pallet or an other article of wood. These rulings do not provide clear guidance as to how our client's merchandise should be classified and, furthermore, even if they were found to apply to B.B. Pallets' loading blocks, this change of treatment was not implemented through the proper procedures, as required by section 625(c).

The language of 19 U.S.C. §1625(c) clearly states that the publication requirements of section 625(c) are invoked (1) when a prior ruling in effect at least 60 days is revoked or (2) when a proposed ruling or decision would have the effect of modifying a treatment previously accorded substantially identical transactions. Here, where there was a long-standing treatment for this merchandise, notice is required under section 625(c)(2).

In addition, as made clear in *Precision Specialty Metals, Inc. v. United States,* Slip Op. 00-121 (Ct. Int'l. Trade, Sept. 20, 2000), section 1625(c) "is violated when: (1) an interpretive ruling or decision (2) effectively modifies (3) a 'treatment' previously accorded by Customs to (4) 'substantially identical transactions', and (5) that interpretive ruling or decision has not been subjected to the notice-and-comment process outlined in § 1625(c)(2)." Slip. Op. at p. 41. As shown above, each of these five tests is met by the facts of this case. Accordingly, Customs erred by acting on these entries without having followed the procedures required by section 625(c).

<u>Conclusion</u>

Based on the arguments articulated in this petition, we believe that cancellation of the claims for liquidated damages issued to our client in connection with these sixteen entries of wooden loading blocks is warranted.

Thus, we respectfully request that U.S. Customs reconsider its decision to classify wooden loading boards under subheading 4407, HTSUS. Furthermore, even if Customs continues to believe that this is the proper classification for this merchandise, we request that Customs comply with the requirements of section 625(c) and publish a notice concerning this proposed change in treatment. Even if our client will be able to modify its products in the future to avoid this problem, they are entitled to at least receive the treatment they expected for the period of time provided for by section 625(c). Should Customs Headquarters contemplate ruling against our client with respect to either the classification or the section 625(c) issue, we would like to request an opportunity to meet with appropriate personnel before the decision is made.

In accordance with 19 C.F.R. § 103.12, we request confidential treatment for the information contained herein. The information constitutes confidential commercial and/or financial information, the release of which would cause substantial harm to the competitive position of B.B. Pallets. Moreover, this information is not otherwise available to the public.

Respectfully Submitted,

Janet A. Forest

Attachment

**Attachment**

| Case Number | Entry Number |
|---|---|
| 2001090120012801 | EG6-76176860 |
| 2001090120012901 | EG6-76148836 |
| 2001090120013001 | EG6-76149354 |
| 2001090120013101 | EG6-76173719 |
| 2001090120016301 | EG6-76154230 |
| 2001090120016401 | EG6-76134406 |
| 2001090120016501 | EG6-76137789 |
| 2001090120016701 | EG6-76297617 |
| 2001090120016801 | EG6-76137771 |
| 2001090120017001 | EG6-76147283 |
| 2001090120017101 | EG6-76147952 |
| 2001090120017201 | EG6-76300403 |
| 2001090120017301 | EG6-76169295 |
| 2001090120017501 | EG6-76169071 |
| 2001090120017701 | EG6-76162258 |
| 2001090120018501 | EG6-76144660 |