MILLER & CHEVALIER
CHARTERED

655 FIFTEENTH STREET, N.W. SUITE 900
WASHINGTON, D.C. 20005-5701
(202) 626-5800 FAX: (202) 628-0858

February 26, 2001

**VIA FACSIMILE AND REGULAR MAIL**

**Confidential Treatment Requested**

Mr. Charles J. Reed
Fines, Penalties & Forfeitures Officer
U.S. Customs Service
127 North Water Street
Ogdensburg, NY 13669

Re: Petition for Relief from Liquidated Damages Claims

Dear Mr. Reed:

We are writing on behalf of our client, B.B. Pallets, Inc. to request that you cancel all the claims for liquidated damages issued to our client in connection with the cases covering wooden loading blocks listed in Attachment A. We wish to point out that for 10 of these entries (marked with an *) permits were provided. Thus, these claims should be cancelled regardless of the outcome of our classification dispute with the U.S. Customs Service ("Customs"). As we understand that you will no longer suspend action on these cases, we set forth below the arguments justifying relief from the liquidated damages claims incurred by our client in this context.

B.B. Pallets has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996. Until recently, after Customs raised the issue of classification of this merchandise, it was consistently entered by B.B. Pallets under subheading 4415, Harmonized Tariff Schedule of the United States ("HTSUS"). Customs now has reliquidated the merchandise under subheadings 4407 or 4409, HTSUS. However, we do not agree with Customs' classification of this merchandise as lumber under either subheading 4407, HTSUS, or, where it is grooved or otherwise shaped, under subheading 4409, HTSUS. Further, it is our position that, even if classification under subheading 4407 and 4409 were proper, U.S. Customs had an obligation, under 19 U.S.C. §1625(c) ("section 625(c)"), to publish a notice in the Customs Bulletin and to follow the other requirements of section 625(c) before changing the tariff treatment of this product.

PET_008

Classification

The entries at issue in these cases (*see* Attachment A) consist of different types of wooden loading blocks and bed frame components.[1] Included in these entries are wooden loading blocks with or without a groove, made from softwood or hardwood lumber.[2] The loading blocks are imported in multiple unassembled sets of four. They have been made to customer specifications, varying in width and length to fit precisely the particular merchandise to be bound and transported. Some of the entries involve nailed loading boards.[3]

The wooden loading blocks are shipped and used in multiple sets specifically to bind on all sides unwieldy loads of merchandise, such as lengths of pipe. Generally, four pieces are used to form a crate around the merchandise. The sets of loading blocks are either strapped to the merchandise such that the loading blocks meet each other at the corners, or, sometimes, they are nailed together after importation to form the crate. The resulting unit can then be lifted off the ground to be handled or transported as on a platform by forklifts or other appliances. The grooves or notches are necessary with some types of merchandise to prevent the strapping used to secure the wooden blocks from slipping. Some customers require the loading blocks to be further refined to avoid jamming automatic packing machines, to reduce damage to merchandise when stacked or to transport particular types of merchandise. Some merchandise requires shaped ends to provide a tighter hold and render the loading blocks stronger by reducing the likelihood the ends may split or weaken the strapping. Thus, through the combination of these features, the different types of loading blocks are tailored for the specific purpose of binding merchandise for handling and transportation, resulting in a unique product specifically suited, purchased and imported for the purpose of packing merchandise.

Subheading 4407.10, HTSUS, covers wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, other than wood continuously shaped along any of its edges or faces. Subheading 4409.10, HTSUS, covers wood continuously shaped along any of its edges or faces, whether or not planed, sanded or finger-jointed. Subheading 4415.20, HTSUS, covers pallets, box-pallets and other load boards or pallet collars.

General Rule of Interpretation ("GRI") 1 provides that: "The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the other General Rules of Interpretation." By virtue of GRI 1, wooden loading blocks

---

1 We are filing a separate petition with respect to the cases involving bed frame components.

2 To the extent any of these entries cover wooden loading blocks made of hardwood, we note that products made of poplar and other hardwoods are not subject to the importation requirements of the United States-Canada Softwood Lumber Agreement ("SLA"). Accordingly, provision of a permit number or payment of $100 per thousand board feet for such products, should they be classified as lumber, is unwarranted.

3 To the extent that any of these entries cover nailed wooden loading blocks, we note that the classification of this merchandise under heading 4415, HTSUS, has not been disputed by Customs. Thus, this merchandise is not subject to the requirements of the SLA in any case.

are not classified under either subheading 4407.10 or subheading 4409.10, HTSUS. It is clear under the terms of the headings that the subject merchandise is an article that is further manufactured than merchandise that is contemplated under subheadings 4407.10 and 4409.10. Furthermore, the Explanatory Notes to headings 4407 and 4409 provide that these heading include construction materials, and loading blocks are not construction materials.

