DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

# PROTEST

Pursuant to Sections 514 & 514(a), Tariff Act of 1930 as amended, 19 CFR Part 174 et. seq.

Form Approved, OMB No. 1515-0068. See back of form for Paperwork Reduction Act Notice.

1. PROTEST NO. *(Supplied by Customs)* 0901-00-100490

2. DATE RECEIVED *(Customs Use Only)* 12/14/00

NOTE: If your protest is denied, in whole or in part, and you wish to CONTEST the denial, you may do so by bringing a civil action in the U.S. Court of International Trade within 180 days after the date of mailing of Notice of Denial. You may obtain further information concerning the institution of an action by writing the Clerk of U.S. Court of International Trade, One Federal Plaza, New York NY 10007 (212-264-2800).

## SECTION I — IMPORTER AND ENTRY IDENTIFICATION

3. PORT: Buffalo

4. IMPORTER NO.: 92020131290

6. NAME AND ADDRESS OF IMPORTER OR OTHER PROTESTING PARTY:
B. B. Pallets Inc.
701 Dubois
St-Eustache (QC) J7P-3W1

5. ENTRY DETAILS

| PORT CODE | FILER CODE | ENTRY NO. | CHECK DIGIT | DATE OF ENTRY | DATE OF LIQUIDATION |
|---|---|---|---|---|---|
| 0901 | EG6 | 7614006 | 4 | 01/12/00 | 09/15/00 |

## SECTION II — DETAILED REASONS FOR PROTEST

7. With respect to each category of merchandise, set forth, separately, (1) each decision protested, (2) the claim of the protesting party, and (3) the factual material and legal arguments which are believed to support the protest. All such material and arguments should be specific. General statements of conclusions are not sufficient.

See Attached

*(Attach Additional Sheets if necessary.)*

## SECTION III — REQUEST FOR DISPOSITION IN ACCORDANCE WITH ACTION ON PREVIOUSLY FILED PROTEST

Protesting party may request disposition in accordance with the action taken on a previously filed protest that is the subject of a pending application for further review and is alleged to involve the same merchandise and the same issues. (See 19 CFR 174.13(a)(7).) To request such disposition, enter in Blocks 8 and 9 the protest number and date of receipt of such previously filed protest.

8. PROTEST NO. OF PREVIOUSLY FILED PROTEST

9. DATE OF RECEIPT

## SECTION IV — SIGNATURE AND MAILING INSTRUCTIONS

10. NAME AND ADDRESS OF PERSON TO WHOM ANY NOTICE OF APPROVAL OR DENIAL SHOULD BE SENT:
Janet A. Forest
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Suite 600
Washington, DC 20006-2401

11. NAME, ADDRESS, AND CUSTOMS IDENTIFICATION NUMBER TO WHICH REFUND SHOULD BE SENT:
B. B. Pallets Inc.
701 Dubois
St-Eustache (QC) J7P-3W1

12. IF FILING AS ATTORNEY OR AGENT, TYPE OR PRINT YOUR NAME, ADDRESS AND IMPORTER NUMBER, IF ANY:
Janet A. Forest
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, DC 20006-2401

13. SIGNATURE AND DATE: X Charles A. Leger 12/13/2000

## (Optional) SECTION V — APPLICATION FOR FURTHER REVIEW *(Fill in Item 1 above if this is a separate Application for Further Review.)*

14. MARK BOX CORRESPONDING TO YOUR ANSWER TO EACH OF THE FOLLOWING QUESTIONS

| YES | NO | |
|---|---|---|
| ☐ | ☒ | (A) Have you made prior request of a port director for a further review of the same claim with respect to the same or substantially similar merchandise? |
| ☐ | ☒ | (B) Have you received a final adverse decision from the U.S. Court of International Trade on the same claim with respect to the same category of merchandise or do you have action involving such a claim pending before the U.S. Court of International Trade? |
| ☐ | ☒ | (C) Have you previously received an adverse administrative decision from the Commissioner of Customs or his designee or have you presently pending an application for an administrative decision on the same claim with respect to the same category of merchandise? |

15. JUSTIFICATION FOR FURTHER REVIEW UNDER THE CRITERIA IN 19 CFR 174.24 AND 174.25

See Attached

*(Attach Additional Sheets if Necessary.)*

## SECTION VI — DECISION *(CUSTOMS USE ONLY)*

16. APPLICATION FOR FURTHER REVIEW: ☒ Approved* ☐ Denied for the reason checked: ☐ Untimely filed ☐ Does not meet criteria ☐ Other, namely

EXPLANATION: 2-08-01

*When further review only is approved the decision on the protest is suspended, pending issuance of a protest review decision.

