IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| B.B. PALLETS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2748C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**SUPPLEMENTAL BRIEF ON JURISDICTION**

The government's supplemental brief on jurisdiction fails to focus on, or adequately address, the narrow issue of constitutional law B.B. Pallets, Inc. ("BBP") raised in its Opposition to the Defendant's Motion to Dismiss. The issue is whether the U.S. Court of International Trade ("CIT") would have had Article III jurisdiction over an action to contest the denial of a protest of the classification of BBP's entries under 28 U.S.C. § 1581(a). The Court requested supplemental briefing on this issue because the government had not adequately addressed the issue in its Reply or at oral argument.

## I. SUMMARY OF ARGUMENT

As the Plaintiff demonstrated in its opposition to the government's motion to dismiss, the answer to this question is clearly

"no." The law is very clear that: (1) the CIT cannot review a protest of classification at liquidation if the importer would receive no concrete benefit from reliquidation under the claimed classification (*e.g.,* a refund of customs duties or a return of valid entry permits); and (2) the CIT's only statutory jurisdiction to review an assessment of penalties or liquidated damages arises under 28 U.S.C. § 1582(2) if the importer does not pay the assessment and U.S. Customs brings a collection action under 28 U.S.C. § 1582(2).

The government readily concedes that the first proposition stated above is correct --- namely, that the CIT cannot review a protest of classification at liquidation if the importer would receive no concrete benefit from reliquidation under the claimed classification. The government also concedes that, because the claimed and assessed classifications were duty free, a favorable CIT decision in an action under 28 U.S.C. § 1581(a) would not have resulted in a refund of customs duties or the return of valid entry permits. Thus, the only material dispute related to the Article III jurisdiction issue is whether the CIT can review the validity of an assessment of penalties or liquidated damages in an action under 28 U.S.C. § 1581(a) or (i). The Federal Circuit squarely rejected this proposition in *Trayco Inc. v.*

*United States,* 994 F.2d 832 (Fed. Cir. 1993). Accordingly, the CIT clearly would not have had Article III jurisdiction to decide a protest from the liquidation of BBP's entries, and this case does not fall within the CIT's "exclusive jurisdiction" within the meaning of 28 U.S.C. § 1491(c).

## II. ARGUMENT

Pre-enforcement review of the assessment of penalties or liquidated damages against an importer is "committed to the discretion of the executive" and "not subject to judicial review." *Trayco, Inc. v. United States,* 994 F.2d 832, 838 (Fed. Cir. 1993) (penalties); *United States v. Cocoa Berkau, Inc.,* 990 F.2d 610 (Fed. Cir. 1993) (liquidated damages; "the determination whether to authorize cancellation of a bond under section 1623(c) falls within the discretion of the Secretary of the Treasury"); *United States v. Toshoku America Inc.,* 879 F.2d 815, 818 (Fed. Cir. 1989) ("an assessment of liquidated damages is not a 'charge or exaction' that [may] be challenged by protest under 19 U.S.C. § 1514" and reviewed in the CIT under 28 U.S.C. § 1581(a)) (citations omitted); *see also* Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a)(2) (precluding judicial review, in any court, of "agency action [that] is

committed to agency discretion by law"). Indeed, this principle has been codified in the Customs Regulations. *See* 19 C.F.R. § 172.22(a) (the denial of a petition to cancel liquidated damages is not "protestable").

Rather, the sole **judicial** remedy that Congress prescribed for importers against an unlawful assessment of penalties or liquidated damages is in an action commenced by the government under 28 U.S.C. § 1582 after the importer refuses to pay the assessment. In such an action, importers can raise the invalidity of the assessment as a defense to the government's claim. The decisions cited by the government to support the proposition that the CIT has jurisdiction to review assessments of penalties and liquidated damages all involve enforcement actions commenced by the government under 28 U.S.C. § 1582 --- not pre-enforcement actions commenced by the importer under 28 U.S.C. § 1581. *See, e.g., Toshoku,* 879 F.2d at 818.

In view of the foregoing, the government's argument that the CIT could have conducted a pre-enforcement review of the assessment of liquidated damages against BBP is clearly fallacious. Such a holding would allow such an assessment to be reviewed before it was "ripe" for judicial review, either because the importer

paid the assessment, *see* Def.'s Supp. Brief at 3, Step 7 (admitting that importers would not have to pay assessments before bringing an action under 1581), or the importer otherwise has felt the effects of the assessment in a concrete way, *i.e.,* by being sued under 28 U.S.C. § 1582. Such a result would be contrary to the Supreme Court's teachings in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-49 (1967).

Moreover, U.S. Customs can cancel an assessment before it is paid or enforced in a collection action, *see* 19 U.S.C. § 1623(c). That means an assessment is not final before it is paid or enforced in a collection action, and any CIT decision regarding its validity before that time clearly would constitute an impermissible "advisory opinion" regarding a hypothetical situation.

Finally, allowing pre-enforcement review of an assessment of penalties or liquidated damages would invade the province of the executive, as defined by the APA, 5 U.S.C. § 701(a)(2), and Article III of the U.S. Constitution, because such reviews are "committed to agency discretion by law" and, thus, not subject to judicial control. *See Cocoa Berkau,* 990 F.2d 610 ("the determination whether to authorize cancellation of a bond under section 1623(c) falls within the

discretion of the Secretary of the Treasury"); *see also Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803) (when a power is committed to executive discretion by law, it is a "political question" that the courts have "no power to control"; "[B]eing entrusted to the executive, the decision of the executive is conclusive.").

