# In the United States Court of Federal Claims

Case No. 03-2748C
(Filed: July 8, 2005)
**TO BE PUBLISHED**

****************************************************

| | | |
|---|---|---|
| B.B. PALLETS, INC., *Plaintiff,* | * | Court of International Trade; jurisdiction; liquidated damages; HTSUS classifications; Customs. |
| v. | * | |
| THE UNITED STATES OF AMERICA, *Defendant.* | * | |

****************************************************

***A. Woodson Stuart***, Jones and Stuart, LLP, Washington, D.C., for Plaintiff.

***Christian J. Moran***, Department of Justice, Washington, D.C., for Defendant. With him on the briefs were ***Peter D. Keisler***, Assistant Attorney General, ***David M. Cohen***, Director, ***Patricia M. McCarthy***, Assistant Director. ***Ted Kundrat***, U.S. Customs and Border Protection, of counsel.

***Tahmineh I. Maloney***, law clerk.

## OPINION

**BASKIR, Judge.**

Plaintiff, B.B. Pallets, Inc. (BBP), is a Canadian lumber remanufacturer that sells bed frame components and loading blocks in the United States. It seeks refund of $93,217.50 in liquidated damages paid "under protest" to the U.S. Customs and Border Protection (Customs) to satisfy the agency's claim that BBP breached the customs bond covering the period from May 12, 1999, to October 17, 2000. Counts 1-6 of the Complaint all allege that Customs improperly reclassified BBP's imported merchandise.

Pursuant to Rule 12(b) of the Rules of the U.S. Court of Federal Claims (RCFC), the Defendant has filed a Motion to Dismiss on two bases: First, this Court lacks jurisdiction to entertain Plaintiff's Complaint because it raises matters over which the Court of International Trade (CIT) possesses exclusive jurisdiction; and second, the Plaintiff failed to exhaust its administrative remedies. We agree with the Defendant that this Court lacks subject matter jurisdiction to consider Plaintiff's claims, which would

require us to adjudicate the validity of Customs' classifications - an area that Congress has left within the exclusive jurisdiction of the CIT. **Accordingly, we grant Defendant's Motion to Dismiss.**

## BACKGROUND

BBP claims that there is no way to obtain CIT review of Customs' assessment of liquidated damages, and so this Court is the forum for judicial review of these assessments. To evaluate BBP's claim we must first review the import scheme administered by U.S. Customs and BBP's actions in this case.

Between May 12, 1999, and October 17, 2000, BBP imported wooden "bed frame components" and "loading blocks" into the United States. As an importer of merchandise into the United States, BBP presented entry documentation identifying the nature of the merchandise, the appropriate Harmonized Tariff Schedule of the United States (HTSUS) classification, and the quantity and value of the merchandise. *See* 19 C.F.R. Part 142 (describing the entry process). According to its Complaint, at entry BBP classified the bed frame components as "other articles of wood," Heading 4421, HTSUS, and the loading blocks as "other load boards," Heading 4415, HTSUS.

Customs is charged with the "ministerial function of fixing 'the amount of duty to be paid'" on imported goods. *Xerox Corp. v. United States*, 289 F.3d 792, 794 (Fed. Cir. 2002) (quoting, 19 U.S.C. § 1500(c)). BBP posted a surety bond with Customs in order to obtain faster release of its merchandise. *See* 19 C.F.R. § 142.4 (bond requirements). An importer's bond creates joint and several liability between it and its surety for any payment of duties and for liquidated damages assessed by Customs for the failure to comply with Customs regulations. *See* 19 C.F.R. § 113.62 (describing customs bond conditions).

Within one year after entry, subject to certain exceptions, Customs "liquidates" or administratively renders final matters relating to an importer's entry. *See* 19 U.S.C. § 1504. Liquidation is "the final computation or ascertainment of duties...accruing on an entry." 19 C.F.R. § 159.1. At liquidation, Customs may accept an importer's classifications or, if it finds it appropriate to do so, assign its own classification. *See* 19 C.F.R. Part 152, Subpart B. Customs reclassified the Plaintiff's merchandise at liquidation, creating additional Canadian export permit requirements.

At the time the entries were made, imports from Canada classified under Subheadings 4407.10 and 4409.10, HTSUS, were subject to a Canadian export permit requirement under the Canada - United States: Softwood Lumber Agreement (SLA) and its implementing regulations. *See* SLA, 35 I.L.M. 1195 (1996); 19 C.F.R. §§ 12.140(a) and 113.62(k) & (l)(5) (1997). Free export permits were available for a limited quota of subject merchandise. Beyond that, importers were required to pay fees in order to obtain an export permit from the Canadian government. *See* SLA 35 I.L.M. 1195 (1996). An importer's failure to present the required permits to U.S. Customs within 20 days of entry constituted a breach of the importer's customs bond and

authorized Customs to assess liquidated damages of $100 (US) per thousand board feet to the limit of the bond for the relevant time period. *See* 19 C.F.R. § 113.62(k) & (l)(5).