GRI 2(a) provides that: "Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled." Because they are shipped in multiple unassembled sets, the wooden loading blocks, as specifically cut and shaped for the purpose of binding and transporting customers' particular merchandise, have the essential character of finished, assembled loading boards. Therefore, they must be classified under heading 4415 in accordance with GRI 2(a).

The Explanatory Notes to heading 4415 provide that load boards are "portable platforms for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances." In New York Ruling F86079 (May 10, 2000), Customs states that "[t]his language suggests that a 'load board,' as contemplated by the heading, is a 'platform' generally consisting of multiple pieces of wood and capable of holding a quantity of merchandise." Customs ruled that the grooved boards at issue were not a platform and, thus, were classified as lumber under heading 4409, HTSUS. First, we do not agree with Customs' interpretation of heading 4415 as requiring the merchandise to form an actual platform. In any case, B.B. Pallets' loading blocks are refined in shape and used in combinations such that they lift the merchandise off the floor, constituting a true platform "for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances." These wooden loading blocks do form a platform to be used in situations where the use of ordinary pallets would be impractical given the length, weight or shape of the merchandise.

Alternatively, if the subject merchandise is covered by the language of headings 4407 or 4409 and 4415, it is nevertheless more specifically provided for in heading 4415. GRI 3(a) provides that: "When ... goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows: (a) The heading which provides for the most specific description shall be preferred to headings providing a more general description." In accordance with GRI 3(a), wooden loading blocks are, even if *prima facie* classifiable under two or more headings, most specifically described as "load boards" under HTSUS heading 4415, given their design and intended use.

If the loading blocks are not classified under heading 4415, we believe the only alternative is heading 4421, HTSUS, as they are not classified under 4407 or 4409, HTSUS. In New York Ruling D80128 (June 8, 2000), cut to size wooden boards that were notched on the bottom edge for ease of fork-lift use once they were assembled into pallets were classified under heading 4421, HTSUS, as other articles of wood. Customs determined that the boards belonged to the class of goods principally used as wood pallet components, but because heading 4415 does not include a parts provision, they were classified under heading 4421. B.B. Pallets' loading boards are also of the class of goods principally used as pallets. Thus, they should be classified under heading 4415 or heading

4421, depending on whether they have the essential character of pallets or parts of pallets. Finally, even if they are not found to be pallets or parts of pallets, they should be classified under heading 4421 in any case because they are not lumber and the only alternative is to classify them as other articles of wood.

Prior Treatment

B.B. Pallets has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996. They have been consistently entered under subheading 4415, HTSUS, as indicated on the attached chart. When the SLA came into effect, the company did not attempt to obtain sufficient quota to cover its imports of wooden loading blocks because this merchandise was not expected to be covered by the SLA.

On August 6, 1998, Customs in Port Huron issued a Request for Information ("CF 28") concerning entry number EG6-7721138-5. The CF 28 addressed both the NAFTA eligibility and the classification of wood crate components, including boards similar to the ones at issue now. After B.B. Pallets submitted a NAFTA certificate and drawings and specifications for the product, Customs liquidated the entry. B.B. Pallets made the reasonable assumption that because the crate components were classified under heading 4415, the boards alone would also be classified under heading 4415. Furthermore, Customs continued, until recently, to classify this merchandise under subheading 4415, and B.B. Pallets had no reason, until recently, to believe this would change.

The recent rulings concerning the classification of grooved boards do not provide clear guidance as to how our client's loading blocks should be classified. New York Ruling B86507 (August 18, 1997) involved boards with straight ends that were both cut to size and assembled into a finished product after importation, whereas B.B. Pallets' loading blocks are cut to size and, thus, are a finished product at the time of importation. In New York Ruling F86079 (May 10, 2000), Customs ruled that pre-cut, pre-grooved boards with straight-cut ends were classified as lumber under subheading 4409, HTSUS, but in New York Ruling D80128 (June 8, 2000), Customs ruled that cut-to-size and shaped wooden boards, notched on the bottom edge for ease of fork lift use, were classified in subheading 4421, HTSUS. The latter ruling noted that the boards had been dedicated to use as components of pallets and, thus, could not be classified as lumber in subheading 4409, HTSUS. Further, although parts of pallets, they could not be classified under subheading 4415 because that provision does not provide for parts, and they were classified, therefore, as other (non-enumerated) articles of wood under subheading 4421. Our client's product is also dedicated to use as a particular article, whether it be called a pallet or an other article of wood. These rulings do not provide clear guidance as to how our client's merchandise should be classified and, furthermore, even if they were found to apply to B.B. Pallets' loading blocks, this change of treatment was not implemented through the proper procedures, as required by section 625(c).

The language of 19 U.S.C. §1625(c) clearly states that the publication requirements of section 625(c) are invoked (1) when a prior ruling in effect at least 60 days is revoked or (2) when a proposed ruling or decision would have the effect of modifying a treatment previously accorded substantially identical transactions. Here, where there was a long-standing treatment for this merchandise, notice is required under section 625(c)(2).