17. PROTEST: ☐ Approved ☐ Rejected as non-protestable ☒ Denied in full for the reason checked: ☐ Denied in part for the reason checked: ☐ Untimely filed ☐ See attached protest review decision ☐ Other, namely

EXPLANATION: Protest Denied per Headquarters Ruling # HQ 964900 dated 9/4/02

PRO Arthur J Kipp SEP 12 2002

18. TITLE OF CUSTOMS OFFICER: [illegible signature]

19. SIGNATURE AND DATE: [illegible signature]

Editions Prior to 090683 Are Obsolete. Customs Form 19 (120495)

PROT_0901_00_100490_001

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

# PROTEST

Pursuant to Sections 514 & 514(a), Tariff Act of 1930 as amended, 19 CFR Part 174 et. seq.

Form Approved. OMB No. 1515-0056. See back of form for Paperwork Reduction Act Notice.

1. PROTEST NO. (Assigned by Customs) 0901-00-100568

2. DATE RECEIVED (Customs Use Only)

NOTE: If your protest is denied, in whole or in part, and you wish to CONTEST the denial, you may do so by bringing a civil action in the U.S. Court of International Trade within 180 days after the date of mailing of Notice of Denial. You may obtain further information concerning the institution of an action by writing the Clerk of U.S. Court of International Trade, One Federal Plaza, New York NY 10007 (212-264-2800).

## SECTION I — IMPORTER AND ENTRY IDENTIFICATION

3. PORT: Buffalo

4. IMPORTER NO.: 92020131290

6. NAME AND ADDRESS OF IMPORTER OR OTHER PROTESTING PARTY

B. B. Pallets Inc.
701 Dubois
St-Eustache (QC) J7P-3W1

5. ENTRY DETAILS

| PORT CODE | FILER CODE | ENTRY NO. | CHECK DIGIT | DATE OF ENTRY | DATE OF LIQUIDATION |
|---|---|---|---|---|---|
| 0901 | EG6 | 7613591 | 6 | 12/16/99 | 09/29/00 |
| 0901 | EG6 | 7613779 | 7 | 12/29/99 | 09/29/00 |
| 0901 | EG6 | 7614290 | 4 | 01/26/00 | 09/29/00 |
| 0901 | EG6 | 7614450 | 4 | 02/02/00 | 09/29/00 |
| 0901 | EG6 | 7614565 | 9 | 02/10/00 | 09/29/00 |

## SECTION II — DETAILED REASONS FOR PROTEST

7. With respect to each category of merchandise, set forth, separately, (1) each decision protested, (2) the claim of the protesting party, and (3) the factual material and legal arguments which are believed to support the protest. All such material and arguments should be specific. General statements of conclusions are not sufficient.

See Attached

2000 DE 26 PM 12:16 U.S. CUSTOMS

*(Attach Additional Sheets If necessary.)*

## SECTION III — REQUEST FOR DISPOSITION IN ACCORDANCE WITH ACTION ON PREVIOUSLY FILED PROTEST

Protesting party may request disposition in accordance with the action taken on a previously filed protest that is the subject of a pending application for further review and is alleged to involve the same merchandise and the same issues. (See 19 CFR 174.13(a)(7).) To request such disposition, enter in Blocks 8 and 9 the protest number and date of receipt of such previously filed protest.

8. PROTEST NO. OF PREVIOUSLY FILED PROTEST

9. DATE OF RECEIPT

## SECTION IV — SIGNATURE AND MAILING INSTRUCTIONS

10. NAME AND ADDRESS OF PERSON TO WHOM ANY NOTICE OF APPROVAL OR DENIAL SHOULD BE SENT

Janet A. Forest
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Suite 600
Washington, DC 20006-2401

11. NAME, ADDRESS, AND CUSTOMS IDENTIFICATION NUMBER TO WHICH REFUND SHOULD BE SENT

B. B. Pallets Inc.
701 Dubois
St-Eustache (QC) J7P-3W1

12. IF FILING AS ATTORNEY OR AGENT, TYPE OR PRINT YOUR NAME, ADDRESS AND IMPORTER NUMBER, IF ANY

Janet A. Forest
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, DC 20006-2401

13. SIGNATURE AND DATE
X Charles F. De Jager 12/21/2000

## (Optional) SECTION V — APPLICATION FOR FURTHER REVIEW *(Fill in Item 1 above if this is a separate Application for Further Review.)*

14. MARK BOX CORRESPONDING TO YOUR ANSWER TO EACH OF THE FOLLOWING QUESTIONS

| YES | NO | |
|---|---|---|
| ☐ | ☒ | (A) Have you made prior request of a port director for a further review of the same claim with respect to the same or substantially similar merchandise? |
| ☐ | ☒ | (B) Have you received a final adverse decision from the U.S. Court of International Trade on the same claim with respect to the same category of merchandise or do you have action involving such claim pending before the U.S. Court of International Trade? |
| ☐ | ☒ | (C) Have you previously received an adverse administrative decision from the Commissioner of Customs or his designee or have you presently pending an application for an administrative decision on the same claim with respect to the same category of merchandise? |

15. JUSTIFICATION FOR FURTHER REVIEW UNDER THE CRITERIA IN 19 CFR 174.24 AND 174.25

See Attached

*(Attach Additional Sheets If Necessary.)*

## SECTION VI — DECISION *(CUSTOMS USE ONLY)*

16. APPLICATION FOR FURTHER REVIEW ☐ Approved* ☐ Denied for the reason checked: ☐ Untimely filed ☐ Does not meet criteria ☐ Other, namely

EXPLANATION:

*When further review only is approved the decision on the protest is suspended, pending issuance of a protest review decision.