The Federal Circuit could not have been any clearer in *Trayco* that importers like BBP, who do not want to sit back and wait for up to six years to be sued by the government, and can afford to pay an assessment of penalties or liquidated damages, have an option --- they can pay the assessment under protest and, if U.S. Customs decides to accept the conditional payment, they can bring a refund action in courts with general claims jurisdiction to obtain judicial review. *See Trayco,* 994 F.2d at 837-38; *accord* Tucker Act, 28 U.S.C. § 1491(a) & (c) (CFC has jurisdiction over refund actions against the United States that are not within the "exclusive jurisdiction" of the CIT); APA, 5 U.S.C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action . . . in a court of competent jurisdiction."); *see also* Pl.'s

Surreply at 1-2 (noting that the government's decision to accept BBP's conditional payment was contrary to its own post-*Trayco* regulatory policy of not accepting such payments) (discussing 19 C.F.R. § 172.22(b) and *Notice of Proposed Rulemaking,* 65 Fed. Reg. 53565, 53567 (U.S. Customs Sept. 5, 2000) and 19 C.F.R. § 172.22(b) (2004)).

The government argues that, of the six cases BBP cited to support its argument regarding the CIT's Article III jurisdiction:

> Five cases are all distinguishable basically because the choice between the two classifications failed to implicate any monetary consequences other than duty. The sixth case supports a finding that the Court of International Trade does possess jurisdiction.

Def.'s Supp. Br. at 5. This argument does not hold water. One of the cases that BBP cited, *3V, Inc. v. United States,* 83 F. Supp. 2d 1351, 1353 (Ct. Int'l Trade 1999), clearly "implicate[d] [a] monetary consequence other than duty," namely, the imposition of penalties based on the same entries.

The CIT held that the mere *stare decisis* effect of a classification decision on pending administrative penalty cases involving the same entries was insufficient to establish a "case or controversy" within the meaning of Article III. *See id. Compare*

*Schott Optical Glass, Inc. v. United States,* 750 F.2d 62, 64 (1984) (judicial decision on classification issue has *stare decisis* effect) *with United States v. Stone & Downer Co.,* 274 U.S. 225 (1927) (judicial decision on classification issue has no *res judicata* effect).

Similarly, in *American Bayridge Corp. v. United States,* 35 F. Supp. 2d 922 (Ct. Int'l Trade 1998), *vacated as moot on the classification issue,* 1999 WL 997303, at *1 n.1 (Fed. Cir. Oct. 26, 1999), the importer would have been entitled to a return of its SLA permit, prior to the expiration of the agreement, when it was still valuable. The significance of *Bayridge* here is the Federal Circuit's holding (which may be cited for judicial estoppel purposes) that no "case or controversy" existed with respect to the classification issue in that case because importer was entitled to a return of its permit by application of Section 625(c) of the Customs Modernization Act, 19 U.S.C. § 1625(c), *i.e.,* regardless of whether the claimed or assessed classifications were correct under the Harmonized Tariff Schedule of the United States.[1]

[1] The undersigned counsel was a law clerk to the plaintiff's attorneys in *Bayridge* and has first hand knowledge of that case.

The government's argument that the Federal Circuit's decision in *Bayridge* related to "mootness," not "jurisdiction," is incorrect. Mootness falls under the rubric of subject matter jurisdiction in general and "case or controversy" in particular. As the Supreme Court explained in *Allen v. Wright*:

> All of the doctrines that cluster about **Article III** -- not only standing but **mootness,** ripeness, political question, . . . **[are] case-or-controversy doctrines** . . . .

468 U.S. 737 (1984) (emphasis added; citation omitted). For example, the CIT's decision in *Vanderhoof Specialty Wood Products, Inc. v. United States,* No. 02-00793 (Ct. Int'l Trade Mar. 11, 2004), refers to the classification issue as "moot" in dismissing the complaint on "case or controversy" grounds.

Finally, the government argues that the CIT would have had the power to issue a declaratory judgment regarding a classification issue. The Federal Circuit has held clearly, however, that such relief may be obtained only with respect to prospective entries, or past entries that have not yet liquidated, if the importer can show that the decision would cause "irreparable harm" to the importer before liquidation and an opportunity for protest and review under *28* U.S.C. § 1581(a). *See* 28 U.S.C. § 1581(h) (expressly providing for review

of pre-importation rulings if the importer can show irreparable harm); *Norcal/Crosetti Foods, Inc. v. United States,* 963 F.2d 356, 359 (Fed. Cir.1992); *National Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1557 (Fed. Cir. 1988); *Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed. Cir.1987), *cert. denied,* 484 U.S. 1041 (1988); *American Air Parcel Forwarding v. United States,* 718 F.2d 1546, 1550-51 (Fed. Cir.1983), *cert. denied,* 466 U.S. 937 (1984); *United States v. Uniroyal, Inc.,* 687 F.2d 467, 471 (Ct. Cust. & Pat. App. 1982); *see also Heartland By-Products, Inc. v. United States,* 223 F. Supp. 2d 1317, 1323-32 (Ct. Int'l Trade 2002) (explaining the limited scope of the CIT's declaratory judgment power in classification cases).

In sum, the government's attempt to distinguish *3V* and the Federal Circuit's decision in *Bayridge* must fail. Those decisions clearly support BBP's position on the Article III jurisdiction issue.

## III. CONCLUSION

For the reasons stated above, and as discussed more fully in our prior briefing, the CIT clearly would not have had jurisdiction to decide the classification issues in this case. Accordingly, the government's motion to dismiss must be denied on the narrow constitutional ground discussed above (i.e., without reaching the

more complicated issues of customs law raised by the government's motion).

Respectfully submitted,

Date: February 4, 2005

s/ A . Woodson Stuart

A. Woodson Stuart
JONES & STUART, LLP
2300 M Street, NW, Suite 800
Washington, D.C. 20037
Tel: (202) 297-3196
Fax: (202) 338-0270

*Attorney for the Plaintiff*