Sometime after October 20, 2000, BBP's various entries of loading blocks and bed frame components were reclassified by Customs to require SLA permits. Customs issued a Customs Form 5955A, Notice of Penalty or Liquidated Damages Incurred and Demand for Payment (Notice), for each of the entries listed in the Complaint. Customs liquidated numerous entries of grooved loading blocks under Subheading 4409.10, HTSUS, and assessed liquidated damages of $100 (US) per thousand board feet for each of those entries. Additionally, U.S. Customs also liquidated numerous entries of straight-cut bed frame components under Subheading 4407.10, HTSUS, and assessed liquidated damages of $100 per thousand board for each of those entries. On each Notice, Customs listed the amount owed and informed BBP that it was assessing liquidated damages because BBP had failed to provide the required export permits.

Within 90 days after liquidation, an importer may elect to file a protest with Customs contesting, among other things, classification. *See* 19 U.S.C. § 1514(a); 19 C.F.R. Part 174, especially § 174.11. If that protest is denied, the importer may then commence, within 180 days, an action in the CIT, seeking review of the agency's denial of the protest. *See* 28 U.S.C. §§ 1581(a) and 2636(a). We should note that the Plaintiff maintains that it could not have contested the denial of a protest of the liquidation of the subject entries because it believes such an action would lie beyond the CIT's Article III jurisdiction. If the importer does not protest the liquidation, all of the decisions made by Customs at liquidation, including classification, become "final and conclusive upon all persons (including the United States and any officer thereof)." 19 U.S.C. § 1514(a).

Beginning on December 13, 2000, BBP filed protests for certain reclassified entries that liquidated. On February 8, 2001, the Port of Buffalo denied BBP's first protest and granted its motion for further review. The protest was referred to Headquarters, the Office of Regulations and Rulings (OR&R), for a decision. The Port of Buffalo suspended action on the second protest pending OR&R's review of the ruling on the first protest.

In addition to these protests, BBP filed timely petitions to cancel the charges against the bond under 19 U.S.C. § 1623(c) and 19 C.F.R. Part 172. In its petitions, BBP requested that all of the charges concerning loading blocks be canceled on the grounds that the blocks were correctly entered under Subheading 4415.20, HTSUS, and because of the prior treatment of BBP's classifications.

The ports with pending liquidated damages cases agreed, via the responsible Fines, Penalties & Forfeiture (FP&F) officers, to suspend action on their respective cases (including the cases involving bed frame components) pending OR&R's ruling on the first protest. However, while it is unclear in the record, it appears that certain other entries may have been liquidated without protest - a factual ambiguity that does not bear on our ruling.

On September 4, 2002, OR&R issued Customs Service Headquarters Ruling 964900 affirming the denial of BBP's first protest. At this point BBP could have perfected CIT review but did not. *See* 28 U.S.C. §§ 1581(a) and 2636(a). The FP&F officers at each port with a pending suspended liquidated damages case removed the suspension and denied BBP's petitions for administrative relief. Much later, on February 2, 2004, the Port of Buffalo denied BBP's second protest on the basis of OR&R's decision.

U.S. Customs renewed its demand for liquidated damages to the full extent of BBP's bond for the two bond periods at issue, totaling $100,000 (US). BBP had already paid $6,782.50 without protest, leaving a balance of $93,217.50. By letter dated January 6, 2003, BBP sent U.S. Customs a certified check for the remaining $93,217.50, stating that the payment was being made "under protest," and that BBP "reserve[d] the right to pursue a refund action in the Court of Federal Claims." Compl. Ex 1. On January 13, 2003, U.S. Customs accepted BBP's payment. On November 25, 2003, BBP filed the pending Complaint in this Court.

## STANDARD OF REVIEW

Pursuant to RCFC 12(b)(1), the Defendant moves to dismiss BBP's Complaint for lack of subject matter jurisdiction. Once challenged, the Plaintiff bears the burden of establishing jurisdiction. *See Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). The Defendant also moves to dismiss BBP's Complaint, pursuant to RCFC 12(b)(6), on the ground that BBP failed to exhaust its administrative remedies, and therefore, fails to state a claim upon which relief may be granted. In evaluating a motion to dismiss made under both 12(b)(1) and(6) the Court presumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the nonmoving party. *See, e.g., Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985); *Beure-Co. v. United States*, 16 Cl. Ct. 42 (1988).