In addition, as made clear in *Precision Specialty Metals, Inc. v. United States,* 116 F. Supp. 2d 1350, 1374 (Ct. Int'l Trade 2000), section 1625(c) "is violated when: (1) an interpretive ruling or decision (2) effectively modifies (3) a 'treatment' previously accorded by Customs to (4) 'substantially identical transactions', and (5) that interpretive ruling or decision has not been subjected to the notice-and-comment process outlined in § 1625(c)(2)." *Id.* at 1374. As shown above, each of these five tests is met by the facts of this case. Accordingly, Customs erred by acting on these entries without having followed the procedures required by section 1625(c).

Conclusion

Based on the arguments articulated in this petition, we believe that cancellation of the claims for liquidated damages issued to our client in connection with these entries (*see* Attachment A) of wooden loading blocks is warranted.

Thus, we respectfully request that U.S. Customs reconsider its decision to classify wooden loading boards under subheading 4407 or 4409, HTSUS. Furthermore, even if Customs continues to believe that this is the proper classification for this merchandise, we request that Customs comply with the requirements of section 625(c) and publish a notice concerning this proposed change in treatment. Even if our client will be able to modify its products in the future to avoid this problem, they are entitled to at least receive the treatment they expected for the period of time provided for by section 625(c). Should Customs Headquarters contemplate ruling against our client with respect to either the classification or the section 625(c) issue, we would like to request an opportunity to meet with appropriate personnel before the decision is made.

In accordance with 19 C.F.R. § 103.12, we request confidential treatment for the information contained herein. The information constitutes confidential commercial and/or financial information, the release of which would cause substantial harm to the competitive position of B.B. Pallets. Moreover, this information is not otherwise available to the public.

Respectfully submitted,

Janet A. Forest

Enclosure

PET_012

Liquidated Damages

**Attachment A**
**Loading Blocks Cases**

| Case No. | Entry No. |
|---|---|
| 2000-0708-200198-01 | 144-82269140 |
| 2000-0712-200704-01 | EG6-71385433 |
| 2000-0712-200730-01 | EG6-71387777 |
| 2000-0712-200733-01 | EG6-71392520 |
| 2000-0712-200732-01 | EG6-71392538 |
| 2000-0708-200204-01 | 144-82269124 |
| 2000-0712-200763-01 | EG6-71604973 |
| 2000-0708-200207-01 | 144-82277085 |
| 2001-0712-200007-01 | 144-82275121 |
| 2001-0712-200009-01 | EG6-71393353 |
| 2000-0712-200768-01 | EG6-71394690 |
| 2000-0712-200766-01 | EG6-71394054 |
| 2000-0712-200762-01 | EG6-71392512 |
| 2000-0712-200761-01 | EG6-71390136 |
| 2000-0712-200760-01 | EG6-71605202 |
| 2000-0708-200214-01 | 144-82279644 |
| 2000-0708-200213-01 | 144-82271294 |
| 2000-0708-200212-01 | 144-82273936 |
| 2000-0708-200211-01 | 144-82270668 |
| 2000-0708-200210-01 | 144-82275659 |
| 2000-0708-200209-01 | 144-82273407 |
| 2000-0712-200767-01 | EG6-71604585 |
| 2000-0708-200217-01 | 144-82274058 |
| 2000-0712-200769-01 | 144-82273985 |
| 2001-0708-200016-01 | 144-82275493 |
| 2001-0708-200004-01 | 144-82282804 |
| 2001-0708-200006-01 | 144-82283331 |
| 2001-0708-200007-01 | 144-82283216 |
| 2001-0708-200008-01 | 144-82282937 |
| 2001-0708-200009-01 | 144-82278026 |
| 2001-0708-200013-01 | 144-82286326 |
| 2001-0708-200012-01 | 144-82286292 |
| 2001-0708-200014-01 | 144-82286490 |
| 2001-0708-200015-01 | 144-82282895 |
| 2001-0708-200005-01 | 144-82282788 |
| 2001-0712-200049-01 | EG6-71612760 |
| 2001-0708-200027-01 | 144-82289445 |
| 2001-0708-200028-01 | 144-82289239 |
| 2001-0708-200029-01 | 144-82289833 |