17. PROTEST ☐ Approved ☐ Rejected as non-protestable ☒ Denied in full for the reason checked: ☐ Denied in part for the reason checked: ☐ Untimely filed ☐ See attached protest review decision ☐ Other, namely

EXPLANATION:

Protest denied per Headquarters ruling #HQ 964900 Dated 9/4/02

18. TITLE OF CUSTOMS OFFICER: Import Specialist

19. SIGNATURE AND DATE: Darlene Headley

*Editions Prior to 090883 Are Obsolete.*

Customs Form 19 (120495)

Section II, Item 7

## DETAILED REASONS FOR PROTEST
**Entries EG6-76135916, EG6-76137797, EG6-76142904, EG6-76144504, EG6-76145659 (liquidated 9/29/2000)**

B.B. Pallets has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996. Until recently, after Customs raised the issue of classification of this merchandise, it was consistently entered by B.B. Pallets under subheading 4415, Harmonized Tariff Schedule of the United States ("HTSUS"), as indicated in the attached chart.[1] Customs now has reliquidated the merchandise under subheading 4407, HTSUS. However, we do not agree with U.S. Customs' classification of this merchandise as lumber under either subheading 4407, HTSUS, or, where it is grooved or otherwise shaped, under subheading 4409, HTSUS. Further, it is our position that, even if classification under subheading 4407 were proper, U.S. Customs had an obligation, under 19 U.S.C. §1625(c) ("section 625(c)"), to publish a notice in the Customs Bulletin and to follow the other requirements of section 625(c) before changing the tariff treatment of this product.

Classification

The entries at issue in the present case -- entries number EG6-76135916, EG6-76137797, EG6-76142904, EG6-76144504, EG6-76145659 -- consist of different types of wooden loading blocks. Included in these entries are wooden loading blocks with or without a groove, made from softwood or hardwood lumber.[2] The loading blocks are imported in multiple unassembled sets of four. They have been made to customer specifications, varying in width and length to fit precisely the particular merchandise to be bound and transported.

The wooden loading blocks are shipped and used in multiple sets specifically to bind on all sides unwieldy loads of merchandise, such as lengths of pipe. Generally, four pieces are used to form a crate around the merchandise. The sets of loading blocks are either strapped to the merchandise such that the loading blocks meet each other at the corners, or, sometimes, they are nailed together after importation to form the crate. The resulting unit can then be lifted off the ground to be handled or transported as on a platform by forklifts or other appliances. The

1. The chart includes entries from January 1, 1997 to the present, for all of the ports listed above, with the exception of Alexandria Bay, NY. A chart of the Alexandria Bay entries will be forwarded to you as soon as possible. We note that there were not many entries at this port.

2. To the extent any of these entries cover wooden loading blocks made of hardwood, we note that products made of poplar and other hardwoods are not subject to the importation requirements of the United States-Canada Softwood Lumber Agreement. Accordingly, provision of a permit number or payment of $100 per thousand board feet for such products, should they be classified as lumber, is unwarranted.

grooves or notches are necessary with some types of merchandise to prevent the strapping used to secure the wooden blocks from slipping. Some customers require the loading blocks to be further refined to avoid jamming automatic packing machines, to reduce damage to merchandise when stacked or to transport particular types of merchandise. Some merchandise requires shaped ends to provide a tighter hold and render the loading blocks stronger by reducing the likelihood the ends may split or weaken the strapping. Thus, through the combination of these features, the different types of loading blocks are tailored for the specific purpose of binding merchandise for handling and transportation, resulting in a unique product specifically suited, purchased and imported for the purpose of packing merchandise.

Subheading 4407.10, HTSUS, covers wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, other than wood continuously shaped along any of its edges or faces. Subheading 4415.20, HTSUS, covers pallets, box-pallets and other load boards or pallet collars.

General Rule of Interpretation ("GRI") 1 provides that: "The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the other General Rules of Interpretation." By virtue of GRI 1, wooden loading blocks are not classified under subheading 4407.10, HTSUS. It is clear under the terms of the headings that the subject merchandise is an article that is further manufactured than merchandise that is contemplated under subheading 4407.10. Furthermore, the Explanatory Notes to heading 4407 provide that this heading includes construction materials, and loading blocks are not construction materials.

GRI 2(a) provides that: "Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled." Because they are shipped in multiple unassembled sets, the wooden loading blocks, as specifically cut and shaped for the purpose of binding and transporting customers' particular merchandise, have the essential character of finished, assembled loading boards. Therefore, they must be classified under heading 4415 in accordance with GRI 2(a).