## DISCUSSION

This Court lacks subject matter jurisdiction over controversies that lie within the exclusive jurisdiction of the CIT. *See* 28 U.S.C. § 1491(c) ("Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade"). The CIT, as a specialized court, "operates within precise and narrow jurisdictional limits," as granted by Congress. *United States v. Biehl & Co.*, 539 F.Supp. 1218, 1221 (C.I.T. 1982). Notwithstanding the CIT's broadened jurisdictional authority under the Customs Court Act of 1980, it cannot exercise jurisdiction over actions not addressed by a specific jurisdictional grant. *See Trayco, Inc. v. United States*, 994 F.2d 832, 836 (Fed. Cir. 1993).

BBP asserts that this Court possess jurisdiction under 28 U.S.C. § 1491(a) to hear its claim. Plaintiff argues that its claim for a refund of liquidated damages is a claim against the United Stated for a money judgment founded upon a federal

regulation, 19 C.F.R. § 113.62(k) & (l)(5). This argument rests upon the Plaintiff's reading of the Federal Circuit's opinion in *Trayco*.

In *Trayco* the Court of Appeals for the Federal Circuit upheld the district court's determination that it had jurisdiction to review the legality of a penalty assessed against the plaintiff importer, Trayco, Inc., by the U.S. Customs Service. *See* 994 F.2d at 833. Trayco alleged that Customs improperly assessed an import penalty under the statute that requires importers to mark shipments with the country of origin, 19 U.S.C. § 1304(a) (1988), and the statute that authorizes Customs to assess penalties against importers for acts of fraud, gross negligence, and negligence, which deprive the United States of lawful duties, 19 U.S.C. § 1592(a),(c) (1988).

After Customs assessed the penalty, of $12,030.40, Trayco filed a timely petition for mitigation or remission of the penalty pursuant to 19 U.S.C. § 1618. Customs denied Trayco's petition, and Trayco filed a supplemental petition for relief pursuant to 19 C.F.R. § 171.33(a). Customs mitigated the penalty amount to $7,519.00, but declined to mitigate the penalty in its entirety. Trayco filed a second supplemental petition for relief and paid the mitigated penalty as required by 19 C.F.R. § 171.33(c)(1). Trayco's payment included a cover letter that stated the payment was being made "under protest reserving all rights to judicial review following the exhaustion of administrative remedies." *Trayco*, 994 F.2d at 835. After Customs denied Trayco's second supplemental petition, Trayco commenced suit in district court seeking a refund of the mitigated penalty.

In its *de novo* review, the Federal Circuit held that the district court properly exercised jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2): "The refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages." *Trayco*, 994 F.2d 837-38, citing *Eastport Steamship Corp. v. United States*, 372 F.2d 1002 (Ct. Cl. 1967). In so finding, the Federal Circuit concluded that a "gap" exists in the CIT's exclusive jurisdiction for "an action brought by an importer against the United States for a refund of a penalty improperly assessed and exacted under 19 U.S.C. § 1592(a),(c)." *Trayco*, 994 F.2d at 836.

The Federal Circuit began its analysis by examining Section 1581 of Title 28, which grants exclusive jurisdiction to the CIT for certain civil actions brought against the United States. Because subsections (a)-(i) of section 1581 failed to include, as a type of action, an importer-initiated suit for refund of a penalty the Court rejected 28 U.S.C. § 1581 as a basis for jurisdiction.

Section 1582 of Title 28 grants exclusive jurisdiction to the CIT over civil actions commenced by the United States arising out of import transactions, jurisdiction which the Federal Circuit noted was not coextensive to that of 28 U.S.C. § 1581. Because the United States did not commence the action against Trayco, this basis for jurisdiction also failed.

The Government argued that Trayco could have elected to decline to pay the assessed penalty. This would have resulted in Customs commencing an enforcement action in the CIT pursuant to statue. *See* 28 U.S.C. § 1582. Thus, judicial review properly existed. Accordingly, there was "no need," or rather "no right" to obtain judicial review in the district court. The Federal Circuit found no statutory bar preventing Trayco from pursing relief in the district court under its elected course of action; a "gap" existed in the CIT's exclusive jurisdiction: "Therefore, Trayco had the option, and more importantly, the right to initiate suit in the district court to challenge the penalty." *Trayco*, 994 F.2d at 837. BBP seeks to extend *Trayco's* reasoning to include its claim for a refund of liquidated damages.