| Case No. | Entry No. |
|---|---|
| 2001-0708-200030-01 | 144-82289742 |
| 2001-0708-200031-01 | 144-82289718 |
| 2001-0708-200032-01 | 144-82289643 |
| 2001-0708-200033-01 | 144-82289635 |
| 2001-0708-200026-01 | 144-82289551 |
| 2001-0708-200025-01 | 144-82289627 |
| 2001-0712-200021-01 | EG6-71617041 |
| 2001-0712-200020-01 | EG6-71608362 |
| 2001-0712-200019-01 | EG6-71615219 |
| 2001-0712-200015-01 | EG6-71610723 |
| 2001-0712-200022-01 | EG6-71617066 |
| 2001-0712-200016-01 | EG6-71609055 |
| 2001-0712-200017-01 | EG6-71607125 |
| 2001-0712-200018-01 | EG6-71613040 |
| 2001-0712-200056-01 | 144-82288363 |
| 2001-0708-200041-01 | 144-82277994 |
| 2001-0708-200036-01 | 144-82287811 |
| 2001-0708-200037-01 | 144-82288256 |
| 2001-0708-200038-01 | 144-82288280 |
| 2001-0708-200039-01 | 144-82287019 |
| 2001-0708-200035-01 | 144-82287415 |
| 2001-0708-200034-01 | 144-82287332 |
| 2001-0712-200138-01 | EG6-71319846 |
| 2001-0712-200143-01 | EG6-71316461 |
| 2001-0712-200147-01 | EG6-71312403 |
| 2001-0712-200148-01 | EG6-71311587 |
| 2001-0712-200149-01 | EG6-71311314 |
| 2001-0712-200150-01 | EG6-71309524 |
| 2001-0712-200152-01 | EG6-71305175 |
| 2001-0712-200158-01 | EG6-71304335 |
| 2001-0712-200160-01 | EG6-71302438 |
| 2001-0712-200163-01 | EG6-71297851 |
| 2001-0712-200165-01 | EG6-71296663 |
| 2001-0712-200170-01 | EG6-71285872 |
| 2001-0712-200205-01 | EG6-71283687 |
| 2001-0712-200214-01 | EG6-71360584 |
| 2001-0712-200216-01 | EG6-71356285 |
| 2001-0712-200217-01 | EG6-71356152 |
| 2001-0712-200218-01 | EG6-71355691 |
| 2001-0712-200221-01 | EG6-71353928 |
| 2001-0712-200224-01 | EG6-71346013 |
| 2001-0712-200228-01 | EG6-71340628 |
| 2001-0712-200230-01 | EG6-71285963 |
| 2001-0712-200232-01 | EG6-71370336 |

| Case No. | Entry No. |
|---|---|
| 2001-0712-200233-01 | EG6-71370278 |
| 2001-0712-200234-01 | EG6-71369130 |
| 2001-0712-200235-01 | EG6-71368967 |
| 2001-0712-200238-01 | EG6-71367019 |
| 2001-0712-200241-01 | EG6-71363976 |
| 2001-0712-200242-01 | EG6-71363851 |
| 2001-0712-200243-01 | EG6-71362309 |
| 2001-0712-200151-01 | EG6-71307783 |
| 2001-0712-200141-01 | EG6-71318764 |
| 2001-0712-200139-01 | EG6-71319408 |
| 2001-0712-200140-01 | EG6-71351005 |
| 2001-0712-200142-01 | EG6-71318111 |
| 2001-0712-200144-01 | EG6-71316156 |
| 2001-0712-200153-01 | EG6-71293579 |
| 2001-0712-200154-01 | EG6-71292928 |
| 2001-0712-200155-01 | EG6-71291854 |
| 2001-0712-200156-01 | EG6-71291623 |
| 2001-0712-200157-01 | EG6-71291151 |
| 2001-0712-200159-01 | EG6-71503931 |
| 2001-0712-200161-01 | EG6-71302446 |
| 2001-0712-200167-01 | EG6-71295079 |
| 2001-0712-200168-01 | EG6-71295061 |
| 2001-0712-200172-01 | EG6-71046712 |
| 2001-0712-200173-01 | EG6-71252310 |
| 2001-0712-200174-01 | EG6-71251031 |
| 2001-0712-200175-01 | EG6-71249084 |
| 2001-0712-200176-01 | EG6-71248110 |
| 2001-0712-200177-01 | EG6-71248235 |
| 2001-0712-200178-01 | EG6-71245595 |
| 2001-0712-200179-01 | EG6-71244903 |
| 2001-0712-200180-01 | EG6-71243624 |
| 2001-0712-200181-01 | EG6-71243590 |
| 2001-0712-200182-01 | EG6-71243517 |
| 2001-0712-200183-01 | EG6-71242238 |
| 2001-0712-200184-01 | EG6-71240224 |
| 2001-0712-200185-01 | EG6-71219574 |
| 2001-0712-200186-01 | EG6-71219319 |
| 2001-0712-200187-01 | EG6-71219285 |
| 2001-0712-200188-01 | EG6-71217818 |
| 2001-0712-200190-01 | EG6-71217651 |
| 2001-0712-200191-01 | EG6-71216778 |
| 2001-0712-200192-01 | EG6-71215275 |
| 2001-0712-200193-01 | EG6-71215028 |
| 2001-0712-200194-01 | EG6-71214807 |