The Explanatory Notes to heading 4415 provide that load boards are "portable platforms for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances." In New York Ruling F86079 (May 10, 2000), Customs states that "[t]his language suggests that a 'load board,' as contemplated by the heading, is a 'platform' generally consisting of multiple pieces of wood and capable of holding a quantity of merchandise." Customs ruled that the grooved boards at issue were not a platform and, thus, were classified as lumber under heading 4409, HTSUS. First, we do not agree with Customs'

interpretation of heading 4415 as requiring the merchandise to form an actual platform. In any case, B.B. Pallets' loading blocks are refined in shape and used in combinations such that they lift the merchandise off the floor, constituting a true platform "for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances." These wooden loading blocks do form a platform to be used in situations where the use of ordinary pallets would be impractical given the length, weight or shape of the merchandise.

Alternatively, if the subject merchandise is covered by the language of headings 4407 or 4409 and 4415, it is nevertheless more specifically provided for in heading 4415. GRI 3(a) provides that: "When ... goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows: (a) The heading which provides for the most specific description shall be preferred to headings providing a more general description." In accordance with GRI 3(a), wooden loading blocks are, even if *prima facie* classifiable under two or more headings, most specifically described as "load boards" under HTSUS heading 4415, given their design and intended use.

If the loading blocks are not classified under heading 4415, we believe the only alternative is heading 4421, HTSUS, as they are not classified under 4407, HTSUS. In New York Ruling D80128 (June 8, 2000), cut to size wooden boards that were notched on the bottom edge for ease of fork-lift use once they were assembled into pallets were classified under heading 4421, HTSUS, as other articles of wood. Customs determined that the boards belonged to the class of goods principally used as wood pallet components, but because heading 4415 does not include a parts provision, they were classified under heading 4421. B.B. Pallets' loading boards are also of the class of goods principally used as pallets. Thus, they should be classified under heading 4415 or heading 4421, depending on whether they have the essential character of pallets or parts of pallets. Finally, even if they are not found to be pallets or parts of pallets, they should be classified under heading 4421 in any case because they are not lumber and the only alternative is to classify them as other articles of wood.

Prior Treatment

B.B. Pallets has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996. They have been consistently entered under subheading 4415, HTSUS, as indicated on the attached chart. When the Softwood Lumber Agreement ("SLA") came into effect, the company did not attempt to obtain sufficient quota to cover its imports of wooden loading blocks because this merchandise was not expected to be covered by the SLA.

On August 6, 1998, Customs in Port Huron issued a Request for Information ("CF 28") concerning entry number EG6-7721138-5. The CF 28 addressed both the NAFTA eligibility and the classification of wood crate components, including boards similar to the ones at issue now. After B.B. Pallets submitted a NAFTA certificate and drawings and specifications for the product, Customs liquidated the entry. B.B. Pallets made the reasonable assumption that because

nents were classified under heading 4415, the boards alone would also be
heading 4415. Furthermore, Customs continued, until recently, to classify this
nder subheading 4415, and B.B. Pallets had no reason, until recently, to believe
nge.

ecent rulings concerning the classification of grooved boards do not provide clear
to how our client's loading blocks should be classified. New York Ruling B86507
, 1997) involved boards with straight ends that were both cut to size and assembled
shed product after importation, whereas B.B. Pallets' loading blocks are cut to size and,
finished product at the time of importation. In New York Ruling F86079 (May 10,
ustoms ruled that pre-cut, pre-grooved boards with straight-cut ends were classified as
nder subheading 4409, HTSUS, but in New York Ruling D80128 (June 8, 2000),
s ruled that cut-to-size and shaped wooden boards, notched on the bottom edge for ease
lift use, were classified in subheading 4421, HTSUS. The latter ruling noted that the
s had been dedicated to use as components of pallets and, thus, could not be classified as
er in subheading 4409, HTSUS. Further, although parts of pallets, they could not be
ified under subheading 4415 because that provision does not provide for parts, and they
e classified, therefore, as other (non-enumerated) articles of wood under subheading 4421.
r client's product is also dedicated to use as a particular article, whether it be called a pallet or
other article of wood. These rulings do not provide clear guidance as to how our client's
erchandise should be classified and, furthermore, even if they were found to apply to B.B.
allets' loading blocks, this change of treatment was not implemented through the proper
procedures, as required by section 625(c).

The language of 19 U.S.C. §1625(c) clearly states that the publication requirements of section 625(c) are invoked (1) when a prior ruling in effect at least 60 days is revoked or (2) when a proposed ruling or decision would have the effect of modifying a treatment previously accorded substantially identical transactions. Here, where there was a long-standing treatment for this merchandise, notice is required under section 625(c)(2).