Judge Block recently addressed a similar jurisdictional question examining the boundaries of *Trayco* in *Forest Products Northwest, Inc. v. United States*, 62 Fed. Cl. 109 (2004). In that case the plaintiff, Forest Products Northwest (Forest Products), imported lumber products from Canada into the United States. Customs reclassified the imported lumber. The reclassification decision resulted in Forest Products owing antidumping and countervailing duties.

Forest Products paid the assessed amount "under protest," however did not exhaust the administrative remedies available to it to challenge Customs' classification. If denied this would have allowed it ultimately to seek review in the CIT. Instead, Forest Products brought suit in the U.S. Court of Federal Claims. The United States moved to dismiss the complaint for lack of subject matter jurisdiction.

In addressing the jurisdictional question the Court reviewed in detail the statutory and regulatory scheme facing importers. Under that scheme, Customs assesses duties, including antidumping and countervailing duties. Forest Products paid the assessed amount "under protest." "Such finding of Customs as to 'the classification and rate and amount of duties chargeable' are protestable to Customs under 19 U.S.C. § 1514(a)(2)." *Forest Products Northwest*, 62 Fed. Cl. at 116 (quoting *Xerox Corp*., 289 F.3d at 794, quoting 19 U.S.C. § 1514(a)(2)). The port director reviews and acts on protests within two years of filing. 19 C.F.R. §§ 174.21, 29. If the port director, on the behalf of Customs, denies a protest, then the party may appeal to the CIT within 180 days of the denial. 19 U.S.C. § 1514(a); 19 C.F.R. § 174.31.

In the case of Forest Products, "liquidation" had not yet occurred. Significantly for the plaintiff, a protest may not be lodged until liquidation occurs. 19 U.S.C. § 1514(c)(3). The immediate unavailability of protest amounted to a jurisdictional "gap" and formed the crux of Forest Product's case:

> Forest Products proffers various convoluted arguments in support of its proposition, but which in essence can be boiled down to a single proposition - since Forest Products cannot *immediately* seek relief in the CIT because it must first exhaust time-consuming and burdensome administrative procedures, there is a defect, a "gap," in the CIT's jurisdiction. Therefore, according to Forest Products, the levied

> antidumping and countervailing duties are illegal exactions that can be challenged in this court under the Tucker Act.

*Forest Products Northwest*, 62 Fed. Cl. at 110.

In response to Forest Product's contention that liquidation was suspended "indefinitely," the Court reviewed the time limits set by statute that governed the process of liquidation. *See* 19 U.S.C. § 1504; *see also Forest Products Northwest*, 62 Fed. Cl. at 166 ("an entry of imported merchandise which is not liquidated within *four years* after the date of entry is liquidated by operation of law...unless liquidation continues to be suspended by statute or court order") (internal citations omitted). The Court rejected the argument that time-consuming administrative procedures created a jurisdictional gap, and upheld the exhaustion requirement:

> But this contention clearly stands the statutory scheme on its head. Because the Federal Circuit has made manifestly clear that available administrative remedies must first be exhausted as a statutory condition precedent to judicial review of any challenges of Customs' classifications that impose antidumping and countervailing duties, this court must grant the government's motion and dismiss Forest Products' complaint.

*Id.* In addition to the liquidation route, Forest Products could have elected to administratively challenge the Commerce Department's scope determination and then sought review in the CIT. (The actions of the Commerce Department were also at issue in *Forest Products*.) In either case jurisdiction properly lay in the CIT:

> Furthermore, Forest Products' complaint would require the Court of Federal Claims to adjudicate the validity of Customs' classification and, collaterally, the appropriateness of the imposed antidumping and countervailing duties. These responsibilities the Congress has unequivocally assigned to the Court of International Trade.

*Id.* at 110-11.

We adopt Judge Block's well-reasoned analysis in our review of the BBP's claims. BBP attempts to distinguish its case from that of *Forest Products* on two grounds.

First, BBP argues that Customs may make certain charges and exactions including the assessment of liquidated damages and penalties under 19 U.S.C. § 1592(a), the statute at issue in *Trayco*, that are themselves not "protestable" under 19 U.S.C. § 1514(a). We disagree with the Plaintiff's characterization of the statutory framework, and examine BBP's actions within that framework as properly understood.