| Case No. | Entry No. |
|---|---|
| 2001-0712-200195-01 | EG6-71213742 |
| 2001-0712-200196-01 | EG6-71208478 |
| 2001-0712-200197-01 | EG6-71207918 |
| 2001-0712-200198-01 | EG6-71205268 |
| 2001-0712-200199-01 | EG6-71202646 |
| 2001-0712-200180-01 | EG6-71243624 |
| 2001-0712-200181-01 | EG6-71243590 |
| 2001-0712-200182-01 | EG6-71243517 |
| 2001-0712-200200-01 | EG6-71202398 |
| 2001-0712-200201-01 | EG6-71200376 |
| 2001-0712-200202-01 | EG6-71049195 |
| 2001-0712-200203-01 | EG6-71281806 |
| 2001-0712-200204-01 | EG6-71282861 |
| 2001-0712-200206-01 | EG6-71280378 |
| 2001-0712-200207-01 | EG6-71259760 |
| 2001-0712-200208-01 | EG6-71259406 |
| 2001-0712-200209-01 | EG6-71256709 |
| 2001-0712-200210-01 | EG6-71256436 |
| 2001-0712-200211-01 | EG6-71256063 |
| 2001-0712-200212-01 | EG6-71254902 |
| 2001-0712-200213-01 | EG6-71253698 |
| 2001-0712-200215-01 | EG6-71357077 |
| 2001-0712-200219-01 | EG6-71355501 |
| 2001-0712-200220-01 | EG6-71355022 |
| 2001-0712-200223-01 | EG6-71348555 |
| 2001-0712-200225-01 | EG6-71346286 |
| 2001-0712-200226-01 | EG6-71343028 |
| 2001-0712-200227-01 | EG6-71341873 |
| 2001-0712-200231-01 | EG6-71047363 |
| 2001-0712-200237-01 | EG6-71368587 |
| 2001-0708-200002-01 | 144-82280527 |
| 2001-0712-200244-01 | 144-98402214* |
| 2001-0712-200245-01 | 144-98397406* |
| 2001-0712-200246-01 | 144-98401778* |
| 2000-0712-200767-01 | EG6-71604585 |
| 2000-0708-200217-01 | 144-82274058 |
| 2000-0712-200769-01 | 144-82273985 |
| 2001-0708-200002-01 | 144-82280527 |
| 2000-0708-200215-01 | 144-82279248 |
| 2000-0712-200764-01 | 144-82281228 |
| 2001-0708-200003-01 | 144-82289304 |
| 2001-0712-200145-01 | EG6-71315232 |
| 2001-0712-200146-01 | EG6-71312627 |
| 2001-0712-200162-01 | EG6-71300465 |

| Case No. | Entry No. |
|---|---|
| 2001-0712-200169-01 | EG6-71287696 |
| 2001-0712-200222-01 | EG6-71353068 |
| 2001-0712-200229-01 | EG6-71341675 |
| 2001-0712-200236-01 | EG6-71368769 |
| 2001-0712-200239-01 | EG6-71366110 |
| 2001-0712-200240-01 | EG6-71364131 |
| 2001-0708-200054-01 | 144-98400432* |
| 2001-0708-200053-01 | 144-98396069* |
| 2001-0708-200055-01 | 144-98399873* |
| 2001-0708-200043-01 | 144-82291912* |
| 2001-0712-200281-01 | 144-8229442-9* |
| 2001-0712-200283-01 | 144-8229451-0* |
| 2001-0708-200065-01 | 144-9833822-2* |

* Entry with permit.

MILLER & CHEVALIER
CHARTERED
655 FIFTEENTH STREET, N.W. SUITE 900
WASHINGTON, D.C. 20005-5701
(202) 626-5800 FAX: (202) 626-0858

June 1, 2001

**VIA FACSIMILE AND U.S. MAIL**

**Confidential Treatment Requested**

Mr. Darrell E. Woodard
Fines, Penalties & Forfeitures Officer
U.S. Customs Service
477 Michigan Avenue, Suite 200
Detroit, MI 48226

Re: Petition for Relief from Liquidated Damages Claims

Dear Mr. Woodard:

We are writing on behalf of our client, B.B. Pallets, Inc. to request that you cancel the claims for liquidated damages issued to our client in connection with the cases listed in Attachment A.[1] Forty of these cases cover entries consisting only of wooden loading blocks.[2] The other six cases cover entries that include either just bed frame components or bed frame components and loading blocks. As we understand that you will no longer suspend action on these cases, we set forth below the arguments justifying relief from the liquidated damages claims incurred by our client in this context.

Wooden Bed Frame Components

To the extent the entries of wooden bed frame components include both straight and radius-cut components, we assume that the notices of liquidated damages issued to our client cover only the former. As radius-cut wooden bed frame components are properly classified under subheading 4421.40.9840, Harmonized Tariff Schedule of the United States ("HTSUS"), it would not be appropriate for such merchandise to be subject to a penalty or liquidated damages. With respect to the straight-cut bed frame

1 Although we do not necessarily agree with Customs' position that straight-cut bed frame components are classified as lumber, our client has decided not to dispute this at this time.

2 Our client has informed us that one of these entries (entry number EG6-78305517) consists of both wooden loading blocks originally from New Brunswick and Quebec (for which an export permit was provided) and wooden loading block samples.

JUN 1 2001

PET_018

components, we note that we have perfected our disclosure to U.S. Customs concerning this merchandise.[3]

Wooden Loading Blocks

B.B. Pallets has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996. Until recently, after Customs raised the issue of classification of this merchandise, it was consistently entered by B.B. Pallets under subheading 4415, Harmonized Tariff Schedule of the United States ("HTSUS"). Customs now has reliquidated the merchandise under subheadings 4407 or 4409, HTSUS. However, we do not agree with Customs' classification of this merchandise as lumber under either subheading 4407, HTSUS, or, where it is grooved or otherwise shaped, under subheading 4409, HTSUS. Further, it is our position that, even if classification under subheading 4407 and 4409 were proper, U.S. Customs had an obligation, under 19 U.S.C. §1625(c) ("section 625(c)"), to publish a notice in the Customs Bulletin and to follow the other requirements of section 625(c) before changing the tariff treatment of this product.

Classification

The entries at issue in these cases consist of different types of wooden loading blocks. Included in these entries are wooden loading blocks with or without a groove, made from softwood or hardwood lumber.[4] The loading blocks are imported in multiple unassembled sets of four. They have been made to customer specifications, varying in width and length to fit precisely the particular merchandise to be bound and transported. Some of the entries involve nailed loading boards.[5]

The wooden loading blocks are shipped and used in multiple sets specifically to bind on all sides unwieldy loads of merchandise, such as lengths of pipe. Generally, four pieces are used to form a crate around the merchandise. The sets of loading blocks are either strapped to the merchandise such that the loading blocks meet each other at the

---

3 Four of the six entries that include wooden bed frame components (entry numbers EG6-78282096, EG6-78285149, EG6-78288762 and EG6-78109810) are covered by the disclosure perfected on February 26, 2001. The other two entries (entry numbers EG6-77512956 and EG6-78285438) are covered by a supplement to that disclosure.

4 To the extent any of these entries cover wooden loading blocks made of hardwood, we note that products made of poplar and other hardwoods are not subject to the importation requirements of the United States-Canada Softwood Lumber Agreement ("SLA"). Accordingly, provision of a permit number or payment of $100 per thousand board feet for such products, should they be classified as lumber, is unwarranted.

5 To the extent that any of these entries cover nailed wooden loading blocks, we note that the classification of this merchandise under heading 4415, HTSUS, has not been disputed by Customs. Thus, this merchandise is not subject to the requirements of the SLA in any case.

PET_019

corners, or, sometimes, they are nailed together after importation to form the crate. The resulting unit can then be lifted off the ground to be handled or transported as on a platform by forklifts or other appliances. The grooves or notches are necessary with some types of merchandise to prevent the strapping used to secure the wooden blocks from slipping. Some customers require the loading blocks to be further refined to avoid jamming automatic packing machines, to reduce damage to merchandise when stacked or to transport particular types of merchandise. Some merchandise requires shaped ends to provide a tighter hold and render the loading blocks stronger by reducing the likelihood the ends may split or weaken the strapping. Thus, through the combination of these features, the different types of loading blocks are tailored for the specific purpose of binding merchandise for handling and transportation, resulting in a unique product specifically suited, purchased and imported for the purpose of packing merchandise.

Subheading 4407.10, HTSUS, covers wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, other than wood continuously shaped along any of its edges or faces. Subheading 4409.10, HTSUS, covers wood continuously shaped along any of its edges or faces, whether or not planed, sanded or finger-jointed. Subheading 4415.20, HTSUS, covers pallets, box-pallets and other load boards or pallet collars.

General Rule of Interpretation ("GRI") 1 provides that: "The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the other General Rules of Interpretation." By virtue of GRI 1, wooden loading blocks are not classified under either subheading 4407.10 or subheading 4409.10, HTSUS. It is clear under the terms of the headings that the subject merchandise is an article that is further manufactured than merchandise that is contemplated under subheadings 4407.10 and 4409.10. Furthermore, the Explanatory Notes to headings 4407 and 4409 provide that these heading include construction materials, and loading blocks are not construction materials.

GRI 2(a) provides that: "Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled." Because they are shipped in multiple unassembled sets, the wooden loading blocks, as specifically cut and shaped for the purpose of binding and transporting customers' particular merchandise, have the essential character of finished, assembled loading boards. Therefore, they must be classified under heading 4415 in accordance with GRI 2(a).

The Explanatory Notes to heading 4415 provide that load boards are "portable platforms for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances." In New York Ruling F86079 (May 10, 2000), Customs states that "[t]his language suggests that a 'load board,' as contemplated by the heading, is a 'platform' generally consisting of multiple pieces of wood and capable of holding a quantity of merchandise." Customs ruled that the grooved boards at issue were not a platform and, thus, were classified as lumber under heading 4409, HTSUS. First, we do not agree with Customs' interpretation of heading 4415 as requiring the merchandise to form an actual platform. In any case, B.B. Pallets' loading blocks are refined in shape and used in combinations such that they lift the merchandise off the floor, constituting a true platform "for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances." These wooden loading blocks do form a platform to be used in situations where the use of ordinary pallets would be impractical given the length, weight or shape of the merchandise.

Alternatively, if the subject merchandise is covered by the language of headings 4407 or 4409 and 4415, it is nevertheless more specifically provided for in heading 4415. GRI 3(a) provides that: "When ... goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows: (a) The heading which provides for the most specific description shall be preferred to headings providing a more general description." In accordance with GRI 3(a), wooden loading blocks are, even if *prima facie* classifiable under two or more headings, most specifically described as "load boards" under HTSUS heading 4415, given their design and intended use.

If the loading blocks are not classified under heading 4415, we believe the only alternative is heading 4421, HTSUS, as they are not classified under 4407 or 4409, HTSUS. In New York Ruling D80128 (June 8, 2000), cut to size wooden boards that were notched on the bottom edge for ease of fork-lift use once they were assembled into pallets were classified under heading 4421, HTSUS, as other articles of wood. Customs determined that the boards belonged to the class of goods principally used as wood pallet components, but because heading 4415 does not include a parts provision, they were classified under heading 4421. B.B. Pallets' loading boards are also of the class of goods principally used as pallets. Thus, they should be classified under heading 4415 or heading 4421, depending on whether they have the essential character of pallets or parts of pallets. Finally, even if they are not found to be pallets or parts of pallets, they should be classified under heading 4421 in any case because they are not lumber and the only alternative is to classify them as other articles of wood.

<u>Prior Treatment</u>

B.B. Pallets has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996. They have been consistently entered under subheading 4415, HTSUS. When the SLA came into effect,

the company did not attempt to obtain sufficient quota to cover its imports of wooden loading blocks because this merchandise was not expected to be covered by the SLA.

On August 6, 1998, Customs in Port Huron issued a Request for Information ("CF 28") concerning entry number EG6-7721138-5. The CF 28 addressed both the NAFTA eligibility and the classification of wood crate components, including boards similar to the ones at issue now. After B.B. Pallets submitted a NAFTA certificate and drawings and specifications for the product, Customs liquidated the entry. B.B. Pallets made the reasonable assumption that because the crate components were classified under heading 4415, the boards alone would also be classified under heading 4415. Furthermore, Customs continued, until recently, to classify this merchandise under subheading 4415, and B.B. Pallets had no reason, until recently, to believe this would change.

The recent rulings concerning the classification of grooved boards do not provide clear guidance as to how our client's loading blocks should be classified. New York Ruling B86507 (August 18, 1997) involved boards with straight ends that were both cut to size and assembled into a finished product after importation, whereas B.B. Pallets' loading blocks are cut to size and, thus, are a finished product at the time of importation. In New York Ruling F86079 (May 10, 2000), Customs ruled that pre-cut, pre-grooved boards with straight-cut ends were classified as lumber under subheading 4409, HTSUS, but in New York Ruling D80128 (June 8, 2000), Customs ruled that cut-to-size and shaped wooden boards, notched on the bottom edge for ease of fork lift use, were classified in subheading 4421, HTSUS. The latter ruling noted that the boards had been dedicated to use as components of pallets and, thus, could not be classified as lumber in subheading 4409, HTSUS. Further, although parts of pallets, they could not be classified under subheading 4415 because that provision does not provide for parts, and they were classified, therefore, as other (non-enumerated) articles of wood under subheading 4421. Our client's product is also dedicated to use as a particular article, whether it be called a pallet or an other article of wood. These rulings do not provide clear guidance as to how our client's merchandise should be classified and, furthermore, even if they were found to apply to B.B. Pallets' loading blocks, this change of treatment was not implemented through the proper procedures, as required by section 625(c).

The language of 19 U.S.C. §1625(c) clearly states that the publication requirements of section 625(c) are invoked (1) when a prior ruling in effect at least 60 days is revoked or (2) when a proposed ruling or decision would have the effect of modifying a treatment previously accorded substantially identical transactions. Here, where there was a long-standing treatment for this merchandise, notice is required under section 625(c)(2).

In addition, as made clear in *Precision Specialty Metals, Inc. v. United States*, 116 F. Supp. 2d 1350, 1374 (Ct. Int'l Trade 2000), section 1625(c) "is violated when: (1) an interpretive ruling or decision (2) effectively modifies (3) a 'treatment' previously accorded by Customs to (4) 'substantially identical transactions', and (5) that interpretive

PET_022

ruling or decision has not been subjected to the notice-and-comment process outlined in § 1625(c)(2)." *Id.* at 1374. As shown above, each of these five tests is met by the facts of this case. Accordingly, Customs erred by acting on these entries without having followed the procedures required by section 625(c).

Conclusion

Based on the arguments articulated in this petition, we believe that cancellation of the claims for liquidated damages issued to our client in connection with these entries (*see* Attachment A) of wooden loading blocks and bed frame components is warranted.[6]

Thus, we respectfully request that U.S. Customs reconsider its decision to classify wooden loading blocks under subheading 4407 or 4409, HTSUS. Furthermore, even if Customs continues to believe that this is the proper classification for this merchandise, we request that Customs comply with the requirements of section 625(c) and publish a notice concerning this proposed change in treatment. Even if our client will be able to modify its products in the future to avoid this problem, they are entitled to at least receive the treatment they expected for the period of time provided for by section 625(c). Should Customs Headquarters contemplate ruling against our client with respect to either the classification or the section 625(c) issue, we would like to request an opportunity to meet with appropriate personnel before the decision is made.

In accordance with 19 C.F.R. § 103.12, we request confidential treatment for the information contained herein. The information constitutes confidential commercial and/or financial information, the release of which would cause substantial harm to the competitive position of B.B. Pallets. Moreover, this information is not otherwise available to the public.

Respectfully submitted,

Charles F. DeJager

for Janet A. Forest

Enclosure

6 Although we do not necessarily agree with Customs' position that straight-cut bed frame components are classified as lumber, our client has decided not to dispute this at this time.

PET_023

ATTACHMENT A

| Entry No. | Case No. | Loading Blocks | Bed Frames |
|---|---|---|---|
| EG677505810 | 2001-3801-201633-01 | ☒ | ☐ |
| EG677512956 | 2001-3801-201635-01 | ☐ | ☒ |
| EG678107822 | 2001-3801-201674-01 | ☒ | ☐ |
| EG678108325 | 2001-3801-201636-01 | ☒ | ☐ |
| EG678108408 | 2001-3801-201634-01 | ☒ | ☐ |
| EG678108846 | 2001-3801-201642-01 | ☒ | ☐ |
| EG678109513 | 2001-3801-201644-01 | ☒ | ☐ |
| EG678109653 | 2001-3801-201671-01 | ☒ | ☐ |
| EG678112061 | 2001-3801-201646-01 | ☒ | ☐ |
| EG678112574 | 2001-3801-201647-01 | ☒ | ☐ |
| EG678112657 | 2001-3801-201668-01 | ☒ | ☐ |
| EG678115353 | 2001-3801-201663-01 | ☒ | ☐ |
| EG678115882 | 2001-3801-201666-01 | ☒ | ☐ |
| EG678116583 | 2001-3801-201653-01 | ☒ | ☐ |
| EG678116849 | 2001-3801-201661-01 | ☒ | ☐ |
| EG678117045 | 2001-3801-201654-01 | ☒ | ☐ |
| EG678117276 | 2001-3801-201656-01 | ☒ | ☐ |
| EG678117326 | 2001-3801-201658-01 | ☒ | ☐ |
| EG678117805 | 2001-3801-201664-01 | ☒ | ☐ |
| EG678118480 | 2001-3801-201662-01 | ☒ | ☐ |
| EG678276353 | 2001-3801-201673-01 | ☒ | ☐ |
| EG678276601 | 2001-3801-201641-01 | ☒ | ☐ |

| | | | |
|---|---|---|---|
| EG678277062 | 2001-3801-201672-01 | ☒ | ☐ |
| EG678278235 | 2001-3801-201643-01 | ☒ | ☐ |
| EG678278854 | 2001-3801-201670-01 | ☒ | ☐ |
| ~~EG678278862~~ | ~~2001-3801-201669-01~~ | ~~☒~~ | ~~☐~~ |
| EG678280611 | 2001-3801-201660-01 | ☒ | ☐ |
| EG678280769 | 2001-3801-201645-01 | ☒ | ☐ |
| EG678282096 | 2001-3801-201637-01 | ☒ | ☒ |
| EG678283516 | 2001-3801-201648-01 | ☒ | ☐ |
| EG678283870 | 2001-3801-201650-01 | ☒ | ☐ |
| EG678284258 | 2001-3801-201651-01 | ☒ | ☐ |
| EG678285040 | 2001-3801-201667-01 | ☒ | ☐ |
| EG678285149 | 2001-3801-201638-01 | ☒ | ☒ |
| EG678285438 | 2001-3801-201639-01 | ☒ | ☒ |
| EG678287046 | 2001-3801-201652-01 | ☒ | ☐ |
| EG678288325 | 2001-3801-201665-01 | ☒ | ☐ |
| EG678288606 | 2001-3801-201655-01 | ☒ | ☐ |
| EG678288762 | 2001-3801-201640-01 | ☒ | ☒ |
| EG678289471 | 2001-3801-201657-01 | ☒ | ☐ |
| EG678290289 | 2001-3801-201659-01 | ☒ | ☐ |
| EG678324849 | 2001-3801-201719-01 | ☒ | ☐ |
| EG678109810 | 2001-3801-201720-01 | ☒ | ☒ |
| EG678305517 | 2001-3801-201721-01 | ☒ | ☐ |
| EG678111485 | 2001-3801-201722-01 | ☒ | ☐ |
| EG678111238 | 2001-3801-201723-01 | ☒ | ☐ |