In addition, as made clear in *Precision Specialty Metals, Inc. v. United States*, Slip Op. 00-121 (Ct. Int'l. Trade, Sept. 20, 2000), section 1625(c) "is violated when: (1) an interpretive ruling or decision (2) effectively modifies (3) a 'treatment' previously accorded by Customs to (4) 'substantially identical transactions', and (5) that interpretive ruling or decision has not been subjected to the notice-and-comment process outlined in § 1625(c)(2)." Slip. Op. at p. 41. As shown above, each of these five tests is met by the facts of this case. Accordingly, Customs erred in liquidating the entry in question under heading 4407 without having followed the procedures required by section 625(c).

Conclusion

We respectfully request that U.S. Customs reconsider its decision to classify wooden loading boards under subheading 4407, HTSUS. Furthermore, even if Customs continues to

believe that this is the proper classification for this merchandise, we request that Customs comply with the requirements of section 625(c) and publish a notice concerning this proposed change in treatment. Even if our client will be able to modify its products in the future to avoid this problem, they are entitled to receive at least the treatment they expected for the period of time provided for by section 625(c).

In accordance with 19 C.F.R. § 103.12, we request confidential treatment for the information contained herein. The information constitutes confidential commercial and/or financial information, the release of which would cause substantial harm to the competitive position of B.B. Pallets. Moreover, this information is not otherwise available to the public.

If Customs Headquarters is contemplating ruling against our client with respect to either the classification or the section 625(c) issue, we would like to request an opportunity to meet with appropriate personnel before the decision is made.

Attachment

Section V, Item 15

**JUSTIFICATION FOR FURTHER REVIEW**
**Entries EG6-76135916, EG6-76137797, EG6-76142904, EG6-76144504, EG6-76145659 (liquidated 9/29/2000)**

In accordance with 19 C.F.R. § 174.24(c) and (d), and based upon the statements of fact and legal arguments set forth under Item 7 above, we are also hereby submitting an application for further review. The basis for this application is that the decision against which this protest is filed "involves matters previously ruled upon by the Commissioner of Customs or his designee or by the Customs courts but facts are alleged or legal arguments presented which were not considered at the time of the original ruling." As outlined in the context of the discussion of the New York Rulings above, B.B. Pallets' wooden loading blocks are refined in shape and used in combinations such that they lift merchandise off the floor, constituting a true platform "for the assembly of a quantity of goods to form a unit load for handling, transportation and storage by mechanical appliances," especially in situations where the use of ordinary pallets would be impractical given the length, weight or shape of the merchandise. Depending on whether they have the essential character of pallets or parts of pallets, the wooden loading blocks should be classified under heading 4415 or heading 4421. Even if they are not found to be pallets or parts of pallets, they should be classified under heading 4421 in any case because they are not lumber and the only alternative is to classify them as other articles of wood.

Furthermore, the decision against which this protest is being filed involves questions that the U.S. Customs Headquarters Office refused to consider in the form of a request for internal advice, which we submitted on September 13, 2000.

**U.S. Customs Service**

1300 Pennsylvania Avenue, N.W. | Washington, D.C. 20229

HQ 964900

SEP 4 2002

CLA-2 RR:CR:TE 964900 RH

CATEGORY: Classification

TARIFF NO.: 4409.10.9040

Port Director
U.S. Customs Service
111 West Huron Street
Buffalo, NY 14202

RE: Protest number 0901-00-100490; wooden loading boards; heading 4415; heading 4409; 19 U.S.C. §1625(c)(2)

Dear Sir:

This is in reply to your memorandum dated February 9, 2001, forwarding protest and application for further review of protest (AFR) number 0901-00-100490 to our office for review.

The law firm of Hughes, Hubbard & Reed, LLP, timely filed the protest on behalf of BB Pallets, Inc. The protest is against Customs classification of wood blocks with a face groove running along the length under heading 4409 of the Harmonized Tariff Schedule of the United States (HTSUS).

Customs liquidated the entry in question on September 15, 2000. Review is warranted pursuant to 19 CFR §§174.24 and 174.25.

Our office met with counsel for the protestant on August 18, 2000, to discuss the same issues raised in this protest.

FACTS:

On January 12, 2000, the protestant entered a shipment of wooden boards into the United States from Canada, under subheading 4415.20.8000, HTSUS, as loading boards. On July 6, 2000, Customs issued a Notice of Action (Customs Form 29) concerning the entry in question, advising the protestant that the correct classification of the merchandise was under subheading 4409.10.9040, HTSUS.

TRADITION

SERVICE

HONOR

Counsel describes the merchandise in the protest as follows:

> The entry at issue . . . consists of two different types of wooden loading blocks. One package of the merchandise includes 2592 wooden loading blocks with a groove, while the other includes 8668 loading blocks without a groove. These wooden loading blocks are made from softwood lumber[1] and are imported in multiple sets of four. They have been made to customer specifications, varying in width and length to fit precisely the particular merchandise to be bound and transported.
>
> The wooden loading blocks are shipped and used in multiple sets specifically to bind on all sides unwieldy loads of merchandise, such as lengths of pipe. Generally, four pieces are used to form a crate around the merchandise. The sets of loading blocks are either strapped to the merchandise such that the loading blocks meet each other at the corners, or, sometimes, they are nailed together after importation to form the crate. The resulting unit can then be lifted off the ground to be handled or transported as on a platform by forklifts or other appliances. The grooves or notches are necessary with some types of merchandise to prevent the strapping used to secure the wooden blocks from slipping. Some customers require the loading blocks to be further refined to avoid jamming automatic packing machines, to reduce damage to merchandise when stacked or to transport particular types of merchandise. Some merchandise requires shaped ends to provide a tighter hold and render the loading blocks stronger by reducing the likelihood the ends may split or weaken the strapping. Thus, through the combination of these features, the different types of loading blocks are tailored for the specific purpose of binding merchandise for handling and transportation, resulting in a unique product specifically suited, purchased and imported for the purpose of packing merchandise.

The protestant argues that the imported boards are properly classified under heading 4415, HTSUS, as loading boards. Additionally, the protestant claims that it has consistently entered its merchandise under heading 4415, HTSUS, and is entitled to treatment under 19 U.S.C. §1625(c)(2).

We note that the merchandise in question was commingled, and the protestant failed to present to Customs any evidence to separately classify boards with and without a groove. Accordingly, Customs liquidated all the merchandise in question under subheading 4409.10.9040, HTSUS.

[1] In a letter from counsel, dated July 25, 2000, to the Port of Buffalo in response to the CF 29 issued on the entry under protest, counsel stated that "... both hardwood and softwood lumber is included in the entries at issue."

ISSUES:

1) Are the wood boards with a groove along the edge classified in heading 4409, HTSUS, as continuously shaped wood or under heading 4415, HTSUS, as load boards?

2) Is the protestant entitled to a treatment under 19 U.S.C. §1625(C)(2)?

LAW AND ANALYSIS:

Classification of goods under the HTSUS is governed by the General Rules of Interpretation (GRI's). GRI 1 provides that classification shall be determined according to the terms of the headings and any relative section or chapter notes. Merchandise that cannot be classified in accordance with GRI 1 is to be classified in accordance with subsequent GRI's taken in order.

Additionally, the Explanatory Notes (EN's) to the Harmonized Commodity Description and Coding System constitute the official interpretation of the nomenclature at the international level. The EN's are not legally binding. However, they do represent the considered views of classification experts of the Harmonized System Committee. It has therefore been the practice of the Customs Service to follow, whenever possible, the terms of the EN's when interpreting the HTSUS.

Heading 4415, HTSUS, provides for "Packing cases, boxes, crates and similar packings, of wood; cable-drums, of wood; pallets, box-pallets and other load boards, of wood; pallet collars of wood."

At the time of entry, heading 4409, HTSUS, provided for "Wood (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rebated, chamfered, V-jointed, molded, rounded or the like) along any of its edges or faces, whether or not planed, sanded or finger-jointed."

The protestant argues that the boards are classified under heading 4415, HTSUS, in accordance with GRI 2(a), because they are shipped in multiple unassembled sets, are specifically cut and shaped for the purpose of binding and transporting customers' particular merchandise and have the essential character of finished, assembled loading boards.

Customs has issued several rulings addressing the type of merchandise in question. In NY F86079 dated May 10, 2000, Customs classified precut, pre-grooved wooden boards in heading 4409, HTSUS. The boards in that case were "2 x 4", "4 x 4" or intermediate sizes, in lengths ranging from 40 inches to 10 feet. Each board had square cut ends and a groove, ¾" to 1" wide and ½" to ¾" deep,

running the entire length of one face. The boards were intended to be placed groove side down. Goods such as plywood sheets or steel mill products would be stacked on top of them and strapping would be threaded through one end of each groove, traversing its entire length and out the other side. The strapping would then be wrapped around the circumference of the stacked goods and cinched tightly to stabilize the load. The grooves in the wood were intended to ensure that the strapping, boards and load would remain secured to one another during all subsequent handling and shipping.

In that ruling, Customs addressed an argument similar to the protestant's - that the merchandise was classifiable as load boards under heading 4415, HTSUS. We stated that a load board, as defined in the EN and contemplated by the heading, is a "platform" generally consisting of multiple pieces of wood and capable of holding a quantity of merchandise. We found that a "2 x 4", **with or without a groove**, cannot reasonably be construed as a platform of heading 4415, HTSUS. Customs classified the grooved wood in that case under heading 4409, HTSUS, as wood continuously shaped along any of its edges or faces.

Additionally, in NY B86507, dated August 18, 1997, Customs classified strapping boards ranging in size from "2 x 3" to "2 x 6" and in lengths from 2 feet to 16 feet with a ¾" wide and ¼" deep groove running down the length of the board in heading 4409, HTSUS. The purpose of the grooves on the boards in that case was to hold a strap in place during shipping. See also, NY B83844 dated April 17, 1997 (grooved "2 x 4" lumber for dunnage was classified in heading 4409, HTSUS), and NY C82518, dated January 7, 1998 (lumber with a notch or bevel along the length of the board was classified in heading 4409, HTSUS).

Based on the above precedent, we find that Customs correctly classified the boards in question under subheading 4409.10.9040, HTSUS.

The second issue raised is a claim of treatment under 19 U.S.C. §1625. The revocation procedures set forth in section 625 of the Tariff Act of 1930, as amended, 19 U.S.C. §1625 (1994), read:

> c) Modification and revocation
>
> A proposed interpretive ruling or decision that would –
>
> (1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

> (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions; shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

With regard to 19 U.S.C. §1625(c)(2), the protestant claims that BB Pallets, Inc., has been producing wooden loading blocks for the past seven to eight years and has been importing them into the United States since 1996, consistently under heading 4415, HTSUS. In support of that claim, the protestant submitted a chart that includes entries from May 1997 to August 2000.

To substantiate a claim for treatment under 19 U.S.C. §1625(c)(2), Customs requires evidence of a consistent classification treatment by it on identical or substantially identical transactions. The showing must go back two years prior to the date of the last liquidated entry subject to the claim. The entry information must include a list of every entry of the merchandise both liquidated and unliquidated up to the point where the importer was advised to change the classification to that asserted by Customs, the entry number, port of entries, and it must identify any entries that were subject to examination by Customs. The request must also provide the tariff classification, dollar value and the volume of the merchandise. We also require a statement from the importer or his designee that there have been no entries of the merchandise under a tariff provision different from the claimed treatment provision for the same or similar merchandise. This information will then be verified with the affected ports.

The information provided by the protestant is not only contradictory, but it does not substantiate a finding of treatment. During the time frame in question, the protestant's entries were either paperless or defaulted in by-pass, i.e., the entries were not reviewed by Customs and liquidated as entered by the protestant.

In verifying the veracity of the protestant's claim of treatment, Customs randomly reviewed some of the entries on the protestant's chart. We discovered that invoices for some entries did not describe the merchandise as wooden loading blocks, but rather as pallet components, pallets tops and bottoms, pallet boards or pallet sets.

Evidently, the protestant did not review the entries it submitted to Customs, or it intentionally attempted to mislead Customs by listing entries liquidated under heading 4415, HTSUS, regardless of whether the merchandise was the same or similar to the merchandise at issue.

Moreover, our research reveals over 200 line items from various entries between October 1999 to August 2000, which the protestant failed to identify. Furthermore, entries cited on CF 29's issued by the Ports of Champlain and Detroit, covering the same merchandise, were not identified on the protestant's chart.

We note that Customs issued three rulings, cited above, covering merchandise with the same characteristics as the boards in question, all **prior** to the importation of the subject merchandise. In those rulings, the merchandise was classified under heading 4409, HTSUS. Any importer searching the publicly available rulings would have been able to locate those rulings.

Accordingly, the protestant's claim of treatment is denied.

HOLDING:

The protest is DENIED. Customs correctly classified the merchandise in question under subheading 4409.10.9040, HTSUS, as continuously shaped wood. The merchandise is duty free.

At the time of entry of the subject merchandise, softwood lumber first manufactured into a product classifiable in subheadings 4407.10.00, 4409.10,10, 4409.10,20 or 4409.10.90 of the HTSUS in the provinces of Ontario, Quebec, British Columbia, or Alberta required that the Government of Canada issue a permit and collect appropriate fees. The imported merchandise is classifiable under subheading 4409.10.90, HTSUS, and therefore the permit information is required.

In accordance with section 3A(11)(b) of Customs Directive Number 099 3550-065, dated August 4, 1993, Subject: Revised Protest Directive, you are to mail this decision, together with the Customs Form 19, to the protestant no later than 30 days from the date of this letter.

Thirty days from the date of the decision, the Office of Regulations and Rulings will take steps to make the decision available to Customs personnel, and to the public on the Customs Home Page of the World Wide Web at www.customs.gov, by means of the Freedom of Information Act, and other methods of public distribution.

Sincerely,

Myles B Harmon, Acting Director
Commercial Rulings Division

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

# PROTEST

Form Approved. OMB No. 1515-0058. See back of form for Paperwork Reduction Act Notice.

1. PROTEST NO. (Supplied by Customs) 0901-00-100568

Pursuant to Sections 514 & 514(a), Tariff Act of 1930 as amended, 19 CFR Part 174 et. seq.

NOTE: If your protest is denied, in whole or in part, and you wish to CONTEST the denial, you may do so by bringing a civil action in the U.S. Court of International Trade within 180 days after the date of mailing of Notice of Denial. You may obtain further information concerning the institution of an action by writing the Clerk of U.S. Court of International Trade, One Federal Plaza, New York NY 10007 (212-264-2800).

2. DATE RECEIVED (Customs Use Only)

## SECTION I — IMPORTER AND ENTRY IDENTIFICATION

3. PORT: Buffalo

4. IMPORTER NO.: 92020131290

6. NAME AND ADDRESS OF IMPORTER OR OTHER PROTESTING PARTY
B. B. Pallets Inc.
701 Dubois
St-Eustache (QC) J7P-3W1

5. ENTRY DETAILS

| PORT CODE | FILER CODE | ENTRY NO. | CHECK DIGIT | DATE OF ENTRY | DATE OF LIQUIDATION |
|---|---|---|---|---|---|
| 0901 | EG6 | 7613591 | 6 | 12/16/99 | 09/29/00 |
| 0901 | EG6 | 7613779 | 7 | 12/29/99 | 09/29/00 |
| 0901 | EG6 | 7614290 | 4 | 01/26/00 | 09/29/00 |
| 0901 | EG6 | 7614450 | 4 | 02/02/00 | 09/29/00 |
| 0901 | EG6 | 7614565 | 9 | 02/10/00 | 09/29/00 |

## SECTION II — DETAILED REASONS FOR PROTEST

7. With respect to each category of merchandise, set forth, separately, (1) each decision protested, (2) the claim of the protesting party, and (3) the factual material and legal arguments which are believed to support the protest. All such material and arguments should be specific. General statements of conclusions are not sufficient.

See Attached

(Attach Additional Sheets if necessary.)

US CUSTOMS CODE 26 PM 12:16

## SECTION III — REQUEST FOR DISPOSITION IN ACCORDANCE WITH ACTION ON PREVIOUSLY FILED PROTEST

Protesting party may request disposition in accordance with the action taken on a previously filed protest that is the subject of a pending application for further review and is alleged to involve the same merchandise and the same issues. (See 19 CFR 174.13(a)(7).) To request such disposition, enter in Blocks 8 and 9 the protest number and date of receipt of such previously filed protest.

8. PROTEST NO. OF PREVIOUSLY FILED PROTEST

9. DATE OF RECEIPT

## SECTION IV — SIGNATURE AND MAILING INSTRUCTIONS

10. NAME AND ADDRESS OF PERSON TO WHOM ANY NOTICE OF APPROVAL OR DENIAL SHOULD BE SENT
Janet A. Forest
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Suite 600
Washington, DC 20006-2401

11. NAME, ADDRESS, AND CUSTOMS IDENTIFICATION NUMBER TO WHICH REFUND SHOULD BE SENT
B. B. Pallets Inc.
701 Dubois
St-Eustache (QC) J7P-3W1

12. IF FILING AS ATTORNEY OR AGENT, TYPE OR PRINT YOUR NAME, ADDRESS AND IMPORTER NUMBER, IF ANY
Janet A. Forest
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, DC 20006-2401

13. SIGNATURE AND DATE
X Charles F. De Jager 12/21/2000

## (Optional) SECTION V — APPLICATION FOR FURTHER REVIEW (Fill in Item 1 above if this is a separate Application for Further Review.)

MARK BOX CORRESPONDING TO YOUR ANSWER TO EACH OF THE FOLLOWING QUESTIONS

YES NO

[ ] [X] (A) Have you made prior request of a port director for a further review of the same claim with respect to the same or substantially similar merchandise?

[ ] [X] (B) Have you received a final adverse decision from the U.S. Court of International Trade on the same claim with respect to the same category of merchandise or do you have action involving such a claim pending before the U.S. Court of International Trade?

[ ] [X] (C) Have you previously received an adverse administrative decision from the Commissioner of Customs or his designee or have you presently pending an application for an administrative decision on the same claim with respect to the same category of merchandise?

JUSTIFICATION FOR FURTHER REVIEW UNDER THE CRITERIA IN 19 CFR 174.24 AND 174.25

See Attached

Protesting party has the right to file a civil action contesting the denial of this protest under section 514, Tariff Act of 1930, as amended (19 U.S.C. 1514)

(Attach Additional Sheets If Necessary)

## SECTION VI — DECISION (CUSTOMS USE ONLY)

APPLICATION FOR FURTHER REVIEW EXPLANATION: [ ] Approved [ ] Denied for the reason checked: [ ] Untimely filed [ ] Does not meet criteria [ ] Other, namely

When further review only is approved the decision on the protest is suspended, pending issuance of a protest review decision.

PROTEST EXPLANATION: [ ] Approved [ ] Rejected as non-protestable [X] Denied in full for the reason checked: [ ] Denied in part for the reason checked: [ ] Untimely filed [ ] See attached protest review decision [ ] Other, namely

Protest denied See Headquarters ruling # HQ 964900 dated 9/4/02

TITLE OF CUSTOMS OFFICER: Import Specialist

19. SIGNATURE AND DATE: Barbara Headley FEB 0 2 2004

Editions Prior to 090583 Are Obsolete.

Customs Form 19 (120495)