Under the express provisions of 19 U.S.C. § 1514(a), a classification decision by Customs must be protested in order to avoid finality, and under 28 U.S.C. § 1581(a), the CIT possesses exclusive jurisdiction to review the denial of a protest. At its core,

BBP's Complaint concerns classification decisions by Customs, as did the plaintiff's complaint in *Forest Products*. Plaintiff's counsel admitted at oral argument that in order to win on the merits BBP would have to establish that its merchandise was not correctly classified by Customs. *See* Transcript Oral Argument (Dec. 9, 2004) at p. 28-9. In both cases, the underlying classification decisions lead to the other charges - antidumping and countervailing duties and liquidated damages. BBP failed to follow the protest procedure to completion by failing to commence an action in the CIT within 180 days of the denial of its protest. *See* 28 U.S.C. §§ 1581(a) and 2636(a).

We concur with Judge Block's determination in *Forest Products* that Customs' classification decisions are properly reviewed by the CIT, not this Court. BBP's claim would require us to determine the validity of Customs' classification determinations and, collaterally, the appropriateness of the liquidated damages charge. *See Forest Products Northwest*, 62 Fed. Cl. at 110-11 ("Furthermore, Forest Products' complaint would require the Court of Federal Claims to adjudicate the validity of Customs' classification and, collaterally, the appropriateness of the imposed antidumping and countervailing duties.").

As the other legal course available to it, BBP could have declined to pay the assessed amount and waited for Customs to initiate an enforcement suit in the CIT. Unlike the importer in *Trayco*, BBP clearly possessed both the right to CIT review of its administrative protest and the right to raise compliance with the conditions of its bond as a defense in an enforcement action. *See United States v. Toshoku America, Inc.*, 879 F.2d 815, 818 (Fed. Cir. 1989) ("proof that the importer has complied with the conditions of the bond...still remains a complete defense to a collection suit brought to enforce the bond").

B.B. Pallets also alleges that even had it pursued a protest remedy under 19 U.S.C. § 1514(a), which it did not, no judicial review would have been available to it in the CIT. The Plaintiff concedes that the CIT has jurisdiction over protestable issues, including classification. However, in the Plaintiff's view, BBP's duty rate under both the assessed and claimed tariff provisions is the same. The CIT lacks jurisdiction to hear the claim because it does not meet the Article III requirement of presenting a live case or controversy. In support, Plaintiff cites *Vanderhoof Specialty Wood Products, Inc. v. United States* (Vanderhoof), 26 I.T.R.D. (BNA) 1349 (Ct. Int'l Trade 2004), a non-binding trial court decision.

In *Vanderhoof,* the plaintiff, Vanderhoof Specialty Wood Products, Inc. (Vanderhoof), a Canadian lumber remanufacturer brought suit in the CIT contesting Customs' reclassification of imported handrails upon liquidation. Vanderhoof entered the handrails under subheading 4409.10.45 of the Harmonized Tariff Schedule of the United States - the "claimed provision." Customs liquidated the merchandise under subheading 4407.10.00 - the "assessed provision." Both subheadings carried a duty-free rate of importation. However, Customs' reclassification required Vanderhoof to present valid Canadian export permits under the SLA.

Vanderhoof brought suit in the CIT seeking the return of the “valuable” permits, but, significantly to the Court, did not seek a refund based upon the cost of the permits. The Court noted that the SLA expired in 2001, and there no longer existed a permit requirement. Vanderhoof failed to establish that permits continued to possess value in light of the SLA’s expiration. The Court concluded that the plaintiff failed to establish a “legally cognizable interest” in the outcome of the litigation:

> Plaintiff’s claim fails to meet the Article III criteria. Since the encumbrance on Vanderhoof’s entries was extinguished upon presenting Customs with required export permits, and since return of such permits can not meaningfully redress any economic or legal injury, this case is dismissed.

*Vanderhoof*, 26 I.T.R.D. (BNA) 1349.

Clearly, in contrast to the plaintiff in *Vanderhoof*, BBP has established a “legally cognizable interest” in the outcome of the litigation. It does not seek a return of valueless permits, rather a refund of $93,217.50 in liquidated damages paid “under protest” to Customs. By contrast in *Vanderhoof* and the other cases cited by the Plaintiff there was no live case or controversy. *See, e.g., 3V, Inc. v. United States*, 23 C.I.T. 1047 (1999) (granting Defendant’s motion to dismiss because both the assessed and claimed provisions were duty-free).

**CONCLUSION**

Because we have determined that the CIT and not this Court has jurisdiction to consider Plaintiff’s claims, we need not decide whether Plaintiff exhausted its administrative remedies. **Accordingly, the Defendant’s Motion to Dismiss is hereby Granted. The Clerk of the Court is directed to enter judgment in favor of the Defendant, and dismiss the Plaintiff’s Complaint. No costs.**

**IT IS SO ORDERED.**

/s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge